# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING B.V., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.: 04-884-SLR |
| TEVA PHARMACEUTICAL | ) |
| INDUSTRIES LTD. and TEVA | ) |
| PHARMACEUTICALS USA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## TEVA PHARMACEUTICALS  USA, INC. &
## TEVA PHARMACEUTICAL INDUSTRIES LIMITED'S
## REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
## SUMMARY JUDGMENT ON THE BASIS OF COLLATERAL ESTOPPEL AND
## OPPOSITION TO FERRING B.V.'S CROSS-MOTION TO STAY

YOUNG CONAWAY STARGATT & TAYLOR LLP

Josy W. Ingersoll (No. 1088)
Karen Keller (No. 4489)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone:  302-571-8872
Phone:  302-571-6600

Attorneys for Defendants Teva Pharmaceutical
Industries Ltd. and Teva Pharmaceuticals USA, Inc.

William F. Long
N.E.B. Minnear
999 Peachtree Street
Atlanta, Georgia 30309-3996
Phone:    404-853-8000
Fax:      404-853-8806

58956.1012

## TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................2

I.    There Are No Disputed Issues of Material Fact .................................................2

II.   The Elements of Collateral Estoppel Have Been Satisfied...................................2

     A.    (1) The Issues Are Identical...........................................................................2

     B.    (2) The Issue Was "Actually Litigated" ...................................................... 3

     C.    (3) The Barr Judgment Is Valid And Final For Purposes Of Collateral Estoppel ... 4

     D.    (4) The Issue Was Essential To The Determination In *Barr* ................................. 5

III.  Ferring's Attempt to Relitigate The *Barr* Judgment Is Misplaced ...................5

IV.   The Court Should Grant Summary Judgment to Prevent Prejudice to Teva...................8

V.    Ferring Should Not Be Granted A Stay in this Action .......................................10

     A.    (1) Likelihood Of Success On The Merits........................................... 10

     B.    (2) No Irreparable Injury....................................................................... 11

     C.    (3) Prejudice To Teva .......................................................................... 12

     D.    (4) Public Interest................................................................................ 13

     E.    Ferring's Case Law is Inapplicable ................................................... 13

CONCLUSION.............................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aerogroup Int'l, Inc. v. Shoe Show, Inc.*,
   966 F. Supp. 175 (W.D.N.Y. 1997)............................................................................14

*Ballard Medical Prods. v. Allegiance Healthcare Corp.*,
   268 F.3d 1352 (Fed. Cir. 2001) ...............................................................................5

*Blonder-Tongue Laboratories, Inc. v. University
   of Illinois Foundation*, 402 U.S. 313 (1971) ...............................................3, 4, 6

*Dana Corp. v. NOK, Inc.*
   882 F.2d 505 (Fed. Cir. 1989)...................................................................................3

*Hilton v. Branuskill*,
   481 U.S. 770 (1987)..................................................................................................10

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*,
   906 F.2d 679 (Fed. Cir. 1990) ...............................................................................11

*In re Brown*,
   951 F.2d 564 (3d Cir. 1991) ....................................................................................5

*Kaiser Industries Corp. v. Jones & Laughlin Steel Corp., et al.*,
   515 F.2d 964, 978 (3d Cir. 1975) .........................................................................2, 6

*Medtronic Vascular, Inc. & Medtronic USA, Inc. v.
   Advanced Cardiovascular Systems, Inc. & Guidant Sales Corp.*,
   2004 U.S. Dist. LEXIS 26756 at *8 (D. Del., Dec. 17, 2004.)................................2

*Micron Technology, Inc. v. Rambus Inc.*,
   189 F.Supp.2d 2001 (D. Del. 2002).......................................................................14

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*,
   723 F.2d 1566 (Fed. Cir. 1983) ...............................................................................3

*Mylan Labs., Inc. v. Thompson*,
   389 F.3d. 1272 (D.C. Cir. 2004).............................................................................13

*Pharmacia & UpJohn Co. v. Mylan Pharmaceuticals, Inc.*,
   170 F.3d 1373 (Fed. Cir. 1999) .............................................................................13

*Scripps Clinic and Research Foundation v.*
   *Baxter Travenol Laboratories, Inc.,*
   *729 F.2d 1473 (D. Del. 1990)*..................................................................................4

*Stevenson v. Sears & Roebuck,*
   713 F.2d 705 (Fed. Cir. 1983) ...............................................................................4

*Studiengesellschaft Kohle, GmbH v. USX Corporation, et al.,*
   675 F. Supp. 182 (D. Del. 1987)..............................................................................3

*Thompson-Hayward Chemical Co. v. Rohm & Hass Co.*
   *745 F.2d 27 (Fed. Cir. 1984)*...................................................................................2

*Yamaha Int'l Corp. v. Central Venture, Inc.,*
   1991 U.S. Dist. LEXIS 334 (S.D.N.Y. Jan. 14, 1991) .......................................14

**Rules**

Fed. R. Civ. P. 15(a) .................................................................................................3

**Statutes**

21 U.S.C. § 355(j)(5)(B)(iii)(2003) ..........................................................................8

**Other Authorities**

The Hon. Paul R. Michel, *Forward:  The Court of Appeals for the*
   *Federal Circuit Must Evolve to Meet the Challenges Ahead,*
   Amer. Univ. L. Rev., 48:1177, (1999)....................................................................12

Kimberly Moore, *Judges, Juries, and Patent Cases – An Empirical Peek*
   *Inside the Black Box,* 99 Mich. L. Rev. 365 (2000) ............................................10

Teva respectfully submits this reply in support of its Motion for Summary Judgment On the Basis of Collateral Estoppel and in opposition to Ferring's Motion to Stay.[1]

This Court can and should decide Teva's motion based on the straightforward application of collateral estoppel. The judgment in *Barr* unquestionably meets all required elements. Each of Ferring's arguments that the *Barr* judgment does not satisfy the elements of collateral estoppel is directly contrary to controlling Federal Circuit and Third Circuit authority.[2]

Moreover, although it is not a required element for the application of collateral estoppel, the prejudice to Teva resulting from the continued pendency of this case provides a compelling reason to enter judgment here. Teva will likely be kept off the desmopressin acetate market by the pendency of this litigation.

The stay proposed by Ferring would necessarily require that this case remains pending, which would cause – not resolve – the prejudice to Teva. Moreover, Ferring's arguments in support of its motion for stay do not meet the applicable legal standard.

---

[1]    Ferring's opposition is addressed to the merits of Teva's summary judgment brief. As currently docketed, Teva's Motion for Leave to File Summary Judgment technically is the only motion pending relevant to summary judgment. (D.I. #35.) Because Ferring's opposition is directed in substance to the Motion for Summary Judgment itself, Teva replies herein in support of that motion. Teva incorporates by reference its arguments in support of its Motion for Leave to File Summary Judgment. (For ease of reference, Teva herein refers to its motion for summary judgment as the "Motion" and Ferring's responsive brief and memorandum in support of motion to stay as the "Opposition.")

[2]    Among other issues, Ferring's brief includes gratuitous and inaccurate remarks apparently designed to paint Teva as a bad actor, such as the allegation that Teva has "refused to produce the documents it had been scheduled to produce." (Opposition, p. 4.) The reality is that Teva had tentatively agreed to a date to begin producing its documents (notwithstanding that the Court's Scheduling Order did not require completion of production until July 1). However, the *Barr* Judgment intervened. Ferring presumably agrees that, in light of the *Barr* Judgment and the pending motions, the parties should cease their discovery efforts.

# ARGUMENT

## I.    <u>There Are No Disputed Issues of Material Fact</u>

The *Barr* court entered a final judgment based upon a finding of inequitable conduct.

The existence of the judgment is undisputed.  That judgment provides the basis for the

application of collateral estoppel in the present case.  That Ferring now asserts that *Barr*

judgment was wrongly decided is neither surprising nor relevant to the inquiry before this Court.

*See Kaiser Industries Corp. v. Jones & Laughlin Steel Corp., et al.*, 515 F.2d 964, 978 (3d Cir.

1975).  Ferring's protestations against the decision in the *Barr* case do not create a material issue

of disputed fact, and Ferring's citation to its Statement of Undisputed Facts in the *Barr* case is

inappropriate and unavailing.

## II.    <u>The Elements of Collateral Estoppel Have Been Satisfied</u>

There can be little question here that the required elements for the application of

collateral estoppel have been met here.  The elements of collateral estoppel as set forth by the

Third Circuit are as follows: "(1) the issue to be precluded is the same as that involved in the

prior action; (2) the issue was actually litigated; (3) it was a valid and final judgment; and (4) the

determination was essential to the prior judgment."  *Medtronic Vascular, Inc. & Medtronic USA,*

*Inc. v. Advanced Cardiovascular Systems, Inc. & Guidant Sales Corp.*, 2004 U.S. Dist. LEXIS

26756 at *8 (D. Del., Dec. 17, 2004.)

### A.    (1) The Issues Are Identical

Teva has satisfied the identity prong of the Third Circuit's collateral estoppel standard.

Ferring's arguments as to the identity of the issues attempt to impose strictures on pleading

practice that the courts expressly have rejected.  Ferring makes no attempt to show legal support

for its argument.  In *Thompson-Hayward Chemical Co. v. Rohm & Hass Co.*, the Federal Circuit

2

applied collateral estoppel from a first district court's invalidity ruling even though the party

seeking to apply collateral estoppel failed to even raise invalidity as a defense until appeal,

noting that the "strong public interest in not countenancing fraud in the PTO" outweighed "the

proprieties of pleading practice." 745 F.2d 27, 32-33 (Fed. Cir. 1984) (*See* Motion, pp. 8-9.) In

*Dana Corp. v. NOK, Inc.*, the Federal Circuit interpreted *Blonder-Tongue* as allowing collateral

estoppel-based defenses to "be timely made at any stage of the affected proceedings." 882 F.2d

505, 507 (Fed. Cir. 1989). Ferring ignores these holdings. Ferring's factual distinctions make no

legal difference. (See Opposition, p. 9, n.11.)

Moreover, Ferring is simultaneously opposing Teva's timely motion to amend its answer

to conform its inequitable conduct allegations.[3] Under Rule 15, Teva should freely be given

leave to amend its pleadings as justice requires. Fed. R. Civ. P. 15(a). Ferring's efforts to

elevate pleading practice over the public interest in contravention of the Federal Circuit's rulings

should be rejected.

### B.      (2) The Issue Was "Actually Litigated"

The "actually litigated" prong is satisfied by the *Barr* Judgment. Ferring asserts that

none of the cases cited by Teva support the contention that inequitable conduct was "fully

litigated" in the *Barr* decision. (Opposition, p. 8.) The term "fully litigated" appears to be one

of Ferring's own creation; it is not the standard under controlling Third Circuit law. The relevant

standard is "actually litigated," which is "generally satisfied if the parties to the original action

disputed the issue and the trier of fact resolved it." *Studiengesellschaft Kohle, GmbH v. USX

Corporation, et al.*, 675 F. Supp. 182, 185 (D. Del. 1987) (quoting *Mother's Restaurant, Inc. v.*

---

[3]      Concurrently herewith, Teva is filing its reply brief in support of its motion to amend its
answer to incorporate defenses raised by the *Barr* ruling. Teva incorporates by reference the
arguments raised in that brief.

3

*Mama's Pizza, Inc.*, 723 F.2d 1566, 1570 (Fed. Cir. 1983)).  There can be no question that this occurred in the *Barr* action.

Ferring apparently would seek to impose an exception to the collateral estoppel rule of *Blonder-Tongue* where a decision in the first case was reached on summary judgment.  Such a position has been wholly rejected by the Federal Circuit and courts in this district.  In *Scripps Clinic and Research Foundation v. Baxter Travenol Laboratories, Inc.*, a Delaware district court applied the Federal Circuit's rule that collateral estoppel applies where the first ruling was made on summary judgment.  729 F.2d 1473, 1475 (D. Del. 1990).[4]  The *Scripps* court relied upon Federal Circuit authority, that also squarely rejected the argument now raised by Ferring:

> Stevenson also contends that collateral estoppel should not be applied when the prior determination of invalidity is based on a motion for summary judgment rather than a full-fledged trial.  This fact, however, does not create a per se exception to *Blonder-Tongue.  **We believe the rationale of Blonder-Tongue extends to all prior determinations of invalidity; its application is not dependent on how the judgment of invalidity was reached.**

*Stevenson v. Sears & Roebuck*, 713 F.2d 705, 712 (Fed. Cir. 1983) [emphasis supplied].

### C.    (3) The Barr Judgment Is Valid And Final For Purposes Of Collateral Estoppel

Ferring tries to argue that the *Barr* decision is not "sufficiently firm" to form the basis of an entry of judgment, because of perceived unfairness from the trial court.  (Opposition, p. 11.)  However, later in the same argument section, Ferring curiously states "[w]hile it is correct that

---

[4]    Ferring's attempts to distinguish *Scripps* miss the mark.  (Opposition, p. 11.)  The fact that the collateral estoppel effect of only one of three issues decided previously on summary judgment was contested has nothing to do with whether collateral estoppel is appropriately predicated on a summary judgment ruling.  The "full and fair opportunity to litigate" portion of the ruling concerns a separate issue, addressed *infra*, that the *Scripps* court would not have needed to reach unless it first decided that the primary collateral estoppel elements, including the "actually litigated" element were first satisfied.

4

the district court's Judgment in the *Barr* action reached without any trial on the merits is entitled

to be accorded a collateral estoppel effect, in view of plaintiffs' appeal of that decision and the

case law, Ferring urges ...." (Opposition, p. 12.)

No case cited has held a decision not to be final or "sufficiently firm" because of

inadequate procedures. Moreover, there was nothing inadequate about the process in the *Barr*

case. In the *Barr* case, the court decided the few relevant disputed claim terms in the context of

the non-infringement summary judgment motion. This is neither an unusual or incorrect method

for structuring a patent case. *See Ballard Medical Prods. v. Allegiance Healthcare Corp.*, 268

F.3d 1352, 1357 (Fed. Cir. 2001) ("Contrary to Ballard's contention, *Markman* does not require

a district court to follow any particular procedure in conducting claim construction .... If the

district court considers one issue to be dispositive, the court may cut to the heart of the matter

....") Moreover, the *Barr* court issued a reasoned decision in excess of thirty pages and

entered judgment on the basis of that decision. That decision is now final enough to be appealed

to the Federal Circuit, and thus is more than final enough for collateral estoppel purposes. *See In

re Brown*, 951 F.2d 564, 569 (3d Cir. 1991).

### D.    (4) The Issue Was Essential To The Determination In Barr

Ferring has not contested that the unenforceability issue was essential to the

determination in *Barr*. According, the final element of collateral estoppel under the Third

Circuit test is present here.

## III.    Ferring's Attempt to Relitigate The Barr Judgment Is Misplaced

Possibly conceding that the four elements of collateral estoppel are present here ("[w]hile

it is correct that the district court's Judgment in the *Barr* action reached without any trial on the

5

merits is entitled to be accorded a collateral estoppel effect ....") (Opposition, p. 12), Ferring argues that it was deprived of a full and fair opportunity to litigate the *Barr* case, and thus that ruling should not be applied by this Court. Such an attempt to re-litigate is precisely what the Third Circuit and United States Supreme Court have prohibited.

In deciding whether a full and fair opportunity to litigate existed in the first action, "the correctness of the result of the earlier patent suit is *not* at issue." *Kaiser*, 515 F.2d at 978 [emphasis supplied]. Ferring chose its forum in the first litigation, and principles of justice and equity counsel against allowing it to avoid the consequences of that choice. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 332 (1971). Thus, Ferring's complaints about the result in the first action are misplaced.

Ferring asks this Court to ignore *Blonder-Tongue* and its progeny by asking the Court to adjudge whether the *Barr* court correctly ascertained the knowledge of those skilled in the art and the specification of the '398 patent without the benefit of the record evidence or opposing arguments available to the court in New York. (Opposition, p. 13.) Ferring further asks this Court to determine if a statement made by its counsel at summary judgment was a transcription error without this Court (or Teva) having the opportunity to be present at the hearing. (Opposition, p. 14.)

Ferring's sole argument as to the portion of the *Barr* ruling that is before this Court is that there were disputed issues of material fact that should have precluded the finding of inequitable conduct. (Opposition, pp. 12-13.) All Ferring offers is its own conclusory statement in this regard. Ferring cannot point to a single disputed issue of fact that was relevant to the *Barr* court's decision on inequitable conduct. The *Barr* court provided a detailed statement of facts as

6

to inequitable conduct. (Exhibit A to Motion, pp. 4-11.) Ferring has not supported its assertions by showing so much as a single instance in which the *Barr* court found a fact relevant to the inequitable conduct issue that was reasonably disputed.

Ferring presents no reason to believe that the court in New York did not grasp the issues before it or give Ferring a fair opportunity to litigate the case. It is clear that the *Barr* court understood the applicable law as to deciding summary judgment and itself recited that summary judgment is not appropriate where facts are reasonably disputed. (Exhibit A to Motion, p. 11.) However, the *Barr* court also noted the appropriateness of summary judgment on inequitable conduct where there is no true disputed factual issue. (Exhibit A to Motion, p. 13.) It further noted that conclusory denials are not sufficient to create issues of disputed facts. (Exhibit A to Motion, p. 14.) It also cited Federal Circuit precedent as to the inherent materiality of declarations made to the PTO. (Exhibit A to Motion, p. 13.) The court also noted the high degree of materiality that was present. (Exhibit A to Motion, p. 18.) Finally, the court noted that even viewing the facts in the light most favorable to Ferring, the evidence of prosecution misconduct was so clear and pervasive, that "courtroom observation" was not necessary to decide the issue. (Exhibit A to Motion, p. 18.)

In short, there is nothing to suggest that the Court failed to grasp the issues or failed to give Ferring an opportunity to put forth its evidence. To the contrary, the *Barr* decision reflects record evidence that was so clearly and indisputably against Ferring that a trial was not necessary. Based on the record before it, the *Barr* Court properly adjudged Ferring to have defrauded the PTO.

7

**IV.    The Court Should Grant Summary Judgment to Prevent Prejudice to Teva**

Prejudice is not a required element for the entry of summary judgment based on collateral estoppel. Nevertheless, the prejudice to Teva that will likely result if summary judgment is not entered provides an additional and compelling reason to grant Teva's motion.

As the parties currently stand, Ferring is currently enjoying a monopoly in the market for tablet-form desmopressin acetate. Barr was the first ANDA filer, meaning that it was the first entity to file an Abbreviated New Drug Application ("ANDA") seeking to sell a competing generic drug pursuant to the Hatch-Waxman Act. Absent a judgment in its favor, Barr would have been required to wait until the expiration of a 30-month stay before it could enter the market (*i.e.,* before Barr could compete with Ferring by selling its generic product) pursuant to the Act. *See* 21 U.S.C. § 355(j)(5)(B)(iii) (2003).

However, the final judgment in the *Ferring v. Barr* matter eliminated Barr's 30-month stay. Congress could have drafted the Hatch-Waxman Act to keep generic drug companies out of the market until all appeals were final. However, that is not what Congress chose to do. Instead, Congress specifically drafted the Hatch-Waxman Act to permit a generic company with FDA approval to enter the market as soon as a patent case is favorably decided at the trial level, before any appeal. *See* 21 U.S.C. § 355(j)(5)(B)(iii) (2003). Because of the judgment in its favor, Barr is now free to enter the market immediately upon receipt of FDA approval.

Teva filed its ANDA subsequent to Barr's filing. The FDA is precluded from finally approving Teva's ANDA until either Ferring's case against Teva is dismissed or until after Teva's 30-month stay ends, which is December 9, 2006. *See* 21 U.S.C. §355(j)(5)(B)(iii) (2003).

8

In addition, Teva cannot enter the market until it receives final FDA approval and 180 days have elapsed from the time Barr enters the market.

Barr has done nothing to warrant Ferring's expressed confidence that Barr will stay off the desmopressin acetate market until the resolution of the Federal Circuit appeal. Barr never has suggested that it would wait until the resolution of the appeal to enter the desmopressin acetate market. To the contrary, Barr's recent public pronouncements indicate an eagerness to enter the desmopressin acetate market. Barr's Chairman and Chief Executive Officer, Bruce L. Downey, stated after his company's success against Ferring in New York that Barr "will continue to seek approval of our application" for desmopressin acetate tablets. (See Barr's February 9, 2005, Press Release, attached hereto as Exhibit A, and *Barr Claims DDAVP Exclusivity*, Generics Bulletin, Feb. 18, 2005, attached hereto as Exhibit B.[5]

Indeed, if Ferring did not believe it likely that Barr would be entering the market soon, Ferring would have no legitimate reason to seek an expedited appeal. Ferring's stated intention to seek an expedited appeal[6] represents an admission of its own belief that Barr will receive FDA approval in the near future, and that Barr most likely will go to market immediately thereafter.

Hence, entering judgment now will not prejudice Ferring. If the Court grants summary judgment and Barr enters the market, as it is expected to do, then Teva can enter the market 180 days thereafter, which – rather than prejudicing Ferring – would be in accord with the statutory

---

[5]    As part of its overall strategy to erect barriers to competition, Ferring filed a Citizen's Petition with the FDA on February 2, 2004, requesting that the FDA impose additional substantive requirements on ANDAs for tablet-form desmopressin acetate. Barr has also announced that it "will vigorously oppose" this barrier to FDA approval. (Exhibit A; Exhibit B.)
[6]    As noted *infra*, there is no publicly-available evidence suggesting that Ferring has sought an expedited appeal. The only information available from the Federal Circuit indicates that briefing on the appeal will not begin until May 16, 2005.

9

scheme of the Hatch-Waxman Act. On the other hand, if the Court does not enter summary judgment, Teva will be prevented from entering the market 180 days following Barr's entry. Teva will be prejudiced and the public interest will suffer through the loss of consumer choice in the desmopressin acetate market.

V.     **Ferring Should Not Be Granted A Stay in this Action**

Recognizing the legal weakness of its arguments on collateral estoppel, Ferring asks the Court to stay the present action until the Federal Circuit decides Ferring's appeal. The Court should deny this request.

In analyzing a request for stay, courts generally look at the following factors: (1) whether the party moving for the stay has made a strong showing of likelihood of success on the merits; (2) whether the party moving for the stay will be irreparably injured if a stay is not granted; (3) whether the issuance of the stay will injure other parties interested in the action; and (4) the public interest. *Hilton v. Branuskill*, 481 U.S. 770, 776 (1987). None of these factors favor Ferring.

### A.     (1) Likelihood Of Success On The Merits

First, Ferring is not likely to succeed on the merits of its appeal. To support the idea that it will succeed on appeal, Ferring cites a 40% reversal rate. Ferring's statistic relates to reversal rates for claim construction decisions. The unenforceability portion of the decision would stand irrespective of how the Federal Circuit rules on the claim construction issues in the *Barr* case. Unlike claim construction, unenforceability decisions are affirmed by the Federal Circuit in 76% of cases. Kimberly Moore, *Judges, Juries, and Patent Cases – An Empirical Peek Inside the Black Box*, 99 Mich. L. Rev. 365, 399 (2000). Furthermore, for Ferring to succeed at the Federal

Circuit, it would need a reversal on ***both*** claim construction and unenforceability issues. To the extent that Ferring's chances on appeal bear any relevance to the pending motions, they favor Teva, as the chance that Ferring will succeed in reversing both portions of the judgment, as it must do, are exceedingly low.

Even assuming that Ferring's statistic was a proper measure, that would still mean that Ferring faced a 60% likelihood that the judgment will be affirmed. In other words, Ferring will most likely lose.

### B.    (2) No Irreparable Injury

Second, Ferring's argument for irreparable harm is not viable. As noted above in Section IV, Ferring's argument for irreparable harm is that if the Court grants Teva's motion, it could cause Ferring to forfeit the remainder of its 30-month stay on FDA approval of Teva's generic desmopressin acetate products, allowing Teva to market the products. (Opposition, p. 2.) In fact, Ferring's point is precisely the result intended by the authors of the Hatch-Waxman Act. The stay of FDA approval of a generic product exists until the patents covering the product in question are, *inter alia*, declared unenforceable, and no longer than that. Ferring is simply arguing that it will lose revenue from the introduction of generic competition. Irreparable harm means something more than prejudice, and loss of revenue is not irreparable harm. The Federal Circuit expressly rejected lost revenue as a basis for an irreparable harm finding because accepting that position "would require a finding of irreparable harm to every manufacturer/patentee." *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990). This case is not akin to the cases cited by Ferring, relating to divestitures of rights that could never be remedied such as waiver of the attorney-client privilege. (Opposition, p. 18.)

WP3:1098409.1                    58956.1012

Assuming *arguendo* that all of its other arguments are correct, Ferring could remedy a potential financial loss by bringing an infringement suit for damages against Teva.

### C.     (3) Prejudice To Teva

Third, the prejudice to Teva discussed in Section IV would not be solved by a stay. Ferring's "guess" that its appeal will be decided in four to six months is disingenuous. (Opposition, p. 6)   According to Judge Michel of the Court of Appeals for the Federal Circuit, patent appeals often require over a year to be decided, and typically take between six to eight months from oral argument.   The Hon. Paul R. Michel, *Foreward: The Court of Appeals for the Federal Circuit Must Evolve to Meet the Challenges Ahead*,  Amer. Univ. L. Rev., 48:1177, 1186 (1999) ("For example, in patent cases, it is not uncommon for disposition to take a year or more following the filing of an appeal, and as much as six to eight months after oral argument.") While Ferring has indicated its intention to seek an expedited appeal, a review of the Federal Circuit's docket shows that no such request has yet been made to the Federal Circuit.  (See *Ferring v. Teva* docket, attached hereto as Exhibit C.)  Also, there is no explanation as to why the Federal Circuit would view it necessary to expedite the appeal.  Further, according to the docket, Ferring has yet to file its opening brief and is not scheduled to do so until May 16, 2005. (Exhibit B.)  Oral argument has not yet been scheduled.  (Exhibit C.)  Hence, Ferring cannot possibly expect a decision as early as July of this year.  Indeed, it is unlikely that the appeal will be resolved this year at all.

On the other hand, Barr could receive at any time final FDA approval to market desmopressin acetate and Teva could receive at any time tentative FDA approval.  Both regulatory processes are much farther along than Ferring's appeal.  Once both of these events occur and Barr goes to market, Teva will only be 180 days from being able to market

12

desmopressin acetate, assuming that the Court grants summary judgment. These facts illustrate Teva's need for the Court to enter judgment in this case rather than a stay.

If Teva's ability to enter the market is delayed, Teva will lose sales it can never recoup. Ferring should not be permitted to continue to use procedural tactics and its unenforceable patent to delay the FDA's approval of Teva's ANDA. Indeed, the Federal Circuit has deemed delay in these types of situations "undesirable." *Pharmacia & UpJohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1382 (Fed. Cir. 1999).

### D.     (4)  Public Interest

Fourth, the public interest would suffer if a stay is granted. One of the main goals of the Hatch-Waxman Act is to strike a balance between patent protection and the timely entry of low-priced generic drug competition in the market. Here, Ferring has already been held by the *Barr* court to have defrauded the patent office, rendering its patent unenforceable. Ferring's attempts to erect further barriers to generic drug competition are illegitimate and should be rejected.[7]

### E.     Ferring's Case Law is Inapplicable

The cases cited by Ferring in support of its motion to stay simply do not apply to the present facts. None deal with inequitable conduct findings and none involve Hatch-Waxman defendants prohibited from entering a drug market as a result of the stay.[8] In fact a large number

---

[7]     Ferring's argument that the case would be streamlined by a stay is illogical. The simplest disposition of the case for all involved – including the Court – is the entry of judgment. There is no meaningful difference between the contours of this case if reopened after (unlikely) Federal Circuit reversal compared to a second suit for damages brought by Ferring upon Teva's entry into the market.
[8]     *Mylan Labs., Inc. v. Thompson*, 389 F.3d. 1272 (D.C. Cir. 2004), which is cited by Ferring does not deal with either the application of collateral estoppel or a request for a stay. (Opposition, p. 18.)

of the decisions cited by Ferring involve courts declining to adopt claim construction rulings that were not reviewed because of later settlement, an issue not present here.. (Opposition, p. 17.)

Ferring's only cited case involving patent fraud is *Micron Technology, Inc. v. Rambus Inc.*, 189 F.Supp.2d 2001 (D. Del. 2002). However the *Rambus* case involved fraud against a particular defendant, not fraud before the PTO. *Id.* at 203. The court did not apply collateral estoppel on the fraud issue because "[t]he jury's finding that Infineon reasonably relied to its detriment on Rambus's failure to disclose is not a finding that Micron, or all JEDEC members, similarly reasonably or justifiably relief." *Id.* at 213. No such issue exists in the present case. The *Barr* ruling relates to misconduct before the patent office, not a fraud practiced exclusively on Barr. Thus, this Court should have no lack of confidence that the *Barr* inequitable conduct ruling would be fully applicable in this case. Furthermore, the only prejudice offered by the defendant in *Rambus* was a "cloud of uncertainty" as to its products and the pendency of foreign litigation. *Id.* at 211-12. Here, Teva is being barred from the market in part by the unenforceable '398 patent.

The fact that a stay will prevent Teva from entering the market and thereby deny the public the benefit of Teva's competition, distinguishes the present case from the cases relied upon by Ferring. For example, Ferring's case, *Yamaha Int'l Corp. v. Central Venture, Inc.*, 1991 U.S. Dist. LEXIS 334 (S.D.N.Y. Jan. 14, 1991), was distinguished in *Aerogroup Int'l, Inc. v. Shoe Show, Inc.*, 966 F. Supp. 175, 181 (W.D.N.Y. 1997) on the very grounds present here – the fact that the defendant was being kept off the market:

> While it is true that *Yahama* is similar to this case in many respects, it is distinguishable in a very important one: In *Yahama* the defendant's business activities were not restricted by any pending injunction or stipulation. Here, the defendants are

14

> currently bound by the [stipulation and order], preventing them
> from engaging in the very activities [the judge] has found to be
> lawful.

*Id.* (denying motion for stay).

Like the defendant in *Aerogroup*, Teva stands prevented from engaging in activity that

has been found by a judge to be lawful, *i.e.,* marketing its desmopressin acetate products in the

fact for Ferring's unenforceable patents.  This Court should follow the reasoning of *Aerogroup*,

deny Ferring's motion for a stay and grant Teva's motion for summary judgment.

## CONCLUSION

For the foregoing and within reasons, Teva respectfully requests that the Court grant it

leave to file its motion for summary judgment, grant its motion for summary judgment, and deny

Ferring's cross-motion for stay.

Dated:  March 29, 2005

YOUNG CONAWAY STARGATT & TAYLOR LLP

Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone:  302-571-8872
Phone:  302-571-6600
jingersoll@ycst.com

Attorneys for Defendants Teva Pharmaceutical
Industries Ltd. and Teva Pharmaceuticals USA, Inc.

15

SUTHERLAND ASBILL & BRENNAN LLP

William F. Long
N.E.B. Minnear
999 Peachtree Street
Atlanta, Georgia 30309-3996
Phone:    404-853-8000
 Fax:        404-853-8806

16

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on March 29, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899

I further certify that on March 29, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY EMAIL**

> Dennis J. Mondolino, Esquire
> Esther H. Steinhauer, Esquire
> Jeffrey M. Gold, Esquire
> Morgan Lewis & Bockius, LLP
> 101 Park Avenue
> New York, NY 10178-0060

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Josy W. Ingersoll_ by/ _Elib_ #4219

Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Defendants Teva Pharmaceutical
Industries Ltd. and Teva Pharmaceuticals USA, Inc.