# EXHIBIT 1

FOOD AND DRUG LAW INSTITUTE SERIES

THE LEGISLATIVE HISTORY OF THE

DRUG PRICE COMPETITION

AND

PATENT TERM RESTORATION ACT

OF 1984

Edited by

ALLAN M. FOX                    ALAN R. BENNETT

Published by



Washington, D.C.

HOUSE REPORT PART 2, AT PAGE 16:

> Paragraph (4)(C) of proposed subsection (j) provides that in the event of FDA disapproval of an ANDA, the agency shall give the applicant notice of the opportunity for a hearing on the issue of the approvability of the ANDA. In order to obtain a hearing, the applicant shall request it in writing within 30 days of the notice. The hearing may begin not later than 120 days after the notice. However, a later date may be set by mutual agreement. The hearing shall be conducted as expeditiously as possible. The FDA's decisional order shall be issued within 90 days after the date for filing final briefs.

## III. EFFECTIVE DATES OF ANDA APPROVAL

IF FDA APPROVES AN ABBREVIATED NEW DRUG APPLICATION, THAT APPROVAL STILL MAY NOT BE MADE IMMEDIATELY EFFECTIVE DUE TO ANY ONE OF A NUMBER OF CONCERNS. THESE CONCERNS RELATE GENERALLY TO THE PATENT CLAIMS APPLICABLE TO THE PROPOSED DRUG PRODUCT. IF THERE ARE NO PATENT BARRIERS TO SALES OF A "ME-TOO" PRODUCT, ANDA APPROVAL MAY BE MADE EFFECTIVE IMMEDIATELY. IF A VALID, UNEXPIRED PATENT EXISTS COVERING THE LISTED DRUG PRODUCT, APPROVAL IS DELAYED UNTIL THE EXPIRATION OF THE PATENT. IF AN UNEXPIRED PATENT IS CLAIMED BY THE APPLICANT TO BE INVALID OR INAPPLICABLE, HOWEVER, THE APPLICABLE DATE OF ANDA APPROVAL DEPENDS ON THE PATENT HOLDER'S DEFENSE OF THE PATENT CLAIMS. ANDA APPROVAL WILL BE DELAYED IF THE PATENT HOLDER BRINGS AN ACTION FOR PATENT INFRINGEMENT WITHIN 45 DAYS OF RECEIVING THE NOTICE OF THE APPLICATION DESCRIBED EARLIER IN SECTION I C. THE PERIOD A PATENT HOLDER HAS TO FILE A PATENT INFRINGEMENT SUIT AND DELAY THE EFFECTIVE DATE OF APPROVAL BEGINS TO TOLL ONLY UPON RECEIPT OF PATENT NOTICE, NOT UPON ITS MAILING. THE PATENT INFRINGEMENT SUIT MAY DELAY MARKET SALES AND ANDA APPROVAL FOR UP TO 30 MONTHS OR MORE. THE PROVISIONS OF THIS SUBSECTION ARE DETAILED IN THE STATUTORY LANGUAGE THAT FOLLOWS.

These provisions underwent certain changes during the legislative process. First, for a case involving claims of patent invalidity, the delay in ANDA approval pending resolution of a patent infringement suit was changed in the Senate from the 18 months in the Waxman Committee version to 30 months. This change appears in the final enacted version. The final version also adds 505(J)(4)(B)(III)(III), which provides that where a preliminary injunction has been granted barring the applicant from manufacturing or selling the drug and the court later decides that the Pioneer manufacturer's patent is invalid or not infringed, ANDA approval shall be made effective on the date of such court decision.

Statutory Provisions:

The following is a reprint of the as-enacted version, which can be found at 98 Stat. 1588-1589:

Effective dates.
"(B) The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined under the following:

"(i) If the applicant only made a certification described in subclause (I) or (II) of paragraph (2)(A)(vii) or in both such subclauses, the approval may be made effective immediately.
"(ii) If the applicant made a certification described in subclause (III) of paragraph (2)(A)(vii), the approval may be made effective on the date certified under subclause (III).
"(iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless an action is brought for infringement of a patent which is the subject of the certification before the expiration of forty-five days from the date the notice provided under paragraph (2)(B)(i) is received. If such an action is brought before the expiration of such days, the approval shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action, except that—
"(I) if before the expiration of such period the court

Claims.
Infringement

REMARKS OF REP. KASTENMEIER, CONG. REC. OF AUGUST 8, 1984, AT H8708:

> H.R. 3605 permits generic applications to be effective after a patent expires. In addition, H.R. 3605 provides that a generic manufacturer may request FDA approval to begin marketing before the patent on the drug has expired. Under current law, this situation is not an issue because of the cumbersome approval process. If the generic manufacturer seeks such an approval it must allege that the existing patent is invalid or will not be infringed. In this instance notification must be given by the generic to the patent holder concerning the application for FDA approval. In these cases the FDA may not approve the generic application until either: One, 18 months have expired or two, a court has determined that no infringement will take place. After the expiration of 18 months, if there has been no intervening judicial determination, the FDA will approve the generic application, even if the drug is still on patent.

REMARKS OF SEN. HATCH, CONG. REC. OF AUGUST 10, 1984, S10504:

> The period of time during which an abbreviated new drug application is not to be made effective, during the pendency of a patent challenge under the statute, is extended from 18 to 30 months from the date of submission of an ANDA application containing bioequivalency data. This increases the likelihood that the litigation will be concluded within the time period during which ANDA's are not allowed.

WAXMAN AMENDMENT TO TITLE I, HOUSE FLOOR DEBATE, CONG. REC. OF SEPTEMBER 6, 1984, AT H9109 AND H9110-H9111:

REMARKS OF REP. WAXMAN, HOUSE FLOOR DEBATE, CONG. REC. OF SEPTEMBER 6, 1984, AT H9118:

> Mr. GEKAS. I will try—I will try.
> Mr. WAXMAN. I thank the gentleman.
> The original 18 months, just for historical footnote, was a number of months that was arrived at after negotiation, not in the legislative hearings but between the various industry groups as they tried to resolve competing concerns.
> The generic drug manufacturers—first of all, this bill is a bill dealing primarily with getting generic drugs on the market when the patent expires.

The conceptualization of the bill is to give more time and more incentives for research and development.

* * * *

Mr. Chairman, the whole conceptuality of this bill is to give more time for the firm developing the patented drug, to give them a further incentive for research and development. There is a public good in that. The other side of it is to give the opportunity for competition in generic drugs to be on the market after that patent has expired.

This issue is a side issue. That is a side issue of when there is an invalid patent. The pharmaceutical manufacturers, the brand-name manufacturers were concerned that the generic manufacturers would come in and say that the patent was invalid and immediately go out in the market and compete, and they would be at some disadvantage. There were negotiations back and forth.

As far as I was concerned, the present patent law ought to be operative and they ought to go to court and try to enforce their patents. But, instead of leaving the law as it is, it was agreed upon to have a period of time by which there most likely would have been a court adjudication of the patent in question.

As a practical matter, the generic drug manufacturers have told us they wait for a court decision before they will market a drug. But this is a side issue to the overall importance of this bill. But it is a significant issue in terms of emotion.

I must tell you that while we may want the legislative process to be only Congressmen and Senators discussing the issues on a certain academic, intellectual level, there is a practical level by which people deal in day-to-day life. And the pharmaceutical manufacturers had an enormous amount of distrust with the generic manufacturers, the feeling that they may challenge a lot of patents that were quite valid. And the distrust ran the other way as well; the generic manufacturers said, "All they are trying to do is to keep us off the market and keep us from pressing our case."

* * * *

Mr. WAXMAN. The 18-month figure was a compromise. It was a compromise that brought onboard the Pharmaceutical Manufacturers Association along with the generic drug groups.

The change from 18 months to 30 months was a change that brought on the dissident groups within the PMA and has brought us to a package now that we can say with confidence is opposed by no one and backed by all of the groups concerned because their definition of reality has been redefined by virtue of this process having taken place. So I would make that clarification to the gentleman. I appreciate the significance of the legislative process, but let us not elevate procedure over substance.

What we have here is substantively a very good bill in the public interest. The public will benefit twice; by the further incentive for research and development for new, innovative drugs and by the immediate reduction in drug prices when a generic is on the market as a competitor.

That is a very worthwhile objective for this Congress to accomplish.

ADOPTION OF CONCURRENT RESOLUTION TO CORRECT TECHNICAL ERRORS IN ENROLLMENT OF S. 1538, CONG. REC. OF SEPTEMBER 12, 1984, AT S11096:

FEDERAL FOOD, DRUG, AND COSMETIC ACT AMENDMENTS

Mr. STEVENS. Mr. President, I send to the desk a concurrent resolution on behalf of Senator HATCH and ask for its immediate consideration.

The PRESIDING OFFICER. The concurrent resolution will be stated.

The assistant legislative clerk read as follows:

A concurrent resolution (S. Con. Res. 141) to correct technical errors in the enrollment of S. 1538.

The PRESIDING OFFICER. Is there objection to the present consideration of the concurrent resolution?

There being no objection, the Senate proceeded to consider the concurrent resolution.

Mr. HATCH. Mr. President, when S. 1538 came over from the House, it contained an error in an addition made in the House to modify the so-called