IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
FERRING B.V.                                    :
                                                :
                                                :         Civil Action No. 04-884-SLR
                    Plaintiff,                   :
                                                :
        v.                                       :
                                                :
TEVA PHARMACEUTICALS USA, INC. and              :
TEVA PHARMACEUTICAL INDUSTRIES                   :
LIMITED                                          :
                    Defendants.                  :
                                                :
------------------------------------------------------------X
```

**FERRING B.V.'S ANSWERING BRIEF TO TEVA'S
MOTION TO DISMISS COMPLAINT AND FOR AN AWARD OF
ATTORNEY'S FEES AND COSTS AND BRIEF IN SUPPORT OF ITS
CROSS-MOTION FOR A STAY OF PROCEEDINGS OR, IN THE
<u>ALTERNATIVE, RULE 41(a)(2) DISMISSAL WITHOUT PREJUDICE</u>**

Francis DiGiovanni (#3189)
**CONNOLLY BOVE LODGE & HUTZ LLP**
The Nemours Building
1007 North Orange Street
Wilmington, DE 19899-2207
(302)-658-9141

Dennis J. Mondolino
Christine A. Pepe
**MCDERMOTT, WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10017
(212)-547-5414

Attorneys for Plaintiff Ferring B.V.

## TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE ARGUMENT ...........................................................................1

II.  PROCEDURAL HISTORY .................................................................................3

III.  FACTUAL BACKGROUND .................................................................................5

A.  THE '398 PATENT AND FILE HISTORY ........................................................5

B.  THE *FERRING V. BARR* DECISION OF INEQUITABLE CONDUCT .............9

    1.  The District Court's Summary Judgment Decision....................................9

    2.  The Federal Circuit Appeal, Judge Newman's Vigorous 21-Page
    Dissent, And Ferring's Petition for Rehearing ........................................10

IV.  ARGUMENT .....................................................................................................13

A.  This Case Should be Stayed Pending Resolution of the Supreme Court
Certiorari Petition in *Ferring v. Barr* .................................................................13

B.  As an Alternative to Stay, Dismissal Without Prejudice Pursuant to Fed.
R. Civ. P. 41(a)(2) is Proper .................................................................................15

C.  Teva Is Not Entitled to Attorneys' Fees ..............................................................16

    1.  The Legal Standard for Awarding Attorneys' Fees Under 35
    U.S.C. § 285.................................................................................................16

    2.  This is Not an "Exceptional" Case ...........................................................18

    3.  Given the Circumstances of this Case and the Highly Controversial
    Nature of the *Ferring v. Barr* Decision, Attorneys' Fees are Not
    Appropriate ...............................................................................................21

    4.  Teva's Bad Faith Allegations Are Completely Unsupported ..................23

V.  CONCLUSION...................................................................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page**

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Page

<u>Alloc, Inc. v. Unilin Decor N.V.</u>, No. 03-253 (GMS),
    2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) .........................................13, 14

<u>Benitec Austl. Ltd. v. Nucleonics, Inc.</u>, No. 04-0174 (JJF),
    2005 U.S. Dist. LEXIS 22008 (D. Del. Sept. 29, 2005) .......................................14, 15

<u>C.R. Bard, Inc. v. Advanced Cardiovascular System, Inc.</u>, No. 92-1372,
    92-1402, 1993 U.S.App. LEXIS 22042 (Fed. Cir. Aug. 31, 1993) ......................16, 19

<u>Consolidated Aluminum Corp. v. Foseco International Ltd.</u>,
    910 F.2d 804 (Fed. Cir. 1990) ...................................................................................17

<u>Cost Brothers, Inc. v. Travelers Indemnity Co.</u>,
    760 F.2d 58 (3d Cir. 1985) ........................................................................................13

<u>Cybor Corp. v. FAS Techs., Inc.</u>,
    138 F.3d 1448 (Fed. Cir. 1998) .................................................................................18

<u>DuToit v. Strategic Minerals Corp.</u>,
    136 F.R.D. 82 (D. Del. 1991) .....................................................................................15

<u>eSpeed, Inc. v. Brokertec, USA, L.L.C.</u>,
    417 F.Supp.2d 580 (D. Del. 2006) .......................................................................17, 21

<u>Evident Corp. v. Church & Dwight Co.</u>,
    399 F.3d 1310 (Fed. Cir. 2005), ................................................................................20

<u>Ferring B.V. & Aventis Pharmaceuticals, Inc. v. Barr Laboratories, Inc.</u>,
    No. 02-Civ-9851 (CLB), 2005 U.S.Dist. LEXIS 3597 (S.D.N.Y. Feb.
    7, 2005) *aff'd*, No. 05-1284, 437 F.3d 1181 (Fed. Cir. 2006), *rehearing
    denied, rehearing en banc denied*, 2006 U.S. App. LEXIS 10811 (Fed.
    Cir. Apr. 12, 2006) ..................................................................................................*passim*

<u>Forest Labs. Inc. v. Abbott Labs.</u>,
    339 F.3d 1324 (Fed. Cir. 2003) .................................................................................17

<u>Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.</u>,
    292 F.3d 1363 (Fed. Cir. 2002) .................................................................................16

# TABLE OF AUTHORITIES
### (continued)

**Page**

Gardco Manufacturing, Inc. v. Herst Lighting Co.,
  820 F.2d 1209 (Fed. Cir. 1987) ..............................................................16, 19

Halliburton Co. v. Schlumberger Tech. Co.,
  722 F. Supp. 1433 (S.D.Tex. 1989) ……………………..........................................19

J.P. Stevens v. Lex Tex,
  822 F.2d 1047 (Fed. Cir. 1987) ......................................................16, 17, 18

Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,
  863 F.2d 867 (Fed. Cir. 1988) ...................................................2, 11, 12, 23

Landis v. North America Co.,
  299 U.S. 248 (1936).................................................................................13

Levy v. Sterling Holding Co., No. 00-994 (GMS),
  2004 U.S.Dist. LEXIS 19180 (D. Del. Sept. 27, 2004)...............................14

National Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc., No. 00
  C 6402, 2003 U.S. Dist. LEXIS 12083 (N.D.Ill. July 14, 2003) ..........................17, 18

Micron Tech., Inc. v. Rambus Inc.,
  189 F. Supp.2d 201 (D. Del. 2002).............................................................14

Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.,
  984 F.2d 1182 (Fed. Cir. 1993) ................................................................20

Purdue Pharma. L.P. v. Endo Pharmaceuticals Inc.,
  438 F.3d 1123 (Fed. Cir. 2006) ................................................................22

S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,
  781 F.2d 198 (Fed. Cir. 1986) .................................................................21

Superior Fireplace Co. v. Majestic Products Co.,
  270 F.3d 1358 (Fed. Cir. 2001) ........................................................17, 18

United Sweetener USA, Inc. v. Nutrasweet Co.,
  766 F.Supp. 212 (D. Del. 1991).................................................................13

Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers of
  America, 194 F.2d 770 (3d Cir. 1951)......................................................15

Yamaha International Corp. v. Central Venture, Inc.,No. 90 Civ. 9495,
  1991 U.S.Dist. LEXIS 334 (S.D.N.Y. Jan. 14, 1991) ................................14

**TABLE OF AUTHORITIES**
(continued)

**Page**

**TABLE OF AUTHORITIES**
(continued)

**Page**

**FEDERAL STATUTES**

21 U.S.C. § 355..............................................................................................3, 9

Fed. R. Civ. P. 41(a) ......................................................................................1, 15

Fed. R. Evid. 408 ............................................................................................5

35 U.S.C. § 285..............................................................................................4, 16, 17

Plaintiff Ferring B.V. ("Ferring") submits this answering brief in opposition to Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Limited's (collectively "Teva") Motion to Dismiss Complaint and for an Award of Attorney's Fees and Costs. Ferring also submits this brief in support of its Cross-Motion for a Stay of Proceedings, or, in the Alternative, a Rule 41(a)(2) Dismissal Without Prejudice.

## I.    <u>SUMMARY OF THE ARGUMENT</u>

This case should be stayed pending the resolution of the petition for writ of certiorari to the Supreme Court in the *Ferring v. Barr* litigation, and if the writ is granted, pending resolution of the Supreme Court decision on the merits.[1] The limited stay will preserve Ferring's rights pending Supreme Court review without any prejudice to Teva, as Teva is already selling its generic DDAVP product. In the Southern District of New York case, Barr has agreed to stay its attorneys' fees claim pending resolution of the certiorari petition. As an alternative to a stay, a dismissal without prejudice would similarly preserve Ferring's rights pending Supreme Court review, again, without any prejudice to Teva. Fed. R. Civ. P. 41(a)(2).

In the event that this Court refuses to stay this proceeding and addresses Teva's motion for attorneys' fees and costs now, Ferring vehemently opposes Teva's motion. Teva's motion for attorneys' fees is baseless and merely an attempt to exploit the *Ferring v. Barr* decision, which held that the Ferring's patent-in-suit, U.S. Patent No. 5,047,398

---

[1] *Ferring B.V. & Aventis Pharmaceuticals, Inc. v. Barr Labs.*, No. 02-CV-9851 (CLB), 2005 U.S. Dist. LEXIS 3597 (S.D.N.Y. Feb. 7, 2005), *aff'd*, No. 05-1284, 437 F.3d 1181 (Fed. Cir. 2006), *rehearing denied*, *rehearing en banc denied*, 2006 U.S. App. LEXIS 10811 (Fed. Cir. Apr. 12, 2006) ("*Ferring v. Barr*").

("the '398 patent") was unenforceable due to inequitable conduct. This decision was, by all objective and reasonable standards, a close and highly controversial decision both within the Federal Circuit and more broadly, within the patent field.

As discussed in more detail below, the *Ferring v. Barr* decision does not provide a basis for finding this case exceptional, nor for awarding attorneys' fees. In the absence of evidence that '398 patent applicant Dr. Vilhardt deliberately sought to mislead the PTO, or even that Dr. Vilhardt actually knew that the undisclosed connections between the expert declarants and Ferring were material, the Federal Circuit nonetheless held that Dr. Vilhardt "should have known" that the omitted information was material and in turn, inferred deceptive intent. *Ferring v. Barr,* 437 F.3d 1181 (Fed. Cir. 2006); (*See* Dec. Ex. 1, Slip Opinion, Majority at 17, 19)[2]. Federal Circuit Judge Newman wrote an urgent and stinging 21-page Dissent in favor of Ferring calling the Majority's inference of deceptive intent a "travesty" and further, criticizing its reinstatement of the "should have known" standard that was laid to rest by *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988) (*en banc* in relevant part). (*See Id.*, Dissent at p. 4, 7-8, discussed in more detail at *infra* p. 11-12). Further, on Ferring's petition for rehearing, three Federal Circuit Judges (Newman, Lourie and Gajarsa) would have reheard Ferring's appeal *en banc*. (*See* Dec. Ex. 2).

More broadly within the patent field, the Federal Circuit's decision has been criticized by patent practitioners as creating "uncertainty in the law" (Dec. Ex. 3) and "confusion" (Dec. Ex. 4), as a "detour" (Dec. Ex. 5, p. 5), as establishing a "new duty of

_____

[2] The Exhibits referenced herein are attached to the Declaration of Christine A. Pepe, Esq. and are referred to as "Dec. Ex. ___.

candor" (Dec. Ex. 6, p. 6), as a return to the "Dark Ages" (Dec. Ex. 7) and finally, as a "perverse litigation outcome."  (Dec. Ex. 8, p. 3; *see also* Discussion at *infra* p. 21-23 and Dec. Ex. 9, other collected publications concerning the *Ferring v. Barr* decision).

Teva's conclusory allegations that Ferring pursued this litigation in bad faith also do not provide a basis for awarding attorneys' fees.  Teva has not—and cannot—offer any evidence whatsoever of bad faith on the part of Ferring or its attorneys in initiating this lawsuit.

## II.    PROCEDURAL HISTORY

On or about June 9, 2004, Ferring and Aventis Pharmaceuticals, Inc. received notice pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) that Teva had filed an Abbreviated New Drug Application ("ANDA") No. 77-122 seeking FDA approval to market its generic version of the desmopressin acetate or DDAVP® tablets covered by the '398 patent.[3]

After due investigation pursuant to 21 U.S.C. § 355(j)(5)(B)(iii) of the Hatch-Waxman regulations,[4] Ferring commenced this suit on July 20, 2004, alleging Teva's infringement of the '398 patent.  The filing of this suit initiated a statutory 30-month stay of the approval of Teva's ANDA, which was due to expire on December 8, 2006.  21 U.S.C. § 355(j)(B)(iii).  Teva answered denying infringement and asserting defenses and counterclaims of non-infringement, invalidity and inequitable conduct based on the

---

[3]  Ferring's desmopressin acetate tablets are marketed and sold in the United States under the tradename DDAVP® by its exclusive licensee Aventis Pharmaceuticals, Inc. ("Aventis") under FDA-approved New Drug Application ("NDA") No. 01-9955.

[4]  The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 §§ 156, 271 to the Federal Food, Drug and Cosmetic Act ("FFDCA") is colloquially referred to as the "Hatch-Waxman Act."

failure to disclose prior art references. Teva also sought attorneys' fees and costs pursuant to 35 U.S.C. § 285.

The *Ferring v. Barr* district court decision, which held on summary judgment that Ferring's '398 patent was unenforceable due to inequitable conduct, issued on February 7, 2005—less than seven months after the initiation of this lawsuit. In this case, therefore, the parties have engaged in very little discovery. Following the issuance of the *Ferring v. Barr* decision, Teva's counsel requested that, in view of that decision, Ferring withdraw its complaint in this action. Ferring declined, but proposed instead that the parties stay this case pending appeal of the *Ferring v. Barr* decision to the Federal Circuit. (*See* Dec. Ex. 10, letters exchanged between counsel for Teva and Ferring).

Teva opposed a stay and thereafter moved for summary judgment on the basis of collateral estoppel pursuant to the *Ferring v. Barr* decision. (D.I. 34). Teva also moved to amend its answer and counterclaims to add the defense of collateral estoppel and to provide additional factual allegations supporting inequitable conduct, namely those asserted in *Ferring v. Barr*. (D.I. 33). Ferring opposed Teva's motions and moved for a stay of all proceedings pending the resolution of the Federal Circuit appeal of the *Ferring v. Barr* decision. (D.I. 40). This Court granted Ferring's request for a stay. (D.I. 48, April 27, 2005 Order staying proceeding)[5].

In July of 2005, upon Barr's launch of its generic DDAVP product, Teva moved to lift the stay of this proceeding and further, to terminate the 30-month stay so that it could enter the market as early as possible, on January 1, 2006, upon the expiration of

---

[5]  In view of the stay of this proceeding, the Court never ruled on Teva's motions for summary judgment and to amend its answer and counterclaims.

Barr's 180-day exclusivity period. (D.I. 49). Pursuant to a stipulation between the parties and the order of this Court, the 30-month stay of FDA approval was terminated, while the litigation stay currently in effect remained intact until the resolution of Ferring's Federal Circuit appeal. (D.I. 55-59).

In January 2006, Teva obtained final FDA approval for its generic DDAVP product and entered the market shortly thereafter, in or around February 2006. Thus, the instant litigation did not delay the FDA approval or launch of Teva's DDAVP tablets.

Ferring and Teva further stipulated that the stay of this proceeding would remain in effect until the resolution of Ferring's petition for rehearing with the Federal Circuit. (D.I. 60). Upon the denial of Ferring's petition on April 12, 2006, Teva offered to dismiss the case (including its counterclaims) with prejudice if Ferring agreed to pay Teva's attorneys' fees. (*See* Dec. Ex. 11, April 24, 2006 letter). In response, and in the context of Fed. R. Evid. 408 discussions, Ferring offered to dismiss the complaint with prejudice, with the understanding that Teva would withdraw its application for attorneys' fees. (*See* Dec. Ex. 12, ). The parties did not reach an agreement on these issues. Teva also refused to stay proceedings pending the resolution of Ferring's petition for certiorari—despite the fact that Barr has agreed to stay its attorneys' fees claim. (*See* D.I. 64 at 3; *see also* Dec. Ex. 13, Stipulated Stay in *Ferring v. Barr*).

## III.    FACTUAL BACKGROUND

### A.    THE '398 PATENT AND FILE HISTORY

The '398 patent is directed to an orally ingestible dosage form of desmopressin acetate (DDAVP) and a method for relieving the malady of grossly excessive water elimination, *i.e.*, diabetes insipidus. (Dec. Ex. 14). Prior to the invention, DDAVP was available only by injection or intranasal and sublingual administration as it was

understood by those of ordinary skill in the art that peptides such as DDAVP, when taken orally, were rendered ineffective by enzymes in the gastro-intestinal tract. (*See Id.* col. 1, lns. 21-40).

On December 17, 1985, Ferring filed the application, which ultimately issued as the '398 patent. The two inventors on the '398 patent application were Dr. Hans Vilhardt, a Danish scientist who was then a research director at Ferring , and Mr. Helmer Hagstam, who was then the technical director at Ferring.

The examiner rejected the claims of the '398 patent application as anticipated by the Zaoral patent, which disclosed "peroral" administration of DDAVP. (*See* Dec. Ex. 15, Office Action of August 20, 1984; *see also* Dec. Ex. 16, Zaoral patent, col. 3, lns. 16-22).[6]

In a 1986 interview with the examiner, applicant Dr. Vilhardt, together with his attorney at the time, urged that Zaoral did not teach oral administration of DDAVP to humans for absorption from the gastrointestinal tract and that "peroral" as used therein meant "buccal" (cheek) or "sublingual" (under tongue) absorption. (*See* Dec. Ex.17, May 28, 1986, Interview Summary). The examiner "suggested" that applicants consider filing declarations in support of patentability. Although not specified in the Interview Summary, applicants subsequently filed a Preliminary Amendment, which states that at the examiner's suggestion, the declarations were to be from "non-inventors." (Dec. Ex.

---

[6] Specifically, the rejection was carried over from a grandparent case (Application Ser. No. 06/613,779), from which the application that matured into the '398 patent was filed as a subsequent Rule 60 continuation application.

18, June 12, 1986, Preliminary Amendment at 7).[7]

Dr. Vilhardt thereafter submitted the declarations of two "non-inventor" scientists, Drs. Czernichow and Miller, along with his own, in support of the proposition that the "peroral" disclosure in Zaoral would not suggest gastrointestinal absorption to a skilled artisan. (*See* Dec. Exs. 19-22). Dr. Czernichow was a world-renowned pediatric endocrinologist and Professor of Pediatrics at the Hospital des Enfants-Malades, Paris. (Dec. Ex. 21). Dr. Miller was the Chief of Geriatric Medicine at the Veterans Administration Medical Center in Syracuse, New York. (Dec. Ex. 22). Both Drs. Miller and Czernichow had published over a hundred scientific papers. (Dec. Exs. 21 and 22).

The declarations and accompanying Amendment notwithstanding, the examiner again rejected the pending claims as anticipated and/or obvious over the cited references. (*See* Dec. Ex. 23, Nov. 13, 1986, Office Action at 2). The examiner also disagreed that the term "peroral" in the Zaoral patent could only mean buccal and sublingual. (*Id.* at 3). The examiner gave no indication that he understood the declarants to be "disinterested."

Applicants filed a Request for Reconsideration, generally making the same arguments and citing to various articles that represented the state of the art at the time of filing the application. (*See* Dec. Ex. 24). In response, the examiner again rejected the claims and added two new arguments. (*See* Dec. Ex. 25, August 13, 1987, Office Action). Although he agreed that the dictionary definition of "peroral" is by mouth, in his view "peroral" included for gastrointestinal absorption and was not limited to

---

[7] Contrary to Teva's representation, there is no "direct" evidence of the examiner's suggestion for "non-inventor" declarations, only the applicant's statements as made in the 1986 Preliminary Amendment. (Teva Brief at p. 3). Also important is that the alleged suggestion for "non-inventor" declarations occurred in 1986—not in 1990 as Teva misrepresents. (*Id.*)

sublingual and buccal administration.  (*Id.* at 2)  The examiner further rejected the claims as obvious on the ground that DDAVP had been shown to be orally effective in rat studies.  (*Id.* at 3).

Ferring appealed to the Board of Patent Appeals & Interferences ("the Board"). (*See* Dec. Ex. 26, Appeal Brief).  The examiner argued that Zaoral inherently anticipated the invention of the '398 patent by its disclosure of "peroral" administration of DDAVP and excipients and further that prior art teachings rendered the claimed invention obvious.  (*Id.*)  Applicants repeated their previous arguments and pointed to the uncontroverted declarations of Drs. Vilhardt, Czernichow and Miller in support of their position.  (*Id.*)

The Board's decision issued on September 21, 1990, reversing the examiner's rejection over Zaoral and noting the bias in the art against oral administration of peptides. (*See* Dec. Ex. 27, Decision p. 6-7).  The Board further held that Zaoral did not teach the method of administration, the solid dosage form, or the amount of DDAVP required to be orally effective either inherently or expressly.  (*Id.*).

The Board, however, entered a <u>new</u> obviousness rejection based on the combination of Zaoral in view of an article published by Vavra.  (*See Id.* at p. 8-9).  The Board returned the prosecution to the examiner in light of this reference.  (*Id.* p. 9).  The Vavra article, published in 1974, presented data that DDAVP placed directly into the stomach of rats at a level 500 times higher than a comparable subcutaneous dose reduced urination.  The issue thus became the significance of the Vavra study.

In 1990, four years after the Interview and in response to the Board's new rejection, applicants filed an Amendment after Appeal, attaching five declarations.  (*See*

Dec. Ex. 28, Nov. 21, 1990, Amendment, with attached declarations). Three of the

declarants - Drs. Czernichow, Miller and Vilhardt - had provided declarations <u>four years</u>

<u>earlier</u>. Two declarants, Drs. Tomaslov Barth and Iain Robinson, provided declarations

for the first time. Each declarant explained why the Vavra article did not teach or suggest

the absorption of DDAVP from the gastrointestinal tract in humans. Dr. Barth was a

Professor at the Academy of Sciences of the Czech Republic in the Department of

Organic Chemistry and Biochemistry, with twenty-five years of experience in the fields

of peptide biochemistry, metabolism, pharmacology and pharmacokinetics. (*Id.*). Dr.

Robinson was a neurophysiologist and expert in neurophysin chemistry and at the time,

served as the head of the Division of Molecular Neuroendocrinology at the National

Institute for Medical Research in London. (*Id.*). Indeed, all of the declarants were highly

credentialed experts in the narrow DDAVP/peptide chemistry subject of the '398 patent.

The '398 patent application was allowed following the filing of applicants'

Amendment and declarations.

    **B.**    **THE *FERRING V. BARR* DECISION**
                **OF INEQUITABLE CONDUCT**

        **1.**    **The District Court's Summary**
                **Judgment Decision**

In July 2002, two years before Teva, Barr filed its ANDA for a generic version of

Ferring's DDAVP® tablets. After due investigation under 21 U.S.C. §355(j), plaintiffs

Ferring B.V. and its exclusive licensee Aventis Pharmaceuticals, Inc. ("Aventis")

initiated suit against Barr on December 13, 2002 in the Southern District of New York,

asserting infringement of the '398 patent, the same patent asserted against Teva here. *See*

*Ferring B.V. and Aventis Pharm., Inc. v. Barr Laboratories, Inc.*, No. 02-Civ-9851

(CLB), 2005 U.S. Dist. LEXIS 3597 (S.D.N.Y. Feb. 7, 2005).

In April-May, 2004, Barr moved for summary judgment of non-infringement and unenforceability due to inequitable conduct. Barr argued that during the prosecution of the '398 patent, inventor/applicant Dr. Vilhardt misled the PTO by submitting supporting declarations without disclosing that three of the declarants, Drs. Czernichow, Barth, and Robinson, had worked for or served as consultants to Ferring in the past. On February 7, 2005, the district court granted Barr's motions for summary judgment of non-infringement and unenforceability of the '398 patent due to inequitable conduct. *Id.* In granting Barr's motion, the district court found that the declarations were per se highly material and inferred an intent to deceive the patent examiner. *Id.* at *27-29. The district court did this all on summary judgment, without hearing from the applicant, Dr. Vilhardt, or other witnesses.

Judgment was entered on February 16, 2005, lifting the 30-month stay of FDA approval of Barr's generic product. Barr has been marketing its generic DDAVP tablets since July 2005.

> **2.    The Federal Circuit Appeal, Judge Newman's Vigorous 21-Page Dissent, And Ferring's Petition for Rehearing**

Ferring and Aventis promptly appealed the district court decision to the Federal Circuit. (*See* Dec. Exs. 29 and 30, Ferring's Opening and Reply Appeal Briefs). On March 2, 2005, Ferring and Barr stipulated to postpone motion practice for costs and attorneys' fees until after appeal.

On February 15, 2006, the Federal Circuit affirmed the district court decision of summary judgment in *Ferring v. Barr*, with Judge Pauline Newman writing a 21-page

Dissent. (*See* Dec. Ex. 1, Federal Circuit Slip Opinion in *Ferring v. Barr*, reported at 437 F.3d 1181 (Fed. Cir. 2006)). In what has become a highly controversial decision, the Majority found the non-disclosure of the declarants' prior contacts with Ferring to be highly material as a matter of law, thus establishing an unprecedented per se rule of materiality. (*See* Dec. Ex. 1, Maj. at 12-13; *see also* Dec. Exs. 3-9, collection of publications concerning *Ferring v. Barr* decision). Moreover, despite the absence of evidence of intent to deceive the PTO, the Majority upheld the finding of intent on the ground that the applicant should have known of the materiality of the information and failed to provide a credible explanation for the withholding. (Dec. Ex. 1, Maj. at 17, 19) (emphasis added). Finally, despite the fact that Barr had adduced no evidence of intent, the Majority held that to create a genuine issue of material fact, Ferring bore the burden of submitting an affidavit to explain the non-disclosure. (*Id.* at 19).

In her Dissent, Judge Newman criticized the Majority for adopting per se rules of materiality and intent and for upholding a finding of inequitable conduct — on summary judgment and in the absence of any evidence of intent. Judge Newman stated:

> My colleagues on this panel have regressed to that benighted era, rejecting the efforts of *Kingsdown* to bring objectivity to charges of inequitable conduct, instead reviving the culture of attack on inventor rights and attorney reputations based on inference and innuendo.

(*See Id.*, Dissent at 2) (emphasis added). Judge Newman commented:

> Today my colleagues on this panel not only ignore *Kingsdown*[8]
> and restore a casually subjective standard, they also impose a
> <u>positive inference of wrongdoing, replacing the need for evidence
> with a "should have known" standard of materiality, from which
> deceptive intent is inferred, even in the total absence of evidence</u>.

(*Id.* at 4) (emphasis added).  She further stated:

> Thus the panel majority <u>infers material misrepresentation, infers
> malevolent intent, presumes inequitable conduct</u>, and wipes out a
> valuable property right, <u>all on summary judgment</u>, on the theory
> that the inventor "should have known" that something might be
> deemed material.

(*Id.* at 4) (emphasis added).

Judge Newman in fact accused the Majority of mischaracterizing the "affiliations"

of the declarants with Ferring, stating:

> The finding of the panel majority that all of the affiants had
> "intimate ties" with the patentee is a <u>mischaracterization</u>, and the
> inference that their scientific opinions may be biased and were
> submitted with deceptive intent is a <u>travesty</u>."

(*Id.* at 7-8) (emphasis added).

With regard to the Majority's requirement that Dr. Vilhardt should have submitted

an affidavit, Judge Newman observed, "Setting aside the fact that the movant [Barr] did

not put forward any evidence of intent, there is no requirement in law that the non-

movant submit an affidavit in opposing summary judgment."  (*Id.* at 19-20).  She further

criticized the Majority for improperly drawing adverse inferences against the non-moving

party.  (*Id.* at 19).

---

[8] As explained by Judge Newman, the adoption of a "should have known" standard directly
contradicts the *Kingsdown en banc* decision, which held that negligence alone cannot support a
finding of inequitable conduct—a deliberate decision to withhold information known to be
material must be shown.  (*Id.* at 2-4, discussing *Kingsdown Med. Consultants Ltd. v. Hollister,
Inc.,* 863 F.2d 867 (Fed. Cir. 1988) (*en banc* in relevant part)).

On March 1, 2006, Ferring and Aventis filed petitions for rehearing and rehearing *en banc* with the Federal Circuit. (*See* Dec. Ex. 31, Ferring's Petition for Rehearing). Although the petitions were denied, three Federal Circuit Judges (Newman, Lourie and Gajarsa) would have reheard the appeal *en banc*. (*See* Dec. Ex. 2). The Federal Circuit mandate issued on April 19, 2006. In early September, Ferring and Aventis will file petitions for writ of certiorari to the United States Supreme Court. As mentioned, Barr has agreed to stay its attorneys' fee claim pending resolution of the Supreme Court petition.

IV.   **ARGUMENT**

   A.   **This Case Should be Stayed Pending Resolution of the Supreme Court Certiorari Petition in *Ferring v. Barr***

The decision of whether to stay this case is firmly within the discretion of this Court. *See Landis v. North Am. Co*., 299 U.S. 248, 254-55 (1936); *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In determining whether to grant a stay, a court is to consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, (2) whether a stay will simplify the issues in question and trial of the case and (3) whether discovery is complete and whether a trial date has been set. *Levy v. Sterling Holding Co*., No. 00-994 (GMS), 2004 US Dist. Lexis 19180, *4-5 (D. Del. Sept. 27, 2004); *Alloc, Inc. v. Unilin Decor N.V.*, No. 03-253 (GMS), 2003 U.S. Dist. LEXIS 11917, *5 (D. Del. July 11, 2003); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

These factors clearly favor a stay of this case pending resolution of the Supreme Court petition. A stay will not prejudice Teva in any way because Teva's generic

DDAVP product is already on the market.  With or without a stay, Teva's position

remains the same.  It is Ferring's rights that stand to be affected if a stay is denied.

Absent a stay, Ferring will be prejudiced in the event that the Supreme Court reverses or

remands to the Federal Circuit in *Ferring v. Barr*.  Indeed, even Barr has agreed to stay

its attorneys' fee claim pending the certiorari petition.

Nor will the stay result in a tactical advantage to either party.  The stay will be

limited in duration pending Supreme Court review and will simplify the issues before this

Court to the benefit of both parties.  *Levy*, 2004 U.S. Dist. LEXIS 19180 at *10 (staying

action pending consideration of amendments by SEC so as to streamline issues and avoid

potentially inconsistent adjudications); *see also Alloc, Inc.*, 2003 U.S. Dist. LEXIS 11917

at *7-9; *Micron Tech., Inc. v. Rambus Inc.*, 189 F. Supp. 2d 201, 213 (D. Del. 2002);

*Yamaha Int'l Corp. v. Central Venture, Inc.*, No. 90 Civ. 9495, 1991 U.S. Dist. LEXIS

334 at * 6-7 (S.D.N.Y. Jan. 14, 1991) (granting stay pending appeal).

Should certiorari be denied or the Supreme Court affirm the Federal Circuit's

decision, Ferring will dismiss its complaint with prejudice.  In the event of a reversal or

remand, a stay would preserve Ferring's right to pursue its infringement and damages

claim for Teva's current sales.  Finally, as to the last factor, because very little discovery

has taken place in this proceeding, there is no concern that a stay will disrupt trial

preparation or result in a waste of resources.

**B.      As an Alternative to Stay, Dismissal Without
         Prejudice Pursuant to Fed. R. Civ. P. 41(a)(2) is Proper**

In the alternative, dismissal without prejudice is appropriate.  Fed. R. Civ. P.

41(a)(2).  Indeed, it is within this Court's discretion to dismiss Ferring's complaint for

patent infringement without prejudice.  *Benitec Austl. Ltd. v. Nucleonics, Inc.*, No. 04-

0174 (JJF), 2005 U.S. Dist. LEXIS 22008 at *3-4 (D. Del. Sept. 29, 2005).  A motion for

voluntary dismissal without prejudice should be granted unless the defendant will suffer

substantial prejudice, other than merely the prospect of a second lawsuit.  *Id.; see also*

*Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers of America,* 194 F.2d

770, 771 (3d. Cir. 1952); *DuToit v. Strategic Minerals Corp.,* 136 F.R.D. 82, 85 (D. Del.

1991).

Dismissal without prejudice would not result in any prejudice to Teva, yet would

preserve Ferring's rights in the event of a reversal or remand in *Ferring v. Barr*.  The

parties will know soon whether the decision that the '398 patent is unenforceable stands,

in which case Ferring's complaint should be dismissed with prejudice.  This is not a

situation in which a dismissal without prejudice will unfairly leave the other party open to

the threat of infringement claims indefinitely in the future.  *See Benitec Austl. Ltd.,* 2005

U.S. Dist. LEXIS 22008 at *5-10 (district court dismissed without prejudice despite

defendant's arguments that a reasonable apprehension of suit still existed and that

dismissal without prejudice would taint its current and future business practices with the threat of a lawsuit).[9]

### C.    Teva Is Not Entitled to Attorneys' Fees

#### 1.    The Legal Standard for Awarding Attorneys' Fees Under 35 U.S.C. § 285

Under 35 U.S.C. § 285, a court may award reasonable attorneys' fees to the prevailing party in patent litigation in "exceptional cases."  A court must apply a two-part process in determining whether to award attorneys' fees.  *J.P. Stevens v. Lex Tex*, 822 F.2d 1047, 1050 (Fed. Cir. 1987).  First, the court must determine whether the prevailing party has established by clear and convincing evidence that the case is "exceptional."  *Id.* If the case is deemed exceptional, the second step requires the court to determine, in its discretion, whether an award of attorneys' fees is appropriate given the circumstances. *Id.*  Even an "exceptional" case does not require an award of attorneys' fees in all circumstances.  *Id.*

Furthermore, simply because there was a finding of inequitable conduct before the Patent and Trademark Office ("PTO") does not mean that the case is exceptional or that an award of attorneys' fees is appropriate.  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) (affirming denial of attorneys' fees despite district court's finding of inequitable conduct).

Courts frequently <u>deny</u> an award of attorneys' fees despite a finding of inequitable conduct.  *See, e.g.*, *id.*; *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*,

---

[9]  In view of the *Ferring v. Barr* decision holding Ferring's '398 patent unenforceable, Teva's counterclaims for invalidity, unenforceability and non-infringement should also be dismissed for lack of subject matter jurisdiction.  *Benitec Austl. Ltd.,* 2005 U.S. Dist. LEXIS 22008 at *8.

292 F.3d 1363, 1377-78 (Fed. Cir. 2002) (holding that district court considered the

finding of inequitable conduct as part of its analysis, but properly denied attorneys' fees);

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* No. 92-1372, 92-1402, 1993 U.S.

App. LEXIS 22042 at *15 (Fed. Cir. Aug. 31, 1993) (affirming district court's denial of

attorneys' fees and refusal to find case exceptional and stating, "[i]nequitable conduct

before the PTO does not necessarily warrant the award of attorney fees."); *Consolidated*

*Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814-15 (Fed. Cir. 1990) (stating that

"inequitable conduct alone need not compel a finding that the case is exceptional" and

affirming denial of attorneys' fees); *J.P. Stevens*, 822 F.2d at 1052-53 (Fed. Cir. 1987)

(affirming district court's denial of attorneys' fees despite finding of inequitable

conduct); *eSpeed, Inc. v. Brokertec, USA, L.L.C.*, 417 F. Supp. 2d 580, 601 (D. Del.

2006) (despite a finding of inequitable conduct, the court denied attorneys' fees largely

due to the closeness of the case); *National Diamond Syndicate, Inc. v. Flanders Diamond*

*USA, Inc.,* No. 00 C 6402, 2003 U.S. Dist. LEXIS 12083, *19-21 (N.D. Ill. July 14,

2003) (despite finding of inequitable conduct, court held that case was not exceptional

and denied attorneys' fees, stating, " . . . not every case of inequitable conduct is an

exceptional case within the meaning of 35 U.S.C. § 285.").

     Factors considered by the court in determining whether attorneys' fees are

appropriate include the closeness of the case, the conduct of the parties, the degree of

culpability and the tactics of counsel. *J.P. Stevens Co.,* 822 F.2d at 1051; *see also*

*Superior Fireplace Co. v. Majestic Prods. Co.,* 270 F.3d 1358, 1378 (Fed. Cir. 2001);

*eSpeed, Inc.*, 417 F. Supp. 2d at 600 (closeness of case militated against attorneys' fees).

An award of attorneys' fees based on a finding that the case is exceptional is an extraordinary remedy and an exception to the well-established "American Rule," which requires each party to bear its own attorneys' fees and expenses. *Forest Labs. Inc. v. Abbott Labs.,* 339 F.3d 1324, 1329 (Fed. Cir. 2003). Teva bears the burden of showing that a failure to award attorneys' fees would result in a "gross injustice." *See J.P. Stevens Co.,* 822 F.2d at 1052.[10]

Whether a case is exceptional is a question of fact that is reviewed for clear error. *Superior Fireplace,* 270 F.3d at 1376; *see also Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed. Cir. 1998). The further determination of whether attorneys' fees are appropriate lies within the discretion of the court and is, therefore, reviewed for an abuse of discretion. *Superior Fireplace,* 270 F.3d at 1376. To ensure meaningful appellate review in cases where a case is found to be exceptional, the trial court must explain the reasons for its finding. *Id.* at 1377.

### 2. This is Not an "Exceptional" Case

Although the conduct in *Ferring v. Barr* was found to satisfy the standard for inequitable conduct, the conduct "falls short of the level of culpability necessary for a finding of exceptional circumstances which would support an award of attorneys' fees."

---

[10] Regarding 35 U.S.C. § 285, the court in *J.P. Stevens* noted that "the statute does not contemplate that a prevailing alleged infringer should be treated as a 'private attorney general' for invalidating a 'fraudulent' patent. Rather, its purpose is to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *Id.* at 1052 (footnote omitted) (emphasis in original).

*See National Diamond,* 2003 U.S. Dist. LEXIS 12083 at *20[11].  The requirements for

proving a case exceptional are "more stringent" than that required to prove inequitable

conduct.  *Id.* at *19 (*quoting Halliburton Co. v. Schlumberger Tech. Corp.*, 722 F. Supp.

1433, 1434 (S.D. Tex. 1989));[12] *see also C.R. Bard, Inc.,* 1993 U.S. App. LEXIS 22042

at *15 ("[T]his Court concludes that the Defendants' conduct, although it satisfies the

standard for inequitable conduct, falls short of the level of culpability necessary for

finding exceptional circumstances which would support an award of attorney's fees.").

     The circumstances surrounding the inequitable conduct and the low level of

culpability on the part of Dr. Vilhardt are important factors to be considered by this Court

in determining whether this case is exceptional.  *See Gardco Mfg.,* 820 F.2d at 1215[13].

The *Ferring v. Barr* finding of inequitable conduct was <u>not</u> based on evidence that Dr.

Vilhardt deliberately misled the PTO by not disclosing information about the declarants

or even that he knew that the undisclosed information was material.  Rather, the Federal

---

[11] In *National Diamond,* the district court properly refused to find the case exceptional and
although finding inequitable conduct, noted that "direct evidence to deceive the PTO is limited."
*Id.* at 15.  The court stated, "After thorough consideration of the evidence in this case, including
an evaluation of the credibility of the witnesses who testified at trial, this Court concludes that the
Defendants' conduct, although it satisfies the standard for inequitable conduct, falls short of the
level of culpability necessary for a finding of exceptional circumstances that which would support
an award of attorney's fees."  *Id.* at 20.

[12] Also an important factor is the fact that the *Ferring v. Barr* decision was issued by another
court <u>and</u> on summary judgment.  Therefore, this Court had no opportunity to assess the
credibility of witnesses or thoroughly consider the evidence.  *Id.* at 20.  On this basis as well,
attorneys' fees should be denied.

[13] In *Gardco*, the district found inequitable conduct based on gross negligence, yet because there
was no evidence of bad faith or an intent to mislead the PTO, attorneys' fees were not awarded.
*Id.* at 20-21.  Notably, *Gardco* was decided before *Kingsdown*, which held that negligence is
insufficient to support a finding of inequitable conduct.  Either way, attorneys' fees are
inappropriate when the culpability is based on a "should have known" or negligence standard as
was applied in *Ferring v. Barr*.

Circuit applied a negligence standard and inferred intent based on the conclusion that Dr. Vilhardt <u>should have known</u> that the omitted information was material. (*See* Dec. Ex. 1, Maj. Op. at 17, 19) (emphasis added).[14]

As Judge Newman stated in her Dissent, "[t]here is <u>simply no evidence</u> of any intention to withhold these relationships" and "<u>no evidence</u> that Dr. Vilhardt even thought about whether or not to disclose these affiliations, much less that he made the deliberate decision to withhold material information from the PTO." (*See Id.*, Dissent at p. 8)(emphasis added).[15] Despite the Majority's conclusion that the affiliations were highly material, the evidence remains: as per the record before the district court, <u>none</u> of the declarants had any financial interest in Ferring or stood to gain financially or otherwise by the issuance of the patent;[16] <u>none</u> received any remuneration for their declarations; and <u>none</u> were affiliated with Ferring at the time of their declarations.[17] (*See* Dec. Ex. 1, Dissent at 5-7).

---

[14] Despite the absence of evidence on this point, the Majority held that the Examiner's request for "non-inventor" declarations was, in effect, a request for individuals with no affiliations (past or present) to Ferring or inventor Dr. Vilhardt. (*See* Dec. Ex. 1, Maj. at 15).

[15] Judge Newman also emphasized that: "Heretofore, no case has found inequitable conduct based on omitted information when there was no evidence of intentional omission and not even circumstantial evidence of deceptive intent." (Dec. Ex. 1, Dissent at p. 17).

[16] In *Ferring v. Barr*, both the district court and the Federal Circuit relied upon *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.* to establish materiality per se of the affiliations between the declarants and Ferring. However, as noted by Judge Newman, the facts are very different. (Dec. Ex. 1, Dissent at 9). In *Paragon,* the Examiner specifically requested information from a "disinterested third party," and the applicant failed to disclose the declarant's present stock ownership in assignee's company. 984 F.2d 1182, 1191 (Fed. Cir. 1993).

[17] Also important is that the omitted information here did not bear on the patentability of Ferring's invention. This contrasts to those cases, cited by Teva, in which the patent applicant intentionally withheld material prior art references, *see e.g., Evident Corp. v. Church & Dwight Co.,* 399 F.3d 1310 (Fed. Cir. 2005), or intentionally withheld information concerning an on-sale bar, *see e.g., Brasseler U.S.A. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380-82 (Fed. Cir. 2001).

3.    **Given the Circumstances of this Case and the Highly Controversial Nature of the *Ferring v. Barr* Decision, Attorneys' Fees are Not Appropriate**

Even assuming that this Court somehow finds this to be an exceptional case, an award of attorneys' fees is inappropriate. The closeness of the case is an important factor to be considered when determining whether the award of attorneys' fees is appropriate. *eSpeed, Inc. v. Brokertec, USA, L.L.C.*, 417 F. Supp. 580, 600 (D. Del. 2006)[18]. It stands to reason that where a decision is close, hard-fought, controversial, divisive and unexpected, as is the *Ferring v. Barr* decision, no party should be punished with an attorneys' fee award. *Id.* at 600 ("[R]equiring each side to bear its own costs and fees is 'a fair allocation of the burdens of litigation as between winner and loser.'") (*quoting S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)).

Judge Newman's lengthy Dissent, as well as the fact that three Federal Circuit Judges (including Judge Newman) favored rehearing Ferring's appeal *en banc*, is evidence enough of how close and truly divisive the *Ferring v. Barr* decision is and why attorneys' fees are inappropriate. Again, Judge Newman stridently criticized the Majority's adoption of per se rules of materiality and intent as a resurrection of the plague of the past and "a travesty." (*See* Dec. Ex. 1, Dissent at 4-5).

Further, more broadly within the patent field, *Ferring v. Barr's* reinstatement of a "should have known" standard of materiality and inferred intent has been the subject of much concern, criticism and debate among patent practitioners. (*See* Dec. Exs. 3-9). The

---

[18]  The Court in *e-Speed* noted that "while I have concluded that Brokertec succeeded in developing evidence sufficient to meet its burden of proof as to inequitable conduct, that does not mean the case was 'open and shut' from the start." *Id.* at 50.

21

decision has been criticized as creating "uncertainty in the law" (Dec. Ex. 3), as a

"detour" (Dec. Ex. 5, p. 5), as establishing a "new duty of candor" (Dec. Ex. 6, p. 6), as a

return to the "Dark Ages" (Dec. Ex. 7) and as a "perverse litigation outcome." (*See* Dec.

Ex. 8, p. 3)[19].

      Importantly, because the *Ferring v. Barr* decision not only contradicts

*Kingsdown,* but also *Purdue Pharm. L.P. v. Endo Pharm., Inc.,*[20] it has been criticized as

having confused — instead of clarified — the standard of intent required for inequitable

conduct. (*See* Dec. Ex. 4, *The Federal Circuit's New Trio of Inequitable Conduct Patent*

*Cases: Clarification or Confusion*, Nixon Peabody LLP, Technology and Intellectual

Property Alert, February 26, 2006)[21].

---

[19] In a letter to the Federal Trade Commission, General Counsel for Eli Lilly & Company noted:
". . . even where a patent is fully valid and has been infringed, perverse litigation outcomes can
have devastating effects on innovation. The recent Federal Circuit decisions in the *Purdue*
*Pharma* and *Ferring* appeals demonstrate that nearly frivolous attacks on strong patents can
disrupt the innovator's expectations for marketing exclusivity that formed the basis for the ability
to invest in developing the innovative medicine in the first place." (*See* Dec. Ex. 8, p. 3)
(emphasis added).

[20] By way of background, in *Purdue Pharma. L.P. v. Endo Pharma. Inc.*, on a motion for
reconsideration, the Federal Circuit changed its position and held that the trial court erred in
finding inequitable conduct. The Federal Circuit reiterated the rule that materiality does not
presume intent and that intent is a separate and essential component of inequitable conduct. 438
F.3d 1123, 1134 (Fed. Cir. Feb. 1, 2006).

[21] As noted within the patent field, in *Purdue* and *Ferring,* "different panels of the U.S. Court of
Appeals for the Federal Circuit measured materiality and intent and drew virtually opposite
conclusions. These decisions suggest uncertainty in the law and demonstrate the problems faced
by practitioners when confronted with an allegation of inequitable conduct." (*See* Dec. Ex. 3 at
S2, Michelsohn, Arie M., *Reaching Opposite Findings on Inequitable Conduct,* National Law
Journal, April 10, 2006; *see also* Dec. Ex. 8 ("In the case of *Purdue Pharma*, the Federal Circuit
eventually retracted its original holding, but not before huge damage had been done to the
company itself.")).

### 4.     Teva's Bad Faith Allegations Are Completely Unsupported

In an attempt to bolster its attorneys' fees claim, Teva has fabricated allegations of bad faith on the part of Ferring.  Teva alleges that the "evidence proving Ferring's inequitable conduct" was "well known to Ferring itself" before it sued Teva and that "Ferring was reminded" of its "misconduct" during the *Barr* litigation by virtue of Barr's summary judgment motion.  (*See* Teva Brief at p. 4).  Teva's allegations are completely baseless, and Teva can point to no evidence whatsoever that this litigation was brought in bad faith.  Contrary to Teva's misguided argument, a decision of inequitable conduct, particularly such as the *Ferring v. Barr* decision, is not synonymous with bad faith litigation.  Simply because a party loses—particularly in a close and contested case—does not entitle the other party to attorneys' fees.[22]

Moreover, in view of the divisive nature of the *Ferring v. Barr* decision, as evidenced best by Judge Newman's Dissent, Teva's "bad faith" allegations strain credulity and should be rejected.  Simply put, how could Ferring or its counsel be said to have pursued this litigation in bad faith when the *Ferring v. Barr* decision was: (1) contrary to the Federal Circuit's *en banc* decision in *Kingsdown*, (2) based on newly articulated per se rules of materiality and intent; and (3) wrong in view of at least one member of the Federal Circuit panel.

---

[22] Interestingly, also in the context of a Hatch-Waxman ANDA litigation, in *Glaxo Group Ltd. v. Apotex, Inc.,* the Federal Circuit reversed an award of attorneys' fees that was based on a finding of willful infringement by Apotex, a generic drug company.  376 F.3d 1339, 1350-51 (Fed. Cir. 2004).  The Court held an ANDA applicant's "technical infringement," absent other evidence of misconduct, could not support a finding of willful infringement for purposes of awarding attorneys' fees.  *Id.*  It seems that a patentee should be held to a comparable standard when asserting its patent in good faith against an ANDA applicant.

Again, the duration of this litigation was a mere seven months and upon receiving the *Ferring v. Barr* decision, this matter has been stayed both pursuant to the Court's initial order and to Teva's subsequent stipulation—and all the while, Teva has not been hindered in its ability to market its generic DDAVP product. There is no bad faith, or any other factor, to justify an award of attorneys' fees in this case.

In sum, to use the *Ferring v. Barr* decision as a basis for awarding Teva attorneys' fees, would be, to use Judge Newman's words, "a travesty."

## V.    CONCLUSION

For all of the foregoing reasons, Ferring respectfully requests that this Court grant its motion to stay this proceeding, or, in the alternative, dismiss this action without prejudice. Additionally, Teva's motion for attorneys' fees and costs should be denied.


Date: July 17, 2006                              /s/Francis DiGiovanni
                                                 Francis DiGiovanni (#3189)
                                                 CONNOLLY BOVE LODGE & HUTZ LLP
                                                 The Nemours Building
                                                 1007 North Orange Street
                                                 Wilmington, DE 19899-2207
                                                 (302) 888-6316

                                                 Dennis J. Mondolino
                                                 Christine A. Pepe
                                                 MCDERMOTT, WILL & EMERY LLP
                                                 340 Madison Avenue
                                                 New York, NY 10017
                                                 212-547-5400
                                                 Attorneys for Plaintiff Ferring B.V.

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Francis DiGiovanni hereby certify that on July 17, 2006, I electronically filed Ferring B.V.'S Answering Brief To Teva's Motion To Dismiss Complaint And For An Award Of Its Attorney's Fees And Costs And Brief In Support Of Its Cross-Motion For A Stay Of Proceedings Or, In The Alternative, Rule 41(A)(2) Dismissal Without Prejudice, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following, and I hereby certify that we have served via Hand Delivery a copy of said document to:

> Josy W. Ingersoll, Esq.
> Young Conway Stargatt & Taylor
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899

I hereby certify that I have served via United States First Class Mail, the document to the following non-registered participant:

> William F. Long
> William L. Warren
> Sutherland Asbill & Brennan LLP
> 999 Peachtree Street, NE
> Atlanta, Georgia 30309-3996

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801
> (302) 658-9141
> fdigiovanni@cblh.com
>
> *Attorneys for Plaintiff Ferring B.V.*

476706_1