# Exhibit 5

Case 1:04-cv-00884-SLR   Document 71-6   Filed 07/17/2006   Page 1 of 7



HOME
CONTACT US
SITE MAP
SEARCH:

## publications :: articles

The Inequitable Conduct Plague in U.S. Patent Litigation: Is It Over and is the CAFC Moving Away from An Absolute Liability Standard?
Thomas L. Irving, Adriana L. Burgy, and Stacy D. Lewis
This article was originally published in the second of a series of reports published by BNA International as part of the *IP & Technology Programme*, April 2006
Copyright © Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

Inequitable-conduct allegations are routine in U.S. patent litigation. For almost the last 20 years, "the habit of charging inequitable conduct in almost every major patent case has [been] an absolute plague." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422, 7 U.S.P.Q.2d 1158, 1161 (Fed. Cir. 1988). Defending against such allegations can be time-consuming and expensive. But now, starting with the decision in *Purdue Pharma, L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123 (Fed. Cir. 2006), there seems to be some hope of relief against the "plague". The *Purdue* decision was the first in a series of cases from the Federal Circuit in February and March of 2006 discussing inequitable conduct. In fact, *Purdue* and its progeny appear to offer a path towards "healthy" living; a path leading away from an absolute liability standard by which mistakes in prosecution have been judged in recent years, and at long last towards reasonability, more properly taking into account the complexities of patent preparation and prosecution.

**Background**
In the 70s and 80s, the standard for inequitable conduct was gross negligence. See, *e.g.*, *Norton v. Curtiss*, 57 C.C.P.A. 1384, 433 F.2d 779 (C.C.P.A. 1970);[1] *In re Jerabek*, 789 F.2d 886, 229 U.S.P.Q. 530 (Fed. Cir. 1986).[2] Then came the decision in *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 9 U.S.P.Q.2d 1384 (Fed. Cir. 1988), where the court stated that "'gross negligence' does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Id.* at 876, 9 U.S.P.Q.2d at 1392.

In the early 2000s, decisions issued from the Federal Circuit where the bar for inequitable conduct seemed to be set so low that many a patentee tripped over it based on what seemed to be nothing more than mistakes or oversight divorced from any intent to deceive. In other words, it seemed that an absolute liability standard for inequitable conduct was improperly being imposed. Even proof of good faith seemed insufficient to clear the bar if one uninformed in patent realities concluded with the benefit of hindsight that a patent agent or inventor "should have known" something.

For example, in *Bristol-Myers Squibb Co. v. Rhône-Poulenc Rorer, Inc.*, 326 F.3d 1226, 66 U.S.P.Q.2d 1481 (Fed. Cir. 2003), the Federal Circuit upheld a determination of inequitable conduct when a foreign patent agent failed to alert U.S. counsel to the existence of an article written by the inventors.

> "[W]here withheld information is material and the patentee knew or should have know [sic] of that materiality, he or she can expect to have great difficulty in establishing subjective good faith sufficient to overcome an inference of intent to mislead." 326 F.3d 1226, 1229, 66 U.S.P.Q.2d 1481, 1490 (citation omitted). And further in *Hoffmann-LaRoche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367, 66 U.S.P.Q.2d 1365, 1394

(Fed. Cir. 2003), "[T]he district court's finding that the inventors had a good faith belief in the novelty of their invention is not incompatible with a finding of deceptive intent."

### Signals of Change
### A. Purdue

The recent decisions from the Federal Circuit signal that the bar for inequitable conduct may have finally and properly been raised. For example, in *Purdue*, although the Federal Circuit affirmed the materiality finding of the district court, the Court vacated the inequitable-conduct ruling. 438 F.3d at 1126. It concluded that the level of materiality was not especially high where the omission of information did not lead to an express misrepresentation. *Id.* at 1133. The Federal Circuit then vacated the finding of intent because, *inter alia*, the district court failed to properly consider the level of materiality, and remanded the case. *Id.* at 1133-35. In doing so, the Court suggested that the evidence of intent was insufficient to establish inequitable conduct.[3] *Id.* at 1135. In particular, the Court noted that in cases where the materiality of omitted information was low, as the Court found it to be in this case, there is less basis for inferring intent from materiality alone. *Id.*

What makes this case interesting, and perhaps hints at a shift away from an absolute liability standard, is that the Court said, "This omission of information was material, but not as material as an affirmative misrepresentation would have been." *Id.* at 1133. In other words, had the Court found that Purdue expressly misrepresented the test results it obtained, it would likely have been highly material. *Id.* But, since what Purdue did was more properly characterized as "implying that an empirical basis existed for its discovery and then failing to disclose that the discovery was based only on insight[,]" there was only low materiality. *Id.* at 1134-35. To support this assertion, the Federal Circuit cited *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1367 (Fed. Cir. 2003), for the principle that affirmative misrepresentations are more likely than misleading omissions to be regarded as material. *Id.* at 1133.[4]

### B. Digital Control

A week after *Purdue* the Federal Circuit decided *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006). *Digital Control* involved alleged affirmative misstatements in an inventor declaration submitted to the PTO in support of patentability. 437 F.3d at 1316-22. The district court granted summary judgment of inequitable conduct. *Id.* at 1311. The Federal Circuit agreed that the affirmative misstatements were material, and there was evidence of an intent to deceive with respect to the declaration, but the district court's decision also discussed a failure to disclose a prior-art patent. *Id.* at 1316-22. The Federal Circuit found that genuine issues of material fact remained as to what the prior-art reference taught, and consequently whether the failure to disclose it was a material omission. *Id.* at 1319. In reversing and remanding the case, the Court said:

> "[W]e are unable to tell how heavily the district court's finding of inequitable conduct relied on its proper grant of summary judgment on the materiality of the misstatements in the Rule 131 declaration and how heavily it relied on its improper grant of summary judgment on the materiality of the failure to disclose the [prior art] patent." *Id.* at 1321.

### C. Ferring

A week after *Digital Control*, the Federal Circuit decided *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006), and appeared to swerve off the path leading toward a reasonability standard for inequitable conduct. In *Ferring*, the Federal Circuit affirmed the district court's grant of summary judgment on the issue of inequitable conduct, where the patentee submitted noninventor affidavits supporting patentability at the request of the examiner. 437 F.3d at 1183. The patentee, however, did not disclose that four out of the five declarations submitted were written by scientists having a connection to the assignee. *Id.* at 1185.

Regarding the materiality prong, the Court agreed with the district court that "the declarations

themselves were 'highly material'." *Id.* at 1188 (citation omitted). In addition, the Court concluded that the connection between the patentee and declarants was significant, *i.e.*, "[t]hese relationships were not isolated, nor were they confined to the distant past." *Id.* at 1189. Accordingly, the Court determined not only that the declarations met the threshold level of materiality, but also that "the record established that the undisclosed information at least in the aggregate was highly material as a matter of law." *Id.* at 1190.

Examining the intent prong, the Court referred to the three conditions identified in *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d, 1182, 25 U.S.P.Q.2d 1561 (Fed. Cir. 1993). In particular, the Court noted that summary judgment is appropriate where the patentee fails to disclose highly material information and the record establishes that:

> "(1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding." Id. at 1191.

Notwithstanding that the declarants were not inventors, the Court, finding evidence in the record to support all three conditions, affirmed the district court's grant of summary judgment on the issues of intent. *Id.* at 1194.

As a practical matter, *Ferring* seems to suggest, improperly in our view, that any noninventor declaration must always disclose any and all connections with the inventor/assignee. That, however, begs the question as to when would there not be a connection between a noninventor declarant and an inventor/assignee? For instance, it is highly unlikely that the third party (acting as a consultant to prepare such a declaration) would spend the time necessary to become acquainted with the issue(s) without some kind of compensation. Would the amount and/or form of compensation have to be disclosed? If so, could one then infer a favorable declaration based on the level of compensation?

The *Ferring* decision seems to perpetuate an absolute liability standard, completely detached from the realities, complexities, and practicalities of presenting evidence to the United States Patent and Trademark Office. As Judge Newman aptly puts it in her dissent, the majority's decision appears to have:

> "regressed to that benighted era, rejecting the efforts of *Kingsdown* to bring objectivity to charges of inequitable conduct, instead reviving the culture of attack on inventor rights and attorney reputations based on inference and innuendo."

One can only hope that if not overruled or otherwise discarded, *Ferring* will be limited to the particular facts of the case. Such hope may be reasonable, based on the following statements in the majority's conclusion:

> Accordingly, when an inventor is asked to provide supportive declarations to the PTO, it may be completely natural for the inventor to recommend, and even contact, his own colleagues or people who are, or who have been, affiliated with his employer and to submit declarations from such people. Nothing in this opinion should be read as discouraging such practice. Rather, at least where the objectivity of the declaration is an issue in the prosecution, the inventor must disclose the known relationships and affiliations of the declarants so that those interests can be considered in weighing the declarations. *Id.* at 1194-95 (emphases added).

### D. Eagles Tool
In *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.,* __F.3d__, Nos. 05-1224, -1228, at 11 (Fed. Cir. Feb. 27, 2006), the Court considered "whether a lack of a good faith explanation for a nondisclosure of prior art, when nondisclosure is the only evidence of intent, is sufficient

to constitute clear and convincing evidence to support an inference of intent." In answering this question, the Federal Circuit held that:

> "[W]hen the absence of a good faith explanation is the only evidence of intent,...that evidence alone does not constitute clear and convincing evidence warranting an inference of intent." *Id.* at 12 (emphasis added).

In *Eagles Tool*, the district court granted summary judgment of inequitable conduct where the patentee failed to disclose the patentee's own model grinder as prior art. *Id.* at 5. According to the district court, the patentee's model grinder contained some of those limitations recited in the claims and thus, was material. *Id.* at 6. Intent was inferred because the patentees were on notice that the examiner could not find prior art that disclosed all the limitations of the claims and since patentee's own model grinder possessed some of the elements, they must have known of the model's relevance. *Id.* In addition, patentees failed to offer a good-faith explanation for the omission. *Id.*

Reversing the grant of summary judgment on inequitable conduct, the Federal Circuit properly determined there was insufficient evidence to support intent. *Id.* at 12. According to the Court, the allowed claims contained many features absent in the patentee's model grinder. *Id.* at 13, 14. The Court distinguished *Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 73 U.S.P.Q.2d 1593 (Fed. Cir. 2005), where the Court held that "a lack of good faith explanation of a non-disclosure can be evidence of intent to deceive." *Id.* at 15. In *Bruno*, the standard of review was different than here, *i.e.*, the Court reviewed the district court's determination of intent for clear error *rather than a de novo* review of summary judgment. *Id.* *Bruno* also contained additional evidence in which one could infer intent. *Id.* Interestingly, in *Eagles Tool*, the Federal Circuit concluded the intent discussion by quoting *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939, 15 U.S.P.Q.2d 1321, 1327 (Fed. Cir. 1990), for the proposition that "'[i]ntent to deceive should be determined in light of the realties of patent practice, and not as a matter of strict liability whatever the nature of the action before the PTO." *Id.* at 16. Ironically, *Northern Telecom* is not cited in the majority opinion in *Ferring* but is cited in Newman's persuasive dissent.

### E. Kao

In *Kao Corp. v. Unilever U.S., Inc.*, Nos. 05-1038, -1049 (Fed. Cir. March 21, 2006), Unilever alleged, *inter alia*, inequitable conduct based on Kao's selective presentation of results in a declaration submitted to overcome a *prima facie* case of obviousness during prosecution. Nos. 05-1038, -1059, slip op. at 12. Kao's declaration described experiments indicating that the invention exhibited "unexpected results." *Id.* at 13. According to the record, the declaration reported only the most positive data available. *Id.* The record also showed that the declaration failed to report the error margins of the tests. *Id.* Despite these discrepancies being material, the district court and the Federal Circuit determined that there was no intent to deceive. *Id.* Citing to *Purdue Pharma*, the Federal Circuit, following a path of reason, reaffirmed that "intent to deceive 'cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.'" *Id.* at 14 (*Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1134 (Fed. Cir. 2006)).

The Court noted that there was evidence from which to draw the conclusion that Kao acted with the intent to deceive; in particular, "the rather glaring failure of the inventors to offer any rationale for the omission." *Id.* at pages 14, 15. This, however, seems to be mitigated by the eventual submission of the omitted data during subsequent prosecution, as the trial court placed great weight on this fact. *Id.* at 15. Nevertheless, the Court was reluctant to question the judgment of the trial court and instead, affirmed the district court's judgment as to inequitable conduct. *Id.*

### F. Atofina

In *Atofina v. Great Lakes Chem. Corp.*, No. 05-1359 (Fed. Cir. March 23, 2006), the Federal

Circuit, *inter alia*, reversed a district court's finding of inequitable conduct. No. 05-1359, slip op. at 1, 2. According to the district court, Atofina failed to submit a fully translated Japanese reference that was material and was in Atofina's possession. *Id*. at 4, 5. Furthermore, Atofina misrepresented teachings of the reference. *Id*. at 5.

The Federal Circuit found the district court wrongly inferred intent from Atonfia's failure to disclose the full English translation of the reference and from Atofina's alleged mischaracterizations of the reference. *Id*. According to the Court, the failure to disclose is not enough to infer intent; there also must be a factual basis to find intent. *Id*. The Court cites *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1378 (Fed. Cir. 2000), for the proposition that "the duty at issue in this case is the duty of candor, *not the duty of translation*." *Id*. (emphasis added). The Court further found that the alleged mischaracterizations were not mischaracterizations, but instead, were fully supported by the reference. *Id*. at 18-21. There was no discrepancy between the summary information that Atofina disclosed to the Patent Office and the undisclosed full English translation of the reference. *Id*. Thus, the Federal Circuit held that the district court's inequitable conduct determination was an abuse of discretion and reversed without remanding. *Id*.

**Conclusion**

Starting with *Purdue* in February of 2006, the Federal Circuit has at least begun marking off a road that heads in the direction of "healthy" living. Although that road is not yet entirely free of detours (as seen in the *Ferring* decision), the Federal Circuit's decisions in *Kao* and *Atofina* signal that absolute liability for inequitable conduct, and the "plague" of inequitable conduct allegations it brings with it, is at least hopefully and properly fading into the past. In its place, a healthy, reasonability standard emerges. To be sure, express misrepresentations made with deceptive intent, *i.e.*, knowledge of the express misrepresentation and its deceptive effect at the time the misrepresentation is made, cannot be condoned. But, those situations are far removed from the much more common situation where mistakes are made and there is no clear and convincing evidence that even if those mistakes constituted express misrepresentations, they were made with intent to deceive rather than through mistake or oversight.

***Endnotes***

[1] "Under ordinary circumstances, the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent. Where public policy demands a complete and accurate disclosure it may suffice to show nothing more than that the misrepresentations were made in an atmosphere of gross negligence as to their truth. The Commissioner and the board, by apparently giving controlling effect on this point to Curtiss's subjective belief that his invention was superior narrowed the requirement almost to that of proving actual intent. This was error." *Id*. at 1406, 433 F.2d at 795-96.

[2] "[W]e must conclude that 'inequitable conduct' occurred through the gross negligence of appellants' counsel in failing to disclose to the PTO a very significant reference." *Id*. at 892, 229 U.S.P.Q. at 534.

[3] "[W]e...remand the case to give the trial court an opportunity to reconsider its intent finding. In doing so, the trial court should *rethink the relevance of the evidence* relating to whether Purdue could prove that OxyContin® was the most easily titratable analgesic. If the trial court still finds that a threshold level of intent to deceive has been established, the court should *reweigh its materiality and intent findings* to determine whether the sanction of unenforceability due to inequitable conduct is warranted. In making this determination, the trial court should keep in mind that when the *level of materiality is relatively low, the showing of intent must be proportionately higher*." *Id*. at 1135 (emphases added).

[4] Of course, even an express misrepresentation, if based on a mistake or oversight, rather than intent to deceive, should not result in a finding of inequitable conduct.

*Copyright © Finnegan, Henderson, Farabow, Garrett & Dunner, LLP. This article is for informational purposes and is not intended to constitute legal advice. This memorandum may be considered advertising under applicable state laws.*

about us | practice | professionals | offices | clients | news | publications | events | careers

©2003 Finnegan, Henderson, Farabow, Garrett & Dunner, LLP    Disclaimer    Privacy