# Exhibit 9

Case 1:04-cv-00884-SLR   Document 71-10   Filed 07/17/2006   Page 1 of 7

**W**hen can you lose a case even if your patent is clearly infringed and absolutely valid? When the court declares the patent unenforceable due to inequitable conduct. Years after a patent issues, an applicant's lack of candor before the Patent and Trademark Office can doom a valuable piece of intellectual property.

A recent decision by the U.S. Court of Appeals for the Federal Circuit provides a sharp reminder of the risks of inequitable conduct and the importance of answering the PTO's requests in the spirit in which they were asked.

Patent applicants bear a duty of "candor, good faith, and honesty" before the PTO (to quote *Molins PLC v. Textron Inc.*, a 1995 Federal Circuit decision). Those who bear this duty include the named inventor, a corporate assignee, and the lawyer who prosecutes the patent. The duty can be breached by commission or omission: A patent applicant not only must be accurate in affirmative representations, but also must not fail to disclose material information.

Where the applicant's acts are sufficiently culpable, breaching the duty of candor may render a patent entirely unenforceable. To demonstrate such inequitable conduct where the breach concerns undisclosed information, the information must be material and the applicant must have the requisite intent to mislead the PTO. In general, materiality and intent are weighed in light of all the surrounding circumstances.

But in *Ferring B.V. v. Barr Laboratories Inc.*, the Federal Circuit on Feb. 15 held that a patent can be rendered unenforceable based upon an applicant's failure to disclose information even if the patentee *did not know* that the information was material.

After *Ferring*, inventors, attorneys, and anyone conducting due diligence on a patent portfolio should increase their vigilance beyond the usual files.





# You've Been Warned



By Arthur A. Wellman Jr.

Or start practicing their explanations to the CEO as to why valuable property is suddenly not so valuable.

### SEEKING TO OVERCOME

At issue in the Ferring case was Patent No. 5,407,398, claiming an anti-diuretic compound and a method of administering that compound. During patent prosecution, which began in 1985, Ferring sought to distinguish the '398 patent from an earlier patent related to a different medication, Zaoral. As framed by the PTO examiner, the primary issue was whether the Zaoral patent claimed peroral application (i.e., by mouth) for gastrointestinal absorption such that it would render the

claims of the '398 patent anticipated or obvious. The examiner stated that the earlier patent did qualify as prior art and rejected the claims on that basis.

In an attempt to overcome the rejections, Ferring first argued that the Zaoral patent failed to teach peroral application. Noting that Ferring was, at the time, the exclusive licensee of the now-expired Zaoral patent, the examiner suggested that Ferring obtain evidence "from a *non-inventor*" to support its interpretation of the term "peroral."

Ferring submitted four affidavits: two from the named inventor Hans Vilhardt, one from Dr. Myron Miller, and one from Dr. Paul Czernichow. The affidavits backed Ferring's interpretation, but Ferring failed to disclose that Czernichow had received research funding from the company.

The examiner still rejected the claims, stating in part that it was "obviously expeditious" for the applicants themselves to argue such an interpretation. That basis for rejection was overturned by the Board of Patent Appeals and Interferences. But the board also held that the claims could be properly rejected as obvious based upon a combination of the Zaoral patent and a 1973 article written by Ivan Vavra.

In attempting to overcome the new rejection, Ferring submitted five more affidavits: three from Vilhardt, Miller, and Czernichow, and two from Drs. Iain Robinson and Tomislav Barth. The affidavits stated that the Vavra reference did not suggest gastrointestinal absorption. Once again, Czernichow's research-funding relationship with Ferring was not disclosed. The affidavits also failed to disclose that both of the new affiants had a relationship with Ferring. Robinson had been the company's preclinical research director while Ferring was funding the research at issue, and he later served as a paid consultant. Barth had worked on several projects funded by Ferring and had also worked on projects with Vilhardt.

The affidavits were apparently persuasive. The '398 patent was granted in 1991.

### SUING TO STOP

In 2002 Ferring sued Barr Labs for patent infringement based on Barr's efforts to market a generic version of the anti-diuretic compound. Barr moved for summary judgment, arguing that Ferring's multiple failures to disclose rendered the '398 patent unenforceable due to inequitable conduct.

The district court agreed with Barr, reasoning that the inventor Vilhardt must have known that, in seeking noninventor affidavits, the examiner wanted "objective evidence." Therefore, the court said, the failure to disclose the relationships of Czernichow, Robinson, and Barth was clear and convincing evidence of an intent to mislead the PTO. The Federal Circuit affirmed that judgment in a decision written by Judge Timothy Dyk and joined by Judge H. Robert Mayer.

Citing several prior cases, the court noted that an affiant's failure to disclose his relationship with the inventor may be material. In this case, the information withheld was "highly material" because the affidavits were used to overcome two prior-art rejections, and the undisclosed relationships were "significant" and connected to the subject matter of the patent.

The Federal Circuit then examined whether Barr had established sufficient intent by Ferring to mislead the PTO. To justify summary judgment, the court wrote, the record must show that the applicant knew of the information; the applicant knew or should have known of the materiality of the information; and the applicant has not provided a credible explanation for withholding the information.

The Federal Circuit found that the applicant knew at least some of the withheld information. Because the PTO had requested noninventor affidavits, the applicant knew or should have known that the PTO was concerned about bias and would consider affiants' relationships to be material. And Ferring had offered no credible explanation that would excuse its failure to disclose the material.

Finally, the Federal Circuit asked whether, in light of all the circumstances, a finding of inequitable conduct was warranted. The answer was yes.

The court noted that "it may be completely natural" for inventors to contact people they know and have worked with to obtain affidavits, and that the opinion should not be read as "discouraging such practice." However, where the objectivity of the affidavits is an issue, the inventor "must disclose the known relationships and affiliations of the declarants."

### SEEING IT DIFFERENTLY

Judge Pauline Newman wrote in dissent. She accused the majority of returning the law to the "benighted era" when inequitable-conduct charges were a veritable "plague." Her dissent particularly scorned the adoption of a "should have known" standard for materiality, in which an intent to mislead can be inferred even when it cannot be shown that the applicant knew the materiality of the information.

The concerns did not end with Judge Newman. Less than two weeks later, a different panel at the Federal Circuit decided another case regarding inequitable conduct, *M. Eagles Tool Warehouse v. Fisher Tooling Co. Inc.* In a Feb. 27 opinion written by Judge Alan Lourie and joined by Judges Randall Rader and William Bryson, the court reached a decision somewhat at odds with the weight of *Ferring*.

In *M. Eagles*, the patent applicant had not disclosed to the PTO some prior art that it knew about, and later had not offered a good-faith explanation for the nondisclosure. The district court found that the applicant knew or should have known of the materiality of the prior art based on the examiner's statements during prosecution. It therefore entered summary judgment of unenforceability due to inequitable conduct.

But this time the Federal Circuit reversed. It held that where the only evidence of intent is "a lack of a good faith explanation," the failure to disclose prior art is not enough to support a determination of culpable intent. The record before the trial



# The Federal Circuit ratchets up the duty of candor for patent applicants.

court failed to establish that the applicant "must have known" about the materiality of the prior art, and therefore summary judgment had been granted inappropriately.

### SHARING THE FACTS

So where does this leave patentees and their attorneys? Both decisions—*Ferring* and *M. Eagles*—are relatively recent and still subject to modification or reversal. But ignoring the *Ferring* court's willingness to find inequitable conduct would be unwise.

*Ferring* is arguably distinguishable from *M. Eagles* (which did not mention *Ferring*) on the ground that prior art and affidavits differ when it comes to failure to disclose. Quoting from *Refac International Ltd. v. Lotus Development Corp.* (1996), the *Ferring* court wrote that affidavits, unlike prior art, are "inherently material" because "[t]he affirmative act of submitting an affidavit must be construed as being intended to be relied upon."

Given the majority's reasoning in *Ferring*, however, all parties should increase their efforts to work together during prosecution to ensure that information is properly and timely disclosed. One clear lesson is that patent agents and attorneys must tell inventors that any relationship between them and any affiant has to be disclosed—and then disclose it.

But that may not be enough, particularly in cases in which the PTO requests disinterested affidavits, either directly or by implication. The *Ferring* majority acknowledged that the inventor Vilhardt was not necessarily aware of some of the relationships, which presumably were known only to the affiant and Ferring, the assignee. Another lesson, then, is that assignees should be solicited for information about any relationships that might be of interest to the PTO, and that the prosecuting attorney must be vigilant in this search.

*Ferring* also counsels for increased inquiry when investors, acquirers, or others perform due diligence or otherwise try to evaluate a patent's strength. Precisely because the relevant information was not disclosed, there may be little or no material in the file to suggest that a patent might be unenforceable. The attorney should interview the inventor, assignee, and affiants to determine whether there might be issues. And the inquiry should focus not only on whether they had any actual interest in the patent. The question should be whether the affiants had any "significant" relationship with the inventor or the assignee and whether that relationship was adequately disclosed to the PTO.

Both *Ferring* and *M. Eagles* remind us that all parties should be constantly assessing the materiality of references in light of the evolving claims and the PTO's comments. All should be vigilant to ensure that information that might be deemed material is disclosed. Attorneys must educate inventors, affiants, and assignees about the legal standards and keep them informed about the status of claims and the information sought by the PTO. And they must tell attorneys about possibly material information, including matters of factual background, relationships that might cause the PTO to question a witness's credibility, and statements made by persons on all sides of the prosecution.

In short, share. Otherwise patentees may find themselves wishing they had known and disclosed then what is suddenly known and disclosed now. ∎



Upcoming events

 Events Calendar

▶ <u>Home</u>

▶ <u>About Us</u>

▶ <u>CLE Calendar</u>

Events Calendar

▶ <u>Join / Renew Membership</u>

▶ <u>Lawyer / Law Student Services</u>

▶ <u>Legal Help for the Public</u>

▶ <u>Member Directory / Year Book</u>

▶ <u>Reports / Publications / Press Releases / Forms</u>

**EVENT DETAIL**

**The Federal Circuit's Changing View of Inequitable Conduct and its Implications for Pate Prosecution, Litigation and Competition Generally**
Thursday, Jun 01, 2006 6-8 pm

In a spate of recent cases, the Federal Circuit has redefined the requisite materiality and intent u inequitable conduct in ways that are considered by many in the patent bar as an abrupt departure case law. During the eight month period from the initial opinion to its decision on rehearing, in ] Pharma, LP. v. Endo Pharmaceuticals, Inc., 410 F.3d 690 (Fed. Cir. June 2005), opinion withdra rehearing, 438 F.3d 1123 (Fed. Cir. Feb. 1, 2006), the Federal Circuit's evaluation of whether th had proven intent changed. In another case, Judge Newman's dissent decried the majority's retu of inequitable conduct before Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867 1988), stating "[m]y colleagues on this panel have regressed to that benighted era, rejecting the ɛ Kingsdown to bring objectivity to charges of inequitable conduct, instead reviving the culture of invention rights and attorney reputations based on inference and innuendo". Ferring BV. v. Barr Laboratories, Inc., 437 F.3d 1181 (Fed. Cir. 2006) (Newman, J. dissenting). The panel, focusing Federal Circuit's recent decisions, will discuss how the Court now defines materiality and detern and the ways patent attorneys can mitigate the risks of a finding of inequitable conduct, both in ] and litigation; and will examine the goals of the law of inequitable conduct and whether these de foster those goals.

The roundtable is an opportunity for you to network with your colleagues and discuss the implic Federal Circuit's recent inequitable conduct decisions on your practice.

Speakers:
MARTA GROSS
Goodwin Procter Intellectual Property Group

JANET B. LINN
Morgan Lewis & Bockius, Intellectual Property Litigation CHRISTOPHER GASPAR
Milbank Tweed, Hadley & McCloy, LLP Intellectual Property Group

PROF. RUDOLPH J. R. PERITZ
New York Law School

Sponsored by:
Patents Committee, Peter A. Sullivan, Chair

There is no charge for this event but seating is limited, so if you wish to attend please respond to jlinn@morganlewis.com.

http://www.nycbar.org/EventsCalendar/show_event.php?eventid=485   6/29/2006

| City Bar Fund | Diversity | Lawyer's Assistance Program | Legal Referral Service | Library | Market Place | Rent Our Space | Small Law Firm Center | The Vance C
| Privacy Policy | Terms and Conditions of Use | Sitemap | Contact Us |

© 2006 The Association of the Bar of the City of New York. All rights reserved.
42 West 44th Street New York, NY 10036
(212) 382-6600

## J. Newman: Inequitable Conduct Charges Again on the Rise

*Ferring v. Barr Labs* (Fed. Cir. 2006).

The *Ferring* decision seems to have again expanded the scope of inequitable conduct in patent cases. In a twenty-page dissent, Judge Newman took issue with this expansion.

I agree with J. Newman that inequitable conduct is "a serious charge" that should not be taken lightly. In the past, the defense has been "grossly misused . . . with inequitable conduct charged in almost every case in litigation." Certainly, these charges do nothing to help the current popular distrust of the patent system.

After the CAFC decision in *Kingsdown v. Hollister* (requiring objective evidence of material misconduct + intent to deceive), charges of inequitable conduct were pushed to the background and taken-out of many cases. However, in this decision, Newman sees a revival:

> My colleagues on this panel have regressed to that benighted era, rejecting the efforts of Kingsdown to bring objectivity to charges of inequitable conduct, instead reviving the culture of attack on inventor rights and attorney reputations based on inference and innuendo. My colleagues, endorsing several novel and unsupportable presumptions of wrongdoing, do injury to the reasonable practice of patent solicitation, even as they defy the rules of summary judgment.

Here, Newman argues, the panel has found materiality based on a "should have known" standard:

> The panel majority, steeped in adverse inferences, holds that good faith is irrelevant and presumes bad faith. Thus the court resurrects the plague of the past, ignoring the Kingsdown requirements of clear and convincing evidence of a misrepresentation or omission material to patentability, made intentionally and for the purpose of deception. I respectfully, but urgently, dissent.

Links:

- *Ferring v. Barr* Opinion
- Patently-O Discussion of *Ferring* Majority Decision

Posted by Dennis Crouch in Patent Cases 2006 | Permalink

RECENT POSTS

Unpublished Foreign Patent Application Invalidates Later Filed Patent

LiveBlogging The Blog Law Conference

In Lava Trading Dissent, Judge Mayer Laments de Novo Review

Claims Should be Construed within the Context of the Accused Device

After Winning Jury Verdict, RealNetwork Speaks-Out for Patent Reform

Constitutionality of Andrew Corp. v. Beverly Mfg.

Terminal Disclaimer Does Not Negate Patent Term Extension

CAFC Oral Arguments Available in MP3 Format

Noninfringement Opinions Excluded Based on Attorney Conflict of Interest

Unpublished Opinions Will Be Citable

MAP STAT



Visits since 29 Mar 2006
Updated weekly

CATEGORIES

Articles and Publications
Book Review
Claim Drafting Tips
Conference or CLE
Inventors
Patent Cases 2004
Patent Cases 2005
Patent Cases 2006
Patent Legislation
Patent Prosecution
Patent Q&A
USPTO News

ARCHIVES

April 2006
March 2006
February 2006
January 2006
December 2005
November 2005
October 2005
September 2005
August 2005
July 2005

Case 1:04-cv-00884-SLR   Document 71-10   Filed 07/17/2006   Page 6 of 7

### TrackBack

TrackBack URL for this entry:
http://www.typepad.com/t/trackback/4293001

Listed below are links to weblogs that reference J. Newman: Inequitable Conduct Charges Again on the Rise:

### Comments

This is the exact reason I do not trust the current proposed legislation to provide an almost criminal penalty for "inequitable conduct." The standard to determine this conduct has become a nose of wax. It changes from a test for intentional misconduct to a test for negligent conduct. It infers intent or negligence from the degree of materiality. The standard of proof seems to change as well. It seems like the Court wants to encourage that such charges get filed by lowering the standard, then later complains that too many times charges of inequitable conduct are made.

It's time to put this thing to rest. Set the standard and do not permit the courts to alter it.

Posted by: Anthony Diepenbrock | Feb 20, 2006 at 01:20 PM

If intent is inferrable when the actor should have known of the materiality of the omitted information, has not the element of intent been sub rosa removed and replaced with a different element?

ABD

Posted by: Anthony Diepenbrock | Feb 20, 2006 at 02:15 PM

### Post a comment

Comments are moderated, and will not appear on this weblog until the author has approved them.

If you have a TypeKey or TypePad account, please Sign In

Name:

Email Address:

DISCLAIMER

These posts are not legal advice and are intended primarily for attorneys. This is Dennis Crouch's personal site. As such, views expressed should not be attributed to my employer and should be double-checked for current applicability. This site does not provide financial analysis. © Dennis Crouch 2004-06.

Patently-O is a registered trademark.

