June 2006



quinn emanuel urquhart oliver & hedges, llp | business litigation report

- Trial Lawyer of the Month: Margret Caruso
  Page 5

- Summary Judgment in Trade Secret Case and Other Quinn Emanuel Victories
  Page 6

- Quinn Lawyers Among Top Women Litigators in California
  Page 7

- Noted with Interest: What Jurors Know (or Think They Know) in Patent Cases
  Page 10

- Quinn's New York Office Moves
  Page 12
  (back cover)

## Supreme Court Approves New E-Discovery Rules

Over the past several years, e-discovery — the discovery of electronically stored information — has evolved from a rarity to perhaps the central and most burdensome aspect of discovery. The volume of electronically stored information is often substantially larger than that of hard copy records, making it more time-consuming and costly for litigants to retrieve, review and produce. Significant motion practice has sprung up as parties confront the dynamic nature of electronic storage systems, the inadvertent and often automatic deletion of relevant electronically stored information, the burden and expense of retrieving electronically stored information stored in older technologies, the generation of automatic metadata and the information it contains, and the fact that hard-copy print-outs of documents stored electronically may not

(continued next page)

## National Law Journal Again Names Bill Price Among Ten Top Trial Lawyers in the Country

It's nice to be recognized for winning big, and even better when the big wins keep rolling in. In its June 5, 2006 issue, *The National Law Journal* named Quinn Emanuel partner Bill Price one of its ten top winning litigators. Bill is the only attorney in the country to receive this honor from the *NLJ* in two of the last three years. In honoring Bill in 2006, the *NLJ* cited his recent victory asserting Freedom Wireless's patents on pre-paid cellular services against a number of pre-paid cellular service providers, including Boston Communications Group and Cingular. There, a jury returned a verdict of over $128 million. In 2004, the *NLJ* named Bill a top ten trial lawyer based on a track record of defense trial victories and a victory in *Buettner & Von Blottnitz v. Bertelsmann A.G.*, which netted a $250 million jury verdict for two former executives in a breach of contract case.

## Federal Circuit More Accepting of Inequitable Conduct Defense

Once called a "scourge" on patent litigation, the inequitable conduct defense is gaining greater acceptance in the U.S. Court of Appeals for the Federal Circuit, which has exclusive jurisdiction over patent appeals. "Inequitable conduct" is a judicially-created, equitable defense to patent infringement, which, if successful, renders unenforceable a patent that may otherwise be valid. Defined as misconduct by a patent applicant in dealing with the patent examiner, inequitable conduct occurs when the applicant or its attorney has submitted false information, or omitted material information, with the intent to deceive or mislead the examiner into granting the patent.

*History.* During the 1980's, the Federal Circuit attempted to rein in what many had seen as a rampant misuse of the inequitable conduct defense.

(continued on page 4)

**supreme court approves e-discovery rules**

*(continued from previous page)*

capture all of the data that comprises those documents.

So far, federal courts have been left to develop their own practices and have been forced to resolve disputes about e-discovery piecemeal, as discovery motions are brought before them. That is about to change. On April 12, 2006, the Supreme Court approved amendments to Rules 16, 26, 33, 34, 37, and 45 of the Federal Rules of Civil Procedure relating to the discovery of electronically stored information. These changes will take effect on December 1, 2006, unless Congress intervenes.

The amendments are intended to take into account the unique challenges of e-discovery and balance the burdens of e-discovery with the value of electronically stored information. The amendments recognize the distinction between "documents and things," in which all data is captured in the item's fixed, tangible format, and electronically stored information, in which it is not. Amended Rule 34(a) will define electronically stored information broadly as "including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained." The Supreme Court approved Committee Notes to amended Rule 34(a) state that electronically stored information is intended to be inclusive of all information stored in any electronic medium, whether now-existing or developed in the future, from which it can be retrieved and examined.

Several amendments could substantially change discovery practices.

First, in response to concerns that the volume of electronically stored information to search and produce can be uniquely immense, and thus can substantially increase the risk of inadvertent production of privileged material, the amendments change the rules governing the inadvertent production of privileged material or work product. Amended Rule 26(b)(5) will permit a party to retrieve, without penalty of waiver, any privileged material or work product it produces simply by notifying the receiving party within a reasonable time. However, the receiving party will be permitted to petition the court to decide the validity of the claims of privilege or work product and whether there has been a waiver.

The amended rules also permit parties in litigation to voluntarily agree on other ways to handle the inadvertent production of privileged or protected material. One example cited by the Committee Notes is a "clawback agreement" that production without intent to waive does not constitute waiver. Fed. R. Civ. P. 26(f) advisory committee's note (Apr. 12, 2006). Another example the Committee Notes contemplate is an agreement that the responding party provide certain requested materials for an initial "quick peek" examination without waiving any privilege or protection and then vet for privilege only the subset of those materials the requesting party wants produced.

Second, the responding party will no longer be allowed to unilaterally decide in what form it produces electronically stored information. A party requesting electronically stored information will be able to specify the form in which it wants the electronically stored information produced. The responding party may object to the requested form. However, absent agreement or court order, electronically stored information must be produced in either (a) the form(s) "in which it is ordinarily maintained" or (b) in forms "that are reasonably usable." Fed R. Civ. P. 34(b) (as amended Apr. 12, 2006). Although a party will not be required to produce the same electronically stored information in more than one form, it will not be allowed to produce electronically stored information in a form "that makes it more difficult or burdensome for the requesting party to use the information efficiently." Fed. R. Civ. P. 34(b) advisory committee's note (Apr.

*The amendments make several changes that could substantially change discovery practices.*

12, 2006). For example, electronically stored information normally maintained in a searchable database may not be produced in hard copy unless hard copy is specifically requested. Additionally, a party who produces electronically stored information in response to either a document request or interrogatory may be obligated to assist the requesting party in reviewing that electronically stored information by "some combination of technical support, information on application software, or other assistance." Fed. R. Civ. P. 33(d) advisory committee's note (Apr. 12, 2006).

Finally, the amendments permit a requesting party to test or sample another party's electronically stored information and documents instead of inspecting and copying it. Additionally, sampling will be permitted in connection with discovery on a motion to compel production of electronically stored information claimed to be "not reasonably accessible." Fed. R. Civ. P. 45 (as amended Apr. 12, 2006). Although the Committee Notes claim that "[t]he addition of testing and sampling…is not meant to create a routine right of direct access to a party's electronic information system," there will be no statutory limit on when testing or sampling is permissible. Fed. R. Civ. P. 34(a)(1) & advisory committee's note (Apr. 12, 2006); *see also* Fed. R. Civ. P. 45 & advisory committee's note (Apr. 12, 2006). Thus, the inclusion of the right to test and sample creates a serious risk of discovery abuses. At the very least, this provision is likely to generate substantial motion practice.

*During the Rule 26(f) case management conference, parties will be required to discuss e-discovery issues.*

Additional changes to the discovery and litigation process that will occur as a result of the amendments include:
- During the Rule 26(f) case management conference, parties will be required to discuss e-discovery issues, including how electronically stored information will be preserved, the form in which electronically stored information will be retrieved and produced, who will pay for the production of electronically stored information, and approaches to asserting claims of privilege or work-product protection for electronically stored information. The parties will be required to report the results of that discussion to the court.
- Parties will be required to include their electronically stored information in Rule 26(a) initial disclosures, either by producing it or by describing it by category and location.
- The Court will be permitted to include provisions for e-discovery in its Rule 16(b) scheduling order.
- Instead of answering an interrogatory, a party may describe the electronically stored information (or documents) containing the answer and provide the requesting party access to those materials (so long as the burden of finding the answer among those records would be substantially the same for either party).
- Third-party subpoena recipients will be required to produce electronically stored information, when specifically requested to do so.
- Document requests may contain specific requests for electronically stored information. Responses to such requests may contain specific objections to the requested electronically stored information, such as objections to the requested form of production or that the requested electronically stored information is not reasonably accessible.
- A party will not be required to produce electronically stored information that is "not reasonably accessible because of undue burden or cost" if it identifies "by category or type" the sources of potentially responsive electronically stored information that it has not searched or produced and can prove such electronically stored information is not reasonably accessible. However, this does not relieve a party of preserving that electronically stored information. If the requesting party shows good cause, a court may order discovery of that electronically stored information, but may specify conditions for that

*(continued on back page)*

3

4

> Because only the patent applicant presents information to the Patent Office, the Federal Circuit appears to be strictly enforcing the applicant's duty of candor.

*(continued from cover page)*

In *Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418 (Fed. Cir. 1988), the court remarked that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague," and took steps to impose objective standards of proof. *Id.* at 1422. After this change, alleged patent infringers who claimed the inequitable conduct defense were required to show that the patent applicant acted intentionally, and not merely negligently, in misleading the Patent Office and could not infer deceptive intent from the failure to disclose a material fact. *See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

Recently, however, the Federal Circuit has been more hospitable to inequitable conduct claims and has been accused of "resurrect[ing] the plague of the past." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1197 (Fed. Cir. 2006) (Newman, J., dissenting). In *Ferring*, for example, the court affirmed a finding of inequitable conduct without direct evidence of intent to deceive the Patent Office. The Court found that evidence suggesting that the applicant "should have known" that the omission of material information would mislead the Patent Office was sufficient.

**Case Law.** *Ferring* joins a handful of Federal Circuit cases in the past several years in which the Federal Circuit appears to infer intent to deceive the Patent Office, based on a "should have known" standard when the omitted or misleading information is known to be highly material. *See generally Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001), cert. denied, 537 U.S. 1046 (2002); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997). These cases break with previous Federal Circuit precedent which held that a party charging inequitable conduct must show materiality and intent separately; that is, there must be evidence not only that the omitted or misleading information was known to be material, but that it was omitted or submitted with knowledge and intent to deceive. *See Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556 (Fed. Cir. 1988). The recent cases appear to collapse these requirements: if the patent applicant knew that omitted or misleading information was highly material, it follows that the failure to disclose or correct such material information was intentionally deceitful.

Under this less stringent "should have known" intent standard, several fact patterns have emerged in recent Federal Circuit case law that illustrate the sort of misleading or omitted information that will support a finding of inequitable conduct. For example, the Federal Circuit has emphasized the need to disclose relationships between the patent applicant and authors of supporting declarations, particularly where these declarations are purportedly from disinterested third parties. In *Ferring*, the Federal Circuit affirmed the district court's finding of inequitable conduct based on the patent applicant's failure to disclose ties between the non-inventor scientists submitting declarations in support of the application and the patent applicant. Ferring B.V. and Aventis Pharmaceuticals, Inc., originally brought suit against Barr Laboratories, Inc. for infringement of Ferring's patent. Barr moved for summary judgment, claiming that the patent was unenforceable due to inequitable conduct.

The inequitable conduct charge stemmed from declarations Ferring submitted in support of its application, after the Patent Office repeatedly rejected the patent claims. Concerned

*(continued on page 8)*