threshold level of materiality and intent to mislead, and 2) a weighing of the materiality and intent in light of all the circumstances to determine whether the patent should be held unenforceable. The predicate facts must be proven by clear and convincing evidence.

- The test for materiality is whether there is a substantial likelihood that a reasonable examiner would have considered the information important.
- A declarant's relationship with the patent applicant or holder are material if: 1) the declarant's views on the underlying issue are material, and 2) the past relationship was a significant one.
- Here, the declarations were highly material to the pivotal issue of whether a reference to "peroral" in prior art would be read by those in the art to suggest gastrointestinal absorption. Significant past relationships included having been a research director or paid consultant for the patentholder or having received research funding from the patentholder.
- The applicants were on notice as to the materiality of the past relationships because the examiners were clearly concerned about the objectivity of those providing declarations.
- Summary judgment on the issue of intent was appropriate because the record established that: 1) the applicant knew of the information, 2) the applicant knew or should have known of the materiality of the information, and 3) the applicant did not provide a credible explanation for the withholding.
- In view of all the circumstances, the trial court did not abuse its discretion in finding inequitable conduct as a matter of law.
- Inventors must diclose the known relationships between declarants and interested parties so that patent examiners can consider those interests in weighing the declarations.
- According to the vigorous dissent, the majority incorrectly treated past affiliations as "per se" material, and wrongly adopted a "should have known" standard for deceptive intent.

Art Presented Factual Questions Inappropriate for Summary Judgment

Oxycontin Do-Over: Implying the Existence of Non-Existent Clinical Data Was Material Non-Disclosure, But May Not Establish Intent to Deceive the PTO

Mere Foreseeability Enough For Personal Jurisdiction in Fifth Circuit

---



XML

---

POSTED BY AMY KASHIWABARA AT 3/03/2006 09:16:00 PM

0 COMMENTS:

POST A COMMENT

<< Home

THIS BLOG SITE IS PUBLISHED BY INDIVIDUAL ATTORNEYS AT FOLGER LEVIN & KAHN LLP, AND DOES NOT NECESSARILY REFLECT THE OPINION OF FOLGER LEVIN & KAHN LLP OR ITS CLIENTS. MATERIAL ON THIS WEB SITE IS NOT LEGAL ADVICE AND DOES NOT ESTABLISH AN ATTORNEY CLIENT RELATIONSHIP.

# UNIVERSITY of HOUSTON



UH LAW CENTER
WWW.LAW.UH.EDU

## FEDERAL CIRCUIT PATENT LAW CASE UPDATE

### Ferring B.V. v. Barr Labs., Inc., 05-1284 (Fed. Cir. Feb. 15, 2006) (Dyk, J.)

Based on Barr's ANDA filing to sell a generic antidiuretic compound, Ferring sued under its patent for an antidiuretic claiming gastrointestinal absorption. The court affirmed the inequitable conduct determination of unenforceability on summary judgment because Ferring submitted highly material declarations about the meaning of a key prior art reference, but four of the five declarants "were written by scientists who had been employed or had received research funds from Ferring, and [an inventor] participated in the drafting of two of the four declarations submitted by non-inventors." This supported the inference of intent to mislead. Judge Newman dissented, arguing that the majority's approach was contrary to precedent and revives misuse of inequitable conduct defense.

Ferring owns U.S. Pat. No. 5,407,398, for an "antidiuretic composition for humans comprising a gastrointestinally absorbable, antidiuretically effective, amount of [the peptide] … and a pharmaceutically acceptable carrier in solid oral dosage form for absorption in the gastrointestinal tract of said humans."

The court affirmed the inequitable conduct determination arising from the patent's prosecution. Inventors Vilhardt and Hagstam filed on Dec. 17, 1985. On May 28, 1986, Vilhardt attended an interview with the examiners.

At the interview, the examiners discussed certain prior art references, including U.S. Patent No. 3,497,491 (filed Sept. 14, 1967) ("'491 patent" or "Zaoral patent"). Ferring was the exclusive licensee of '491 patent until its expiration in 1987. The '491 patent taught, for antidiuretic purposes, that [the peptide] "may be used . . . for the parenteral, peroral, intranasal, subcutaneous, intramuscular, or intravenous application." '491 patent at col.3 l.15-23, col.5 l.15-20 (emphasis added). The examiners were concerned that the '491 patent's disclosure of the "peroral" application of the peptide may have suggested the oral administration of the peptide for gastrointestinal absorption. Vilhardt argued that the term "peroral" as used in the '491 patent did not teach the oral administration of the peptide for gastrointestinal absorption, but rather absorption through the walls of the mouth. As the examiners were not entirely

convinced, they "suggested that applicants obtain evidence from a non-inventor" to support their interpretation of the term "peroral." J.A. at 3460 (emphasis added).

Ferring submitted four declarations, "two from Vilhardt himself, one from a Dr. Myron Miller, and one from a Dr. Paul Czernichow." They expressed the opinion "that the term 'peroral' in the '491 patent meant that the compound could be administered 'through the mouth,' but only for absorption through the cheek of the mouth or under the tongue."

However, the declarations failed to disclose that Czernichow had been receiving research funding from Ferring from 1985-86. Specifically, Czernichow received research funding to conduct a clinical investigation relating to a particular drug (DDAVP) preparation.

The Board affirmed the examiner's obviousness rejection by bringing in another reference, an article by Vavra.

On November 21, 1990, the inventors submitted five more declarations to persuade the examiners that the Vavra reference would not, when read with the '491 patent, suggest the gastrointestinal absorption of the peptide. As before, the inventors submitted declarations from Vilhardt, Miller, and Czernichow. They also submitted declarations from a Dr. Iain Robinson and a Dr. Tomislav Barth. Each of these declarations explained why, in the declarant's own professional judgment,

INSTITUTE FOR INTELLECTUAL PROPERTY & INFORMATION LAW
University of Houston Law Center
Houston, Texas 77204-6391

The University of Houston Law Center's Institute for Intellectual Property and Information Law is pleased to provide this information on patent law decisions.
© 2006 Greg R. Vetter. All rights reserved. Fully attributed noncommercial use of this document in whole permitted if accompanied by this paragraph.
Available at: www.fcplc.org.

**UNIVERSITY** *of* **HOUSTON**



UH LAW CENTER
WWW.LAW.UH.EDU

the Vavra reference did not suggest that the peptide could be absorbed gastrointestinally. Just as before, the inventors did not inform the examiners that Czernichow had been receiving funds from Ferring. . . . Czernichow's declaration did include an extensive CV. However, it did not mention his research with Ferring.

Robinson and Barth had connections to Ferring not dissimilar to those of Czernichow. Vilhardt sent Barth and Robinson "draft declarations" and provided input on the statements.

After these declarations were submitted, the examiners allowed the previously rejected claims, and the '398 patent issued on September 10, 1991. The PTO did not provide any explanation for its allowance.

The court affirmed the findings on materiality and intent.

The general law of evidence has long recognized that the testimony of any witness may be rendered suspect by a past relationship with a party. . . . A witness's interest is always pertinent to his credibility and to the weight to be given to his testimony, and relevant interests are not limited to direct financial interests. Under Refac and Paragon, a declarant's past relationships with the applicant are material if (1) the declarant's views on the underlying issue are material and (2) the past relationship to the applicant was a significant one. Here we think that each of these requirements was satisfied on the summary judgment record.

Like the materiality prong, in this case it was also appropriate to decide the intent prong under summary judgment.

We need not in this case attempt to lay down a general rule as to when intent may be or must be inferred from the withholding of material information by an applicant. Suffice it to say that we have recognized, in cases such as Paragon, that

summary judgment is appropriate on the issue of intent if there has been a failure to supply highly material information and if the summary judgment record establishes that (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding. . . . Here, all three conditions are satisfied.

In particular, Vilhardt's actions satisfied all three conditions. "Far from there being a credible explanation for the withholding, there is evidence in the summary judgment record supporting a conclusion that the past relationships were deliberately concealed:" the selective submission of CVs. Given the preceding analysis, the court had little trouble affirming the weighing step of the inequitable conduct inquiry under an abuse of discretion standard.

Judge Newman dissented, introducing the dissent by recalling the history of misuse of the inequitable conduct defense.

My colleagues on this panel have regressed to that benighted era, rejecting the efforts of Kingsdown to bring objectivity to charges of inequitable conduct, instead reviving the culture of attack on inventor rights and attorney reputations based on inference and innuendo. My colleagues, endorsing several novel and unsupportable presumptions of wrongdoing, do injury to the reasonable practice of patent solicitation, even as they defy the rules of summary judgment. . . . The most reasonable inference, to which Ferring is entitled on summary judgment, is that Dr. Czernichow's relationship with Ferring was so remote as to not be worthy of a listing in his CV. Further, as my colleagues acknowledge, the summary judgment record contains no evidence that Dr. Vilhardt was aware of this prior relationship.

INSTITUTE FOR INTELLECTUAL PROPERTY & INFORMATION LAW
University of Houston Law Center
Houston, Texas 77204-6391

The University of Houston Law Center's Institute for Intellectual Property and Information Law is pleased to provide this information on patent law decisions.

© 2006 Greg R. Vetter. All rights reserved. Fully attributed noncommercial use of this document in whole permitted if accompanied by this paragraph.

Available at: www.fcplc.org.

« Patent Cases in the Northern District of Illinois | Main | PTO Requests Model of Warp Drive Invention »

**AUTHOR**

Dennis Crouch

Attorney at
McDonnell Boehnen
Hulbert & Berghoff LLP**

**CATEGORIES**

Articles and Publications

Book Review

Claim Drafting Tips

Conference or CLE

Inventors

Patent Cases 2004

Patent Cases 2005

Patent Cases 2006

Patent Legislation

Patent Prosecution

Patent Q&A

Supreme Court

USPTO News

**ARCHIVES**

June 2006

May 2006

April 2006

March 2006

February 2006

January 2006

December 2005

November 2005

October 2005

September 2005

~ Blogs that link here

## Feb 16, 2006

## Patentee Must Disclose Affiliations of Declarants

*Ferring v. Barr Labs.* (Fed. Cir. 2006).

By Grantland Drutchas

*Ferring* is a rather interesting CAFC decision on inequitable conduct. The CAFC affirmed summary judgment of inequitable conduct based solely on the applicant's failure to disclose that individuals who submitted declarations in support of the patentability of the claims had affiliations with the assignee of the application.

One of the declarants was an employee of the assignee, one was a paid consultant; but the third was simply a researcher (presumably a clinician) whose employer had assisted with some clinical studies for the assignee and received some funding for those clinical studies from the assignee. The CAFC found the failure to disclose each of these relationships was material.

The appellate panel also held that an inference of intent can be found when the patentee fails to show a "credible explanation" for the patentee's deception of the PTO. Importantly, the Court found that the patent holder has the burden to prove the credible explanation. Simply arguing plausible or possible explanations for the deception is not enough to rebut an inference of intent to deceive.

> **Grant Drutchas**, a founding partner of MBHB, has nearly 20 years of experience in the practice of intellectual property law, with a particular emphasis on litigation, licensing, and client counseling.

Posted by Dennis Crouch in Patent Cases 2006 | Permalink

## TrackBack

TrackBack URL for this entry:
http://www.typepad.com/t/trackback/4275368

Listed below are links to weblogs that reference Patentee Must Disclose Affiliations of Declarants:



# Patent Baristas

« Previous Entry | Main | Next Entry »

February 16, 2006

## Patent Found Unenforceable Due to Inequitable Conduct With Submitted Declarations

In **Ferring B.V., and Aventis v. Barr Labs**, (05-1284), the Court of Appeals for the Federal Circuit, deemed a patent unenforceable due to inequitable conduct where the inventors submitted declarations to the examiner in order to define the term "peroral" but did not disclose to the examiner that some of the declarants had been employed by the applicant's company or performing paid research for the company.

Ferring B.V. and Aventis Pharmaceuticals sued Barr Laboratories for infringement of Ferring's patent, **U.S. Patent No. 5,047,398** ('398 patent). The '398 patent claimed an "antidiuretic composition for humans comprising a gastrointestinally absorbable, antidiuretically effective, amount of [the peptide] 1-deamino-8-D-arginine vasopressin and a pharmaceutically acceptable carrier in solid oral dosage form for absorption in the gastrointestinal tract of said humans."

Desmopressin acetate (DDAVP) is approved as anti-diuretic replacement therapy in the management of central diabetes insipidus and to manage the temporary polyuria and polydipsia following head trauma or surgery in the pituitary region. It is also approved for the management of primary nocturnal enuresis.

1-deamino-8-D-arginine vasopressin and other compounds were known in the art to prevent the diuretic symptoms associated with diabetes when they were absorbed through the walls of the patient's mouth via a dissolving tablet, or through the patient's nasal passage via a liquid spray or plastic tube. However, such modes of



**Stephen & Karlyn**

**Contact Us:** ✉

BIO/PHARMA
Patent News
freshly brewed
that served
up daily

Syndicate this site:
RSS 1.0 • RSS 2.0 • Atom  XML

Enter your Email

Subscribe me!

administering the medicine proved cumbersome and time-consuming. Therefore, the claimed solid oral dosage form of the compound and method of administering it were thought to be an improvement over the prior art, because the medicine was designed to be simply swallowed and absorbed through the gastrointestinal tract.

During prosecution, the examiners discussed certain prior art references, including U.S. Patent No. 3,497,491, which taught, for antidiuretic purposes, that "1-deamino-8-D-arginine vasopressin" "may be used . . . for the parenteral, peroral, intranasal, subcutaneous, intramuscular, or intravenous application."

The examiners were concerned that the '491 patent's disclosure of the "peroral" application of the peptide may have suggested the oral administration of the peptide for gastrointestinal absorption. Vilhardt argued that the term "peroral" as used in the '491 patent did not teach the oral administration of the peptide for gastrointestinal absorption, but rather for absorption through the walls of the mouth. As the examiners were not entirely convinced, they "suggested that applicants obtain evidence from a non-inventor" to support their interpretation of the term "peroral."

The inventors submitted declarations explaining the scientific belief that the term "peroral" in the '491 patent meant that the compound could be administered "through the mouth," but only for absorption through the cheek of the mouth or under the tongue. However, the declarations failed to disclose that a declarant had been receiving research funding from Ferring from to conduct a clinical investigation relating to a particular drug (DDAVP) preparation (although he testified that he was not receiving funding from Ferring in June 1986, when he submitted his first declaration). They also failed to inform the examiners that one of the new declarants had been Ferring's pre-clinical research director and a paid consultant for Ferring.

In the end, four of the five declarations submitted to the PTO in 1990 were written by scientists who had been employed or had received research funds from Ferring, and Vilhardt participated in the drafting of two of the four declarations submitted by non-inventors. The examiners were not otherwise made aware of the Ferring connections and allowed the previously rejected claims.

The district court granted summary judgment to Barr on grounds of inequitable conduct, stating:

> The undisputed evidence in this case supports the finding of inequitable conduct by the patentee and its agents and the grant of summary judgment. The reluctance of the PTO to issue the '398 patent was



Powered by FeedBlitz

- Pfizer Plans to Introduce Generic Zoloft - Will Teva have Another Bad Day?
- Vaya con Dios, LabCorp v. Metabolite
- One More Try: UK court rejects Ranbaxy's appeal on Lipitor patent
- Fed Circuit Vacates Preliminary Injunction on Generic Biaxin XL
- The Generic 23/6: The Day Belongs To?
- Hurts So Good: US Supreme Court Refuses to Hear Patent Antitrust Case
- New Article Comparing PTO ethics with State Rules
- Patent Agents, Patent Lawyers, Nonlawyers....
- Karma Chameleon
- The Federal Circuit & Section 271(f) (1)



June 2006

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| --- | --- | --- | --- | --- | --- | --- |
|     |     |     |     | 1   | 2   | 3   |
| 4   | 5   | 6   | 7   | 8   | 9   | 10  |
| 11  | 12  | 13  | 14  | 15  | 16  | 17  |
| 18  | 19  | 20  | 21  | 22  | 23  | 24  |
| 25  | 26  | 27  | 28  | 29  | 30  |     |

Search this site:

[          ]
Search

[ Archive By Month ▶ ]





evident. Each affidavit submitted in support of its issuance was thus highly material to the prosecution history. That three of the challenged declarations were submitted after several iterations of rejected attempts to obtain the patent's issuance speaks loudly as to motive and intent. While credibility determinations from a courtroom observation may at times be necessary on the issue of intent, here, the entire record presents clear and convincing evidence of an intent to mislead the examiners, even viewing the evidence, as it must be viewed, in the light most favorable to Plaintiff.

Inequitable conduct occurs when a patentee breaches his or her duty to the PTO of candor, good faith, and honesty. While inequitable conduct includes affirmative misrepresentations of material facts, it also arises when the patentee fails to disclose material information to the PTO. The inequitable conduct analysis is performed in two steps comprising first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. The predicate facts must be proven by clear and convincing evidence.

On appeal, they argue that the Ferring affiliations were immaterial as a matter of law because (1) those affiliations supposedly did not bear directly on the critical assertion that each made in his declaration, meaning that the relationships were not the source of the information in the declarations, and (2) the declarants did not have a direct financial stake in the success of the patent.

The CAFC saw it differently:

Our jurisprudence does not suggest such a narrow view of materiality. A witness's interest is always pertinent to his credibility and to the weight to be given to his testimony, and relevant interests are not limited to direct financial interests. Under Refac and Paragon, a declarant's past relationships with the applicant are material if (1) the declarant's views on the underlying issue are material and (2) the past relationship to the applicant was a significant one. Here we think that each of these requirements was satisfied on the summary judgment record.

The CAFC felt that the affirmative act of submitting an affidavit must be construed as being intended to be relied upon and that it is not

Archive By Category ▾

- Adam Smith, Esq.
- Anything Under the Sun
- Bag and Baggage
- Between Lawyers
- Blawg Review
- business2blog
- California Biotech Law Blog
- DennisKennedy.com
- EEID
- How Appealing
- inter alia
- ipFrontline
- IP::JUR.com
- IPKat
- IP Litigation Law Blog
- IP Newsflash
- I/P Updates
- LawPundit
- Legal Ethics Blog
- lessig blog
- May It Please The Court
- Nipper's Invent Blog
- Notes From the Legal Underground
- the [non]billable hour
- Patent Infringement Updates
- Patent Prospector
- Patently-Obvious
- PHOSITA: an IP blawg
- Pierce Law IP News Blog
- Promote the Progress
- Tech Law Advisor
- Two-Seventy-One Patent Blog
- The Wired GC

- Car Talk
- Common Scold
- Gizmodo

Patent Baristas: Patent Found Unenforceable Due to Inequitable Conduct With Submitted Declarations

- *go fug yourself*
- Infectious Greed
- Jalopnik
- Life Hacker
- patently silly
- Starbucks Gossip
- VentureBlog
- Blogarama
- BlogStreet
- Technorati Profile
- My Ecosystem Details

comparable to omitting an unnecessary act. The court stated that these relationships were not isolated, nor were they confined to the distant past. The declarants clearly had ongoing and mutually beneficial relationships with Ferring during the prosecution of the '398 patent:

Even if an omission is found to be material, the omission must also be found to have been made with the intent to deceive. In the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information. Thee question of intent is directed to the applicant's intent, not to the intent of the declarants. Thus, that the declarants may have had no intent to deceive is entirely irrelevant. The question is whether the applicant (here Vilhardt) had such an intent.

We need not in this case attempt to lay down a general rule as to when intent may be or must be inferred from the withholding of material information by an applicant. Suffice it to say that we have recognized, in cases such as Paragon, that summary judgment is appropriate on the issue of intent if there has been a failure to supply highly material information and if the summary judgment record establishes that (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding. See Bruno Indep. Living Aids, 394 F.3d at 1354; Critikon, Inc., 120 F.3d at 1257. Here, all three conditions are satisfied.

The CAFC did add comforting words for patent practitioners who will now be worried about submitting declarations with some undisclosed conflict of interest. The court stated flatly that:

In coming to this conclusion, we fully recognize that inventors often consult their colleagues or other persons skilled in the art whom they have met during the course of their professional life. Accordingly, when an inventor is asked to provide supportive declarations to the PTO, it may be completely natural for the inventor to recommend, and even contact, his own colleagues or people who are, or who have been, affiliated with his employer and to submit declarations from such people. Nothing in this opinion should be read as discouraging such practice. Rather, at least where the objectivity of the declarant is an issue in the prosecution, the inventor must disclose the known relationships and affiliations of

the declarants so that those interests can be considered in weighing the declarations. This is not an onerous burden to place on any applicant.

Judge Newman dissented stating that:

"Inequitable conduct" in patent practice means misconduct by the patent applicant in dealings with the patent examiner, whereby the applicant or its attorney is found to have engaged in practices intended to deceive or mislead the examiner into granting the patent. It is a serious charge, and the effect is that an otherwise valid and invariably valuable patent is rendered unenforceable, for the charge arises only as a defense to patent infringement.

As this litigation-driven issue evolved, the law came to demand a perfection that few could attain in the complexities of patent practice. The result was not simply the elimination of fraudulently obtained patents, when such situations existed. The consequences were disproportionally pernicious, for they went far beyond punishing improper practice. The defense was grossly misused, and with inequitable conduct charged in almost every case in litigation, judges came to believe that every inventor and every patent attorney wallowed in sharp practice. This history was recently summarized as follows:

As is known, about 20 years ago inequitable conduct was frequently pleaded as a defense to patent infringement; a patent that is "unenforceable" due to a finding of inequitable conduct is dead. The defense was so misused by alleged infringers that the Federal Circuit once called this defense a "scourge" on US patent litigation . . . . The famous Kingsdown seemed to put a stop to the defense of inequitable conduct. . . . .

See the entire opinion here.

Posted by Stephen at February 16, 2006 08:04 AM

Keywords:

- patent prosecution ip law infringement

## Send This Article

Email this entry to:

Your email address:

Message (optional):

Send

**Blogger**   SEARCH THIS BLOG   GET YOUR OWN BLOG   ¶ FLAG?   NEXT BLOG»

SEARCH ALL BLOGS   BlogThis!

# IPBIZ

INTELLECTUAL PROPERTY NEWS AFFECTING BUSINESS AND EVERYDAY LIFE

WEDNESDAY, FEBRUARY 09, 2005

## Barr beats Ferring BV and Aventis Pharmaceuticals Inc. in antidiuretic case

from Forbes:

A decision in the SDNY clears the way for the Food and Drug Administration to approve Barr's pending application to market a generic version of DDAVP (desmopressin acetate). Barr said it is the first to file an abbreviated new drug application for the doses and has 180 days of exclusivity on the products.

Barr filed an ANDA in July 2002, and was sued Dec. 13, 2002 [?] by Ferring and Aventis. Ferring manufactures DDAVP for Aventis, which markets the product in the United States. Barr filed for summary judgment in April 2004.

DDAVP tablets had annual sales of $177 million last year. They are indicated as antidiuretic replacement therapy in the management of central diabetes insipidus - a disorder of the pituitary gland characterized by intense thirst and by the excretion of large amounts of urine - and for the management of the temporary excessive urination and thirst following head trauma or surgery in the pituitary region. They are also indicated for the management of primary nocturnal enuresis, or bed-wetting.

POSTED BY LAWRENCE B. EBERT AT 11:17 AM

ABOUT ME

**LAWRENCE B. EBERT**

I'm a patent lawyer located in central New Jersey. I have a J.D. from the University of Chicago and a Ph.D. from Stanford University, where I studied graphite intercalation compounds at the Center for Materials Research. I worked at Exxon Corporate Research in areas ranging from engine deposits through coal and petroleum to fullerenes. An article that I wrote in The Trademark Reporter, 1994, 84, 379-407 on color trademarks was cited by Supreme Court in Qualitex v. Jacobson, 514 US 159 (1995) and the methodology was adopted in the Capri case in N.D. Ill. An article that I wrote on DNA profiling was cited by the Colorado Supreme Court (Shreck case) and a Florida appellate court (Brim case). I was interviewed by NHK-TV about the Jan-Hendrik Schon affair. I am developing ipABC, an entity that combines rigorous IP analytics with study of business models, to optimize utilization of intellectual property. I can be reached at EbertIP@yahoo.com or C8AsF5@yahoo.com.

VIEW MY COMPLETE PROFILE

IPBiz: Barr beats Ferring BV and Aventis Pharmaceuticals Inc. in antidiuretic case          Page 2 of 2

0 COMMENTS:

POST A COMMENT

<< Home

PREVIOUS POSTS

Fiorina out at Hewlett-Packard

Study on fuel cell patents

Matsushita and Hitachi unite in PDP
area

Oral argument in AWH v. Phillips

Festo fog

Diamond planets?

Bruce Sunstein on patents: get out
the sword

New Jersey censures talk show host

Nanotechnology and the law

Bayer, Monsanto and Max Planck
Society cut deal





Reprint from



**genetic engineering news**

*Your biotech insider from bench to business*

Volume 26, Number 9, **May 1, 2006**

OMICS    Drug Discovery    Translational Medicine    Bioprocessing    Biobusiness

## Legal Affairs

# Analysis of a Patent Applicant's Obligations

## Candor, Honesty, and Good Faith

*William L. Warren and
Kathryn H. Wade, Ph.D.*

Patent applicants and their attorneys are charged with a duty of candor and good faith in their dealings with the U.S. Patent Office. In this regard, they have an obligation to make the Patent Office aware of any reference or information that is material to the patentability of the claimed invention. The penalty for not meeting this duty is severe.

If a patent has been issued, and a court determines that the patentee was engaged in inequitable conduct during prosecution (i.e., failing to meet their duty of candor and good faith), then the entire patent is deemed unenforceable. Accordingly, it is critical that patent applicants understand their obligations and take them seriously.

Relevant information includes disclosure of the financial relationship of any experts arguing in support of the patent, as well as the source and accuracy of any comparative data presented.

This article provides a discussion of recent Federal Circuit case law that affect the duty of candor and good faith owed to the Patent Office.

The first in a line of recent Federal Circuit cases, the *Purdue Pharma L.P. v Endo Pharmaceuticals* case, involved several patents directed toward the treatment of moderate-to-severe pain with controlled release oxycodone (OxyContin®). The trial court held that the patents at issue were unenforceable due to the inequitable conduct of the patent applicants during the prosecution of the applications.

The Federal Circuit initially affirmed the finding of inequitable conduct. Upon rehearing by another panel, however, the Federal Circuit withdrew the initial affirmance and remanded the case to the district court.

The Federal Circuit discussed the standards for determining whether there has been inequitable conduct with respect to a particular application. A breach of the duty of candor and good faith in dealing with the Patent Office can arise from an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false information.

Further, this affirmative action or omission regarding material information must be coupled with an intent to deceive or mislead the Patent Office. These elements must be proven by clear and convincing evidence for a determination that inequitable conduct has occurred. Where the threshold of evidence has been met for each of the two elements, then the court must carefully balance the evidence to determine whether a finding of unenforceability of the patent is appropriate under the circumstances.

If the misrepresentation or withheld information is highly material, then less proof is necessary as to the intent of the individual making the statement. If the misrepresentation or withheld information is less material, then more proof is necessary to prove intent.

In *Purdue Pharma*, language used in the specification of these applications and in a declaration during the prosecu-

tion of a previous application was misleading. The specifications referred to the "surprising discovery" that the claimed formulations were effective in 90% of patients in a dosage range that was half the range required for opioid analgesics in general.

What was not disclosed, however, was that this surprising discovery was not based on clinical data, but rather it was based on an inventor's insight.

The trial court held that the failure to disclose that the discovery was based only on insight was highly material, therefore requiring less proof of intent. Accordingly, the trial court held that the patents were unenforceable, and the Federal Circuit upheld that determination on appeal.

Upon rehearing, the Federal Circuit concluded that while the actions met the threshold level of clear and convincing evidence of materiality and intent, the actions were not particularly high with respect to materiality. Accordingly, the court remanded the case to the trial court to make further determinations as to the appropriate balancing of the evidence regarding whether equities would favor rendering the patents unenforceable.

### Inequitable Conduct

After two weeks, another panel of the Federal Circuit revisited the issue of inequitable conduct in the context of another case. *The Ferring B.V. et al. v. Barr Laboratories* case involved a patent directed to the compound desmopressin and methods for administering the same.

The issue of inequitable conduct in the *Ferring* case involved several declarations that were submitted by Ferring during the prosecution of the patent. On summary judgment, the trial court held that the patent was unenforceable

due to the inequitable conduct of the patent applicants during the prosecution of the application. The Federal Circuit affirmed in a 2-1 decision the finding of inequitable conduct, and a rehearing in this case was denied.

During the prosecution of the patent at issue, the Patent Office had repeatedly rejected the application as unpatentable over the prior art. Finally, in response to the examiner's earlier suggestion that applicants submit "evidence from a noninventor" to support Ferring's assertion that the prior art did not teach the oral administration of desmopressin, Ferring submitted five declarations.

After seven years of prosecution, the examiner proceeded to allow the application on the basis of these declarations. One declarant was Ferring's former preclinical research director, a paid Ferring consultant both before and after his employment with Ferring, who received Ferring funding for his own lab.

The second declarant also served as a Ferring consultant and received Ferring funding for his own desmopressin research. The district court found that these facts satisfied both the materiality and intent elements of inequitable conduct inquiry.

The Federal Circuit court affirmed the trial court's finding that the declarations were highly material and that the declarants previous relationships were significant. Because the declarations and the omissions therein were highly material, less proof was required of the intent corresponding to the omissions. Accordingly, the court deemed the patent unenforceable, and subsequently, a rehearing in this case was denied.

On April 10, 2006, another panel of the Federal Circuit addressed the issue of inequitable conduct in the *Aventis Phar-*

*ma S.A. v. Amphastar Pharmaceuticals, Inc.* case, involving patents related to low molecular weight herapin, which is used to prevent blood clots (Lovenox®).

The trial court found on summary judgment that the patent was unenforceable due to the failure of the patent applicants to disclose certain material information during the prosecution of the application. The Federal Circuit reversed the trial court's determination and remanded the case to the trial court for further proceedings with respect to Aventis' intent to deceive.

During the prosecution of the patents at issue in the *Aventis* case, the examiner asserted a European patent as destroying the patentability of the invention. To overcome the rejection as to that European patent, Aventis made a comparison of the product, allegedly covered by its application, at one dose to the prior art product at a different dose, without identifying the fact that the products were being compared at different doses.

Although the applicants did not expressly represent that the comparison was being made at the same dose, the applicants did repeatedly compare the data as if they were. The appeals court found the omission was material and that it was insufficient to submit underlying data without dosage information and to later argue that the examiner could have requested that.

With respect to Aventis intent to deceive, the district court found it irrelevant whether a comparison at different doses was reasonable and held that the facts supported a strong inference of intent to deceive. The appeals court held that although the district court's inference was reasonable, it was not the only reasonable inference.

Another inference would be that if the comparison between different doses

was reasonable, then the failure to disclose the doses may have been an inadvertent omission. Accordingly, the court remanded the case to the district court for further proceedings with respect to determining whether there was an intent to deceive the Patent Office and thereafter for the balancing necessary to reach a conclusion that the patent should be unenforceable, based on the equities.

The Federal Circuit has rendered several opinions recently regarding the issue of inequitable conduct and patent validity, highlighting the need to fully disclose the nature of any relationship between the patent owner and a declarant arguing for patentability on its behalf, as well as whether any alleged surprising discoveries are based on actual and appropriately compared data or merely speculation.

For this reason, it is essential to take a very broad approach with respect to disclosure of information to the Patent Office. **GEN**

William L. Warren is a partner (bill.warren@sablaw.com) and Kathryn H. Wade, Ph.D. (kathryn.wade@sablaw.com), is an associate in the intellectual property group at Sutherland Asbill & Brennan. Phone: (404) 853-8000. Web: www.sablaw.com.

Duane Morris - Federal Circuit Alert



# DuaneMorris

Search Site | Site Map | Contact Us

Home
News, Publications and Events
Industries Served
Practice Areas
Client Successes
Attorneys and Other Professionals
Careers
Offices
Affiliates
Business Tools

Home  >  Publications  >  Alerts and Updates

## Federal Circuit Alert

### March 2006

**Competence of Opinion of Counsel Is Proper Subject of Inquiry in Willful Infringement Analysis**

*Golden Blount, Inc. v. Robert H. Peterson, Co.*, 04-1609, 05-1141, 05-1202

In a February 15, 2006 decision from a unanimous panel, the Federal Circuit affirmed a judgment of willful infringement by the United States District Court for the Northern District of Texas. According to the Federal Circuit, nothing in the Federal Circuit's prior *en banc Knorr-Bremse* decision precluded a patentee from attempting to make a showing challenging the competence of the opinions received. Although not addressed herein, the Federal Circuit also addressed procedural questions under Rule 52(b) of the Federal Rules of Civil Procedure, vacated the damages award and remanded to the District Court for the limited purpose of reexamining the number of infringing products sold.

Golden Blount filed suit against Peterson on January 18, 2001 for infringement of U.S. Patent No. 5,988,159 ("the '159 patent") relating to fireplace burners and associated equipment. The District Court found that there was willful infringement, that the claims were valid, awarded attorney fees and granted an injunction against Peterson. Peterson subsequently appealed the judgment and, in April 2004, the Federal Circuit (365 F.3d 1054) affirmed the Texas District Court's validity determinations but vacated the infringement finding and remanded the case for factual determinations concerning infringement. On remand, the District Court adopted Golden Blount's proposed factual findings and again determined that Peterson willfully infringed the '159 patent. In addition to trebling the lost-profit damages awarded to Golden Blount, the District Court awarded Golden Blount attorney fees and post-judgment interest. Peterson appealed.

Print Version

News

Events

For The Press

Duane Morris - Federal Circuit Alert

A key issue on appeal was Peterson's contention that it did not willfully infringe the '159 patent. The factual record before the District Court indicated that Golden Blount first sent Peterson a letter concerning possible infringement of the '159 patent in December 1999. Peterson provided its outside patent counsel (McLaughlin) with the December 1999 letter and a copy of the "instructions and working drawings" for the accused product. McLaughlin provided Peterson an oral opinion, stating that "if we can prove that what the Peterson Company was doing with the present product" was known for 20 or 30 years, then either Peterson does not infringe or the patent is invalid. At the time, McLaughlin did not possess the accused device, the file wrapper, or any prior art. Peterson never provided Golden Blount with a substantive response to the December 1999 letter. On May 3, 2000, Golden Blount sent a follow-up letter to Peterson stating that it had not received a response. Peterson responded on May 16, 2000 that it "very much disagreed" with the allegation of infringement and asked for a detailed explanation as to why it infringed the '159 patent. There was no further communication until Golden Blount filed suit in January 2001.

McLaughlin testified that after suit was filed, Peterson employee Bortz asked for another opinion of counsel, in part because Bortz "had heard that an opinion could help avoid a charge of willful infringement." Bortz testified at trial he was more concerned about attorney fees than the potential damages for infringing sales. McLaughlin provided two additional oral opinions. In February 2001, McLaughlin opined that based on a photo and drawing of the accused product, there was no literal infringement and some claims were invalid. In May 2001, after reviewing the file wrapper for the first time, but still not having viewed the accused product, McLaughlin advised that the claims were not literally infringed or infringed under the doctrine of equivalents, and any remaining claims were invalid. Peterson never obtained a written opinion on the potential infringement.

The District Court found that in the two and one-half years after Peterson received notice of the patent, Peterson never obtained a written opinion of counsel and the oral opinions were "incompetent" because they were rendered without reviewing the '159 file history or the accused device. Furthermore, the District Court found that the oral opinions were issued only as "an illusory shield against a later charge of willful infringement, rather than a good faith attempt to avoid infringing another's patent."

On appeal, Peterson challenged the District Court's willfulness finding on two grounds. First, Peterson argued that the District Court drew an inference of the type prohibited in the 2004 *en banc* decision by the Federal Circuit in *Knorr-Bremse Systems Fuer Nutzfahrzeuge GmbH v. Dana Corp.*

Duane Morris - Federal Circuit Alert

(383 F.3d 1337). Peterson argued that it had no duty to seek an opinion of counsel and that the lack of a competent opinion cannot help Golden Blount make out is prima facie case that Peterson acted willfully. In effect, Peterson argued that the District Court should have disregarded the opinion-related evidence.

The Federal Circuit rejected Peterson's interpretation of the *Knorr-Bremse* decision. First, the Court reiterated the holding in *Knorr-Bremse* that the failure to produce an exculpatory opinion of counsel cannot be used by the patentee to infer that such an opinion, if rendered, would have been unfavorable to the alleged infringer. On the other hand, if the alleged infringer does not assert the privilege and does rely on opinion of counsel, "the patentee in making its threshold showing of culpable conduct is free to introduce as evidence whatever opinions were obtained and to challenge the competence of those opinions." According to the unanimous Federal Circuit panel, nothing in the *en banc Knorr-Bremse* decision precludes a patentee from attempting to make a showing challenging the competence of the opinions received. The Federal Circuit proceeded to note that Peterson did not assert the attorney-client privilege regarding the opinions it obtained from counsel and the competence of those opinions, and the facts surrounding Peterson's obtaining of those opinions were relevant to the willfulness issue and properly considered by the District Court. As such, the Federal Circuit rejected Peterson's first argument to overturn the finding of willful infringement as without merit.

Peterson also argued that even in the absence of the formal opinion of counsel, it had a reasonable, good-faith belief that it did not infringe the '159 patent and did not act in reckless disregard of the patent, and thus, the District Court's willfulness finding was clearly erroneous. Upon reviewing the record, the Federal Circuit found no clear error in according little weight to the first two oral opinions rendered by McLaughlin since he did not consider the prosecution history. The Federal Circuit also found no clear error in the lower court's conclusion that Peterson demonstrated a "cavalier attitude toward Golden Blount's patent rights" from the facts that Peterson did not respond substantively to Golden Blount's notice letters, and only obtained a thorough opinion of counsel after suit was filed , and then only out of a concern to avoid a potential willfulness finding. Given the totality of Peterson's conduct, the Federal Circuit found that Peterson failed to rebut the inference of reckless conduct and affirmed the finding that Peterson willfully infringed the '159 patent.

For the full opinion, see: http://fedcir.gov/opinions/04-1609.pdf

Duane Morris - Federal Circuit Alert

## Federal Circuits Elaborates on "Materiality" Standard in Determinations of Inequitable Conduct

### *Digital Control Inc., et al. v. Charles Machine Works, 05-1128*

In a February 8, 2006 decision, the Federal Circuit vacated the United States District Court for the Western District of Washington's summary judgment finding that the asserted patents were unenforceable for inequitable conduct and remanded for further factual findings.

The plaintiffs, Digital Control, Inc. and Merlin Technology, Inc., initiated an action for infringement of three related patents directed to horizontal directional drilling technology. The claimed invention is directed to a device that allows a worker to pinpoint the location of a boring tool by using above-ground receivers in combination with a transmitter attached to the boring tool as it moves underground. The District Court found no genuine issues of material fact as to the materiality of misstatements in a Rule 131 declaration and the failure to disclose known prior art by the inventor, Dr. John Mercer, during prosecution of the patents. The District Court also found that despite the lack of direct evidence of intent to deceive, Dr. Mercer's misstatements and omissions were done with the intent to deceive the Patent Office and that the level of materiality and the "inference of intent" were so high as to warrant a finding that the patents were unenforceable due to inequitable conduct.

The Federal Circuit began its analysis by examining the history of the standard for "materiality" under the inequitable conduct doctrine, noting there have been several standards for materiality and that the 1992 amendment to 37 C.F.R. §1.56 ("Rule 56") created "an arguably narrower standard of materiality." While conceding that the new rules regarding materiality may be in potential conflict with the old "reasonable examiner" standard, the Federal Court concluded that the old "reasonable examiner" standard was not supplanted by the new Rule 56 standard, but rather the new Rule 56 standard offered an additional test for materiality. The Federal Circuit also emphasized the sliding scale component of the analysis of the materiality and intent prongs for finding inequitable conduct, confirming prior precedent that "to the extent one standard requires a higher showing of materiality than another standard, the requisite finding of intent may be lower."

Dr. Mercer's alleged misstatements before the Patent Office concerned the submission of a Rule 131 declaration in which Dr. Mercer stated he had

Duane Morris - Federal Circuit Alert

tested and demonstrated his boring tool underground upon a certain date. This declaration was submitted in order to overcome prior art by establishing a reduction to practice date for the invention prior to the effective date of the prior art reference. It was later determined that Dr. Mercer did not engage in the testing at the time that he stated pursuant to his declaration. Upon analysis, the Federal Circuit agreed with the District Court that a reasonable examiner would have considered the true nature of Dr. Mercer's reduction to practice as being important in deciding whether to allow the patent to issue and that misstatements made by Dr. Mercer unquestionably met the threshold requirements of materiality.

With respect to Dr. Mercer's failure to disclose known prior art, the Federal Circuit focused on the requirement that an otherwise material prior art reference may not be material for purposes of inequitable conduct, if it is "merely cumulative" to the information already considered by the Patent Office. Upon analysis of the arguments concerning the prior art, the Federal Circuit noted that "the scope and content of prior art and what the prior art teaches are questions of fact," and concluded that the present record did not permit a determination as a matter of summary judgment that the failure to disclose the known prior art reference was a material omission.

The Federal Circuit next examined Dr. Mercer's intent in providing the misstatements and the omission. The Court stated that in determining whether misstatements are intentional, "the involved conduct, viewed in light of all of the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." Upon analysis, the Federal Circuit noted the evidence that Dr. Mercer added the misstatements to the Rule 131 declaration and had the motivation to deceive the Patent Office since he was "under severe pressure from his largest customer ... to acquire and enforce patent rights." While the Federal Circuit described the District Court as providing "ample factual findings regarding Dr. Mercer's intent to deceive," the Federal Circuit found that the District Court did not distinguish between Dr. Mercer's misstatements and the prior art omissions in weighing the materiality and intent prongs of the inequitable conduct analysis. Because the Federal Circuit could not ascertain whether the finding of inequitable conduct was based primarily on Dr. Mercer's misstatement in his declaration or on his failure to disclose known prior art, the case was remanded for further examination.

For the full opinion, see: http://fedcir.gov/opinions/05-1128.pdf

**Inequitable Conduct Finding Affirmed Where Patentee Failed to Disclose Potential Bias of Non-Inventors Who Submitted**

## Declarations Supporting Patent Application

### Ferring B.V., et al. v. Barr Laboratories, Inc., 05-1284

In a February 15, 2006 decision from a split panel, the Federal Circuit affirmed a summary judgment finding of inequitable conduct from the United States District Court for the Southern District of New York rendering the asserted patent unenforceable. Writing for the majority, Circuit Judge Dyk concluded that the failure of the applicant during prosecution to inform the Patent Office of information bearing upon the credibility of non-inventors who submitted declarations in support of the application amounted to inequitable conduct. Where the objectivity of the declarant is an issue in the prosecution of a patent, the Federal Circuit found that the inventor must disclose the known relations and affiliations of the declarant.

Plaintiffs Ferring B.V. and its exclusive licensee Aventis Pharmaceutical, Inc. brought suit against Barr Laboratories, Inc. for infringement of U.S. Patent No. 5,407,398 ("the '398 patent") after Barr filed an Abbreviated New Drug Application with the FDA. The claimed invention relates to a medicinal compound for treating diuretic symptoms associated with diabetes and a method for administering the compound by oral dosage in which it is absorbed through the gastrointestinal tract. The particular medicinal compound (a peptide described as 1-deamin-8-D-arginine vasopressin) was known in the art to prevent diuretic symptoms when absorbed through a patient's mouth. However, such mode of delivery was considered cumbersome and time-consuming. It was argued during prosecution of the '398 patent that the claimed oral dosage form of the compound was an improvement over the prior art since the claimed compound was designed to be simply swallowed and absorbed through the gastrointestinal tract.

In December 1985, Ferring filed a patent application for the '398 patent naming Hans Vilhardt and Helmer Hagstam as the inventors. During a preliminary interview with the examiner at the Patent Office that Vilhardt attended, the examiner expressed concern that a particular prior art reference ("the Zaoral patent") might have previously disclosed the claimed oral administration of the peptide for gastrointestinal absorption by disclosing the "peroral" administration of the drug. The examiner suggested that the applicants obtain evidence "from a non-inventor" to support the applicant's view that "peroral" was limited to absorption through the walls of the mouth. In response, Ferring submitted four declarations, including two from Vilhardt, addressing the meaning of "peroral." However, one of the declarations failed to disclose that the declarant, Dr. Czernichow, was receiving funding from Ferring for research. In spite of these declarations,

Duane Morris - Federal Circuit Alert

the examiner continued to reject certain claims of the application based on the Zaoral patent.

Following a reconsideration and an appeal in which the claims were rejected on obviousness grounds, Ferring submitted five more declarations to the examiner to overcome prior art rejections based on the Zaoral patent in combination with other references, including another declaration from Dr. Czernichow, a declaration from Dr. Robinson, who had been a consultant in Ferring's employ and received research funding, and a declaration from Dr. Barth, who had worked on several projects for Ferring. The Federal Circuit noted that Vilhardt communicated with each of these declarants before their declarations were submitted to the Patent Office and sent Dr. Barth and Dr. Robinson draft declarations. Although four of the five declarations submitted to the Patent Office were written by scientists who had been employed or had received research funds from Ferring, none of the declarations stated the relationships between the declarants and Ferring. After receipt of the declarations, the Patent Office allowed the previously rejected claims and the '398 patent issued.

District Court Judge Brieant found that the declarations were highly material to the prosecution history and that even viewing the evidence in the light most favorable to Ferring, the entire record presented clear and convincing evidence of an intent to mislead the examiners, specifically referencing the Czernichow, Robinson, and to a lesser extent, Barr declarations. In affirming, the Federal Circuit first confirmed that the inequitable conduct analysis required determining whether the alleged inequitable conduct first meets a "threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of circumstances to determine whether the conduct is so culpable that the patent should be held unenforceable."

Applying the standard for materiality prior to the amendment to 37 C.F.R. §1.56 in 1992, the Federal Circuit first agreed with the District Court that the declarations were "highly material." Noting an applicant's expectation that the Patent Office will rely on declarations submitted by the applicant and the *ex parte* nature of proceedings before the Patent Office, the Federal Circuit stated that "it is especially important that the examiner has all the information needed" to determine whether to rely on the declarations submitted by an applicant. Further, where the examiner requested affidavits from disinterested persons, the Federal Circuit found that the applicant is "on notice as to the materiality of information" regarding the relationship of the declarants to Ferring to be significant, the declarants not disinterested,

and the failure to disclose the ties between Ferring and the declarants as highly material.

The Federal Circuit also found that Ferring's omissions concerning the ties between Ferring and the declarants were made with the requisite intent to deceive the Patent Office. Upon confirming that the question of intent is directed to the applicant's intent, not the declarants', the Federal Circuit found that summary judgment is appropriate on the issue of intent when there has been a failure to supply highly material information and the summary judgment record establishes that (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; and (3) the applicant has not provided a credible explanation for the withholding. The Federal Circuit proceeded to find all three conditions satisfied. First, the evidence established that Vilhardt knew of significant past relationships between the declarants and Ferring. Second, Vilhardt was aware of the examiner's request for non-inventor affidavits and, therefore, "knew or should have known that the Ferring affiliations were material." Finally, the Federal Circuit rejected appellant's argument that there are possible benign explanations for the withholding, finding that appellants' argument amounted to speculation that was not supported by any evidence. Given that Barr had made a *prima facie* showing of inequitable conduct, the Federal Circuit found the burden shifted to Ferring to come forward with specific evidence to support a credible explanation for withholding. Here, Ferring failed to submit any affidavit from Vilhardt or provide any credible explanation for the withholding.

After finding no genuine factual disputes with respect to the issues of materiality and intent, the Federal Circuit reviewed the District Court's ultimate finding of inequitable conduct for abuse of discretion. In finding no abuse of discretion, the Federal Circuit noted that there was not a single omission here, but rather "multiple omissions over a long period of time - a fact that heightens the seriousness of the conduct."

For the full opinion, see: http://fedcir.gov/opinions/05-1284.pdf

**About Duane Morris**

Duane Morris is a full-service law firm with more than 600 attorneys and 19 offices in the U.S. and London.

The Intellectual Property Practice Group of more than 60 attorneys develops and executes strategies for our clients aimed at maximizing their

Duane Morris - Federal Circuit Alert

intellectual property protection while minimizing their infringement risk.

Our experienced litigators in the Intellectual Property Litigation Practice Group understand the expense and risks of IP litigation, and seek the most cost-effective means of achieving the business objectives of our clients.

Duane Morris LLP was ranked as the 13th most active patent litigation firm in the United States in 2005 by *IP Law Bulletin* and ranked 16th nationally in the number of patent litigation matters undertaken in 2005 by *IP Law360* (formerly *IP Law Bulletin*).

**For Further Information**

For more information, please contact any lawyer listed in our Intellectual Property or Intellectual Property Litigation Practice Groups or the lawyer in the firm with whom you are regularly in contact.

Duane Morris LLP and Affiliates. ©2006 Duane Morris LLP. Duane Morris is a registered service mark of Duane Morris LLP. Privacy Policy | Disclaimer

# Dinsmore&Shohl LLP
## ATTORNEYS

THIS IS AN ADVERTIS

Client Extranet | Contact Us | Search Dinslaw

| Attorneys | Practice Areas | Firm Profile | Office Locations | Careers | Publications | Alu |

Articles

Article Archive

Legal Alerts

Legal Alert Archive

Press Releases

Press Release Archive

Resources: Sarbanes-Oxley
Materials

 Printable Version     Contact Author

For more information,
please call our toll-free li
1-800-934-3477.

## Legal Alerts

### Declarations Supporting Patentability Result in Finding of Inequitable Conduct

Special care should be taken when preparing and submitting declarations to the U.S. Patent and Trademark Office ("PTO") in support of patentability. In *Ferring* B.V. v. *Barr Laboratories Inc.*, Fed. Cir., No. 05-1284 (February 15, 2006), the Court of Appeals for the Federal Circuit ("CAFC") affirmed a district court's grant of summary judgment of patent unenforceability arising from inequitable conduct during prosecution. The inequitable conduct arose from the inventor's failure, when submitting declarations in support of patentability, to identify certain professional relationships between the applicant and the declarants.

Inventors Vilhardt and Hagstam, both employed by Ferring B.V. ("Ferring"), filed an application for what would become U.S. Patent No. 5,407,398 ("the '398 patent"), relating to an antidiuretic composition and a method of administration involving swallowing and absorption through a patient's gastrointestinal tract as opposed to absorption through the walls of a patient's mouth via a dissolving tablet or through a patient's nasal passage via a liquid spray or plastic tube. During prosecution, Vilhardt conducted an interview at the PTO, at which prior art U.S. Patent No. 3,497,491 ("the '491 patent"), to which Ferring had been an exclusive licensee, was discussed. The examiners indicated that the '491 patent's disclosure of "peroral" application may have suggested oral administration for gastrointestinal absorption, and suggested that applicants obtain evidence from a non-inventor to support their interpretation of the term "peroral."

In response, Vilhardt submitted four declarations, including two from himself, one from Miller, and one from Czernichow, wherein each indicated a belief that "peroral" in the '491 patent meant absorption through the cheek or under the tongue. However, the declarations failed to disclose that Czernichow had previously received research funding from Ferring

The examiners nevertheless rejected claims of the '398 patent over the '491 patent, and the inventors appealed this rejection to the Board of Patent Appeals and Interferences. The Board determined that the claims were obvious over the '491 patent in light of another reference, and thus affirmed the examiners' rejection.

Additional declarations from each of Vilhardt, Miller, Czernichow, Robinson and Barth were then submitted in support of patentability. The examiners were not informed that Czernichow had received research funding from Ferring, that Robinson had been Ferring's pre-clinical research director from 1985-1986 and a paid consultant for Ferring from 1986-1989, and that Barth worked on projects funded by Ferring between 1984 and 1987 and worked intermittently with Vilhardt on projects between 1988 and 2000. Vilhardt communicated with each of these declarants before their declarations were submitted to the PTO, and had sent Barth and Robinson draft declarations.

The rejections were overcome and the '398 patent issued. Ferring later sued Barr Laboratories, Inc. ("Barr") for infringement of the '398 patent. Barr moved for summary judgment for noninfringement and unenforceability due to inequitable conduct, and the district court granted summary judgment on both grounds. Ferring appealed.

Inequitable conduct occurs when a patentee breaches his or her duty to the PTO of candor, good faith, and honesty, and can arise when a patentee fails to disclose material information to the PTO. The inequitable conduct analysis involves (1) determining whether withheld information meets threshold levels of materiality and intent to mislead, and (2) weighing the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable. The CAFC indicated that it is especially important that an examiner has all the information needed to determine whether and to what extent he should rely on declarations presented by a patent applicant, and that a declarant's prior relationships with a patent applicant may be material and that failure to disclose such relationships to an examiner may constitute inequitable conduct.

The CAFC found that the declarations in the present case were highly material because of their pivotal role in overcoming the Board's obviousness rejection. The CAFC also found that the relationships of the declarants with Ferring were significant, were not isolated, and were not confined to the distant past. The CAFC further indicated that because the examiners had requested evidence from non-inventors and knew that Ferring was the exclusive licensee of the '491 patent, the examiners were concerned about the objectivity of declarants and their relationship to Ferring, and this concern was communicated to Vilhardt, thereby placing Vilhardt on notice as to the materiality of information regarding the declarants' ties to Ferring. The CAFC indicated that Vilhardt knew of the significant past relationships of at least two of the declarants, and thus determined that Vilhardt had an intent to deceive. In light of these findings, the CAFC affirmed the district court's ruling with regard to inequitable conduct. The CAFC did not reach the issue of infringement.

The CAFC concluded by stating, "In coming to this conclusion, we fully recognize that inventors often consult their colleagues or other persons skilled in the art whom they have met during the course of their professional life.

Accordingly, when an inventor is asked to provide supportive declarations to the PTO, it may be completely natural for the inventor to recommend, and even contact, his own colleagues or people who are, or who have been, affiliated with his employer and to submit declarations from such people. Nothing in this opinion should be read as discouraging such practice. Rather, at least where the objectivity of the declarant is an issue in the prosecution, the inventor must disclose the known relationships and affiliations of the declarants so that those interests can be considered in weighing the declarations. This is not an onerous burden to place on any applicant."

A strong dissent criticizes the majority on multiple grounds, including its willingness to infer intent on summary judgment where the record merely establishes that a patent applicant "knew or should have known" that omitted information was material, and that the majority's ruling is directly contrary to *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988) which held that even gross negligence may not establish deceptive intent.

For more information about Dinsmore & Shohl's Intellectual Property Practice, please contact any of the attorneys listed here.

**Printer Friendly Version**

---

Disclaimer
Dinsmore & Shohl LLP is a member of ALFA
© 2003 Dinsmore & Shohl LLP. All rights reserved.