# Exhibit 23



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/809,937 | 12/17/85 | HAGSTAM | H |

STEPHEN B. JUDLOWE
HOPGOOD, CALIMAFDE, KALIL,
BLAUSTEIN & JUDLOWE
60 EAST 42ND STREET
NEW YORK, NY 10165

EXAMINER
STONE, J

ART UNIT: 125
PAPER NUMBER: 6

DATE MAILED: 11/20/86

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

[✓] This application has been examined   [ ] Responsive to communication filed on _____   [ ] This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. [✓] Notice of References Cited by Examiner, PTO-892.       2. [ ] Notice re Patent Drawing, PTO-948.
3. [✓] Notice of Art Cited by Applicant, PTO-1449.              4. [ ] Notice of informal Patent Application, Form PTO-152
5. [ ] Information on How to Effect Drawing Changes, PTO-1474.   6. [ ] _____

**Part II   SUMMARY OF ACTION**

1. [✓] Claims __2-5 and 7-13__ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. [✓] Claims __1 and 6__ have been cancelled.

3. [ ] Claims _____ are allowed.

4. [✓] Claims __2-5 and 7-13__ are rejected.

5. [ ] Claims _____ are objected to.

6. [ ] Claims _____ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. [ ] Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on _____. These drawings are [ ] acceptable; [ ] not acceptable (see explanation).

10. [ ] The [ ] proposed drawing correction and/or the [ ] proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been [ ] approved by the examiner. [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed _____, has been [ ] approved. [ ] disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. [✓] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [✓] not been received [ ] been filed in parent application, serial no. _____; filed on _____.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

Serial No.   809,937                                    -2-
Art Unit    123


Claims 2-5 and 7-13 are rejected under 35 U.S.C. 102(b) as anticipated by or, in the alternative, under 35 U.S.C. 103 as obvious over Zaoral for the reasons of record in the parent case, serial no. 613779.
The numerous declarations submitted by Applicant attempting to establish that oral administration of DDAVP for gastrointestinal absorption was not known prior to the instant invention have been considered, as have Applicants' arguments in the preliminary amendment. Applicants' characterization of the remarks made in the interview are noted; however, the questions described of as being asked by Mr. Moyer to Dr. Vilhardt are not recollected by the Examiners.

The declaratory evidence regarding the meaning of the term "peroral" at the time of the Zaoral patent is not deemed persuasive, as such evidence is not necessary to construe the meaning of an ordinary term in the English language. Applicants' attempt to alter the plain meaning of the Zaoral document is not adequate to overcome the rejection as the clear teaching of Zaoral is of peroral administration as well as the Kinter reference which also discloses oral administration. The statements made by declarants that Zaoral meant "sublingual or buccal when he disclosed peroral administration" raises the question of why Zaoral would have used the term "peroral" if only sublingual and buccal routes were

Serial No.    809,937                                    -3-
Art Unit     123

acceptable. Applicants' arguments that "interpreting Zaoral to mean administration via the subcutaneous and intranasal means" only is more in line with the state of the art, is not deemed persuasive as the Zaoral reference does not need to be "interpreted" to determine suitable routes of administration-the peroral route is clearly taught. As Applicants are the exclusive licensee of the Zaoral patent, it is obviously expeditious for Applicants to argue that "peroral" referred to in the patent referred only to sublingual or buccal routes, whereas the instant mode of administration excludes such routes as it involves absorption by the gastrointestinal tract. However, the original disclosure of Applicants was broad enough to embrace all oral routes (see, for example, page 4- "This composition may be in any form for oral administration"). Furthermore a reference by one of the Applicants (Vilhardt and Bie, *Acta Endocrinologica*, p. 476 already of record) indicates that "peroral administration of DDAVP may result in absorption through the mouth, esophagus and stomach as well as the intestinal mucosa." One need not understand, however, the precise mechanism of absorption- it is sufficient for one skilled in the art to know the utility of DDAVP as disclosed in the prior art. As Applicants' claims and the prior art are

Serial No.   809,937                                         -4-
Art Unit     123

directed to the peroral administration of DDAVP, the prior art clearly teaches or makes obvious the instant claim subject matter.

> The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:
>
>> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>>
>> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.
>
> Claims 2-5 and 7-13 are rejected under 35 U.S.C. 103 as being unpatentable over Zaoral as discussed <u>supra</u> in view of Kinter et al, Saffran (cited by Applicants) and Boissonnas. Kinter et al discloses the oral administration of DDAVP to the drinking water of rats and notes particularly that DDAVP "is significantly more potent than the native hormone when given by gastric gavage." Applicants' argument that such administration involves absorption in the mucous membranes in the mouth and esophagus is not deemed persuasive, as it is conceivable that at least some of the DDAVP would be

Serial No.   809,937                                              -5-
Art Unit     123

swallowed and therefore absorbed in the gastrointestinal tract. As to Boissonnas, Applicants argue that the L and D isomers of DDAVP are completely different are not deemed persuasive as their different activities would appear to affect only the dosage amount and not the route of administration, especially when this patent is compared with Zaoral et al. Note that the tablet adjuvants contemplated by Boissonnas: lactose, starch and talc are also suitable additives for DDAVP in column 3 of the Zaoral patent. The Saffran reference cited by Applicant discloses that the oral administration and adsorption of antidiuretic peptides such as insulin and DVDAVP is feasible, despite the statements in many textbooks that many peptides cannot be taken by mouth. (See especially page 549, first full paragraph). Applicants arguments that Saffran is not directed to DDAVP and that Saffran used alcohol, anesthetized animals, etc. do not negate this teaching. Applicants claimed composition of DDAVP in oral dosage form and method are rendered obvious by the collective teachings of the prior art. Furthermore, the intended use recited in the functional language "for absorption in the gastrointestinal tract" does not patentably distinguish the composition per se, as there is no disclosure that the particular form of tablet or capsule or nature of the excipients used are critical and not conventional.

Serial No.   809,937                                        -6-

Art Unit     123


No claims are allowed.


*/s/*
Stone/kl

703/557-3920                              DONALD B. MOYER
                                    SUPERVISORY PATENT EXAMINER
11-13-86                                    ART UNIT 123