# Exhibit 24

3475E                                                    #8

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of       :   HELMER HAGSTAM and
                                    HANS VILHARDT

Serial No.                  :   809,937

Filed                       :   December 17, 1985

For                          :   DDAVP ANTIDIURETIC AND
                                    METHOD THEREFOR

Examiner:                 :   J. Stone

Group Art Unit            :   123

Honorable Commissioner of Patents
       and Trademarks
Washington, D.C.  20231

## REQUEST FOR RECONSIDERATION

Sir:

    In response to the Office Action mailed November 20, 1986, kindly consider the following remarks as a request for reconsideration of the rejections set forth therein.

## REMARKS

    Applicants have disclosed and claimed a unique antidiuretic composition in oral dosage form, for gastrointestinal absorption, for the treatment of diabetes insipidus in humans. This composition comprises an antidiuretically effective amount of 1-Deamino-8-D-Arginine vasopressin ("DDAVP") and a pharmaceutically acceptable carrier.  This composition has the capability of dissolving and being absorbed in the gastrointestinal tract of humans.

    The present invention is also directed to a method for initiating antidiuresis, particularly for treating diabetes insipidus, by use of the composition of the invention.

DDAVP is an important drug, useful in initiating antidiuresis. Prior to the applicants' invention, methods of administering DDAVP to patients were restricted to intravenous, intranasal, subcutaneous, sublingual, or buccal procedures. It was universally taught and undertstood that gastrointestinal absorption of an oral dose of DDAVP was effectively precluded, as the peptide became deactivated during the digestion process.

If not for this concern regarding enzymatic degradation of peptides, the oral delivery would be the system of choice. The advantages of oral administration for gastrointestinal absorption over the alternate methods listed above are well known. Oral administration tends to be easier, safer, less painful, and involving little or no skill or special apparatus.

Despite the obvious advantages of oral administration for gastrointestinal absorption, the art has taught away from the use of DDAVP compositions in this form because of the perceived degradation problem. DDAVP compositions have been sold commercially for several years in substantial amounts, but always in a form for administration which was not oral administration for gastrointestinal absorption.

In the subject Office Action, claims 2 through 5 and 7 through 13 have been rejected under 35 USC §102(b) as anticipated, or in the alternative, under 35 USC §103 as obvious, over Zaoral et al. ("Zaoral"). The Examiner urges that Zaoral's use of the term "peroral" as a method for administering DDAVP anticipates applicants' invention of DDAVP compositions in oral dose form for gastrointestinal absorption.

This rejection is respectfully traversed. The cited reference neither teaches nor suggests the presently claimed invention.

The term "peroral", as used by <u>Zaoral</u>, teaches the absorption of DDAVP through the <u>mucous membranes</u> of the mouth, as administered by either sublingual or buccal methods.  There is no express, implied, or inherent teaching in <u>Zaoral</u> of the claimed "gastrointestinal absorption".  This phrase appears in every one of the instant claims and does not appear in <u>Zaoral</u>.

The broader interpretation of "peroral" urged by the Examiner may be inappropriate in the context of an obviousness rejection but it is clearly inappropriate in the context of an anticipation rejection.  The <u>Zaoral</u> reference does not necessarily teach "oral administration for gastrointestinal absorption" and, in any standard of anticipation, this rejection must fall.  <u>Zaoral</u>'s preference is for both subcutaneous and intranasal applications of DDAVP with the former considered particularly preferred.  In view of the significant and well known benefits associated with oral administration of DDAVP for gastrointestinal absorption, the absence of any discussion of this method indicates that such gastrointestinal absorption was never contemplated by the patentee.

This is entirely consistent with the response and reaction of those skilled in this art for a substantial time.(almost two decades) after publication of the disclosures in <u>Zaoral</u>.  Up until the present invention, research on DDAVP excluded the simple oral application of DDAVP for gastrointestinal absorption in humans.  This lack of research on what cannot be disputed as the best method of drug administration is understandable:  the state of the art was that DDAVP type peptides was perceived to decompose in the stomach.  Nothing in <u>Zaoral</u> contradicted this understanding and, in fact, confirms

it by the express preference for the clearly more disadvantageous subcutaneous and intranasal administration route.

Zaoral initiated a surge of research on DDAVP and its use to treat diabetes insipidus. In view of the belief at the time that DDAVP would be ineffective by oral delivery for gastrointestinal absorption, this research was restricted to alternate delivery systems - typically intranasal or intravenous. Applicants have annexed hereto two papers on DDAVP which are representative of the then ensuing research efforts. "Desmopressin urine concentration test" J.P. Monson, et al. British Medical Journal, (January 7, 1978) (annexed hereto as Exhibit A) presents a comparative study involving the intranasal and intramuscular delivery of DDAVP. "Treatment of Central Diabetes Insipidus on Adults and Children with Desmopressin", Ziai et al., Arch Intern Med. Vol. 138 (September 1978) (annexed hereto as Exhibit B) reports at p. 1982 beneficial results when DDAVP is used to control Diabetes Insipidus as compared to past treatment regimes involving arginine vasopressin (AVP). Throughout the test program, DDAVP was administered by intranasal delivery means. Again, this work was done several years after publication of Zaoral's teachings, yet there is no evidence that the authors even considered oral delivery for gastrointestinal absorption.

The Examiner must now decide whether Zaoral's use of the word "peroral" teaches or suggests "oral dosage forms for gastrointestinal absorption". We respectfully submit that the Examiner, in making this decision, must consider the way those skilled in this art perceived Zaoral's teachings. In particular, we submit that the Examiner's decision must be made

-4-

against a real world background, considering the perceptions and research efforts of real world scientists seeking a solution to a real world problem after the publication of <u>Zaoral</u>. We respectfully submit that the Examiner's resolution of the ambiguities in <u>Zaoral</u> in the last Office Action is unrealistic and inconsistent with the perceptions and actions of those skilled in this art over the last almost two decades.

Over the years subsequent to Zaoral but prior to the instant invention, there was substantial and significant research specifically oriented toward delivery systems for DDAVP. In none of that research is there a single study involving oral delivery for gastrointestinal absorption.

In "Effects of Vasopressin Analogues (DDAVP, DVDAVP) in the Form of Sublingual Tablets in Control Diabetes Insipidus" Laczi et al., <u>International Journal of Clinical Pharmacology, Therapy and Toxicology</u>, Vol. 18, No. 12 (1980) pp 63-68 (annexed hereto as Exhibit C), the authors cite the problems associated with intranasal application of DDAVP. Prolonged use involving intranasal delivery often leads to lesions in the nasal mucous membranes. Further, persons suffering catarrh of the upper respiratory tract are precluded altogether from intranasal delivery. In view of the problems associated with intravenous and intranasal delivery, the authors concluded that sublingual administration offered the preferred method of DDAVP administration. This conclusion was explicitly based on the lack of peptidase enzymes in saliva. The implicit premise underlying the <u>Laczi</u> research was that gastrointestinal absorption by oral delivery (which is specifically claimed in the instant application) was <u>precluded</u> due to the existence of these peptidase enzymes in the stomach.

The authors of "Two new modes of Desmopressin (DDAVP) administration" Grossman et al., British Medical Journal (May 17, 1980) (annexed hereto as Exhibit D), further explained (at p. 1215) the difficulties associated in administering DDAVP, particularly by the then known, method of intranasal delivery. These world class researchers focused on delivery systems involving either a nasal spray or lozenges placed under the tongue, not on the presently claimed gastrointestinal absorption by oral delivery.

Both of these latter research efforts were directed toward alternate methods of delivering of DDAVP to humans in a convenient manner. Yet, neither group chose to even study oral administration for gastrointestinal absorption since at the time of these publications, those skilled in the art believed that oral delivery for gastrointestinal absorption would be ineffective. As soon as Professor Besser, the author of the Exhibit B article, learned of applicants' success with gastrointestinal absorption, he and his colleagues performed experiments where DDAVP was administered in drinkable form for gastrointestinal absorption (See "Management of Cranial Diabetes Insipidus with Oral Desmopressin (DDAVP)" 24 Clinical Endocrinology, 253 (1986), hereto annexed as Exhibit E).

On page 3, line 14, of the subject Office Action, the Examiner suggests that applicants' specification attempts to cover all oral routes including sublingual and buccal, based on the statement: "This composition may be in any form for oral administration". The Examiner errs. Applicants have clearly limited the composition to those suitable for gastrointestinal absorption. See, for instance, pg 3, line 17 of the specification wherein it states: "DDAVP dissolves and is

absorbed in the gastrointestinal tract of a human." An oral delivery system for sublingual or buccal administration would fall outside this limitation.

At any rate, even if applicants were disclosing something more than they are now claiming, there is nothing wrong with that. The Examiner errs in even raising the issue.

Claims 2-5 and 7-13 have been rejected under 35 USC 103 as obvious over Zaoral in view of Kinter et al., ("Kinter"), Saffran, and Boissonnas.

Applicants respectfully traverse this rejection. Kinter discloses the administration of DDAVP to rats through their drinking water. The data suggests that absorption occurs primarily through the mucous membranes of the mouth and esophagus. This study is restricted to rats, as is plainly stated in the conclusive remarks. There is no suggestion that gastrointestinal absorption of DDAVP by oral administration to humans would be favorable or even possible. Although a potency difference between AVP and DDAVP is cited when gastic gavage is used, this difference fails to suggest, in combination with Zaoral, applicants' invention. Such results cannot be extrapolated to meaningful conclusions about oral dosage in humans.

The Boissonnas reference discloses an isomer of DDAVP exhibiting an antidiuretic response in humans somewhat stronger than natural vasopressin. The Examiner has recognized the differing biological activities between peptides and their isomers, but suggests that such differences are easily compensated by regulating the dosage. Peptide isomers not only differ in biological activity, but also in absorption rates. Absorption rate cannot be predicted by biological activity. In

this connection, see "In Vitro Intestinal Transport Of Vasopressin And Its Analogues" Vilhardt et al., Acta Physical Scand. 126 (1986) p 601-607 (annexed hereto as Exhibit F) where it is disclosed that the analog 1-deamino-2-tyr (O-ethyl) oxytocin, which is _without_ biological activity, is absorbed much faster from the intestine than oxytocin, which, of course, possesses substantial biological activity.

Such differences exhibited by peptide isomers in both biological activity and absorption clearly negate the implication that _Boissonnas_ combined with _Zaoral_ makes any suggestion of applicants' invention.

The Examiner also notes that tablet adjuvants contemplated by _Boissonnas_ are similar to those suggested in _Zaoral_, i.e. tablets composed of lactose, starch or talc.  But similar adjuvants are also used for buccal of sublingual delivery.  _See_ "Effects Of Vasopressin Analogues (DDAVP, DVDAVP) In The Form Of Sublingual Tablets In Central Diabetes Insipidus" which is annexed hereto as Exhibit C.  This reference shows the use of tablets containing saccharosum, amylum solani, stearin, spiritus concentratissimus, gelatine alba, aqua destillata, talcum, cacao pulvis, as the vehicle in sublingual delivery. The adjuvants in _Zaoral_ were specifically for sublingual or buccal tablets and at best only coincidentally correspond to the adjuvants useful for compositions taken orally for gastrointestinal absorption.

_Saffran_ focuses on the oral administration of insulin.  It actually teaches away from applicants' invention since the authors stress the importance of avoiding breakdown of DDAVP by enzymes by using specific adjuvants, such as diisopropylfluorophosphate, liposomes, or Trasylol (a potent

enzymatic inhibitor). In the control experiments without these adjuvants as inhibitors, no absorption of insulin took place. The other peptides referred to on page 549 of Saffran are either di- or tripeptides and albumin; each involving a fundamentally different mechanism of absorption. Saffran reflects the understanding of those skilled in the art that gastrointestinal absorption of peptides was critically inhibited by the enzymatic cleavage of the peptides in the digestive process. This explains his research on adjuvants designed to inhibit the digestive process. Such teaching coupled with Zaoral does not render applicants' compositions or methods obvious.

Reconsideration of the rejections and allowance of all claims are respectfully requested.

It is believed that the subject application is in condition for allowance. If there is any further point requiring attention prior to allowance, the Examiner is respectfully requested to contact the undersigned attorney for applicants to resolve the matter.

Respectfully submitted,

Paul T. Meiklejohn
Reg. No. 26,569
HOPGOOD, CALIMAFDE, KALIL,,
  BLAUSTEIN & JUDLOWE
60 East 42nd Street
New York, New York 10165

Dated: May 20, 1987.