# Exhibit 27

Art Unit 123

Appeal No. 89-0259

HEARD:
May 17, 1990

MAILED
SEP 21 1990
PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Paper No. 20

YRT  HOPGOOD, CALIMAFDE
KALIL; BLAUSTEIN &
JUDLOWE

SEP 24 1990

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

Ex parte Helmer Hagstam
and Hans Vilhardt

Application for Patent filed December 17, 1985, Serial No. 809,937, which is a Continuation of Serial Number 06/705,701 filed February 26, 1985. DDAVP Antidiuretic And Method Therefor.

Stephen B. Judlowe et al. for appellants.

Primary Examiner - Johnnie R. Brown.
Examiner - J. Stone.

Before Pellman, Winters and Wiseman, Examiners-in-Chief.

Wiseman, Examiner-in-Chief.

This is an appeal from the final rejection of claims 2-5 and 7-13, all the claims remaining in the case.

Claims 11, 12 and 13 are illustrative of the invention and read as follows:

11. An antidiuretic composition for humans comprising a gastrointestinally absorbable, antidiuretically effective, amount of 1-deamino-8-D-arginine vasopressin and a pharmaceutically acceptable carrier in solid oral dosage form for absorption in the gastrointestinal tract of said human.

Appeal No. 89-0259

12. A method for initiating antidiuresis comprising administering a gastrointestinally absorbable, antidiuretically effective, amount of 1-deamino-8-D-arginine vasopressin to a human for absorption in the gastrointestinal tract of said human.

13. A method for treating diabetes insipidus comprising administering a gastrointestinally absorbable, antidiuretically effective, amount of 1-deamino-8-D-arginine vasopressin to a human for absorption in the gastrointestinal tract of said human.

The references relied upon by the examiner are:

Boissonnas        3,454,549        Jul. 2, 1969
Zaoral et al. (Zaoral)   3,497,491        Feb. 24, 1970

Kinter et al. (Kinter), Chem. Abstracts, Vol. 97, 97:193479x (1982), abstracting J. Physiol., 243(5), pages R491-R499 (1982).

Saffran et al. (Saffran), Can. J. Biochem., Vol. 57, pages 548-552 (1979).

American Heritage Dictionary, 2nd Ed., "peroral", page 924.

Remington's Pharmaceutical Sciences, 15th Ed., pages 683-684 (1975).

The reference relied upon by the board is:

Vavra et al. (Vavra), "Antidiuretic Action of 1-Deamino-[8-D-Arginine]-Vasopressin in Unanesthetized Rats, The Journal of Pharmacology and Experimental Therapeutics, Vol. 188, No. 1, pages 241-7 (1974).

I.  Claims 2-5 and 7-13 stand rejected under 35 USC 102(b) as anticipated by or, in the alternative, under 35 USC 103 as obvious over Zaoral.

II. Claims 2-5 and 7-13 stand rejected as unpatentable under 35 USC 103 as obvious over Zaoral in view of Kinter, Saffran and Boissonnas.

-2-

Appeal No. 89-0259

## 35 USC 102

The position taken by the examiner is that Zaoral expressly or inherently teach the invention as set forth in claims 2-5 and 7-13.[1]

The claims under rejection are directed to an antidiuretic composition in solid dosage form containing 1-deamino-8-D-arginine vasopressin (DDAVP) and a pharmaceutically acceptable carrier and two methods for its use. One method is for initiating antidiuresis. The other is for treating diabetes insipidus. Both methods have but one step, the administration of an effective amount of DDAVP to a human in an amount so that it is absorbed in the gastrointestinal tract. The dependent claims limit the dosage form to tablets (claims 2 and 9) or capsules (claims 3 and 10) and the dosage amounts to 50 to about 200 micrograms per 70 kilograms human per dosage (claims 4 and 7) or to 50 to about 100 micrograms per 70 kilograms human per dosage (claims 5 and 8).

Zaoral teach 1-deamino-8-D-arginine-vasopressin (DDAVP) represents a valuable drug for the regulation of polyuria and the

---

[1] We note, as appellants have, that certain of the dependent claims depend on canceled claims. We decline to exercise our authority under 37 CFR 1.196(b) to make a rejection of these claims under the second paragraph of 35 USC 112 as being incomplete. In any subsequent prosecution of the subject matter herein, e.g., by way of a continuation application, we trust that this matter will be resolved at the examiner level.

-3-

moderation of polydypsia in the therapy of diabetes insipidus. The antidiuretic activity was determined by the method of Sawyer as modified by Plislea et al. The experimental animal was Wistar rat. The presser activity was determined by the Landgrebe method. Again the experimental animal was Wistar rat. The activities are shown in the Table appearing in col. 3. The polypeptide is disclosed as being used with or without additives such as stabilizers, preservatives, sweetening agents, aromatic compounds, flavoring agents or detergents to obtain the suitable form, as desired, for the parenteral, peroral, intranasal, subcutaneous, intramuscular or intravenous application. See col. 3, lines 15-22. The polypeptide may be used as the free base or as a salt. A variety of acids are disclosed which are suitable to form the salt form. Other additives associated with tablet, capsule and solution formation are also disclosed, e.g., starch, lactose, etc. See col. 3, lines 26-28. The preferred mode of administration is subcutaneous.[2] Dosages are specifically taught for subcutaneous and intranasal application. No examples are

---

[1] Appellants' arguments with regard to limiting Zaoral's teachings to the preferred mode of administration are not well taken since the use of patents as references is not limited to what patentees describe as their preferred mode, or even to patentees' own inventions or to problems with which they are concerned; they are part of the literature of the art, relevant for all they contain. In re Lemelson, 397 F.2d 1006, 1009, 158 USPQ 275, 277 (CCPA 1968).

-4-

Appeal No. 89-0259

directed to therapy applications. No numerical values are given for an oral dosage.

Where, as here, the issue is novelty, the issue is whether the reference discloses within its four corners the entire invention claimed. Anticipation is established only when a single reference discloses expressly or under the principles of inherency each and every element of the claimed invention. RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 221 USPQ 385, 388 (Fed. Cir. 1984).

With regard to claims 2-5 and 11, Zaoral expressly teaches a composition having antidiuretic activity suitable for peroral administration which contains DDAVP and carriers which are known to be pharmaceutically acceptable. See col. 3, lines 15-19. However, there is no recitation in Zaoral of oral dosage amounts, tablets or capsules. Zaoral does teach compositions to be in suitable form "for the ..., peroral, ... or intravenous application". From this, the examiner must have reasoned that the dosage amounts and dosage forms, i.e., capsule and tablet, are deemed to be inherently taught, but provides no rationale to support this belief.

With regard to the method claims, the examiner must have reasoned that a general method of administering the peptide to a human is inherent with the disclosed utility (col. 2, line 54 - col. 3, line 15 and the sections to which we refer above).

-5-

Appeal No. 89-0259

Again, no rationale has been provided to support inherency. Accordingly since the method and solid dosage form and amount are not taught expressly or inherently, the rejection is reversed as to all the claims.

## 35 USC 103

There are two grounds of rejection based on section 103. The first (I) relies on Zaoral alone. The second (II) relies on Zaoral taken in view of certain secondary references. We treat both these rejections together because of similarities in the issues presented.

The examiner's position as it pertains to the obviousness rejection based on Zaoral alone is that if Zaoral does not inherently teach the claimed invention, the possible differences such as dosage amount and form, would have been obvious to the artisan of ordinary skill due to the conventional nature of capsules and tablets and the routine experimentation associated with the determination of optimal dosages.

Appellants' position is that at the time DDAVP was recognized as an effective pharmaceutic, those skilled in the art universally believed that peptide hormones such as vasopressin, insulin and DDAVP were subject to attack and degradation by enzymes in the gastrointestinal tract of a human. This belief, in effect, precluded the use of DDAVP in oral dosage form for

-6-

Appeal No. 89-0259

gastrointestinal absorption and led to the testing and experimentation of alternate routes. Appellants have filed numerous declarations, excerpts from textbooks and reference works and journal articles in support of this position.

When the issue is nonobviousness under § 103, the sources are examined to determine what they teach to one of ordinary skill in the pertinent art as to the obviousness of the invention. In re Boe, 355 F.2d 961, 965, 148 USPQ 507 (CCPA 1966).

The numerous declarations and supporting materials submitted by appellants are relevant to the issue of what Zaoral would teach to one of ordinary skill. The declarations do show that the general rule accepted by those of ordinary skill in this art is that peptides are generally hydrolyzed in the stomach and it would be expected that their biological activities would be lost. However, Vavra, listed in the bibliography of Kinter, is also relevant to the issue at hand. Vavra teaches that the structural alteration in the molecule of DDAVP accounts for protection of the peptide against enzymatic degradation, thus increasing the biological half-life or even rendering the peptide orally active. Vavra found DDAVP to be orally active when present at concentrations 500x greater than dosages exerting a comparable antidiuretic effect in the subcutaneous test. Vavra observes that the behavior of DDAVP is unusual for vasopressin-

-7-

Appeal No. 89-0259

like compounds. It is also noted that some of the information presented in Vavra was known prior to 1974. See Edwards (1973) and Crevoisier and Berger (1968) cited by Vavra. Vavra also notes that expense not the chemistry of the peptide molecule may detract from the practical use of oral administration due to dosage size.[3] The teachings set forth by Vavra indicate that the general rule alluded to by declarants is not operative here. Accordingly, we find on this record that the Zaoral statement of peroral degradation would not be read in the limited sense suggested by appellants. We find the examiner has established a prima facie case of obviousness.

The declarations have been considered as indicia of nonobviousness. In light of Vavra, the expectations held and the results shown by declarants are not considered to be indicative of unexpected results in light of the recognized uniqueness of DDAVP. We especially note paragraphs No. 19-23 of the Declaration of Hans Vilhardt (Exhibit B) which pertains to differences in intestinal absorption patterns between humans and rats and guinea pigs, respectively. We acknowledge the differences shown but are unpersuaded as to the unexpected nature

---

[3] We note that the concentrations recited in the claims and the specification embrace amounts which are 500x the subcutaneous dosage. We also note Cunnah, cited by appellants, on page 257 also notes that cost is a factor in considering oral administration of DDAVP.

-8-

Appeal No. 89-0259

of the showing since the studies reported deal with proteins having high molecular weights while here we are concerned with peptides. It is not clear if the results shown for immunoglobulins should be extrapolated to the smaller peptides, especially DDAVP. We note again the Vavra observation of the unique properties for DDAVP. Accordingly, we agree with the examiner that "peroral" recitation by Zaoral coupled with the knowledge of the prior art is suggestive of oral administration of DDAVP. The rejection is affirmed.

Although we are affirming the Examiner's rejection based on 35 USC 103 in principle, inasmuch as we are relying on an additional reference (Vavra) for a more complete representation of the prior art, we will designate our decision as a new rejection under the provisions of 37 CFR 1.196(b).

The decision of the examiner is affirmed.

Any request for reconsideration or modification of this decision by the Board of Patent Appeals and Interferences based upon the same record must be filed within ONE MONTH from the date of the decision (37 CFR 1.197). Should appellants elect to have further prosecution before the examiner in response to the new rejection under 37 CFR 1.196(b) by way of amendment or showing of facts, or both, not previously of record, a shortened statutory period for making such response is hereby set to expire TWO MONTHS from the date of this decision.

-9-

Appeal No. 89-0259

No time period for taking any subsequent action in connection with this appeal may be extended under 37 CFR 1.136(a). See the final rule notice, 54 F.R. 29548 (July 13, 1989), 1105 O.G. 5 (August 1, 1989).

AFFIRMED.

<u>37 CFR 1.196(b)</u>.

Irving R. Pellman
Examiner-in-Chief                 )
                                  )
Sherman D. Winters                )
Examiner-in-Chief                 )   BOARD OF PATENT
                                  )      APPEALS
                                  )       AND
                                  )   INTERFERENCES
Thomas G. Wiseman                 )
Examiner-in-Chief                 )
                                  )

Stephen B. Judlowe
Hopgood, Calimafde, Kalil,
  Blaustein & Judlowe
60 East 42nd Street
New York, N.Y. 10165

-10-