# Exhibit 28

#21

FILE NO. 0849-001B
0430.RM

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of the application of:

Helmer Hagstam and                     :  Group    :  123
Hans Vilhardt

                                        :  Examiner:  J. Stone

Serial No.:    809,937

Filed     :    December 17, 1985

For       :    DDAVP ANTIDIURETIC AND
               METHOD THEREFOR

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.   20231

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to: Commissioner of Patents and Trademarks. Washington, D.C. 20231 on November 21, 1990
Name Rosann B. Macchio
Rosann B. Macchio
Signature
November 21, 1990
Date of Signature

## AMENDMENT AFTER APPEAL UNDER 37 C.F.R. 1.196(b)

Sir:

In response to the decision by the Board of Patent Appeals and Interferences rendered on September 21, 1990, please amend the claims as follows:

In the Claims

In claim 9, line 1, please delete "6" and insert --12-- therefor.

In claim 10, line 1, please delete "6" and insert --12-- therefor.

### REMARKS

The above-identified application was recently the subject of a decision by the Board of Patent Appeals and Interferences (the "Board").  There were two issues on Appeal; novelty of the subject claims in view of U.S. Patent No. 3,497,491 to Zaoral, et al. (Zaoral) and patentability under 35 U.S.C. § 103 over Zaoral alone or in combination with U.S. Patent No. 3,454,549 to Boissonnas, Kinter, et al. (Kinter), Chem. Abstracts, Vol. 97, 97:193479x (1982), abstracting J.Physiol., 243(5), pages R491-

R489 (1982) and Saffran, et al., (Saffran), <u>Can. J. Biochem</u>.,
Vol. 57, pages 548-552 (1979).

In this decision, The Board overturned the rejection under
35 U.S.C. § 102(b) and stated that the claims of record were
novel (See pg. 6). In addition, the Board modified the
patentability rejection by supplementing the cited art with the
newly cited reference Vavra, et al., <u>The Journal of Pharmacology
and Experimental Therapeutics</u>, Vol. 188, No. 1, pages 241-7,
1974 (Vavra). The Board specifically held that pursuant to the
declarations of record, "the general rule accepted by those of
ordinary skill in the art is that peptides are generally
hydrolyzed in the stomach, and it would be expected that their
biological activities would be lost" (See pg. 7). In this
regard, the Board's modified rejection of the claims of record
is explicitly premised on the alleged teachings in <u>Vavra</u> that
"the general rule alluded to by declarants is not operative
[with respect to DDAVP]" and <u>Vavra</u> teaches that DDAVP is unique
among peptides in this regard.

As to formal matters, the Board has noted several improper
dependencies in the claims of record, and has directed
applicants to take corrective action during future prosecution.
In addition, the rejection under § 103 is based on the newly
asserted <u>Vavra</u> reference. The Board has invited applicants to
respond to the <u>Vavra</u> reference before the Examiner with
arguments and/or factual presentations pursuant to 37 C.F.R.
1.196(b).

In response, applicants have amended the claims to correct
the claim dependency. Pursuant to this Amendment, applicants
respectfully submit the claims are now in proper form.

As to the newly cited reference <u>Vavra</u> and the rejection
based thereon, applicants respectfully traverse. <u>Vavra</u> does not

contradict or in any way reflect any special or unique understanding by those skilled in this art as to the survivability of DDAVP in the gastrointestinal tract.  More particularly, the Vavra reference taken as a whole, was considered by those skilled in this art as consistent with the then recognized properties of peptides, including DDAVP.  To the extent that Vavra concludes otherwise, the statements therein were unsupported by credible testing.  In specific support thereof, applicants submit the following evidence by Declaration:

| | | |
|---|---|---|
| 1. | Declaration of Hans Vilhardt | Exhibit A |
| 2. | Declaration of Myron Miller | Exhibit B |
| 3. | Declaration of Paul Czernichow | Exhibit C |
| 4. | Declaration of I.C.A.F. Robinson | Exhibit D |
| 5. | Declaration of Tomislav Barth | Exhibit E |

The Vavra reference presents a comparative study of DDAVP and lysine vasopressin (LVP) using water loaded wister rats as the model.  The testing attempted to discern the potency differences between LVP and DDAVP via subcutaneous injection in the rat model.  A secondary study was included wherein the two peptides were delivered to water loaded rats with the water load by gavage.

The primary conclusion reached by Vavra pursuant to his testing protocol, was that DDAVP has an antidiuretic potency that is 500 times that of LVP when delivered subcutaneously (See pg. 245).  In so concluding though, Vavra specifically criticized the techniques for this study, noting the non-parallelism of the dose - response curves for the two peptides, and suggested that the protocol needed to be re-evaluated.

The ancillary study by Vavra related to the delivery of the two peptides to the water loaded rats, via gavage.  This

- 3 -

procedure involved the loading of the rats with water equal to
4% of their respective body weight.  The peptide doses were
dissolved in this water load and delivered by gavage in a matter
of seconds.  It is well known that this volume of water exceeds
the normal capacity of the rat stomach (Vilhardt Decl., ¶ 4).
The relative amount of the two peptides was not related by
potency.

The delivery of the two peptides by gavage resulted in
measured activity for <u>both</u> peptides.  Consistent with the
subcutaneous study, DDAVP was found to be more potent in the
rats relative to LVP at the dose levels selected.  Based on this
data, the authors present several sweeping conclusions regarding
DDAVP, its resistance to metabolic degradation and its potential
suitability for oral delivery.  It is the conclusions presented
by <u>Vavra</u> that are now the foundation for the rejection of the
instant claims under the obviousness criterion.  In fact, these
conclusory statements by the authors are risky extrapolations
based on an improper protocol and unsupported by the underlying
data.  More importantly, and as expressed in the supporting
Declarations, those skilled in this art recognized the
deficiencies in <u>Vavra</u>, and accordingly, disregarded the
conclusory assertions therein.

To determine the patentability of an invention under 35
U.S.C. § 103, the cited references must be taken and reviewed as
a whole, <u>W.L. Gore and Associates</u> v. <u>Garlock, Inc.</u>, 727 F.2d
1540, 1550 (Fed. Cir., 1983), including those portions that
teach away from the invention.  The governing determination is
what the reference, reviewed in this manner, teaches or suggests
to those skilled in this art, <u>In re Dow Chemical Company</u>, 837
F.2d 469 (Fed. Cir., 1988).  In this context, the sum of the
information disclosed in <u>Vavra</u> was consistent with the then

- 4 -

prevailing understanding that DDAVP was de-activated by gastric enzymes under normal conditions, and this is how those skilled in the art understood Vavra.

The application of the Vavra reference in the present case, therefore, extends beyond the author's conclusions and includes the underlying techniques employed.  Several disparities are immediately apparent.

As a first point, the protocols used by Vavra are simply inappropriate for the study of the oral efficacy of DDAVP. Indeed, the procedure employed was directed to an entirely different purpose:  quantifying the relative potency of the two peptides.  More particularly, the oral introduction of the peptides with a 4% water load by gavage to wister rats is non-physiological and unsuitable as a vehicle to study dose administration routes.  Such a large loading is invariably characterized by distension of the stomach lining, dilution of the gastric enzymes, and reflux or vomiting of the DDAVP carrying water into the nasal and oral cavities of the rats. This dramatically distorts the conditions for peptide absorption to the point that no valid conclusions regarding pathway efficacy are possible.

The above is strongly confirmed by the results in the Vavra study, as both DDAVP and LVP are found to be active.  The oral activity of LVP in the Vavra model indicates that the abnormal protocol per se is responsible for the activity, as LVP is known to be inactive when delivered orally.  See specifically, the Miller Declaration, paragraph 3.  The gavage technique is specifically employed to suppress natural "endogenous vasopressin secretion, thereby increasing rat sensitivity to the biological action of the administered drugs."  This technique is suitable for measuring relative potency of peptides (Vavra's

- 5 -

objective), but is inappropriate for studying administration routes. The measured LVP activity may have resulted from reflux of the peptide onto the nasal membranes, or by the dilution of the gastric enzymes; in any event, the LVP activity is clearly inconsistent with <u>Vavra's</u> specific conclusions regarding the unique oral efficacy of DDAVP.

In addition, based on a quantitative analysis of the <u>Vavra</u> study, the relative potency of DDAVP and LVP was essentially independent of the route of delivery (i.e., subcutaneous or gavage). That is, an equi-potent dose of LVP remains as effective as an antidiuretic even when delivered by gavage in the <u>Vavra</u> model. This analysis is presented, in detail, in the Vilhardt Decl. par. 7. Accordingly, no unique properties can be attributed to DDAVP as to structural protection from gastric enzymes. LVP was expected to be as active on an equi-potent basis by gavage in the context of the <u>Vavra</u> protocols. And, of course, this does not take into account the vasoconstrictor properties associated with LVP; these would be expected to inhibit the oral activity of LVP relative to DDAVP which is essentially without vasoconstricting effect (See Robinson Decl., ¶ 6).

The alleged protection of DDAVP from gastric attack attributed to its structural modifications referred to by <u>Vavra</u> is an unlikely explanation for the greater exhibited half-life. It has been demonstrated that these structural changes do not <u>per se</u> increase metabolic stability of the peptide (See Vilhardt Decl., ¶ 8). Moreover, more plausible explanations for the bioactivity of DDAVP are known. As stated by Dr. Miller:

> The prolonged half-life of DDAVP in the bloodstream as cited by <u>Vavra</u>, may be related simply to differences in the rate of renal elimination as the primary mechanism of clearance, independent of proteolytic degradation of the tested peptides. Another possible explanation of this difference is a modification of

- 6 -

liver or target cell receptor compatibility of DDAVP, as VP analog. Therefore, slow turnover in the blood stream based on s.c. administration has not been established as reflecting greater stability against proteolysis.

The protocol selected by <u>Vavra</u> is also inappropriate for studying the absorption of peptides in the gastrointestinal tract for humans as it merely presents results from rats. One of ordinary skill in the art would not rely on rat studies as a predictor of human efficacy. The bioactivity of peptides in humans is related to a variety of factors, such as species-dependent pharmacological pathways including passage through tissue barriers and specific interactions with enzymes and receptors. As stated by Dr. Barth:

> Often these factors result in the elimination of expected effects or even the appearance of an antagonistic result. When studying the bio-availability of certain peptides administered through the same route to two different species, persons skilled in this art will rely on species-dependent experimental studies and disregard conclusions derived by approximation. (Declaration of Dr. Barth, ¶ 3).

There is, in fact, good evidence that the protein or peptide uptake in the rat is entirely different from the human. The rat blood circulatory system is permeable to proteins as large as immunoglobulins and their degradation products which range from the large polypeptides down to single amino acids for uptake from the gut or release to the brain fluid compartment. However, the human blood vessels have been found to be completely impermeable to even the very small peptide, e.g., DDAVP. Dr. Czernichow declares:

> Persons of ordinary skill in peptide hormone physiology would place little reliance on a rat-based study of the absorption of peptides in the gut as a prediction of human efficacy. Unlike other areas of physiological therapy, species differences are between rats and humans regarding the physiology of the gastricintestinal tract are well documented. No conclusions regarding human efficacy are supportable without actual testing on humans.

- 7 -

This is consistent with the Declaration of Dr. Vilhardt presented earlier in this application on the issue of species dependent studies. The Board has questioned whether Dr. Vilhardt's reference to immunoglobulins is equally applicable to the smaller peptides. This is indeed the case:

> The teaching of the art is that peptides and proteins do not get absorbed in the gastrointestinal tract because they are made up of amino acids bound together by peptide bonds known to be unstable in the gastrointestinal tract. It, therefore, has been concluded that positive results with immunoglobulins obtained in rats, but not in humans, indicate a fundamental difference as to the intestinal transport or carrier system between different animals and man. (Vilhardt Decl., ¶ 12).

The disclosure in the Vavra reference actually teaches away from the subject invention by questioning the "practicality" of the gavage delivery of DDAVP (See pg. 246). The Board has discounted this sentence in Vavra as reflecting cost considerations or the "expense" of the larger doses associated with the gavage delivery, purportedly 500 times the subcutaneous route. To the contrary, the statement by Vavra that oral delivery by gavage is impractical referred to the gavage technique itself, not any perceived increase in required dose. This is clearly established by Vavra's very next statement where he reflects on the current acceptability of intranasal administration at a dose level very close to that used with the gavage. Moreover, intranasal delivery has cost factors that often exceed oral administration, such as sterilization and shelf-life (See Vilhardt Decl., ¶ 10).

Finally, in conjunction with the appended Declarations, the fact that for ten years after the publication of the references relied on for the present rejections, no other researcher attempted to analysis the oral delivery of DDAVP for gastrointestinal absorption is compelling evidence of the non-

- 8 -

obvious nature of the present invention.  Peptide chemistry is well recognized as a fast paced field; if persons skilled in this art believed that <u>Vavra</u> had indeed discovered some unusual property of DDAVP, confirming test work would have surely followed.  The fact that there were no true studies on the oral efficacy of DDAVP in humans for ten years after <u>Vavra</u> published is a strong indication that persons skilled in this art did not view the <u>Vavra</u> reference as the Board now suggests.

It is respectfully submitted that the present invention, as claimed, is novel and patentable in all respects.  The evidence of record is substantial and rebuts any perceived case of <u>prima facie</u> obviousness based on the <u>Vavra</u> reference.  Applicants respectfully request allowance of the claims of record and passage of this case to issuance.

There is no fee due with this Amendment After Appeal.  If any payment or refund is due, please charge or credit our Deposit Account No. 08-2776.

Respectfully submitted,

Dated:  November 21, 1990

Dennis J. Mondolino
Registration No. 27,148
HOPGOOD, CALIMAFDE, KALIL,
 BLAUSTEIN & JUDLOWE
60 East 42nd Street
New York, New York  10165
(212) 986-2480

- 9 -

Exhibit A

Exhibit A

FILE NO. 0849-001B
0314.KW

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicants | : | Helmer Hagstam and Hans Vilhardt |
| Serial No. | : | 809,937 |
| Filed | : | December 17, 1985 |
| For | : | DDAVP ANTIDIURETIC AND METHOD THEREFOR |
| Group Art Unit | : | 123 |
| Examiner | : | J. Stone |

Honorable Commissioner of Patents
    and Trademarks
Washington, D.C.  20231

## DECLARATION OF HANS VILHARDT

Sir:

HANS VILHARDT declares and states that:

1.    I am one of the co-inventors of the subject matter of
the above-identified patent application.  I am submitting this
Declaration in support of the above-identified patent
application and in response to the decision by the Board of
Patent Appeals and Interferences, dated September 21, 1990.

2.    In the above-identified decision, the Board has raised
a new rejection under 35 U.S.C. § 103 based on Zaoral, in
combination with newly cited Vavra, et al., J. Pharmacol. Exp.
Ther. 188:  241-247, 1974.  I have reviewed this new reference
closely and based upon my review, I respectfully disagree with
the suggestion by the Board that Vavra, in combination with
Zaoral, suggests the instant invention as claimed.
Specifically, I find no experimental evidence in Vavra to
suggest "that the effect of certain structural changes on the
metabolism of the peptide results in its partial protection

against enzymic degradation." The facts and reasoning for this opinion are represented hereinbelow.

3. The Vavra reference presents a bifurcated study directed to the comparative application of DDAVP and LVP (synthetic vasopressin) to rats. Vavra selects two administration routes for applying DDAVP or LVP in the rat model. The first route involves the introduction of the peptides in rats using the standard subcutaneous delivery (injection). The excretions from these rats were studied under normal conditions of hydration with water ingestion being <u>ad libitum</u>.

4. The second administration route presented by Vavra involves the introduction of DDAVP or LVP into the rat's stomach, via gastric gavage. Pursuant to this technique, the animals are given an amount of water corresponding to 4% of their body weight through a stomach tube. The volume of water is completely administered in a matter of seconds AND far exceeds the capacity of the stomach. As a consequence of this procedure, the stomach will invariably be distended and water-loaded. In relative terms, this amount of fluid corresponds to the delivery of about two to three liters of water administered into the stomach of a normal human adult in a matter of seconds.

5. As a consequence of the extremely abnormal gastric condition of the test animals, the experimental procedure employed by Vavra to administer the DDAVP to water-loaded rats does not provide any teaching or suggestion as to the ability of DDAVP to survive enzymatic degradation. More particularly, the excessively large volume of water causes (a) significant

dilution of the gastric enzymes and (b) reflux or vomiting of DDAVP or LVP, thus exposing the drug to the lining of the rat's mouth and esophagus. As is well-known in the art, peptides are absorbed intact through these mucous membranes.

6.    Those persons of ordinary skill in the art have consistently understood that peptides and other compounds containing peptide bonds are cleaved and degraded by the proteolytic or protein-digesting enzymes of the gastrointestinal tract.  This understanding was not challenged by the Vavra study.

7.    Upon close inspection of the results in Vavra, those of ordinary skill in this art would not conclude that Vavra had discovered some special protection of DDAVP from gastric attack. Indeed, these results indicate that on an equimolar basis, LVP and DDAVP are orally absorbed to the same extent.  This is based on the following calculations derived from Vavra's study.  Vavra first determined that DDAVP is 500 times more biologically potent than LVP, as measured by its half life when delivered by subcutaneous injection.  The only oral dose of LVP tested was 30ug, exhibiting a 2.2 hour half-life (Fig. 2).  An equipotent dose of DDAVP would be 30ug/500 = 0.06ug.  However, the lowest dose of DDAVP tested orally was 0.1 ug and this resulted in a half-life of 3.4 hours.  The ratio of this dose (0.1 ug) to an equipotent dose of DDAVP (0.06 ug) = 0.6; the expected half-life of an equipotent dose of DDAVP would be (0.6 x 3.4 hrs) = 2.02 hours.  This value is actually slightly below the measured half-life for an equipotent dose of LVP (2.2 hours).  Therefore, the data presented by Vavra does not indicate that DDAVP is more metabolically resistant to enzymatic degradation or should be

- 3 -

absorbed at a higher rate from the gastrointestinal tract.  Any
conclusion to this effect is without support.

8.    We have subsequently (H. Vilhardt: Antidiuretic effect
of 1-deamino-4-asparagine-8-D-arginine vasopressin (4-Asn-DDAVP)
after oral administration to hydrated human volunteers, 13.
February 1985) demonstrated that the two structural
modifications introduced in DDAVP do not per se render increased
metabolic stability to the molecule.    Thus, the analogue 1-
deamino-4-asparagine-8-D-arginine vasopressin containing the two
modifications which according to Vavra et al. should create
greater biological activity pursuant to these structural
modifications, actually displayed substantially less
antidiuretic effect than DDAVP in humans after oral
administration; even after the highest dose (200 ug).

9.    The authors of Vavra specifically conclude that oral
delivery of DDAVP was not "practical".  The Board interprets
this express "teaching away" from the present invention by Vavra
as merely reflecting differences in costs associated with the
larger doses of DDAVP when applied orally by gastric gavage.
Although Vavra at first suggests that a dosage five hundred
times as much as the subcutaneous route would be needed, it is
later stated that intranasal application is the preferred route,
at dosage levels of 15 to 45 micrograms daily; a dosage level
significantly higher than that presented for subcutaneous
administration and in the range of oral gavage doses used by
Vavra.  Accordingly, one of ordinary skill in this art would
conclude that Vavra was not concerned with the cost associated
with the larger DDAVP doses associated with oral delivery; to
the contrary, Vavra considered the gastric gavage technique of

- 4 -

administering DDAVP with a huge water load as the impractical aspect of oral delivery independent of the quantity of DDAVP involved.

10.   Another contradiction of the alleged expense can be found in the fact that the oral formulation of DDAVP would not actually require the same exacting and expensive conditions and equipment necessary for sterile manufacture and refrigerated storage necessary for both injection and intranasal application. It is well-known that infective viral and bacterial contaminants of intranasal applicators are able to pass unchallenged through the mucous membranes lining the nasal region thus necessitating these special preparation and storage constraints.   Medicants capable of oral delivery, on the other hand, do not require this stringent level of control as the stomach destroys most contaminants.

11.   Peptide chemistry is a fast paced field.   If Vavra had been understood as suggesting that DDAVP would survive in the gut under normal physiological conditions in humans, others would surely have pursued this clinical option. It is axiomatic that the lack of testing on oral DDAVP in humans for ten years after Vavra dictates the conclusion that Vavra does not suggest this innovation.

12.   In the Board's decision, my earlier affidavit (¶¶ 19-23) regarding the differences in intestinal absorption between humans and rats and guinea pigs, respectively, was discussed. This affidavit was questioned as not being clear as to whether work involving immunoglobulins could be extrapolated to the smaller peptides, especially DDAVP.   It is well-known in the art

- 5 -

that the comparative observations on immunoglobulins and breakdown products thereof are also true for the smaller peptides.  The teaching the art is that peptides and proteins do not get absorbed in the gastrointestinal tract because they are made up of amino acids bound together by peptide bonds known to be unstable in the gastrointestinal tract.  It, therefore, has been concluded that positive results with immunoglobulins obtained in rats, but not in humans, indicate a fundamental difference as to the intestinal transport or carrier system between different animals and man.

13.   I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this statement is directed.

Dated: 19. November 1990

Hans Vilhardt, M.D. Ph.D.

- 6 -

Exhibit B

Exhibit B

FILE NO. 0849-001B
0312.KW

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants          :   Helmer Hagstam and Hans Vilhardt

Serial No.          :   809,937

Filed               :   December 17, 1985

For                 :   DDAVP ANTIDIURETIC AND METHOD THEREFOR

Group Art Unit      :   123

Examiner            :   J. Stone

Honorable Commissioner of Patents
     and Trademarks
Washington, D.C.  20231

## DECLARATION OF MYRON MILLER

Sir:

MYRON MILLER declares and states that:

1.   I am Professor of Geriatrics and Adult Development,
Vice Chairman & Clinical Director of Acute Care, Gerald and May
Ellen Ritter Department of Geriatrics and Adult Development, The
Mount Siani Medical Center, One Gustave  L. Levy Place, New
York, New York 10029.  I am submitting this declaration in
support of the above-identified patent application and in
response to the decision by the Board of Patent Appeals and
Interferences, dated September 21, 1990.

2.   I have reviewed the newly-added reference to Vavra, et
al., J. Pharmacol. Exp. Ther. 188: 241-274, 1974 and
respectfully disagree with the suggestion by the Board that
Vavza and Zaoral in combination suggest the oral therapy of
DDAVP.  In my opinion, persons skilled in this art would not
have concluded from these references that DDAVP was
physiologically effective in oral dosage form for humans.  The
basis for my opinion is as follows.

3.    The validity of the methodology used by Vavra is highly questionable.  The data in Vavra (specifically Table 2 and Figure 2 on page 244) reflects that both LVP (lysine-vasopressin) and DDAVP produced measurable effects on water excretion.  This result contradicts the established fact that LVP is destroyed by gastric enzymes.  The survival of LVP in the Vavra study suggests that the experimental procedure per se rendered the animals responsive to peptide absorption, independent of the type of peptide tested.  The activity of LVP likely resulted from a reflux of the administered drugs into the mouth and nasal passages.  Alternatively, this activity may have been due to the large fluid volume administered into the stomach diluting or impairing the proteolytic gastric and intestinal enzymes.  In fact, excessive water load by gavage was given specifically to suppress endogenous vasopressin secretion, thereby increasing rat sensitivity to the biological action of the administered drugs.

These conditions are not considered physiological and fail to suggest oral efficacy of DDAVP under conditions in which oral intake of the drug would normally take place.

4.    The prolonged half-life of DDAVP in the bloodstream as cited by Vavra, may be related simply to differences in the rate of renal elimination as the primary mechanism of clearance, independent of proteolytic degradation of the tested peptides.  Another possible explanation of this difference is a modification of liver or target cell receptor compatibility of DDAVP, as VP analog.  Therefore, slow turnover in the blood stream based on s.c. administration has not been established as reflecting greater stability against proteolysis.

5.    With regard to the statement by Vavra on page 246, that intranasal application of DDAVP does not present discomfort

- 2 -

to the patient, discomfort is not the only factor which must be considered in the suitability of an intranasal drug. Even in the absence of discomfort, host factors such an anatomic abnormality of the nasal passages or the presence of disorders of the mucous membranes due to allergy or respiratory illness can totally interfere with the clinical effectiveness of an intranasally administered drug. Thus, there has always been a strong reason to pursue the development of a drug foRm which will be active when administered by mouth.

6.    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statement may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this statement is directed.

Dated: 11|14|90

_Myron Miller_

Myron Miller, M.D.

- 3 -

Exhibit C

Exhibit C

# Assistance ❤ Publique

## hôpitaux de Paris

# HÔPITAL ROBERT DEBRÉ

## ENDOCRINOLOGIE, MÉTABOLISME ET DIABÉTOLOGIE

### Professeur Paul CZERNICHOW, Chef de service

Pr Henri LESTRADET (Consultant)
Praticiens hospitaliers
Dr J. LEGER • Dr H. OGIER
Chef de clinique
Dr. D. Simon
Consultations
▶ *Endocrinologie - Croissance*
Pr P. CZERNICHOW
Dr D. EVAIN-BRION
Dr J. LEGER
Dr A. PAULSEN
Dr R. POMAREDE
▶ *Diabète*
Pr P. CZERNICHOW
Dr C. LEVY-MARCHAL
Dr N. TUBIANA-RUFI
Dr B. GIRON
▶ *Métabolisme*
Dr H. Ogier
▶ *Obésité*
Dr V. BALTAKSE
▶ *Gynécologie*
Dr D. LEROYER
▶ *Psychologie*
A. SANGLADE
H. HENRION

FILE NO. 0849-001B
0313.KW

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants        :    Helmer Hagstam and Hans Vilhardt

Serial No.        :    809,937

Filed             :    December 17, 1985

For               :    DDAVP ANTIDIURETIC AND METHOD

                       THEREFOR

Group Art Unit    :    123

Examiner          :    J. Stone

Honorable Commissioner of Patents
     and Trademarks
Washington, D.C. 20231


DECLARATION OF PAUL CZERNICHOW


Sir:


PAUL CZERNICHOW declares and states:

1.    I am Professor of Pediatrics at the Hospital Robert Debre
(Endocrinologie, Métabolisme et Diabétologie), Paris with specialties
in endocrinology and diabetics. I am submitting this Declaration in
support of the above-identified patent application and in response to
the decision by the Board of Patent Appeals and Interferences, dated
September 21, 1990.

2.    I have reviewed the new reference to Vavra et al., (J.
Pharmacol. Exp. Ther. 188: 241-247, 1974). According to the above-
noted decision, the Vavra reference in combination with Zaoral et al.
allegedly suggests the use of DDAVP in oral dosage form for

gastrointestinal absorption in humans. This is a substantial extrapolation of the results provided in the cited references and presents a conclusion that those skilled in this art would not make.

3.    The testing protocols applied in *Vavra* are highly questionable and persons skilled in the art would be very cautious in making any predictions based on these results. The validity of the protocol is suspect due to the use of excessive water loading at high DDAVP concentrations. This would almost invariably lead to DDAVP absorption by the oral and nasal membranes of the rats. Absorption of DDAVP by these membranes was consistent with the prior practice and knowledge.

4.    In addition, the *Vavra* study is limited to rats. Persons of ordinary skill in peptide hormone physiology would place little reliance on a rat-based study of the absorption of peptides in the gut as a prediction of human efficacy. Unlike other areas of physiological therapy, species differences are always critical in this field, and the species differences between rats and humans regarding the physiology of the gastric-intestinal tract are well documented. No conclusions regarding human efficacy are supportable without actual testing on humans.

5.    The fundamental understanding of persons skilled in peptide chemistry was that peptides were degraded in the human gut. This understanding was based on numerous studies on many different peptide compounds. The questionable protocols of *Vavra* would have rendered this reference ineffective in changing this understanding in regard to DDAVP in humans.

6.    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under

section 1001 of Title 18 of the United States Code, and that such willful false statement may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this statement is directed.

Dated:

15·XI· 90

_____

PAUL CZERNICHOW

Exhibit D

Exhibit D

FILE NO. 0849-001B
0426.FM

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of the application of:

| | |
|---|---|
| Helmer Hagstam and | : Group : 123 |
| Hans Vilhardt | : Examiner: J. Stone |
| Serial No.: 809,937 | |
| Filed : December 17, 1985 | |
| For : DDAVP ANTIDIURETIC AND | |
| METHOD THEREFOR | |

Honorable Commissioner of
Patents and Trademarks
Washington, D.C.  20231

## DECLARATION OF DR. I.C.A.F. ROBINSON

Sir:

I.C.A.F. ROBINSON, M.A. and Ph. D., declares and states:

1.   I am a member of the Division of Neurophysiology and
Neuropharmacology at the National Institute of Medical Research,
The Ridgeway, Mill Hill, London NW7 1AA.  I am submitting this
Declaration in support of the above-identified patent
application and in response to the decision by the Board of
Patent Appeals and Interferences, dated September 21, 1990.

2.   I have carefully considered the reference cited by the
Board, Vavra, et al., J. Pharmacol. Exp. Ther. 1888: 241-247,
1974, in relation to its teachings regarding the activity of
DDAVP by the subcutaneous and oral route.  I must respectfully
disagree with the suggestion by the Board that Vavra, in
combination with the Zaoral patent (U.S. Patent No. 3,497,491),
suggests the administration of DDAVP orally for gastrointestinal
absorption.  The Vavra reference fails as an effective
reference, because no evidence is presented as to the relative

stability of the two peptides in either subcutaneous tissue or gastrointestinal fluids. These peptides were not compared at equi-effective doses. The data indicates that LVP and DDAVP have non-parallel dose-response curves. This makes it essential to compare equi-active doses in at least two response levels in order to correlate oral with subcutaneous potency. Without this comparison, there is no demonstration of any unique property of DDAVP vis-a-vis oral delivery.

3.    In the experiments presented in Vavra on S.C. administration, the dose response curves are significantly non-parallel (Fig. 1). A potency ratio (DDAVP:LVP) of approximately 500 is derived from linearised best fit, and is invalid at both extremes of the sigmoid log dose response relationship. In particular, the higher doses of DDAVP would require to be matched by >1000-fold doses of LVP from Fig. 1. The maximal dose effect was not determined for either peptide. Inspection of the data points in Fig. 1, and the data in Table 2 show that the dose-response curve for LVP was considerably shallower than that for DDAVP and examined over a more limited effect range.

4.    The experiment illustrated in Fig. 2 and Table 3 compares LVP and DDAVP after oral administration. DDAVP was given at 75-fold and 300-fold lower doses than LVP, not 500-fold lower. Furthermore, the effect of LVP (half time of 125 min.) lay below the dose-response relationship characterized in Figure 1, and the effect of the highest dose of DDAVP (half time of 326 min.) lay above the range illustrated in Figure 1. This selection of doses defeats any plausible predictions regarding the stability of DDAVP in the gastrointestinal tract.

5.    In fasted rats, the subcutaneous potency ratio between DDAVP and LVP was clearly increased since a 400-fold higher dose of LVP was completely inactive (Table 6). This finding is

relevant in that low circulating concentrations of either peptide would be expected after oral absorption. If low concentrations of DDAVP were more effective than proportionally low doses of LVP, than it is not possible to determine the relative oral absorption simply from the biological effect, without measuring the circulating concentrations of both peptides after absorption.

6.    _Vavra, et al._ suggests that the oral activity of DDAVP may depend on the structural changes which may partially protect the peptide from degradation, though it is likely that other factors improved the passage of the DDAVP molecule across the intestinal or gastric surfaces. It is noteworthy that LVP was significantly active after oral administration, and no unnatural structural changes are present in that peptide. It was also possible that the known vasoconstrictor activities of LVP on gastrointestinal vessels reduced its oral efficacy relative to DDAVP which lacks this vasoconstrictor effect. This factor was not discussed in _Vavra_.

7.    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this statement is directed.

Dated:

I.C.A.Y. Robinson

Exhibit E

Exhibit E

FILE NO. 0849-001B
0427.RM

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of the application of:

Helmer Hagstam and                    :   Group   :   123
Hans Vilhardt
                                       :   Examiner:  J. Stone
Serial No.:    809,937

Filed     :    December 17, 1985

For       :    DDAVP ANTIDIURETIC AND
               METHOD THEREFOR

Honorable Commissioner of
 Patents and Trademarks
Washington, D.C.  20231

### DECLARATION OF TOMISLAV BARTH

Sir:

     TOMISLAV BARTH declares and states:

     1.   I am a Professor at the Czechoslovak Academy of
Sciences, in the Department of Organic Chemistry and
Biochemistry.  I have more than 25 years experience in the field
of peptide biochemistry, metabolism, pharmacology and
pharmacokinetics.  I am submitting this Declaration in support
of the above-identified patent application and in response to
the decision by the Board of Patent Appeals and Interferences.

     2.   I have reviewed the newly added reference Vavra, et
al., J. Pharmacol. Exp. Ther. 1988: 241-247, 1974, and
respectfully disagree with the suggestion by the Board that
Vavra, in combination with the Zaoral patent (U.S. Patent No.
3,497,491), suggests the efficacy and oral DDAVP in humans.

     3.   My years of experience have persuaded me that there is
no justification for transferring pharmacology data obtained
from one species of laboratory animals to another or to humans

This inability to predict results and benefits is related to a variety of factors, such as species-dependent pharmacological pathways of action where the peptides have to pass different tissue barriers and to interact with distinct macromolecular systems (e.g., enzymes and receptors). More particularly, these factors invariably differ and are specific to select species, defeating the ability to predict between species in this field. Often these factors result in the elimination of expected effects or even the appearance of an antagonistic result. When studying the bio-availability of certain peptides administered through the same route to two different species, persons skilled in this art will rely on species-dependent experimental studies and disregard conclusions derived by approximation.

4.    I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this statement is directed.

Dated:

Tomislav Barth