# Exhibit 29

Appeal No. 05-1284

# United States Court of Appeals

*for the*

# Federal Circuit

FERRING B.V. and AVENTIS PHARMACEUTICALS, INC.,

*Plaintiffs-Appellants,*

– v. –

BARR LABORATORIES, INC.,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
IN CASE NO. 02-CV-9851, JUDGE CHARLES L. BRIEANT

## NON-CONFIDENTIAL BRIEF FOR
## PLAINTIFF-APPELLANT FERRING B.V.

DENNIS J. MONDOLINO, ESQ.
STEPHEN B. JUDLOWE, ESQ.
ESTHER H. STEINHAUER, ESQ.
EDWARD M. REISNER, ESQ.
JEFFREY M. GOLD, ESQ.
TIMOTHY P. HEATON, ESQ.
MORGAN, LEWIS & BOCKIUS, LLP
*Attorneys for Plaintiff-Appellant*
   *Ferring B.V.*
101 Park Avenue
New York, New York 10178
(212) 309-6000

April 25, 2005

*Non confidential*

# CERTIFICATE OF INTEREST

Counsel for Appellant Ferring B.V. certifies as follows:

1.    The full name of every party represented by me is: Ferring B.V.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Ferring B.V.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      Ferring B.V. is a wholly owned subsidiary of Ferring Holding SA, Switzerland.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Morgan Lewis & Bockius LLP, by Dennis J. Mondolino, Stephen B. Judlowe, Esther H. Steinhauer, Edward M. Reisner, Jeffrey M. Gold, and Timothy P. Heaton.

Date: April 25, 2005

                 Dennis J. Mondolino
                 Stephen B. Judlowe
                 Esther H. Steinhauer
                 Edward M. Reisner
                 Jeffrey M. Gold
                 Timothy P. Heaton
                 MORGAN, LEWIS & BOCKIUS LLP
                 101 Park Avenue
                 New York, NY  10178
                 (212) 309-6000

                 *Attorneys for Plaintiff-Appellant*
                 Ferring B.V.

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES                                        1

II.   STATEMENT OF JURISDICTION                                        3

III.  STATEMENT OF THE ISSUES                                          4

IV.   STATEMENT OF THE CASE                                            6

V.    STATEMENT OF THE FACTS                                           9

      A.   The Parties                                                 9

      B.   The '398 Patent                                             10

           1.   The Prior Art and the Problem                          10

           2.   The Patented Invention and the Claims                  13

           3.   The Claim Term
                "1-deamino-8-D-arginine vasopressin"
                Literally Encompass the Acetate Salt                   14

      C.   Prosecution History of the '398 Patent                      16

      D.   Barr's Accused Product                                      25

      E.   The District Court's Opinion                                26

           1.   Inequitable Conduct                                    26

           2.   Non-Infringement                                       33

                a.   Claim Construction                                33

                b.   Literal Infringement                              35

                c.   Infringement by Equivalents                       36

VI.     SUMMARY OF THE ARGUMENT                          38

VII.    ARGUMENT                                         40

        Point I.      The Standard of Review             40

        Point II.     The District Court Erroneously Granted
                      Summary Judgment Holding the '398 Patent
                      Unenforceable for Inequitable Conduct    40

              A.      The Law of Inequitable Conduct     40

              B.      The Prior Contacts Relationships of
                      the Declarants With Applicants Were Not
                      Material                           41

              C.      The Finding of an Intent to Mislead was
                      Erroneous                          47

                      1.    The District Court Improperly Inferred
                            Intent Solely From Its Finding of
                            Materiality                  47

                      2.    It was Error on Summary Judgment to
                            Choose an Inference Unfavorable to the
                            Nonmoving Parties Rather Than
                            Other Reasonable Inferences Inimical
                            to Grant of Summary Judgment  49

        Point III.    The District Court Erred In
                      Granting Barr's Motion for
                      Summary Judgment of Noninfringement    54

              A.      The Law of Patent Infringement     54

              B.      The Court's Construction of the Claim
                      Term "1-deamino-8-D-arginine
                      vasopressin" as Covering Desmopressin
                      Only in its Free Base Form And Not in

its Acetate Salt Form Was Incorrect 56

C.   Barr's ANDA Product Literally Infringes
However the Claims are Construed 61

D.   The District Court's Finding of
Noninfringement Under the Doctrine
of Equivalents is Clearly Erroneous 63

VIII.  CONCLUSION 65

STATEMENT OF COMPLIANCE WITH FED.R.APP.
P. 32(A)(7)(C) 66

Confidential Materials Omitted
p. 16, 25, 26, 36, 57, 58, 61, 62, 63, 64:
Confidential Information Regarding Barr's Proposed ANDA Product

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.,*
960 F.2d 1020 (Fed. Cir. 1992) ................................................................49

*Abbott Laboratories Inc. v. TorPharm Inc.,*
300 F.3d 1367 (Fed. Cir. 2002) ..........................................................58, 64

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970).................................................................................50

*Al-Site Corp. v. The Bonneau Co.,*
30 U.S.P.Q. 2d 1123 (C.D. Cal. 1993) .....................................................50

*Allen Eng. Corp. v. Bartell Inds., Inc.,*
299 F.3d 1336 (Fed. Cir. 2002) ................................................................41

*American Hoist & Derrick Co. v. Sowa & Sons Inc.,*
725 F.2d 1350, 1362 (Fed. Cir. 1984) .................................................30, 53

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...........................................................................40, 49

*Atlas Powder Co. v. E.I. duPont de Nemours & Co.,*
750 F.2d 1569 (Fed. Cir. 1984) ...........................................................54, 62

*Baker Oil Tools, Inc. v. Geo Vann, Inc.,*
828 F.2d 1558 (Fed. Cir. 1987) ................................................................41

*In re Baxter,*
656 F.2d 679 (CCPA 1981) ......................................................................62

*Beckson Marine Inc. v. NFM Inc.,*
292 F.3d 718 (Fed. Cir. 2002) ..................................................................40

*Braun Inc. v. Dynamics Corp. of America,*
975 F.2d 815 (Fed. Cir. 1992) ..................................................................48

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003) .................................................................. 55

*Burlington Industries Inc. v. Dayco Corp.*,
849 F.2d 1418 (Fed. Cir. 1988) .................................................................. 50

*Cardiac Pacemakers Inc. v. St. Jude Medical Inc.*, 2002 WL 1801525
(S.D. Ind. 2002), *aff'd in part, rev'd – but on other grounds*, 381 F.3d
1371 (Fed. Cir. 2004) .................................................................. 31

*Caterpillar Tractor Co. v. Berco S.P.A.*,
714 F.2d 1110 (Fed. Cir. 1983) .................................................................. 56

*Computer Identics Corp. v. Southern Pacific Co.*,
756 F.2d 200 (1st Cir. 1985) .................................................................. 49

*Copelands Enterprises Inc. v. CNV Inc.*,
945 F.2d 1563 (Fed. Cir. 1991) .................................................................. 48

*Cyber Corp. v. AS Etches, Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) .................................................................. 40

*Dayco Products, Inc. v. Total Containment, Inc.*,
329 F.3d 1358 (Fed. Cir. 2003) ........................................................... 40, 48, 50

*Desper Products, Inc. v. Accusound Laboratories, Inc.*,
157 F.3d 1325 (Fed. Cir. 1998) .................................................................. 54

*Eli Lilly & Co. v. American Cynamide Co.*,
82 F.3d 1568 (Fed. Cir. 1996) .................................................................. 60

*Fiskars Inc. v. Hunt Manufacturing Co.*,
221 F.3d 1318 (Fed. Cir. 2000) ........................................................... 48, 62

*Genentech, Inc. v. Chiron Corp.*,
112 F.3d 495 (Fed. Cir. 1997) .................................................................. 62

*Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*,
262 F.3d 1333 (Fed. Cir. 2001) .................................................................. 56

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.*,
339 U.S. 605 (1950)................................................................54, 55

*Greiner v. Volkswagenwerk Aktiengesellschaft Volkswagen of
America, Inc.*,
429 F. Supp. 495 (E.D. Pa. 1977)...............................................49

*Halliburton Co. v. Schlumbergertechnology Corp.*,
925 F.2d 1435 (Fed. Cir. 1991) .............................................52, 53

*Hebert v. Lisle Corp.*,
99 F.3d 1109 (Fed. Cir. 1996) .......................................................48

*Hoechst-Roussel Pharm., Inc. v. Lehman*,
109 F.3d 756 (Fed. Cir. 1997) .......................................................61

*Hoffman-LaRoche Inc. v. Promega Corp.*,
323 F.3d 1354 (Fed. Cir. 2003) .....................................................32

*Intel Corp. v. Via Technologies Inc.*,
176 F. Supp. 2d 991 (N.D. Cal. 2001) ..........................................50

*Inwood Laboratories, Inc. v. Young*,
723 F. Supp. 1523 (D.D.C. 1989)...................................................63

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002) .......................................................46

*KangaROOS v. Caldor, Inc.*,
778 F.2d 1571 (Fed. Cir. 1985) ...............................................48, 52

*Kaplesh Kumar v. Ovomic Battery, Inc.*,
351 F.3d 1364 (Fed. Cir. 2003) .....................................................34

*Kingsdown Medical Consultants v. Hollister, Inc.*,
863 F.2d 867 (Fed. Cir. 1988) ..................................................41, 52

*Leggett & Platt Inc. v. Hickory Springs Mfg Co.*,
285 F.3d 1353 (Fed. Cir. 2002) .....................................................50

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996) .................... 54, 58

*Merck & Co. v. Teva Pharmaceuticals USA Inc.,*
347 F.3d 1367 (Fed. Cir. 2003) ....................................................... 34, 55, 59

*Metabolic Laboratories v. Laboratory Corp. of America,*
370 F.3d 1354 (Fed. Cir. 2004) ................................................................. 58

*Minnesota Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.,*
976 F.2d 1559 (Fed. Cir. 1992) ................................................................. 55

*Modine Manufacturing Co. v. U.S.I.T.C.,*
75 F.3d 1545 (Fed. Cir. 1986) .................................................................. 58

*Molins PLC v. Textron, Inc.,*
48 F.3d 1172 (Fed. Cir. 1995) ............................................................ 41, 42

*Monsanto Co. v. Bayer Bioscience N.V.,*
363 F.3d 1225 (Fed. Cir. 2004) ................................................................. 47

*Nordberg Inc. v. Telsmith Inc.,*
82 F.3d 394 (Fed. Cir. 1996) ......................................................... 30, 51, 52

*Norian Corp. v. Stryker Corp.,*
363 F.3d 1321 (Fed. Cir. 2004) ................................................................. 55

*Northern Telecom Inc. v. Datapoint Corp.,*
908 F.2d 931 (Fed. Cir. 1990) ............................................................ 41, 48

*Orthopedic Equipment Co. Inc. v. All Orthopedic Appliances, Inc.,*
707 F.2d 1376 (Fed. Cir. 1983) ................................................................. 52

*Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,*
984 F.2d 1182 (Fed. Cir. 1993) ..........................................................*passim*

*Pfizer Inc. v. Dr. Reddy's Lab's.,*
359 F.3d 1361 (Fed. Cir. 2004) ................................................................. 60

*Prima Tek II LLC v. Polypop S.A.R.L.,*
318 F.3d 1143 (Fed. Cir. 2003) ................................................................. 49

*Refac International Ltd. v. Lotus Development Corp.,*
81 F.3d 1576 (Fed. Cir. 1996) ......................................................... *passim*

*Rohm and Haas Co. v. Crystal Chemical Co.,*
722 F.2d 1556 (Fed. Cir. 1983) ................................................................. 32

*Schering Corp. v. Geneva Pharm.,*
339 F.3d 1373 (Fed. Cir. 2003) ................................................................. 62

*Southwall Tex., Inc. v. Cardinal IG Co.,*
54 F.3d 1570 (Fed. Cir. 1995) .................................................................. 54

*Stephens v. Tech International, Inc.,*
393 F.3d 1269 (Fed. Cir. 2004) ........................................................ 34, 59

*TI Group Automotive Systems (North America) Inc. v. VDO North
America, LLC,*
375 F.3d 1126 (Fed. Cir. 2004) ................................................................. 58

*Texas Digital Systems, Inc. v. Telegenix, Inc.,*
308 F.3d 1193 (Fed. Cir. 2002) ................................................................. 55

*Therma-Tru Corp. v. Peachtree Doors Inc.,*
44 F.3d 988 (Fed. Cir. 1995) .................................................................... 48

*Union Pacific Resources Co. v. Chesapeake Energy Corp.,*
236 F.3d 684 (Fed. Cir. 2001) .................................................................. 48

*United States v. Diebold,*
369 U.S. 654 (1962) ................................................................................. 49

*Upjohn Co. v. Mova Pharm. Corp.,*
225 F.3d 1306 (Fed. Cir. 2000) ................................................................. 48

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) .................................................................. 58

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997).................................................................................55

*Water Technologies Corp. v. Calco Ltd.*,
850 F.2d 660 (Fed. Cir. 1988) ................................................................62

## FEDERAL STATUTES

21 C.F.R. § 60.3(b) .................................................................................59

21 C.F.R. § 314.95(c) .............................................................................62

21 C.F.R. § 320.1 ...................................................................................59

37 C.F.R. § 1.56(a) .................................................................................42

21 U.S.C. § 355(j) ................................................................................6, 8

28 U.S.C. § 1295......................................................................................3

28 U.S.C. § 1338......................................................................................3

28 U.S.C. § 1367......................................................................................3

28 U.S.C. § 2107......................................................................................3

35 U.S.C. § 156(f)...................................................................................58

35 U.S.C. § 271...................................................................................6, 60

## MISCELLANEOUS

Black's Law Dictionary (2004) ...............................................................49

Fed. R. Civ. P. 56 ...................................................................................40

Fed. R. App. P. 4......................................................................................3

Manual of Patent Examining Procedure,
§ 716(3) (5th ed. 1983-1994)........................................................................42

# I.   STATEMENT OF RELATED CASES

A case is currently pending in the District Court for the District of Delaware entitled *Ferring B.V. v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industrials, Ltd.*, Civ. Action No. 04-884-SLR.  Defendants in that case have filed an ANDA with a Paragraph IV Certification seeking FDA approval to market an oral form of desmopressin acetate prior to the expiration of U.S. Patent No. 5,047,398, the patent at issue in this appeal.

Following the District Court's entry of Judgment in this case, several class actions have been filed alleging that appellants herein have violated Section 2 of the Sherman Antitrust Act 15 U.S.C. § 2.  These actions are: *Meijer, Inc. and Meijer Distribution, Inc. v. Ferring B.V., Ferring Pharmaceuticals, Inc., and Aventis Pharmaceuticals, Inc.*, SDNY C.A. No. 05-CV-2237; *Helen Seamon v. Ferring B.V., Ferring Pharmaceuticals, Inc., and Aventis Pharmaceuticals, Inc.*, SDNY CA. 05-CV-2398; *Vista Healthplan, Inc. v. Ferring B.V., Ferring Pharmaceuticals, Inc., and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-2628; *Louisiana Wholesale Drug Company, Inc. v. Ferring B.V., Ferring Pharmaceuticals, Inc., and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-2872; *Rochester Drug Co-Operative, Inc. v. Ferring B.V., Ferring Pharmaceuticals, Inc. and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-2928; *Pennsylvania Employees Benefit Trust Fund v. Ferring B.V., Ferring Pharmaceuticals, Inc. and Aventis*

*Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-2835; *Painters District Council, No. 30 Health and Welfare Fund v. Ferring B.V., Ferring Pharmaceuticals, Inc., and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-2987; *Philadelphia Federation of Teachers Health and Welfare Fund, on behalf of itself and all others similarly situated v. Ferring B.V., Ferring Pharmaceuticals, Inc. and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-CV-3178; and *Central Suffolk Hospital v. Ferring B.V., Ferring Pharmaceuticals, Inc. and Aventis Pharmaceuticals, Inc.*, SDNY CA No. 05-3833.

## II.    <u>STATEMENT OF JURISDICTION</u>

District Court jurisdiction over this action was based upon 28 U.S.C. §§ 1338(a) and 1367.

The District Court entered Judgment against plaintiffs on February 16, 2005. This Judgment is final and appealable.  Plaintiffs timely filed a notice of appeal on February 24, 2005 in accordance with 28 U.S.C. § 2107 and Fed. R. App. P. 4. This Court's jurisdiction is based upon 28 U.S.C. § 1295(a)(1).

## III.    STATEMENT OF THE ISSUES[1]

1.     Did the District Court err in granting summary judgment that U.S. Patent No. 5,047,398 ("the '398 patent") is unenforceable because of the patentees' inequitable conduct during patent prosecution "by many people over a long time"?  In particular:

a.     In deciding the "materiality" issue, did the District Court err by impermissibly applying the principle that all declarations in aid of patentability are material, while not invoking or recognizing the authorities making clear that not everything omitted from such declarations (and specifically a prior contact with the patent assignee) necessarily rises to the level of materiality?

b.     Did the District Court err in resolving a contested issue of material fact when it determined that three scientists who submitted declarations to the Patent Office during prosecution to distinguish prior art made material omissions when they did not identify prior contacts with appellant Ferring, the assignee of the patent in suit?

c.     In deciding the "intent" issue, did the District Court err when, in the absence of any evidence in the record of intent to mislead the Patent Office by any person, it (i) inferred intent solely from the omissions of prior

---

[1]     Concurrently with the filing of this brief, Appellant Ferring is filing a motion to expedite this Appeal to timely obtain the Federal Circuit's decision on these issues.

contacts, and (ii) further erred when it adopted an inference of an intent to mislead instead of other available reasonable inferences explaining why the prior contacts were not included in the declarations?

        2.      Did the District Court err in granting summary judgment of non-infringement of claims 1-3, 5-9 and 11 of the '398 patent?  In particular:

        a.      Was there error in construing the recited claim term "1-deamino-8-D arginine vasopressin" (desmopressin or DDAVP) to not encompass its ubiquitous acetate salt that had been used exclusively for a decade, and where the artisans in the field (including appellee Barr) used desmopressin and DDAVP to refer to both desmopressin in its free base and acetate salt forms?

        b.      Did the District Court err in not finding at least a contested issue of material fact concerning both literal infringement and infringement under the doctrine of equivalents – both under the claims as construed by the District Court and under the corrected claim construction appellants urge here?

## IV.  STATEMENT OF THE CASE

In July 2002, Barr submitted an Abbreviated New Drug Application ("ANDA") to the FDA seeking approval to sell a generic version of plaintiffs' 0.1 mg and 0.2 mg DDAVP® tablets[2] in the United States prior to the expiration of Ferring's '398 patent – and prior to the expiration of three other patents listed in the Orange Book as covering plaintiffs' DDAVP tablets.  Thereafter, plaintiffs received Barr's Paragraph IV Notification under Section 505(j) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j) ("Notification Letter") on or about November 4, 2002, contending that the '398 patent (and the three other Orange Book listed patents) were invalid, but did not raise noninfringement of the '398 patent as a defense.  (Notification Letter, A4078-4080).

After due investigation including a review of Barr's Notification Letter and portions of the Drug Master File[3] relied on in Barr's ANDA, plaintiffs initiated this suit on December 13, 2002 charging infringement of the '398 patent[4] under 35 U.S.C. § 271(e)(2)(A).  (Complaint, A64-66).  Barr answered, denying plaintiffs'

---

[2]    The active ingredient in plaintiffs' tablets is desmopressin acetate.

[3]    The DMF provides detailed information for the synthesis and preparation of the drug substance desmopressin acetate in Barr's generic tablets.

allegations and asserting counterclaims seeking declaratory judgments of noninfringement, invalidity and unenforceability of the '398 patent. (Answer, A67-75). On January 6, 2004, plaintiffs filed an Amended Complaint adding a charge of willful infringement. (Amended Complaint, A1044).

On April 16, 2004 the parties filed opening memoranda on claim construction in which interpretation of several of the claim terms was disputed. (A2033, 2942). The parties also filed motions for summary judgment. Plaintiffs moved for summary judgment that Barr infringed the asserted claims of the '398 patent (A4061), and Barr moved for summary judgments of non-infringement, of unenforceability due to the inequitable conduct by patentees and for partial summary judgment of invalidity of claims 6 and 11. (A3363, 3429, 3895). On May 7, 2004, Plaintiffs opposed Barr's summary judgment motions (A5179, 5217, 5558), and the parties filed responsive claim construction briefs (A4348, 5050). On June 9, 2004, Barr filed a Supplemental Summary Judgment of Non-Infringement Memorandum based on a Ferring Citizen Petition submitted to the FDA, and Plaintiffs responded on June 25, 2004. (A6342, 6392)

---

[4]    The three other Orange Book patents, not asserted in the complaint, were added by Barr in its counterclaims. Barr subsequently withdrew these patents from suit. (Amended Answer, A440-447).

The district Court held oral argument on the summary judgment motions on

July 7, 2004.[5] (Court Tr. A6419). On February 7, 2005, the District Court issued a

Memorandum and Order ("Opinion", A1-35), granting Barr's summary judgment

motions of non-infringement and inequitable conduct, and denying Barr's invalidity

motion as moot. Barr's counterclaim for invalidity was dismissed on this basis.

(A35-36).

Judgment was entered on February 16, 2005. (A36-37). Plaintiffs timely

filed their Notice of Appeal on February 24, 2005. (Notice of Appeal, A6575).

Entry of the Judgment ended the statutory 30 month stay of FDA approval to

market which was to expire on May 4, 2005. (21 U.S.C. § 355(j)(5)(B)(iii)). As

matters now stand, Barr can launch its generic desmopressin acetate product if and

when its ANDA is approved by the FDA.

---

[5]    Immediately prior to the hearing, plaintiffs withdrew their motion for
summary judgment of infringement without prejudice. (Letter, A6404-05;
Court Tr. p. 2, A6420).

## V.    STATEMENT OF THE FACTS

U.S. Patent No. 5,047,398 ("the '398 patent") in suit is for "DDAVP

Antidiuretic and Method Therefor", and issued on September 10, 1991.  (A59-61).

The named inventors are Helmer Hagstam and Hans Vilhardt.  The '398 patent is

owned by plaintiff Ferring and is exclusively licensed to plaintiff Aventis to market

and sell DDAVP® products covered by the patent in the United States.  (A2).

### A.    The Parties

Plaintiff-Appellant Ferring B.V. is a small privately held pharmaceutical

company organized under the laws of The Netherlands whose business is the

research, development, manufacture and sale of peptide based pharmaceuticals used

to treat a variety of conditions in the areas of urology, gynecology, gastroenterology

and endocrinology.

Plaintiff-Appellant Aventis, a Delaware corporation with its principal place

of business in New Jersey, is also a pharmaceutical company, specializing in the

development of prescription drugs and human vaccines.[6]  Aventis sells DDAVP®

0.1 mg and 0.2 mg tablets covered by the patent under FDA-approved New Drug

Application ("NDA") No. 01-9955.  DDAVP® is used to treat various water

---

[6]    Aventis became a subsidiary of France-based pharmaceutical company
Sanofi Synthelabo in 2004.

9

metabolism disorders, including diabetes insipidus.  (Verbalis Op. Rep. p.5, A2227).[7]

Defendant-Appellee Barr Laboratories, Inc. ("Barr") is a New York corporation that manufactures and markets generic versions of pharmaceuticals.

## B.    The '398 Patent

### 1.    The Prior Art and the Problem

The naturally occurring pituitary hormone arginine vasopressin (a peptide) regulates water and electrolyte balance in humans.  People with an inability to produce adequate amounts of vasopressin (due either to a congenital defect or injury to the brain) suffer from the disease diabetes insipidus, the primary symptoms of which are constant thirst and excessive urination – including nocturnal urination – often exceeding 20 liters a day.  (Verbalis Tr. 166, A2108).

In the late 1960s, a group of scientists from Czechoslovakia synthesized an analog of arginine vasopressin, the peptide 1-deamino-8-D-arginine vasopressin (commonly known as DDAVP or desmopressin).  *See* U.S. Patent No. 3,497,491 issued February 24, 1970 to Zaoral et al. ("the '491 or Zaoral patent").  (A2357-

---

[7]    Each expert witness verified the authenticity of his expert report at deposition.  *See* Verbalis Tr. 344-345, A2152; Kinter Tr. 74, 78, A2393; Coy Tr. 13-14, 16, A4798; Amidon Tr. 9-10, A2278; Berl Tr. 57, A4670.  Drs. Verbalis, Kinter and Coy were experts on behalf of plaintiffs; Drs. Amidon and Berl were experts on behalf of Barr.

59).[8]  The specification of the '398 patent expresses the by then well established treatment of diabetes insipidus patients with the acetate (salt) form of DDAVP. ('398 patent, col. 1, lns. 3-17 (A60)).

In the pharmaceutical industry orally digested pharmaceuticals (pills, tablets) are greatly preferred because of patient convenience.  This translates into increased patient compliance and product use.  (Vilhardt I ¶8-9, A3525;  Verbalis Tr. 238, A2126; Kinter Rep. p. 6, A3289; Berl Tr. 19-20, A4660).  Peptides (the '398 patent invention aside) cannot be used as orally administered pharmaceuticals for absorption in the gastrointestinal ("GI") tract because enzymes in the GI tract break down and inactivate peptides before they can be absorbed and pass into the bloodstream.  (Opinion, A22; '398 patent at col. 1, lns. 21-24, A60; Vilhardt I ¶6, A3524; Verbalis Op. Rep. p. 6, A2228; Coy Rep. p. 10, A4991; Coy Tr. 49, A4806; Ahmed Tr. 31-32, A2635; Amidon Tr. 54-55, 192-194, A2323-24).

Accordingly, from its introduction in the mid-1970s until about 1983, the only modes of administration of DDAVP to humans were by injection, sublingual administration, or using either a nasal spray or inserting a cumbersome graduated, flexible plastic tube called a rhinyle into the nasal cavity.  (Opinion, A22; '398

---

[8]  Ferring was the exclusive licensee of the Zaoral patent until its expiration in 1987.  (Vilhardt I ¶ 10, A3525; Vilhardt II ¶ 5, A3589).

patent at col. 1, lns. 20-40, A60). The specification and prior art identify the numerous problems associated with these prior art modes of administration. (Id.)

As late as 1980, there was substantial work in the field to find a route of administration for DDAVP more convenient and less intrusive than the rhinyle. Please see as illustrative Grossman (nasal spray, sublingual lozenge) and Laczi (sublingual tablet) both published in 1980. (A3559, 3561-66).[9]

To this day and even following the invention of the '398 patent in suit, desmopressin in its acetate salt form is the only orally administered peptide pharmaceutical for humans ever to have become commercially available. [10,11,12] (Coy Tr. 265-266, 277-278, A4860-61).

---

[9]   See also Ziai, A4410 and Monson, A4421 (administering intranasal
      DDAVP), and Besser (1986), A4423 (administering tablets and
      acknowledging Vilhardt invention).

[10]  A possible exception is cyclosporine, which includes an amino acid chain but
      uncharacteristically has an outer protective umbrella of methyl groups. There
      are no such groups for peptides or the like on DDAVP. Scientists disagree
      whether cyclosporine is a true peptide or more correctly "peptide like".
      (Kinter Rep. p. 12, A3295; Verbalis Supp. Rep. p. 31, A2500; Coy Rep. p.
      14, A4995; Amidon Tr. 79-80, A2295 (referring to cyclosporine as a "peptide
      type" compound)).

[11]  The GI enzymes also cleave and inactivate a large fraction of the orally
      ingested DDAVP. (A4140). Fortunately, however, this vasopressin analog is
      sufficiently active that the fraction surviving to reach the bloodstream is
      effective to provide the requisite medical benefit. (Verbalis Op. Rep. p. 6,
      A2228; Verbalis Tr. 188, A2113; Coy Tr. 265, A4860).

12

## 2.    The Patented Invention and the Claims

The '398 patent issued from an application originally filed in the United States on May 24, 1984.[13]  The patent teaches that DDAVP (in its acetate salt form) can be orally ingested by humans – and that a sufficient amount of this active ingredient would survive enzymatic attack and be absorbed in the GI tract to produce its therapeutic effects.  (Opinion, A22; '398 patent cols. 1-2, A60).

The independent claims of the '398 patent at issue in this appeal are claims 1, 6 and 11:[14]

> 1.    An antidiuretic composition for humans comprising a gastrointestinally absorbable, antidiuretically effective, amount of 1-deamino-8-D-arginine vasopressin and a pharmaceutically acceptable carrier in solid oral dosage form for absorption in the gastrointestinal tract of said humans.
>
> 6.    A method for initiating antidiuresis comprising administering a gastrointestinally adsorbable [sic],[15] antidiuretically

---

[12]    This is not presented here for "non-obviousness"; rather, it bears on the inequitable conduct issue.  There is no reason or motive to deceive regarding such a universally held belief.

[13]    The U.S. application was based on a Swedish priority application filed on November 18, 1983.  (English translation, A2361).

[14]    Plaintiffs also have asserted that Barr infringes claims 2, 5, which depend from claim 1 and claims 7-9, which depend from claim 6, and claim 11.

[15]    Ferring has obtained a Certificate of Correction which formally corrects the printer's typographical error in claim 6 stating "adsorbable" instead of "absorbable," the latter of which is used throughout the rest of the patent and its prosecution history.  (Cert. of Correction, A6542; Orig. Claims 1 and 6, FERB 023543, A2171 (identical in parent and grandparent applications,

13

effective, amount of 1-deamino-8-D-arginine vasopressin to a human for absorption in the gastrointestinal tract of said human.

11. A method for treating diabetes insipidus comprising administering a gastrointestinally absorbable, antidiuretically effective, amount of 1-deamino-8-D-arginine vasopressin to a human for absorption in the gastrointestinal tract of said human.

Col. 4, lns. 24-29, 42-46, 62-66. (A61).

### 3.     The Claim Term "1-deamino-8-D-arginine vasopressin" Literally Encompasses the Acetate Salt

The claim term "1-deamino-8-D-arginine vasopressin" is defined in the '398 patent as being "commonly known as DDAVP" (col. 1, lns. 15-18, A60). DDAVP is defined by reference to the '491 Zaoral patent (*Id.*, lns. 18-21). Zaoral discloses a method of synthesizing desmopressin acetate. *See* '491 patent, col. 5, l. 20-col. 6, l. 9. (A2359).[16] It also discloses that desmopressin can be therapeutically used in both its free base or acetate or other salt forms. *Id.* at col. 3, l. 16-19. (A2358).

---------------------------

FERB 021968 and 021896, A4536, 4506); Amended Claims 11-13 (claim 12 matures into issued claim 6) FERB 160934, A3726; Board Opinion, FERB 023846-855, A3682-91). The District Court acknowledged that this was a simple typographical error "upon which substantial rights should not depend." (A20).

[16]    The peptide desmopressin is a positively charged ion at blood pH; it has always been synthesized as an acetate salt so that the positive desmopressin ion is associated with a negatively charged acetate ion. (Kinter Tr. 216-18, A2427-28; Verbalis Tr. 216-19, A2120-21; Vilhardt Tr. 100, 164, A5479, 5495).

The '398 patent itself uses the term DDAVP to refer to desmopressin in its acetate salt and free base forms. *See e.g.,* '398 patent col. 1, lns. 13-15 ("This invention relates generally to antidiuretic compositions and methods of treating humans with said compositions"); col. 1, lns. 31-32 ("The present most common form for administering DDAVP is the rhinyle."); col. 2, l. 65 ("DDAVP synthesized by Ferring AB"); col. 1, line 44 ("DDAVP solutions may also be administered by a conventional pump spray"). The patent also describes the therapeutic moiety, which is desmopressin free base, as DDAVP ("the antidiuretic effect of the DDAVP used in this invention is most likely due to absorption of the intact DDAVP molecule...") (col. 2, l. 29-31). All of those references to therapeutic uses of DDAVP necessarily refer to the acetate salt since that was the only form in which it was available from Ferring (the only manufacturer) anywhere.

Then also, the Swedish priority application also makes clear that the "DDAVP" used in the tablets of Examples 1 and 2 (all the examples in the '398 patent) contained desmopressin acetate – not the free base form of desmopressin. (Swedish App. p. 6, A2367; '398 patent cols. 2-3, A60-61).

To those skilled in the art (pharmacologist, medicinal chemist or clinician) "DDAVP" or "desmopressin" have been used interchangeably for over thirty years to refer both to the free base form and its acetate salt form for all modes of administration. Indeed, desmopressin acetate is the only form of the medicine ever

15

approved by the FDA or by any foreign regulatory authority.  (Compare Grossman

A3559 and Ziai A4410).  Indeed Barr itself uses ████████████████████

████████████████████████[17]

## C.    Prosecution History of the '398 Patent

The examiner rejected the claims of the application leading to the '398

patent, *inter alia*, (initially) on the seminal Zaoral patent.  Office Action of August

20, 1984.  (Grandparent File History, A4513-14).[18]  The basic issue was the

meaning of the word "peroral" in the Zaoral specification:

> The polypeptide I of the invention may be used as the free
> base or in the form of its salts with inorganic or organic
> acids, without or with additives such as stabilizers,
> preservatives, sweetening agents, aromatic compounds,
> flavoring agents or detergents to obtain the suitable form,
> as desired, for the parenteral, **peroral**, intranasal,
> subcutaneous, intramuscular, or intravenous application.

Zaoral patent, A2358, col. 3, lns. 16-22 (emphasis added).

In an interview with the examiner, applicants (with co-inventor Dr. Vilhardt

present) urged that Zaoral did not teach oral administration of DDAVP to humans

---

[17]    *Please see* ████████████████████████
████████  (A4166, 4172, 4175).

[18]    Specifically, the rejection was carried over from a grandparent case
(Application Ser. No. 06/613,779) from which the application that matured
into the '398 patent was filed as a subsequent Rule 60 continuation
application.  (Grandparent F.H., A4495-4520; Parent F.H., A4522-4549;
Rule 60 Continuation App., A2160-73).

for absorption from the GI tract and that "peroral" as used therein means "buccal" (cheek) or "sublingual" (under tongue) absorption. (Interview Summary, A4385). The examiner suggested that applicants consider filing declarations in support of patentability. Although not specified in the interview summary, applicants' Preliminary Amendment filed following the interview states that at the examiner's request the declarations were to be from "non-inventors." (A3731).

In their remarks accompanying the Preliminary Amendment, applicants urged that "peroral" as used in the Zaoral patent in the context of the time (before the '398 invention) meant only buccal or sublingual. They urged that it did <u>not</u> mean oral ingestion for active absorption in the GI tract because of the common knowledge that peptides would not survive enzymatic attack in the GI tract.[19] (A3727-28).

In further support of the application, Dr. Vilhardt recommended six individuals as possible declarants. All were experts in the fields of endocrinology and peptides and whom he knew from meetings, their publications or because he knew them and had worked with them. (Vilhardt Tr. 249-51, 255, 357, 368, A5516-18, 5543, 5546). These were Dr. Leonard Share, Professor of Physiology,

---

[19] Peroral literally means "by mouth." As Dr. Czernichow testified at his deposition, "peroral" refers only to the route of administration of a drug, not the manner or location of its absorption into the blood stream. Czernichow Tr. 85-87 (A2917).

University of Tennessee (Vilhardt Tr. 357, A5543); Dr. Michael Besser, Professor

of Endocrinology (A3559, 4423); Dr. Myron Miller, an expert in geriatric medicine

who regularly treated diabetes insipidus patients and did research on vasopressin

(Miller 1986 Decl. ¶ 1, A3634; Miller Tr. 70, A2545) and Dr. Paul Czernichow, a

world renowned pediatric endocronologist who regularly treated diabetes insipidus

children (Czernichow 1986 Decl. ¶ 1, A3601; Czernichow Tr. 6-7, 51-52, A2897,

2908). Dr. Vilhardt also suggested Drs. Iain Robinson and Tomas Barth. (Vilhardt

Tr. 248, A5516). Dr. Barth was a senior scientist at the Czech Academy when

DDAVP was originally synthesized. Barth Decl. ¶ 1 (A3701); Zaoral '491 patent,

col. 1, lns. 4-5 (A2357). Dr. Robinson was a neurophysiologist with experience in

the area of neurophysins, *i.e.*, the peptides involved in the physiology of the

naturally occurring hormone, vasopressin, and also worked on development of

vasopressin analogs. (Robinson Tr. 36-37, 46-48, A2856-57, 2859).

Four declarations were filed – two by Dr. Vilhardt and one each by Drs.

Miller (A3634-3637) and Czernichow (A3601-3603). Illustrative excerpts on point

from declarations filed following the interview:

> "6. While proteolytic enzymes are present in the gut
> and these enzymes are presumed to degrade peptides, no
> such enzymes are secreted by the nasal mucosa so it was
> recognized that peptides such as DDAVP and AVP
> (arginine vasopressin) would not be degraded if
> administered intranasally." Vilhardt Decl. ¶1 (A3524).

"4.   If the 1970 Zaoral patent had disclosed the use of DDAVP in oral dosage form for gastrointestinal absorption by humans, then the teachings of the art and the activities of those skilled in this art have been inconsistent with that disclosure of the Zaoral patent.  It is well known, for example, that administering a drug orally for gastrointestinal absorption is vastly preferable to subcutaneous, intranasal, sublingual, or buccal administration if the oral/gastrointestinal absorption route is available.  Those of us knowledgeable of DDAVP-like peptides always believed that DDAVP could not be administered via this highly preferred mode because it was believed that DDAVP was inactivated in the gut."  Czernichow Decl. I ¶4. (A3602); and

"As of 1983, I was unaware of Dr. Vilhardt's invention and, accordingly, did not know that DDAVP could be administered orally for gastrointestinal absorption by humans.  Accordingly, I wrote in 1983 (see the second column on page 610 of the Exhibit 2 chapter under the heading "Treatment") the following:

> "As is true of most peptides, oral administration of vasopressin is ineffective".

Vasopressin is the parent molecule of DDAVP and the statement concerning vasopressin is equally applicable to DDAVP."  Miller Decl. I ¶4 (A3635).

The declarations and accompanying Amendment notwithstanding, the examiner again rejected the pending claims as anticipated and/or obvious over the cited references.  (A4389-92).  He also disagreed that the term "peroral" in the Zaoral patent could only mean buccal and sublingual.  (A4389-90).

Applicants filed a Request for Reconsideration, generally making the same arguments and citing to various articles that represented the state of the art at the

19

time of filing the application. (A4398-4406). In response, the examiner again

rejected the claims and added two new arguments. Although he agreed that the

dictionary definition of "peroral" is by mouth, in his view "peroral" included for GI

absorption and was not limited to sublingual and buccal. The examiner further

rejected the claims as obvious on the ground that DDAVP had been shown to be

orally effective in the previously cited rat studies (Saffran, Kinter) which he found

predictive of human results. (8/13/87 OA, A3067-68).

Ferring appealed to the Board of Patent Appeals & Interferences ("the

Board"). (Appeal Brief, A4437-4461). In their briefs, applicants and the examiner

generally maintained their earlier positions. The examiner argued that Zaoral

inherently anticipated the invention of the '398 patent by its disclosure of "peroral"

administration of DDAVP and excipients and further that the combined teachings

of Kinter, Saffran and Boissonnas rendered the claimed invention obvious.

(A4464-67). Applicants repeated their previous arguments and pointed to the

declarations of Drs. Vilhardt, Czernichow and Miller in support of their position

which was not controverted by any evidence cited by the examiner.

The Board's decision issued on September 21, 1990, reversing the

examiner's rejection over Zaoral, noting the bias in the art against oral

administration of peptides. (Decision p. 6-7, A3687-88). The Board further held

that Zaoral did not teach either the method of administration, the solid dosage form,

or the amount of DDAVP required to be orally effective either inherently or expressly. (*Id.*, A3686-87).

The Board, however, entered a <u>new</u> obviousness rejection based on the combination of Zaoral in view of a newly cited article published by Vavra. (p. 8-9, A3689-90). The Board returned the prosecution to the examiner in light of this reference. (p. 9, A3690).

The Vavra article, published in 1974, presented data that DDAVP placed ("gavaged") directly into the stomach of rats at a level 500 times higher than a comparable subcutaneous dose reduced urination ("antidiuretic activity"). (p. 244, A4577, and p. 246, A4579).[20] The issue thus became the worth and significance of the Vavra study and, even if properly done, whether a rat model study would characterize human DDAVP oral administration.

In response to the Board's new rejection (Zaoral in view of Vavra), applicants filed an Amendment after Appeal, attaching five declarations. (A3692-3700). Three of the declarants - Drs. Czernichow, Miller and Vilhardt - had

---

[20]    This higher dose prompted the Vavra authors to note:

> "However, the doses had to be increased about 500 times to achieve a comparable effect as after the s.c. [subcutaneous] administration. It is, therefore, questionable whether the oral administration of DDAVP would be practical in therapy."
> (p. 246, A4579).

provided declarations four years earlier. Two declarants, Drs. Tomas Barth and Iain Robinson, provided declarations for the first time.

Although Drs. Czernichow, Miller and Vilhardt had attached their *curriculum vitae* as exhibits to their earlier declarations, Drs. Barth and Robinson did not. At no time did the examiner request them and there is no evidence that they were purposefully withheld.

Each of the declarants explained why the Vavra article did not teach or suggest the absorption of DDAVP from the GI tract in humans. Dr. Barth grounded his disagreement with the Board on the inability to predict results in humans based on administering a peptide to animals. Barth Decl. ¶3. (A3702). He noted that, because of the differences between species, a drug eliciting a reaction in one species might elicit no reaction or even an opposite reaction in a different species.[21] At his deposition, Dr. Barth reaffirmed his belief in the accuracy of the statements in his declaration. Barth Tr. 127-128 (A5406).

Dr. Robinson disagreed with the Board's reliance on the combination of Zaoral and Vavra based upon methodological deficiencies in Vavra's experiments

---

[21]    Dr. Lewis Kinter, one of plaintiffs' technical experts and the author of the Kinter 1982 article which the examiner cited in rejecting the claims, has published many articles addressing species differences in their responses to different analogs of vasopressin. He has demonstrated that, for example, a vasopressin analog that acts as a diuretic in rats can act as an antidiuretic in humans. (Kinter Rep. p. 5, 33, A3288, A3316).

that precluded the drawing of any valid conclusions. Robinson Decl. ¶2 (A3703).

Dr. Robinson noted that because LVP[22] and DDAVP have non-parallel dose-response curves, it is essential to compare equieffective doses at least two response levels in order to correlate oral potency with subcutaneous potency. *Id.* ¶3 (A3703). As Vavra failed to do that, his study was ineffective to demonstrate any unique property of DDAVP regarding oral delivery. *Id.* ¶4 (A3704).

Dr. Robinson also pointed out that Vavra's experiments demonstrated that oral administration of LVP resulted in significant antidiuretic activity. Because LVP has none of the unnatural structural changes that are present in DDAVP, this teaches away from the conclusion that the structural changes in DDAVP are responsible for its oral activity. This also suggests that other factors present in Vavra's experimental protocol were responsible for the measurable activity after oral administration. *Id.* ¶6 (A3705). At deposition, Dr. Robinson also reaffirmed his criticisms of the Vavra article. Robinson Tr. 131-135 (A2880-81) and errata (A5451).

Dr. Czernichow's criticisms of the conclusions of the Board were similar to those of Drs. Barth and Robinson. He pointed out that Vavra's protocols were

---

[22]    LVP is lysine vasopressin, the naturally occurring form of vasopressin in pigs, which has similar activity in rats as does the naturally occurring form, arginine vasopressin, which also is the naturally occurring form in humans. (Czernichow Tr. 35-36, A2904).

"highly questionable," particularly because the excess water loading "would almost invariably lead to DDAVP absorption by the oral and nasal membranes of rat." Czernichow Decl. II ¶3 (A3707).  He also noted that species differences are critical between rats and humans and that "no conclusions regarding human efficacy are supportable without actual testing on humans."  *Id.* ¶4.  (A3707).  Dr. Czernichow also reaffirmed his opinions at his deposition.  Czernichow Tr. 133-155.  (A2929).

In addition to the three declarants focused on by the District Court, the patentees submitted declarations from two other individuals.  Dr. Miller submitted a declaration which echoes the criticisms of the Vavra methodology and explains why Vavra would not have suggested the oral efficacy of DDAVP in humans under normal physiological conditions.  Miller Decl. II ¶3 (A3711).  As did the other declarants, Dr. Miller reaffirmed the opinions expressed in his declaration at his deposition.  Miller Tr. 280-314 (A2597-2606).

Dr. Vilhardt also submitted a declaration explaining why the Vavra reference would not have suggested to one of ordinary skill in the art that DDAVP could effectively be administered orally to humans for GI absorption under normal conditions.  Vilhardt Decl. III ¶6 (A3715).  He pointed out that gastric gavage used by Vavra, while common in animal research, was totally nonphysiological resulting in extreme stretching of the stomach, dilution of the stomach acid and gastrointestinal enzymes and, perhaps most significantly, reflux of the fluid into the

nasal cavities from where it was well known that peptides could be absorbed. *Id.* ¶5 (A3714-15). Dr. Vilhardt also pointed out that Vavra's attribution of the activity of DDAVP to its structural changes from vasopressin was not supported by his data. *Id.* ¶7 (A3715). Moreover, subsequent research in humans with compounds similar to DDAVP had shown that those changes do not necessarily make the molecule resistant to degradation or confer greater biological activity. *Id.* ¶8 (A3716).

The '398 patent application was allowed following the filing of applicants' Amendment and declarations. (Notice of Allowance, A3719).

### D.    **Barr's Accused Product**

Appellee-defendant Barr filed ANDA No. ████████ seeking FDA approval to market generic desmopressin acetate tablets before the '398 patent expires. (Notice Letter, A4076). The indications for the product are ██████████████████████ ███████████████████████████████████. (A4125, 4146). The innovator NDA product relied upon for ANDA safety and efficacy history is Plaintiffs' DDAVP® tablets. (A4114-15; Ahmed Tr.[23] 49, A2640).

The accused product █████████████████████ (A4102, 4110, 4125; Mundkur Tr. 104-105, A2811-12) and contains ████████████████████████ ████████████████████████████████████████████████.

---

[23] Dr. Ahmed is Barr's Senior Vice President of Research and Development and testified as a Rule 30(b)(6) witness. (Ahmed Tr. 15, 32, A2631, 2635).

(A4138; A4320-21).  The tablets contain 

(A4140, 4144-45;

Ahmed Tr. 48, 161-162, A2639, 2668).

(A4128, A4320, Ahmed Tr. 59-60, A2642).

The ANDA pharmaceutical

.

(A4172[24]; Gupta Tr. 191-196, A2740-41).

**E.    The District Court's Opinion**

**1.    Inequitable Conduct**

The District Court correctly noted the law that intent and materiality are each

required elements of inequitable conduct, that each is a question of fact which must

be proved by clear and convincing evidence, and that summary judgment is not

proper if the facts of materiality or intent are reasonably disputed.  (A11).  The

District Court's review of the applicable law also noted that materiality does not

---

[24]

presume intent to deceive which must be supported by its own showing of facts. (A11-12).

The Opinion did not find any misrepresentation, or even error in any statement made in any declaration.  Nor did the District Court find any direct (*i.e.*, non-inferred) evidence of the requisite malevolent intent to deceive.  According to the Opinion, the inequitable conduct "materiality" is based on prior contacts between three non-inventor declarants with Ferring or co-inventor Vilhardt which were not recited in the declarations:[25] "Defendants failed to disclose that both Drs. Robinson and Czernichow and probably Barth were consultants to Ferring for significant periods of time and that Dr. Robinson was an actual employee of Ferring."  (A17).  Weighing against the materiality of these supposed omissions are:

     a.     No evidence is cited in the Opinion, nor is any of record, that Dr. Czernichow (or anyone else) considered or appreciated that his work on DDAVP was important to a patent examiner evaluating the substantially unchallenged content of his declarations, that peptides would not be therapeutically effective upon administration to the GI tract, or that Vavra's rat study was neither well executed nor its results transferable to humans.

---

[25]    The District Court deemed the '398 prosecution history to be "cumbersome and indeed mysterious" – apparently because the patent issued after several rejections were made and overcome.  (A16, 18).  In fact, this is an ordinary course of patent prosecution.