# Exhibit 30

Appeal No. 05-1284

# United States Court of Appeals

### *for the*

# Federal Circuit

FERRING B.V.,

*Plaintiff-Appellant,*

– and –

AVENTIS PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

– v. –

BARR LABORATORIES, INC.,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
IN CASE NO. 02-CV-9851, JUDGE CHARLES L. BRIEANT

## NON-CONFIDENTIAL REPLY BRIEF FOR
## PLAINTIFF-APPELLANT FERRING B.V.

DENNIS J. MONDOLINO, ESQ.
STEPHEN B. JUDLOWE, ESQ.
ESTHER H. STEINHAUER, ESQ.
EDWARD M. REISNER, ESQ.
JEFFREY M. GOLD, ESQ.
TIMOTHY P. HEATON, ESQ.
MORGAN, LEWIS & BOCKIUS, LLP
*Attorneys for Plaintiff-Appellant*
  *Ferring B.V.*
101 Park Avenue
New York, New York 10178
(212) 309-6000

July 8, 2005

## CERTIFICATE OF INTEREST

Counsel for Appellant Ferring B.V. certifies as follows:

1.    The full name of every party represented by me is: Ferring B.V.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Ferring B.V.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Ferring B.V. is a wholly owned subsidiary of Ferring Holding SA, Switzerland.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Morgan Lewis & Bockius LLP, by Dennis J. Mondolino, Stephen B. Judlowe, Esther H. Steinhauer, Edward M. Reisner, Jeffrey M. Gold, and Timothy P. Heaton.

Date: July 8, 2005

Dennis J. Mondolino
Stephen B. Judlowe
Esther H. Steinhauer
Edward M. Reisner
Jeffrey M. Gold
Timothy P. Heaton
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
(212) 309-6000

*Attorneys for Plaintiff-Appellant*
*Ferring B.V.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENT ...................................................................1

II.   INEQUITABLE CONDUCT ........................................................................1

    A.    Facts and Law Which Barr Does Not Dispute.....................................1

    B.    Discussion and Potpourri Reply To Barr "Points" On The Inequitable Conduct Issue ....................................................................4

        1.    No "Materiality", No "Intent" and *Paragon*.............................4

        2.    "The Only Reasonable Inference" ...............................................9

        3.    *Refac*.......................................................................................11

        4.    Barr's Privilege and Misconduct Red Herrings.......................15

        5.    The PTO Lost Prosecution Files ...............................................17

    C.    Barr's Arrogated "Undisputed Facts" Which are Disputed...............18

III.  INFRINGEMENT .......................................................................................21

    A.    The Underlying Facts .........................................................................21

    B.    Claim Construction ............................................................................22

    C.    The '398 Patent Claims Are Infringed Regardless of The Claim Construction ......................................................................................26

        1.    Literal Infringement ..................................................................26

            a.    Under Appellant Ferring's Proposed Construction.......26

            b.    Under The District Court's Construction – The Classic "All Elements" Rule ..........................................26

            c.    Under The District Court's Construction – Pro-Drug Infringement ......................................................27

        2.    Infringement By Equivalents ....................................................28

IV.   CONCLUSION ...........................................................................................31

CERTIFICATE OF COMPLIANCE WITH FED.R.APP.P. 32(A)(7)(C).............32

<ins>Confidential Material Omitted:</ins>
p. 23: Confidential Information from Barr's ANDA

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Laboratories Inc. v. TorPharm Inc.*,
  300 F.3d 1367 (Fed. Cir. 2002)................................................................24

*Allen Engineering Corp. v. Bartell Industries Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002)................................................................11

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986) ..................................................................................1

*Baxter Diagnostics Inc. v. AVL Scientific Corp.*,
  924 F. Supp. 994 (C.D. Cal. 1996)............................................................1

*Caterpillar Tractor Co. v. Berco S.P.A.*,
  714 F.2d 1110 (Fed. Cir. 1983)................................................................24

*Fiskars Inc. v. Hunt Manufacturing Co.*,
  221 F.3d 1318 (Fed. Cir. 2000)................................................................27

*Forshey v. Principi*,
  284 F.3d 1335 (Fed. Cir. 2002)................................................................28

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002)....................................................................5

*Genentech, Inc. v. Chiron Corp.*,
  112 F.3d 495 (Fed. Cir. 1997)..................................................................27

*Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*,
  262 F.3d 1333 (Fed. Cir. 2001)................................................................24

*Graver Tank & Manufacturing Co. v. Linde Products Co.*,
  339 U.S. 605 (1950) ................................................................................29

*Inverness Medical Switzerland GmbH v. Warner-Lambert Co.*,
  309 F.3d 1373 (Fed. Cir. 2002)................................................................28

*Joint Stock Society v. UDV North America,*
    266 F.3d 164 (3rd Cir. 2001).....................................................5

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
    292 F.3d 728 (Fed. Cir. 2002).................................................3, 15

*Knorr-Bremse Systems Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
    383 F.3d 1337 (Fed. Cir. 2004)..................................................16

*Kumar v. Ovonic Battery Co. Inc.,*
    351 F.3d 1364 (Fed. Cir. 2003)..................................................23

*LSI Computer Syst. v. United States ITC,*
    832 F.2d 588 (Fed. Cir. 1987)....................................................5

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)....................................................25

*Merck & Co. v. Teva Pharmaceuticals USA, Inc.,*
    347 F.3d 1367 (Fed. Cir. 2003)..................................................25

*Metabolic Laboratories v. Laboratory Corp. of America,*
    370 F.3d 1354 (Fed. Cir. 2004)..................................................25

*Modine Manufacturing Co. v. U.S.I.T.C.,*
    75 F.3d 1545 (Fed. Cir. 1986)...................................................24

*Monsanto Co. v. Bayer Bioscience N.V.,*
    363 F.3d 1235 (Fed. Cir. 2004)..................................................10

*Northern Telecom Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990)....................................................6

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.,*
    984 F.2d 1182 (Fed. Cir. 1993).............................................1, 8, 9

*Refac International Ltd. v. Lotus Development Corp.,*
    81 F.3d 1576 (Fed. Cir. 1996)...........................................1, 3, 11-15

iii

*Ritchie v. O.J. Simpson*,
    170 F.3d 1092 (Fed. Cir. 1999) ....................................................5

*Stephens v. Tech International, Inc.*,
    393 F.3d 1269 (Fed. Cir. 2004) ..................................................25

*TI Group Automotive Systems (North America), Inc.*
*v. VDO North America, LLC*,
    375 F.3d 1126 (Fed. Cir. 2004) ..................................................25

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
    44 F.3d 988 (Fed. Cir. 1995) .....................................................11

*United States v. IBM*,
    62 F.R.D. 530 (S.D.N.Y. 1974) ..................................................6

*V-Formation, Inc. v. Benetton Group SPA*,
    401 F.3d 1307 (Fed. Cir. 2005) ..................................................24

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...................................................24

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 (1997) ..................................................................29


## FEDERAL REGULATIONS

21 C.F.R. § 314.95 ...........................................................................30


## MISCELLANEOUS

Black's Dictionary of the Law (1891) .................................................6

Manual of Patent Examining Procedure § 716.01(d) (6th ed. 1995).................6, 7

## I.    INTRODUCTORY STATEMENT

Plaintiff-Appellant Ferring replies here to Appellee Barr's Brief ("BB") on this appeal of summary judgment of patent unenforceability for inequitable conduct and non-infringement.  Barr's Brief is perhaps most significant for what it does not contest – and most remarkable for its asserted "uncontestable facts" which are contested – in the record below and in Appellants' opening briefs.  Also significant is Barr's characterization of the district court's opinion ("Opinion") and of important relevant authorities of this Court.[1]

## II.    INEQUITABLE CONDUCT

### A.    Facts and Law Which Barr Does Not Dispute

Barr does not dispute that:

- The content (facts and opinions actually expressed) of all of the declarations submitted to the Patent Office was correct.  (Ferring Brief ("FB") p. 18-19, 22-25, 27 and citations and uncontested in BB).[2,3]

---

[1]    *Refac Int'l. Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182 (Fed. Cir. 1993).

[2]    It should not matter if the fact were contested.  The decision being summary judgment, all factual disputes must be resolved in Appellants' favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); BB p. 26.

[3]    Inequitable conduct is evaluated under all facts and circumstances.  While it is possible to find inequitable conduct for a factually correct declaration, it is unlikely absent some misrepresentation or exigent circumstances:

- The declarants whose prior contacts are at issue were not inventors of the '398 patent.

- None of those declarants had any interest in the outcome of the prosecution of the '398 patent at the time of their declarations – none stood to gain anything if the patent issued or lose anything if it did not. (FB p. 27-29 and citations and uncontested in BB).[4]

- The declarants' prior contacts with Ferring all occurred before their declarations. (FB p. 28-29 and see for a grudging acknowledgement of this BB p. 24).

- There is no evidence – none – that any declarant or anyone else associated with the prosecution of the '398 patent ever considered their prior contacts with Ferring at all, in any context, when executing their declarations; ever

---

"Additionally, Peterson was not trying to dress faulty information in respectable clothes in order to fool the PTO [about being a current employee of the assignee]. Baxter does not quibble with the content of the declarations and provides no evidence that suggests they were not scientifically sound. Its expert witness, Patrick Bright, stated that Miller did not lie about the properties of phenol red."

*Baxter Diagnostics Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1006 (C.D. Cal. 1996), *modified on other grounds*, 954 F. Supp. 199 (C.D. Cal. 1996).

4    Dr. Vilhardt was a declarant – and his declarations specifically noted his Ferring association. (A3532, 3589).

## CERTIFICATE OF INTEREST

Counsel for Appellant Ferring B.V. certifies as follows:

1.    The full name of every party represented by me is: Ferring B.V.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Ferring B.V.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

> Ferring B.V. is a wholly owned subsidiary of Ferring Holding SA, Switzerland.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Morgan Lewis & Bockius LLP, by Dennis J. Mondolino, Stephen B. Judlowe, Esther H. Steinhauer, Edward M. Reisner, Jeffrey M. Gold, and Timothy P. Heaton.

Date: July 8, 2005

Dennis J. Mondolino
Stephen B. Judlowe
Esther H. Steinhauer
Edward M. Reisner
Jeffrey M. Gold
Timothy P. Heaton
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
(212) 309-6000

*Attorneys for Plaintiff-Appellant
Ferring B.V.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENT ................................................... 1

II.  INEQUITABLE CONDUCT ..................................................... 1

   A.   Facts and Law Which Barr Does Not Dispute ......................... 1

   B.   Discussion and Potpourri Reply To Barr "Points" On The Inequitable Conduct Issue ............................................ 4

      1.   No "Materiality", No "Intent" and *Paragon* ............... 4

      2.   "The Only Reasonable Inference" .......................... 9

      3.   *Refac* .................................................. 11

      4.   Barr's Privilege and Misconduct Red Herrings .............. 15

      5.   The PTO Lost Prosecution Files ........................... 17

   C.   Barr's Arrogated "Undisputed Facts" Which are Disputed ............. 18

III. INFRINGEMENT ........................................................... 21

   A.   The Underlying Facts ............................................. 21

   B.   Claim Construction .............................................. 22

   C.   The '398 Patent Claims Are Infringed Regardless of The Claim Construction ................................................... 26

      1.   Literal Infringement ..................................... 26

         a.   Under Appellant Ferring's Proposed Construction ....... 26

         b.   Under The District Court's Construction – The Classic "All Elements" Rule ......................... 26

         c.   Under The District Court's Construction – Pro-Drug Infringement ................................... 27

      2.   Infringement By Equivalents .............................. 28

IV.  CONCLUSION ............................................................. 31

CERTIFICATE OF COMPLIANCE WITH FED.R.APP.P. 32(A)(7)(C) ............. 32

<u>Confidential Material Omitted:</u>
p. 23: Confidential Information from Barr's ANDA

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Laboratories Inc. v. TorPharm Inc.,*
   300 F.3d 1367 (Fed. Cir. 2002) ..................................................24

*Allen Engineering Corp. v. Bartell Industries Inc.,*
   299 F.3d 1336 (Fed. Cir. 2002) ..................................................11

*Anderson v. Liberty Lobby Inc.,*
   477 U.S. 242 (1986) .................................................................1

*Baxter Diagnostics Inc. v. AVL Scientific Corp.,*
   924 F. Supp. 994 (C.D. Cal. 1996) ...............................................1

*Caterpillar Tractor Co. v. Berco S.P.A.,*
   714 F.2d 1110 (Fed. Cir. 1983) ..................................................24

*Fiskars Inc. v. Hunt Manufacturing Co.,*
   221 F.3d 1318 (Fed. Cir. 2000) ..................................................27

*Forshey v. Principi,*
   284 F.3d 1335 (Fed. Cir. 2002) ..................................................28

*FutureSource LLC v. Reuters Ltd.,*
   312 F.3d 281 (7th Cir. 2002) .......................................................5

*Genentech, Inc. v. Chiron Corp.,*
   112 F.3d 495 (Fed. Cir. 1997) ...................................................27

*Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.,*
   262 F.3d 1333 (Fed. Cir. 2001) ..................................................24

*Graver Tank & Manufacturing Co. v. Linde Products Co.,*
   339 U.S. 605 (1950) ................................................................29

*Inverness Medical Switzerland GmbH v. Warner-Lambert Co.,*
   309 F.3d 1373 (Fed. Cir. 2002) ..................................................28

*Joint Stock Society v. UDV North America,*
    266 F.3d 164 (3rd Cir. 2001)..................................................5

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
    292 F.3d 728 (Fed. Cir. 2002)..............................................3, 15

*Knorr-Bremse Systems Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
    383 F.3d 1337 (Fed. Cir. 2004)................................................16

*Kumar v. Ovonic Battery Co. Inc.,*
    351 F.3d 1364 (Fed. Cir. 2003)................................................23

*LSI Computer Syst. v. United States ITC,*
    832 F.2d 588 (Fed. Cir. 1987)..................................................5

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)..................................................25

*Merck & Co. v. Teva Pharmaceuticals USA, Inc.,*
    347 F.3d 1367 (Fed. Cir. 2003)................................................25

*Metabolic Laboratories v. Laboratory Corp. of America,*
    370 F.3d 1354 (Fed. Cir. 2004)................................................25

*Modine Manufacturing Co. v. U.S.I.T.C.,*
    75 F.3d 1545 (Fed. Cir. 1986)................................................24

*Monsanto Co. v. Bayer Bioscience N.V.,*
    363 F.3d 1235 (Fed. Cir. 2004)................................................10

*Northern Telecom Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990)..................................................6

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.,*
    984 F.2d 1182 (Fed. Cir. 1993)..............................................1, 8, 9

*Refac International Ltd. v. Lotus Development Corp.,*
    81 F.3d 1576 (Fed. Cir. 1996)............................................ 1, 3, 11-15

*Ritchie v. O.J. Simpson,*
    170 F.3d 1092 (Fed. Cir. 1999) ................................................................5

*Stephens v. Tech International, Inc.,*
    393 F.3d 1269 (Fed. Cir. 2004) ..............................................................25

*TI Group Automotive Systems (North America), Inc.*
*v. VDO North America, LLC,*
    375 F.3d 1126 (Fed. Cir. 2004) ..............................................................25

*Therma-Tru Corp. v. Peachtree Doors Inc.,*
    44 F.3d 988 (Fed. Cir. 1995) ..................................................................11

*United States v. IBM,*
    62 F.R.D. 530 (S.D.N.Y. 1974) ................................................................6

*V-Formation, Inc. v. Benetton Group SPA,*
    401 F.3d 1307 (Fed. Cir. 2005) ..............................................................24

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................24

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,*
    520 U.S. 17 (1997) ..................................................................................29

## FEDERAL REGULATIONS

21 C.F.R. § 314.95 ...................................................................................30

## MISCELLANEOUS

Black's Dictionary of the Law (1891) ..........................................................6

Manual of Patent Examining Procedure § 716.01(d) (6th ed. 1995) ................6, 7

I.    **INTRODUCTORY STATEMENT**

Plaintiff-Appellant Ferring replies here to Appellee Barr's Brief ("BB") on this appeal of summary judgment of patent unenforceability for inequitable conduct and non-infringement.  Barr's Brief is perhaps most significant for what it does not contest – and most remarkable for its asserted "uncontestable facts" which are contested – in the record below and in Appellants' opening briefs.  Also significant is Barr's characterization of the district court's opinion ("Opinion") and of important relevant authorities of this Court.[1]

II.    **INEQUITABLE CONDUCT**

     A.    **Facts and Law Which**
           **Barr Does Not Dispute**

Barr does not dispute that:

- The content (facts and opinions actually expressed) of all of the declarations submitted to the Patent Office was correct.  (Ferring Brief ("FB") p. 18-19, 22-25, 27 and citations and uncontested in BB).[2,3]

---

[1]    *Refac Int'l. Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182 (Fed. Cir. 1993).

[2]    It should not matter if the fact were contested.  The decision being summary judgment, all factual disputes must be resolved in Appellants' favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986); BB p. 26.

[3]    Inequitable conduct is evaluated under all facts and circumstances.  While it is possible to find inequitable conduct for a factually correct declaration, it is unlikely absent some misrepresentation or exigent circumstances:

- The declarants whose prior contacts are at issue were not inventors of the '398 patent.

- None of those declarants had any interest in the outcome of the prosecution of the '398 patent at the time of their declarations – none stood to gain anything if the patent issued or lose anything if it did not. (FB p. 27-29 and citations and uncontested in BB).[4]

- The declarants' prior contacts with Ferring all occurred before their declarations. (FB p. 28-29 and see for a grudging acknowledgement of this BB p. 24).

- There is no evidence – none – that any declarant or anyone else associated with the prosecution of the '398 patent ever considered their prior contacts with Ferring at all, in any context, when executing their declarations; ever

---

"Additionally, Peterson was not trying to dress faulty information in respectable clothes in order to fool the PTO [about being a current employee of the assignee]. Baxter does not quibble with the content of the declarations and provides no evidence that suggests they were not scientifically sound. Its expert witness, Patrick Bright, stated that Miller did not lie about the properties of phenol red."

*Baxter Diagnostics Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1006 (C.D. Cal. 1996), *modified on other grounds*, 954 F. Supp. 199 (C.D. Cal. 1996).

4    Dr. Vilhardt was a declarant – and his declarations specifically noted his Ferring association. (A3532, 3589).

considered including those contacts with their declarations or considered it
important or appropriate to do so; or ever made any decision to omit or to
conceal this information from the examiner.  (Opinion, A16-19, and BB
provides no evidence).

- There is no evidence of intent to deceive the PTO in the record, by any
  person, other than the inference of intent the district court made solely from
  a supposed material omission.

- The law that while all declarations submitted to the PTO during prosecution
  are material – not everything contained in such declarations is necessarily
  material. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 744 (Fed.
  Cir. 2002) (quoted *infra* p. 15); FB p. 46-47.

- The law that a declarant's failure to identify a contact with a patent
  applicant/assignee – even a requisite <u>present</u> contact – is <u>not</u> *per force*
  inequitable conduct.  While inequitable conduct can be reached under
  appropriate abusive circumstances, this Court has deemed such an omission
  at most "an arguably minor omission" that it "cannot hold as a matter of law
  [to] …not constitute inequitable conduct".  *Refac*, 81 F.3d at 1585, FB p. 45
  and p. 13-14, *infra.*

- The law that on summary judgment where facts support multiple inferences, only those inferences favoring the non-moving party (Appellants here) can be taken. (*See* authorities at FB p. 49-52).

**B.    Discussion and Potpourri**
**Reply To Barr "Points" On**
**The Inequitable Conduct Issue**

1.    No "Materiality", No "Intent" and *Paragon*

The examiner suggested that declarations from "non-inventors" be submitted to supplement the declarations of co-inventor Vilhardt. During prosecution a total of six declarations by four non-inventor declarants were submitted.

Barr morphs the examiner's express "non-inventor" request into one of "interest". (BB p. 1, 4, 15, 23).[5] These declarants in fact had no "interest" in the success of the '398 patent prosecution or the lack thereof when preparing their declarations. *See infra* p. 18-20.

The examiner understood what he was doing in choosing "non-inventor" rather than "interest" for additional declarants. DDAVP and its use in treating diabetes insipidus is a specialty; of significant medical benefit but of commercial importance only commensurate with its original orphan drug stature; was available commercially and for research purposes only from Ferring (in its acetate salt form) at the time of the declarations and for years before and decades after; and there

---

[5]    *See also, inter alia,* p. 24, 25, 27, 29, 33 and 36.

4

were relatively few who specialized in it.  It was reasonable for an examiner to

expect that any potential non-inventor declarants would know each other

professionally and have had scientific connections.  "Non-inventor" meant non-

inventor[6] and all declarants save Vilhardt were non-inventors and known by the

examiner to be so.

We deal now with Barr's substitution of "interest" for the examiner's

preferred "non-inventor".  After all, MPEP § 716(3) does mention "interest" even

though, apparently, the examiner considered "non-inventor" more appropriate.

"Interest" does not include every conceivable interest in this patent

prosecution context – just as it does not in other contexts of the law.[7]  As Barr

states at p. 29:

---

[6] "At the interview on May 28, Examiner Moyer asked if Dr. Vilhardt's Declaration indicated that Dr. Vilhardt considered the term "peroral" in Zaoral to mean "sublingual or buccal" and Dr. Vilhardt indicated that it did. Examiner Moyer suggested that applicants obtain evidence from a non-inventor to the same effect.  The annexed Declaration of Dr. Czernichow (Exhibit C) and Dr. Miller (Exhibit D) confirm Dr. Vilhardt's interpretation of Zaoral."  (A3731).

[7] For example for judicial standing *see LSI Computer Syst. v. United States ITC*, 832 F.2d 588, 591 (Fed. Cir. 1987) – "Those who do not have a genuine stake in the outcome of the investigation are unlikely to make that showing"; *Ritchie v. O.J. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999) – "opposer must have a direct and personal stake in the outcome of the opposition"; *Joint Stock Society v. UDV North America*, 266 F.3d 164, 175 (3rd Cir. 2001) – "a 'personal stake' or 'interest' in the outcome of the proceedings"; for right of appearance in a bankruptcy proceeding – *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002) – "anyone holding a direct financial stake in the outcome of the bankruptcy

> "MPEP [Manual of Patent Examining Procedure] §
> 716.01(d)(6th ed. 1995) (examiners "assessing the
> probative value" of a declaration "<u>must consider</u> . . . <u>the</u>
> <u>interest of the expert [declaration] in the outcome of the</u>
> <u>case</u>" (Barr added emphasis).

Indeed this focus on interest in an outcome accords with the original definition of

"disinterested":

> **DISINTERESTED**. Not concerned, in respect to
> possible gain or loss, in the result of the pending
> proceeding.
>
> **DISINTERESTED WITNESS**. One who has no
> interest in the cause or matter in issue, and who is
> lawfully competent to testify.

Original *Black's Dictionary of the Law* (1891).

All declarants have some interest in their declarations and those who sponsor

them, e.g., – payment for their professional time – with the possibility of future

retentions; or the fairness of obtaining a proper outcome for an invention or

technology misunderstood by an examiner but worthy of a patent, among countless

other motivations.[8] Dr. Miller testified that he executed his declarations because

he believed that the patent application was a "great idea". He had not known

previously that DDAVP had the potential to be administered by swallowing.

---

case"; and intervention under Rule 24(a)(2) which requires – *United States
v. IBM*, 62 F.R.D. 530, 534-36 (S.D.N.Y. 1974) – that "applicant claims an
interest relating to the property or transaction".

[8]    Inequitable conduct is viewed against the realities of patent practice.
*Northern Telecom Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir.
1990).

(Miller Tr. 211-213, 271-72, A2580-81, 2595).  Dr. Czernichow testified that he

wanted to "help clarify this [conflict]", i.e., prosecution (Czernichow Tr. 111-112,

120-21, A2923, 2925-26).  We have never encountered a walk-on declarant who

executed a declaration without some motivation to aid the sponsoring party.  Here,

the examiner expressly understood the interest of the patent assignee Ferring.[9]

    But the law is interested in and seeks disclosure of only those interests that

can equate with bias when a declaration is executed and specifically only an

"interest in the outcome of the case [prosecution]".  MPEP, *supra* p. 6.  The

declarants at issue had no stake, promise or expectancy of any remuneration or

favor at the time of executing their declarations regardless of whether the '398

patent did or did not issue.  FB p. 27-29, 50-51 and p. 18-20, *infra*.  Their prior

contacts – mostly limited and in Dr. Czernichow's case (published DDAVP

pediatric clinical trials) disclosed to the PTO (FB p. 28) – are not encompassed by

the MPEP mandated "interest of the expert – in the outcome of the case".  We

---

[9]    In the Office Action of Nov. 20, 1986 after receiving the first two Vilhardt
and first Miller and Czernichow declarations, the examiner observed
(A4390):

    "As Applicants are the exclusive licensee of the Zaoral
patent, it is obviously expeditious for Applicants to argue
that 'peroral' referred to in the patent referred only to
sublingual or buccal routes, whereas the instant mode of
administration excludes such routes as it involves
absorption by the gastrointestinal tract."

submit that there was nothing material to disclose; there was no disclosure

obligation.

In any event, the testimony supports inferences that the declarants never

considered whether they had anything to disclose; or that they were possibly

negligent in not disclosing their prior contacts with Ferring. None of this – not

even gross negligence – would support inequitable conduct intent.

Barr disagrees – arguing that "past contact" is sufficient for inequitable

conduct materiality, citing *Paragon Podiatry Lab., Inc. v. KLM Laboratories, Inc.*,

984 F.2d 1182 (Fed. Cir. 1993) – and only *Paragon* – as supposedly on point (BB

p. 24-25). We respectfully submit that it is not.

*Paragon* involved an examiner request for an "affidavit from a disinterested

third party", not a "non-inventor". *Id.* at 1191. Each affidavit submitted expressly

stated:

> "I have not been in the past employed by nor do I intend
> in the future to become employed by Paragon Podiatry
> Laboratories, a corporation which I understand is the
> assignee of the interest in the above captioned patent
> application."

*Id.*

In fact, the affiants were not disinterested – they were stockholders of

Paragon and consultants to Paragon when they signed their declarations. *Id.* at

1192. Moreover, this Court observed:

> "[T]he gratuitous averment that each 'understood'
> Paragon was an assignee of the patent implies they had
> no connection with their own company.  That averment
> serves no other purpose."

Barr is wrong to cite *Paragon* as supposedly inculpating "past contacts".

*Paragon* involved a currently existent continuing relationship at the time that the

affidavits were executed.  Barr cites nothing else to support "past contacts"

between Ferring and the declarants in this case that would represent a bias-

supporting "interest".

Accordingly, Appellant Ferring requests reversal of the summary judgment

for lack of inequitable conduct materiality.  We submit that the matter is at least

one of disputed fact.

## 2.    "The Only Reasonable Inference"

Barr states that the district court "concluded" that an "intent to mislead the

PTO" was the "only reasonable inference that could be drawn" from the facts of

this case.  BB p. 17; 31.  The district court never said this and, indeed, never tested

the record for the existence of other reasonable inferences which would favor

Appellants and the absence of any intent to deceive.  The portion of the Opinion

said by Barr to support the non-existent "only reasonable inference" is:

> "That three of the challenged declarations were submitted
> after several iterations of repeated attempts to obtain the
> patent's issuance speak loudly as to motive and intent."

Opinion, A18 and BB p. 17.

The district court's inference of an intent to mislead predicated upon a theoretical motivation to do so is the only inference raised by any party in this case which is <u>impermissible</u>. The several other inferences raised by Ferring are all permissible – and, this being summary judgment, must be taken. Many patent applications cycle through numerous rejections prior to issue – and that is why the ubiquitous practice of filing Section 132 declarations exists. Every applicant filing such a Sec. 132 declaration has a <u>motive</u> to deceive – but in vast, vast measure does not nor considers doing so. In legal terms, an "intent to deceive" is <u>not</u> "a logical consequence" of a patent applicant's need to overcome a rejection.

Also on point is *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1241-42 (Fed. Cir. 2004), reversing a summary judgment of inequitable conduct:

> [T]he applicants' presumed incentive to obtain broad patent protection for their inventions did not give rise to such a compelling inference of deceptive intent as to justify the entry of summary judgment on that issue.

In the absence of any direct proof of malevolent intent the district judge here inferred intent to deceive from motive to deceive. That is legal error on this basis alone.

Intent to deceive is an element of inequitable conduct separate from the materiality of any supposed omission – and requires proof.[10]  Intent may not be

---

[10]    Of which there is none for the reasons set forth at FB p. 48-53, p. 2-3, *supra*, and p. 18-20, *infra*.

inferred from even a material omission – and even less so from a postulated motive

without any proof that the "motive" led to prohibited conduct.  As expressed in

*Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 996 (Fed. Cir. 1995):

> "Peachtree refers to no evidence whatsoever of intent to
> deceive or mislead, but argues that intent to deceive or
> mislead should be inferred from the fact that certain
> information was not provided to the examiner.  That
> theory of inferential culpability was definitively laid to
> rest in Kingsdown, wherein this court *en banc* held that
> invalidity for inequitable conduct requires a showing, by
> clear and convincing evidence, of intent to deceive or
> mislead the patent examiner into granting the patent."

(emphasis added); *see also Allen Engineering Corp. v. Bartell Industries Inc.*, 299

F.3d 1336, 1351 (Fed. Cir. 2002); and the extensive authorities at FB p. 48.

Appellant Ferring respectfully requests reversal of the summary judgment

for lack of inequitable conduct "intent".  We submit that the matter is at least one

of disputed fact.

### 3.    *Refac*

The case principally relied on by the district court, *Refac International, Ltd.*

*v. Lotus Development Corp.*, 81 F.3d 1576 (Fed. Cir. 1996), is discussed at length

at FB p. 42-46 which urges that *Refac* was misapplied in the Opinion.  Yet Barr

barely gives lip service to the facts and rationale of *Refac*.

The *Refac* claims were directed to a program which converted source code

to object code.  The examiner had finally rejected the claims for insufficient

disclosure, deeming the disclosed flow diagram insufficient to enable a programmer of ordinary skill to write a program implementing the invention. *Id.* at 1578.

The inventors and their company Lanpar, Ltd. filed three third party affidavits each to the effect that the flow diagram disclosed was sufficiently enabling for the affiant to write the requisite code converting program. All three, Bullen, Cika and Jones had a work association with the inventors, and each had worked to a different extent with, and had knowledge of the details of the LANPAR program which was the subject of the application. These work associations were not disclosed in the affidavits and, more importantly, each affiant's pre-affidavit familiarity with the LANPAR program was not disclosed. *Id.* at 1578-1580.[11]

This omitted disclosure and work history association notwithstanding, two of the three accused declarants were held not to have committed inequitable conduct because their work and familiarity with the LANPAR program was modest. *Id.* at 1579-80; FB p. 43-44.

---

[11] The point of all this, and central to the *Refac* decision, is the head start that the affiants had to implement the patent's flow diagram in comparison with the hypothetical person of ordinary skill thereby making them inappropriate to provide affidavits on the "enablement" issue. This is entirely different from the situation here where there is no dispute that Dr. Vilhardt was the first to demonstrate that DDAVP could be administered to humans for absorption in the gastrointestinal tract more than a decade after the compound was synthesized (Zaoral).

Inequitable conduct was found, <u>after trial</u>, for only declarant Jones because "[w]hile at Lanpar and prior to executing his affidavit, Jones drafted the text for what became the introduction to what was later produced as the LANPAR Program Logic Manual." *Id.* at 1580.

The undisclosed Jones prior association was highly material <u>to the subject of his declaration</u>, i.e., as a result of his earlier LANPAR training it was totally inappropriate for him to opine that a program could be coded by a person of ordinary skill in the art <u>only</u> from the patent specification. *Id.* at 1580.

*Refac* was decided after a trial on the merits where credibility was important (and credibility was discussed no less than five times in the Federal Circuit's affirmance). *Id.* at 1582-84. The inequitable conduct ruling was reviewed under the "clearly erroneous" standard applicable after trial, and not under the much more stringent summary judgment standard here. The Federal Circuit placed the prior association omissions as a genre into perspective:

> "Holding that the omission of an aspect of one's employment history to be inequitable conduct might thus seem to be unduly severe, a heavy penalty <u>for an arguably minor omission</u>."

*Id.* at 1584 (emphasis added). However under the "clearly erroneous" standard of review, the Federal Circuit affirmed, noting:

> "We cannot hold as a matter of law that omission of a relevant part of one's employment history <u>on an affidavit intended to show the adequacy of the patent specification</u>

13

> to one of ordinary skill in the art, when such an affidavit
> by the inventor was earlier rejected, does not constitute
> inequitable conduct."

*Id.* at 1585 (emphasis added).  Not "employment history" *per se* - rather

employment history rendering an affiant not a person of ordinary skill in the art for

"an affidavit intended to show the adequacy of the patent specification" for

enabling purposes.[12]

The district court misapplied the double negative-type passage from *Refac*

above, quoting it and immediately following with:

> In other words, deliberate omission of a relevant part of
> an affiant's employment history on an affidavit in
> support of a patent would be inequitable conduct.

(A15 (emphasis added)).

This Court's statement in *Refac* that omitting a prior contact in an affidavit

as a matter of law can be inequitable conduct under certain appropriate

circumstances became a mandatory logical imperative that an omission of a prior

contact is inequitable conduct in the Opinion.  We submit that this is a fallacy and

a legal error.

---

[12]    Against all this, Barr ignores completely the specification flow diagram implementing headstart for Jones on which *Refac* was decided.  Barr presents only one fact from the case, stating incorrectly that "only one of the declarants had been in the applicants' employment (and then only for a few months)".  In fact each had worked with inventors Pardo, Landau or both – and it was on the extent and nature of these associations in conjunction with the LANPAR program that the case was decided.

The situation here is like that in *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 744 (Fed. Cir. 2002) rather than *Refac*:

> "Every statement in the declaration relating to the claimed invention is true. The relevant inquiry before the examiner was whether the claimed invention solved a long-felt need, not who said the invention solved the long-felt need. While the court is bothered by the Strattons' failure to correct the examiner's misunderstanding, the clarified identify of Boulahanis's employer <u>was immaterial to the issue before the examiner.</u>

*Id.* at 744 (emphasis added).

What *Refac* tells us is that employment history *per se* is "an arguably minor omission" which can become something more under proper facts – as on an affidavit in support of enablement (*Refac*) or an egregious expressly misrepresented lack of interest (*Paragon*), evaluating credibility and all facts and circumstances in the process.

### 4.    Barr's Privilege and Misconduct Red Herrings

Barr argues that Ferring's assertion of attorney client privilege for prosecution documents bars the available "reasonable inferences" of no deceptive intent favoring Ferring.  (BB p. 3 and *please see also* p. 15; 31).  This is a manifest *non-sequiter*, and no authority is presented to support it.

Beyond this, Barr was precluded by the district court from even raising the issue.  Barr sought certain privileged prosecution documents – and they were

offered by plaintiffs' counsel - conditioned on an agreement by Barr that this

would not constitute a plenary waiver of privilege.  That limited waiver of

privilege seemed a reasonable solution to the Court – but was rejected by Barr

counsel.  The Court cut Barr counsel off, had him sit down, and gave the argument

no weight:

> "MR. MONDOLINO:   Your Honor, the problem we have with this is
> that obviously, if we waive that privilege, we waive all the privilege.
> THE COURT:   That's not true.
> MR. MONDOLINO:   Well, if this counsel wants to agree right now
> we don't waive anything other than the documents, we have no
> problem.
> THE COURT:   So stipulated on the record?  Speak up.
> MR. ATTRIDGE:   Your Honor, we would assert there is a 'subject
> matter' waiver.
> THE COURT:   You may be seated and forget that argument, because
> I will give it no weight whatever . . . . "

(A6475).

In short, Barr does not have privileged correspondence regarding

prosecution because it is privileged – and because Barr rejected what the district

court deemed a more than reasonable limited waiver in the offer to provide it.

Moreover, and in any event, no negative inference can be taken from an exercise of

privilege – for all the reasons that privilege exists.  *Knorr-Bremse Systems Fuer*

*Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) and its

cited authorities.

What is pure fiction is Barr's statement (BB p. 16) that "privilege was pierced due to plaintiffs' discovery misconduct". There is no record citation showing any such discovery misconduct or discovery sanction. Rather, on the basis of waiver,[13] the magistrate disagreed with Ferring and ordered two documents produced while denying Barr's motion to compel and upholding "nonresponsiveness" for two others. (A957-963).[14]

Indeed, Barr's raising "consequences" of Ferring's reliance on privilege while itself claiming privilege for an unproduced opinion of counsel on the patent in suit "qualifies only for a chutzpa award". *Refac*, 81 F.3d at 1584.

### 5.    The PTO Lost Prosecution Files

Barr contends that Ferring counsel failed to respond to a PTO request for PTO-mislaid/lost documents. (BB p. 7 fn. 1). That is simply untrue.

The PTO requested that Ferring provide a copy of the Board of Appeals Decision. As acknowledged by the PTO, it was provided on May 10, 2000. (A5799 and 5801 and *please see* from the certified PTO file history the Board's

---

[13]    The magistrate found that a document Ferring had removed as duplicative of another document already on its privilege log was not an exact duplicate (signed vs. unsigned). (Nov. 21, 2003 Tr., A957-58).

[14]    At a separate hearing the magistrate reviewed Ferring's privileged documents and upheld privilege on all but a few of approximately 250 documents. (Dec. 9, 2003 Tr., A967-976).

Decision (A4583-4592) showing that Ferring's prosecution counsel provided the document).

Barr raises an issue about three supposed subsequent PTO letter requests for additional lost prosecution documents. There is no evidence that these letters were ever received (or sent), they are <u>not</u> in the PTO file history (Carmichael Tr. A4637 - Barr's legal expert), nor did Barr ever produce copies of these letters during discovery.

### C.    Barr's Arrogated "Undisputed Facts" Which are Disputed[15]

- Barr's repeated contention (BB p. 17, 32, 34, 36) that Appellants provided no evidence upon which they relied in opposing summary judgment of inequitable conduct is incorrect. The deposition transcripts of Drs. Vilhardt, Czernichow, Robinson, Miller and Barth are all of record and their contents belying any "interest" of the declarants' at issue in the prosecution outcome (patent issuance/non-issuance) clearly relied upon are reviewed at FB p. 27-30.[16]

---

[15]    And which disputes are resolved in plaintiffs' favor on summary judgment. Fn. 2, *supra*.

[16]    *See also* Plaintiffs' Statement of Disputed Facts In Response to Barr's Motion for Summary Judgment of Inequitable Conduct. (A5245-60).

- In this regard, Barr repeatedly contends as "undisputed" that declarants Drs. Robinson, Czernichow and Barth were "interested" parties (and consultants). (BB p. 31). This clearly is disputed.[17]

What is undisputed is that (a) none of these declarants were paid for the preparation and submission of their declarations and (b) none stood to lose or gain whether the application did or did not issue as a patent. Moreover, none had any relationship with Ferring at the time they executed their declarations. All of the relationships cited by Barr as representing an interest had passed. (FB p. 27-29).[18]

The record deposition testimony demonstrates the declarants' lack of interest in the prosecution of the '398 patent. Dr. Robinson testified that he was not paid for his declaration (Robinson Tr. 80, A2867) and that he had no financial interest in the issuance of the patent. *Id.* He also stated that his contacts with Ferring had terminated prior to his declaration. (Robinson Tr. 39-40, A2857). Dr. Vilhardt

---

[17]    Also disputed in the record below is Barr's contention that the declarants had no involvement in the preparation of their declarations (BB p. 16). *See* Miller Tr. 22-23, 194-195, 199-202, 205-209 (A2533, 2576, 2579-80); Robinson Tr. 82-84; 101-104 (A2868, 2873); Czernichow Tr. 27, 107-108, 145 (A2902, 2922, 2932); Barth Tr. 38-39, 113-116 (A5384, 5403); Vilhardt Tr. 360, 363-364, 367-368 (A5544-46).

[18]    Barr points to the description of the declarants in a privilege log for its "evidence" that they were consultants. Since the declarants' testimony is directly to the contrary, the matter is one of contested material fact that, if important and we argue that it is not, must be resolved in favor of appellants.

also testified to his understanding that Dr. Robinson was not a Ferring consultant. (Vilhardt Tr. 362, A5545).[19]

Dr. Czernichow testified that he was not compensated for his declarations (Czernichow Tr. 120, A2925) and that his relationship with Ferring had concluded. (Czernichow Tr. 25-26, A2902). Dr. Vilhardt also testified that he was not aware that Dr. Czernichow was a consultant of Ferring. (Vilhardt Tr. 345-346, A5540-41).

Dr. Barth testified that he was not paid for his declaration (Barth Tr. 77, A5393) and that he was not and had never been a consultant to Ferring. (Barth Tr. 30-31, 38, A5382-84).

The most that Barr can say is that each of the declarants had some *sui generis* prior contact with Ferring, but never had any "interest" in the patent prosecution outcome.

---

[19]    Dr. Robinson is an expert in peptide chemistry (Robinson Tr. 36-37, 46-48, A2856-57, 2859) – and this case is about peptides and their ability (really lack of ability) to be orally effective when administered to humans. Barr quotes a self deprecating statement of an expert on the subject at hand but in its context meaningless. (BB p. 13).

## III.    INFRINGEMENT

### A.    The Underlying Facts

Barr does not contest that:

- DDAVP is a peptide and the only commercially available peptide that is orally ingested and the active ingredient absorbed through the gastrointestinal tract.  (FB p. 11-12).

- All vasopressin analog peptides are synthesized in their acetate salt forms. (FB 57; Coy Rep. p. 4-5, A4985-86 (peptides synthesized in the Zaoral (A2357-59) and Boissannas (A2514-17) prior art patents are in their acetate salt forms)).

- The acetate salt is the only form of desmopressin approved by the FDA for administration in any mode, i.e., orally ingested, intranasal or injection forms of administration.  (FB p. 15-16, 33, 58).

- All DDAVP in pharmaceuticals sold from inception of marketing to filing of the '398 patent application (and beyond) were in the acetate salt form.  (FB p. 15-16, 33, 58).

- The original patent on DDAVP (Zaoral) cited in the '398 specification discloses the use of 1-deamino-8-D-arginine vasopressin in either or both of the free base or salt forms (col. 3, lines 15-16), and its synthesis in the

acetate salt form (col. 5, line 20 – col. 6, line 9).  (A2357-59; Verbalis Supp. Rep. p. 19, A2488; Verbalis Tr. 200-201, 253-254, A2116, 2129-30).[20]

- Swedish patent application Serial No. 8306367-7, listed on the face of the '398 patent, makes clear that all the examples of the '398 patent used desmopressin acetate.  (A2367).

- Barr's ANDA product is an orally administered tablet including desmopressin acetate as the active ingredient, which is used to treat diabetes insipidus, and for which desmopressin free base reaches plasma via gastrointestinal tract absorption – and in an amount bioequivalent to the patented tablet of Appellants.  (A4166, 4172).

- Barr has no defense to literal infringement if the claims are construed to encompass desmopressin acetate.

**B.    Claim Construction**

The claims of the '398 patent are all "comprising" claims, and recite "gastrointestinally absorbable, antidiuretically effective" amount of "1-deamino-8-D-arginine vasopressin".  The '398 patent specification states that:

> "This invention relates to the antidiuretic compound 1-deamino-8-D-arginine vasopressin, <u>which is commonly known as DDAVP</u>.".

---

[20]    Barr's statement that Zaoral does not disclose the acetate (BB p. 49-50) is simply wrong.

22

(A60, col. 1, lines 15-18 (emphasis added)).

We urge that the district court's construction limiting the literal wording of the claim to desmopressin free base to the exclusion of the acetate salt is error for each and all of:

1.     DDAVP has been used in the pharmaceutical art for decades to identify "1-deamino-8-D-arginine vasopressin" or DDAVP as desmopressin in its free base and acetate salt forms. That is the testimony of the expert witnesses; and that understanding is reflected in the usage of DDAVP in the field. (FB p. 57-58).

2.     "DDAVP (synthesized by Ferring AB)" disclosed in the '398 patent (A60, col. 2, line 65) necessarily referred to desmopressin acetate which was the only form of 1-deamino-8-D-arginine vasopressin" which Ferring manufactured, and this would be understood by artisans in the field.

3.     The prior art cited during prosecution interchangeably referred to DDAVP as desmopressin acetate (Ziai (1978), A4410) or desmopressin (Grossman (1980), A3559; FB p. 57-58).[21]

4.     Appellee Barr *ante litem motam* ███████████ ████████████████████████ (A4125, 4127, 4166-67, 4172).

---

[21]     Cited prior art is part of the intrinsic record for claim construction purposes. *Kumar v. Ovonic Battery Co. Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003) and its cited authorities.

5.    All the examples of the '398 patent include desmopressin acetate. *Please see* the Swedish priority application. (p. 6, A2367). The Swedish application is cited on the face of the '398 patent as its priority case. (A59). It is relevant to claim construction. *V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005); *Caterpillar Tractor Co. v. Berco S.P.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983); *see also Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*, 262 F.3d 1333, 1337 (Fed. Cir. 2001).[22]

6.    The construction covering desmopressin acetate also accords with the purposes underlying the mandate that claim construction is "rarely, if ever" correct if it excludes the preferred embodiment. *Abbott Laboratories Inc. v. TorPharm Inc.*, 300 F.3d 1367, 1372 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *Modine Mfg. Co. v. U.S.I.T.C.*, 75 F.3d 1545, 1550 (Fed. Cir. 1986). Desmopressin in its acetate salt form is the preferred (and only commercial) embodiment, i.e., the only embodiment sold (or available) in the 25-year history of the pharmaceutical in all its administration forms. Those skilled in the art construing the claims would not exclude the going and sole form of the

---

[22]    Barr contends that the absence of an English language translation precludes entitlement to the filing date of the priority case. (BB p. 8 fn.2). That is not the issue. Barr incorrectly goes on to say - without citing to any authority - that the absence of a translation disqualifies the priority case from relevance to claim construction. As the authority above makes clear, priority applications are part of the intrinsic record that can be relied upon.

pharmaceutical – the acetate salt – from the literal scope of the claims – and particularly not when there is no stated reason for doing so.

Appellants urge that the claim language "1-deamino-8-D-arginine vasopressin" thus should be construed to mean desmopressin in its free base and salt (acetate) forms. That is its recognized and plain meaning and usage. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981, 986 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996); *Metabolic Laboratories v. Laboratory Corp. of America*, 370 F.3d 1354, 1360 (Fed. Cir. 2004); *TI Group Automotive Systems (North America), Inc. v. VDO North America, LLC*, 375 F.3d 1126, 1133-34 (Fed. Cir. 2004).

This construction is also consistent with *Merck & Co. v. Teva Pharmaceuticals USA, Inc.*, 347 F.3d 1367, 1369, 1371-72 (Fed. Cir. 2003), and *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1274 (Fed. Cir. 2004). Those in the art understood that desmopressin is the active moiety administered as the acetate salt; the specification references to the prior uses of DDAVP would be understood to be to the acetate salt form.

## C.    The '398 Patent Claims Are Infringed Regardless of The Claim Construction

### 1.    Literal Infringement

#### a.    Under Appellant Ferring's Proposed Construction

If this Court corrects construction of the claims of the '398 patent to mean desmopressin in its acetate salt form as well as in its free base form, it is beyond dispute that Barr's ANDA desmopressin acetate formulation literally infringes the asserted claims of the '398 patent.  (FB p. 61 and its referenced claim chart (A4346-47) and record citations all without challenge in Barr's Brief).

#### b.    Under The District Court's Construction – The Classic "All Elements" Rule

Barr literally infringes under the district court's Opinion because the desmopressin acetate product Barr makes, uses and will sell contains the claimed desmopressin moiety as the cation in the desmopressin acetate.  As noted by Barr (BB p. 43), the claimed "1-deamino-8-D-arginine vasopressin" is represented by the following structural formula:

$$Mep - Tyr - Phe - Gln - Asn - Cys - Pro - D\text{-}Arg - Gly - NH_2$$

The active ingredient that Barr's ANDA is seeking FDA approval to sell is:

$$Mep - Tyr - Phe - Gln - Asn - Cys - Pro - D\text{-}Arg - Gly - NH_2 \cdot CH_3COOH$$

(BB p. 44).  The two are identical save for the acetate ion.

All claims are of the open ended "comprising" form.  (FB p. 13-14 and '398

patent, A61).  Infringement is not avoided by adding something to supplement the

claimed combination.  *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed.

Cir. 1997); *Fiskars Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000)

and authorities at FB p. 62.

Thus there is literal infringement by application of the classic "all-elements"

rule.

### c.    Under The District Court's Construction – Pro-Drug Infringement

Independent claims 6 and 11 (and their dependent claims) recite:

> 6.    A method for initiating antidiuresis comprising administering
> a gastrointestinally adsorbable [*sic*], antidiuretically effective, amount
> of 1-deamino-8-D-arginine vasopressin to a human for absorption in
> the gastrointestinal tract of said human.

> 11.    A method for treating diabetes insipidus comprising
> administering a gastrointestinally absorbable, antidiuretically
> effective, amount of 1-deamino-8-D-arginine vasopressin to a human
> for absorption in the gastrointestinal tract of said human.

(FB p. 13-14, A61).

Barr's ANDA tablets include desmopressin acetate that dissolves in the

gastrointestinal tract and produces an antidiuretically effective amount of

desmopressin in the blood that is bioequivalent to Appellants' patented medicine.

(A4172, quoted at FB p. 26 fn. 24).  That is, Barr's proposed ANDA product

initiates antidiuresis by administering a medicine (desmopressin acetate) which *in*

*vivo* becomes a gastrointestinal tract absorbable and absorbed antidiuretically effective amount of desmopressin.

That <u>is</u> infringement of these claims.[23]

Barr urges that the *in vivo* conversion (<u>pro-drug</u>) theory of infringement was not raised before the district court. We submit that is simply wrong. *Please see* Plaintiffs' Resp. Cl. Constr. Brief, A4369; Plaintiffs' Opp. to Barr's Motion for Summary Judgment of Non-Infringement, A5190; and Plaintiffs' Reply in Support of its Motion for Summary Judgment of Infringement, A6293.

Moreover, had it not been raised (as noted *supra*, it was), this Court considers any basis for affirming or rejecting any theory on an <u>issue</u> (here, infringement/non-infringement) which was raised before the district court. *Inverness Medical Switzerland GmbH v. Warner-Lambert Co.*, 309 F.3d 1373, 1381 (Fed. Cir. 2002); *Forshey v. Principi*, 284 F.3d 1335, 1355-58 (Fed. Cir. 2002).

## 2. <u>Infringement By Equivalents</u>

Reading and re-reading Barr's section on point (BB p. 59-63), not one reason is provided on the merits of the issue why there is no infringement under the doctrine of equivalents. Barr does not identify any element of any claim that does

---

[23]    Ferring urges that nothing on this issue remains for trial if the summary judgment is reversed. We submit that the issue is at least one of contested material fact. *See also* Plaintiffs' Statement of Disputed Facts In Response to Barr's Motion for Summary Judgment of Infringement. (A5202-15).

not find correspondence, literally or under the doctrine of equivalents, in the Barr

ANDA product and its methods of use. There is no dispute that its product and

methods of use are, respectively, an antidiuretic medicine which administers an

antidiuretically effective amount of desmopressin absorbed through the

gastrointestinal tract of humans. *Please see* FB p. 64 and its incorporated record

citations – especially the Barr bioequivalence study. (A4166-72).

In the shorthand of *Graver Tank & Mfg. Co. v. Linde Products Co.*, 339 U.S.

605, 608 (1950); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17,

40 (1997) and their extensive progeny, Barr's desmopressin acetate ANDA product

has the same function (develops a concentration of desmopressin in plasma) in the

same way (following oral ingestion and absorption from the GI tract) to achieve

the same result (therapeutic antidiuresis).

We submit that thus there is infringement under the doctrine of equivalents.

Barr raises notions of not using "the doctrine of equivalents to 'erase' …

meaningful, structural and functional limitations of a claim". (BB p. 60). The

problem, however, is that Barr never identifies, much less discusses, <u>any</u> such

"erased meaningful limitation".

Barr's contention that plaintiffs' counsel admitted that plaintiffs do not

practice their "own invention" is belied by counsel's entire statement in context

and as correctly stated and clarified in the immediately following recorded

paragraph of the transcript. (FB p. 63-64, and Tr. 31, A6447 quoted at FB p. 34). Interestingly, Barr neither recognizes nor comments on this record as a whole. No "admission" exists or, we suggest, is appropriate.

Barr's argument that infringement by equivalents was raised too late (i.e., in its contention interrogatory response (A3380-81) long before the close of expert discovery) does not identify an earlier time when it should have/could have been raised[24] - and the dispositive response to the assertion is that the district court specifically considered the contention. (Opinion, A32-34). It is also properly before this Court as a theory going to the issue of non-infringement which is a substantial issue decided by the district court and pending in this appeal.

We urge that there <u>is</u> uncontested infringement under the doctrine of equivalents. The issue is at least one of contested material fact inimical to the summary judgment appealed from.

---

[24] Barr is a particularly unfavored supplicant on point, having violated the explicit letter and spirit of 21 C.F.R. § 314.95(c)(6)(ii) by not identifying non-infringement in their Par. IV Notification Letter. (FB p. 6). This omission was further emphasized by their Answer to the Complaint which denied infringement only under the hokey rubric:

"12.  The manufacture, use, offering for sale, sale or importation of the desmopressin acetate tablets that are the subject of Barr's Abbreviated New Drug Application ("ANDA") No. 76-470 will not infringe any valid claim of the '398 patent." (A69).

## IV.    **CONCLUSION**

Appellant Ferring urges for the reasons given above, and as more fully set forth in Ferring's Brief on this appeal, with its record citations, that the summary judgment appealed from be reversed and the case remanded for trial.  We respectfully request as part of the mandate on remand that the issue of infringement be decided in Appellant Ferring's favor, there being no material fact or even theory in dispute.

Date: July 8, 2005                                   Respectfully submitted,

_Dennis J. Mondolino_
Dennis J. Mondolino
Stephen B. Judlowe
Esther H. Steinhauer
Edward M. Reisner
Jeffrey M. Gold
Timothy P. Heaton
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY  10178
(212) 309-6000

*Attorneys for Plaintiff-Appellant*
*Ferring B.V.*

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT FEDERAL** |
| COUNTY OF NEW YORK | ) | | **EXPRESS NEXT DAY AIR** |

I,                    , being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

**DHARMENDRA KAPADIA**
**47 CHELSEA ROAD**
**CLIFTON, NJ 07012**

JUL 0 8 2005

deponent served the within: **Non-Confidential Reply Brief for Plaintiff-Appellant Ferring B.V.**

upon:

**DANIEL F. ATTRIDGE, ESQ.**
**EDWARD C. DONOVAN, ESQ.**
**CHARANJIT BRAHMA, ESQ.**
**JOHN T. BATTAGLIA, ESQ.**
**JOHN C. O'QUINN, ESQ.**
**KIRKLAND & ELLIS**
**Attorneys for Defendant-Appellee**
**655 15th Street, NW**
**Washington, DC 20005**
**(202) 879-5000**

**GERALD SOBEL, ESQ.**
**AARON STIEFEL, ESQ.**
**DANIEL P. DiNAPOLI, ESQ.**
**KAYE SCHOLER LLP**
**Attorneys for Plaintiff-Appellant**
**Aventis Pharmaceuticals, Inc.**
**425 Park Avenue**
**New York, New York 10022**
**(212) 836-8000**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, enclosed in a properly addressed wrapper in an Overnight Next Day Air Federal Express Official Depository, under the exclusive custody and care of Federal Express, within the State of New York.

Sworn to before me on                    JUL 0 8 2005

**ROBIN M. ZUCKERMAN**
Notary Public State of New York
No. 01ZU5007194
Qualified in Orange County
Commission Expires Jan. 25, 2007

**Job 194352**

STATE OF NEW YORK    )
                               )    ss.:      **AFFIDAVIT OF SERVICE**
COUNTY OF NEW YORK   )                    **VIA FACSIMILE**

      I, Maria Piperis, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

   **On**         JUL 0 8 2005

deponent served the within: **Non-Confidential Reply Brief for Plaintiff-Appellant Ferring B.V.**

   **upon:**

DANIEL F. ATTRIDGE, ESQ.               GERALD SOBEL, ESQ.
EDWARD C. DONOVAN, ESQ.            AARON STIEFEL, ESQ.
CHARANJIT BRAHMA, ESQ.              DANIEL P. DiNAPOLI, ESQ.
JOHN T. BATTAGLIA, ESQ.               KAYE SCHOLER LLP
JOHN C. O'QUINN, ESQ.                 **Attorneys for Plaintiff-Appellant**
KIRKLAND & ELLIS                       **Aventis Pharmaceuticals, Inc.**
**Attorneys for Defendant-Appellee**      **425 Park Avenue**
**655 15th Street, NW**                  **New York, New York 10022**
**Washington, DC 20005**             **(212) 836-8000**
**(202) 879-5000**

the Attorney(s) in this action by Transmitting **1** true copy thereof via Facsimile.

Sworn to before me on

                                 JUL 0 8 2005

   **ROBIN M. ZUCKERMAN**
   Notary Public State of New York
      No. 01ZU5007194
    Qualified in Orange County
  Commission Expires Jan. 25, 2007

                            Job # 194352

## CERTIFICATE OF COMPLIANCE WITH FED.R.AP.P. 32(A)(7)(C)

The undersigned attorney of record hereby certifies, pursuant to Rule 32(a)(7)(C), Fed.R.App.P., that the foregoing brief of Plaintiff-Appellant Ferring B.V. contains no more than 7,000 words as provided in Rule 32(a)(7)(B). As provided in Rule 32(a)(7)(C), I have relied upon the word count of the word-processing system used to prepare the brief, which indicates that the brief contains 6,838 words.

Date:    July 8, 2005

Timothy P. Heaton

**CP**

COUNSEL PRESS

520 EIGHTH AVENUE, NEW YORK, NEW YORK 10018
(212) 685-9800; (716) 852-9800; (800) 4-APPEAL
(194352)