# Exhibit 31

Appeal No. 05-1284

# United States Court of Appeals

### *for the*

## Federal Circuit

FERRING B.V.,

*Plaintiff-Appellant,*

– and –

AVENTIS PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

– v. –

BARR LABORATORIES, INC.,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 02-CV-9851,
JUDGE CHARLES L. BRIEANT

## PLAINTIFF-APPELLANT FERRING B.V.'s COMBINED
## PETITION FOR PANEL REHEARING
## AND REHEARING *EN BANC*

STEPHEN B. JUDLOWE
TIMOTHY P. HEATON
MORGAN, LEWIS & BOCKIUS
101 Park Avenue
New York, New York 10178
(212) 309-6000

DENNIS J. MONDOLINO
LISA M. FERRI
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10017
(212) 547-5400

*Attorneys for Plaintiff-Appellant Ferring B.V.*

MARCH 1, 2006

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
Ferring B.V. and Aventis Pharmaceuticals Inc., Plaintiffs-Appellants
v. Barr Laboratories Inc., Defendants-Appellees

Appeal No. 05-1284

## CERTIFICATE OF INTEREST

Counsel for Appellant Ferring B.V. certifies as follows:

1.    The full name of every party represented by me is:

Ferring B.V.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Ferring B.V.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Ferring B.V. is a wholly owned subsidiary of Ferring Holding SA, Switzerland.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Morgan Lewis & Bockius LLP, by Stephen B. Judlowe, Esther H.

Steinhauer, Edward M. Reisner, Jeffrey M. Gold, and Timothy P.

Heaton.

McDermott, Will & Emery, by Dennis Mondolino, Lisa M. Ferri.


Date: March 1, 2006

Dennis J. Mondolino
Lisa M. Ferri
McDermott, Will & Emery LLP
340 Madison Avenue
New York, NY 10017

# TABLE OF CONTENTS

Page

I.    STATEMENT OF COUNSEL UNDER FED. CIR. RULE 35(b) ............... 1

II.   POINTS OF LAW AND FACT OVERLOOKED AND
      MISAPPREHENDED BY THE PANEL ..................................................... 2

III.  ARGUMENT IN SUPPORT OF A REHEARING AND
      REHEARING EN BANC ........................................................................... 4
      A.   Factual Background .......................................................................... 4
      B.   The Panel Opinion Ignores Precedents of this Court and Adopts
           A Per Se Rule of Materiality for Past Affiliations ............................ 7
      C.   The Panel Inferred Intent Based Solely On The Failure To
           Disclose the Past Affiliations Contrary to Kingsdown .................... 10
      D.   Inequitable Conduct Is Not Amenable To Summary Judgment
           Where Materiality or Intent Are Reasonably Disputed .................... 14

IV.   CONCLUSION ........................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen Engineering Corp. v. Bartell Industrial Inc.,*
299 F.3d 1336 (Fed. Cir. 2002) ................................................................. 12

*American Hoist & Derrick Co. v. Sowa & Sons Inc.,*
725 F.2d 1356 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821 (1984) ............ 13

*Anderson v. Liberty Lobby,*
477 U.S. 242 (1986)................................................................. 1, 7, 14

*Baker Oil Tools, Inc. v. Geo Vann, Inc.,*
828 F.2d 1558 (Fed. Cir. 1987) ................................................................. 14

*Baker Oil Tools v. Geo Vann,*
828 F.2d 1350 (Fed. Cir. 1984) ................................................................. 1

*Baxter International v. McGaw, Inc.,*
149 F.3d 1321 (Fed. Cir. 1998) ................................................................. 10

*Critikon, Inc. v. Becton Dickenson Vascular Access, Inc.,*
120 F.3d 1253 (Fed. Cir. 1997) ......................................................... 2, 12, 13

*Digital Control Inc. v. The Charles Machine Works,*
2006 U.S. App. LEXIS 2991 (Feb. 8, 2006, Fed. Cir.) .......................... 12, 14

*Driscoll v. Cebalo,*
731 F.2d 878 (Fed. Cir. 1984) .................................................................. 3, 13

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,*
Nos. 05-1224, 1228 (February 27, 2006, Fed. Cir.) .............................. 13, 14

*FMC v. Hennessy Industrial, Inc.,*
836 F.2d 521 (Fed. Cir. 1987) ................................................................. 11

*FMC v. Manitowoc Co.,*
835 F.2d 1411 (Fed. Cir. 1987) ................................................................. 14

*Halliburton Co. v. Schlumberger Technology Corp.*,
   925 F.2d 1435 (Fed. Cir. 1991) ................................................................ 13

*Herbert Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) ................................................................ 12

*Juicy Whip Inc. v. Orange Bang, Inc.*,
   292 F.3d 728 (Fed. Cir. 2002) ................................................................ 10

*Kingsdown Medical Consultants v. Hollister, Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) ....................................................... *passim*

*Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.*,
   732 F.2d 903 (Fed. Cir. 1984) ................................................................ 12

*Purdue Pharma.L.P. v. Endo Pharm. Inc.*,
   2006 U.S. App. LEXIS 2887 (Feb. 1, 2006, Fed. Cir.) ................................... 9

*Refac International, Ltd. v. Lotus Development Corp.*,
   81 F.3d 1576 (Fed. Cir. 1996) .......................................................... 9, 10

*Therma-Tru Corp. v. Peachtree Doors, Inc.*
   44 F.3d 988 (Fed. Cir. 1995) ................................................................ 13

*Upjohn Co. v. MOVA Pharm.*,
   225 F.3d 1306 (Fed. Cir. 2000) ............................................................. 12

## SUPPLEMENTAL STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. Rule 47.5(b), Plaintiff-Appellant Ferring B.V. provides the following information as a supplement to Ferring B.V.'s Statement of Related Cases included in its April 25, 2005, Brief of Plaintiff-Appellant:

On August 12, 2005, the antitrust class action *Central Suffolk Hospital v. Ferring B.V., Ferring Pharmaceuticals, Inc. and Aventis Pharmaceuticals, Inc.,* SDNY Civ. Action No. 05-3833 (CLB), was voluntarily dismissed by the plaintiff in that action.

On August 18, 2005, in the District of New Jersey, the case *Ferring B.V. v. Apotex, Inc.,* Civ. Action No. 05-4083 (SRC), was filed. This case has been stayed pending the resolution of this appeal. In this case, defendant Apotex filed an ANDA with a Paragraph IV Certification seeking FDA approval to market an oral form of desmopressin acetate prior to the expiration of the '398 patent.

In the District of Delaware, the case *Ferring B.V. v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industrials, Ltd.,* Civ. Action No. 04-884-SLR, has also been stayed pending the outcome of this appeal. In this case, defendants Teva filed an ANDA with a Paragraph IV Certification seeking FDA approval to market an oral form of desmopressin acetate prior to the expiration of the '398 patent.

I.    **STATEMENT OF COUNSEL UNDER FED. CIR. RULE 35(b)**

Based on my professional judgment, I believe that the panel decision is contrary to the following decisions of the Supreme Court and precedents of this Court: *Anderson v. Liberty Lobby,* 477 U.S. 242 (1986); *Kingsdown Med. Consultants v. Hollister, Inc.,* 863 F.2d 867 (Fed. Cir. 1988); *Baker Oil Tools v. Geo Vann,* 828 F.2d 1350 (Fed. Cir. 1984). Further, I believe that this appeal requires an answer to the following precedent-setting questions of exceptional importance:

1.    In the absence of evidence of purposeful omission of material information, may deceptive intent be inferred on the basis that the applicant "should have known" that the omitted information was material?

2.    May deceptive intent be inferred solely from the omission of a prior affiliation between an applicant and third-party declarant in a declaration filed in support of patentability or must the requirement of materiality and intent <u>each</u> be supported by clear and convincing evidence?

3.    On summary judgment must the non-movant come forward with exculpatory evidence of no deceptive intent where, giving the applicant the benefit of all inferences, the movant has failed to make a *prima facie* showing that the applicant intentionally withheld information from the Examiner?

Dated: March 1, 2006

Dennis J. Mondolino
Counsel for Plaintiff-Appellant, Ferring B.V.

## II.   POINTS OF LAW AND FACT OVERLOOKED AND MISAPPREHENDED BY THE PANEL

This case is unprecedented, as no prior case has found inequitable conduct based on omitted information where there was no <u>evidence</u> of intentional omission or deceptive intent.  In direct contravention of *Kingsdown* and its progeny, the Majority infers materiality of information, infers knowledge of that materiality by the applicant and, then, infers a malevolent intent to withhold that information. With nothing more than inferences and innuendo, the panel erases a valuable property right to an innovative invention and convicts an inventor of fraudulent conduct—all on summary judgment.  "The panel majority's holding that deceptive intent is established as a matter of law if the applicant 'should have known' that information might be material to patentability further revives the 'plague' of the past with burdens that far outweigh any conceivable benefits." (Dissent at 17-18).

Under *Kingsdown*, and its progeny, negligence alone cannot support a finding of inequitable conduct—a deliberate decision to withhold information known to be material <u>must</u> be shown.  863 F.2d at 876.  The majority's reliance upon *Critikon, Inc. v. Becton Dickenson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) for the proposition that deceptive intent is established as a matter of law if the applicant "should have known" that information might be material to patentability is misplaced because that proposition is taken from *Driscoll v.*

*Cebalo*, 731 F.2d 878 (Fed. Cir. 1984) – a decision expressly overruled by the *Kingsdown en banc* decision. *Kingsdown*, 863 F.2d at 876. Thus, the panel decision here has created conflicting precedent in this Court, which must be resolved.

The Majority also flouts the precedents of the Supreme Court, mandating that summary judgment of inequitable conduct must be shown by clear and convincing evidence of materiality and deceptive intent, when viewed in a light most favorable to the non-movant, with all reasonable inferences to be drawn in its favor. Here, not only does the Majority ignore Ferring's evidence of lack of intent but impermissibly draws adverse inferences from the record. For instance, the majority found that all three declarants, were "consultants" to the applicant and that the inventor knew this, despite his sworn testimony to the contrary. (Majority at 14; A5540-41). Moreover, while the majority improperly inferred that the omission of one of the declarants past connection to Ferring from his "extensive" *curriculum vitae* ("CV") supports a "showing of intent"; the dissent infers that that same omission from a "three page" CV is "so remote as to not be worthy of a listing in his CV." (Majority at 22; Dissent at 6).

Lastly the Majority infers that the inventor "knew or should have known" the materiality of the affiliations because he was aware that the "examiners requested non-inventor affidavits," notwithstanding that the record is devoid of any

- 3 -

evidence that the inventor had even considered whether or not to include the omitted information. (Majority at 15; Dissent at 20). These contrary inferences drawn by the Majority and Dissent from the very same record counsels that this case was not proper for summary disposition. Rehearing should be granted.

## III.  ARGUMENT IN SUPPORT OF A REHEARING AND REHEARING EN BANC

### A.  Factual Background

U.S. Patent No. 5,047,398 ("the '398 patent") is directed to an orally ingestible dosage form of desmopressin acetate (DDAVP) and a method for relieving the malady of grossly excessive water elimination, i.e., diabetes insipidus. (A59-61). Prior to the invention, DDAVP was available only by injection or intranasal and sublingual administration as it was understood by those of ordinary skill in the art that peptides such as DDAVP, when taken orally, were rendered ineffective by enzymes in the gastro-intestinal tract. (A60, col. 1, lns. 21-40). The introduction of a tablet (oral) form of DDAVP was considered a significant medical breakthrough.

During prosecution, the Patent Examiner rejected the claims over the Zaoral reference which disclosed "peroral" administration of DDAVP. (A4385). At an interview attended by co-inventor, Dr. Vilhardt, the Examiner "suggested" that applicants submit declarations by "non-inventors" in support of patentability. (A3730). Subsequently, Dr. Vilhardt submitted the declarations of two "non-

inventor" scientists, Drs. Miller and Czernichow, along with his own, in support of the proposition that the "peroral" disclosure in Zaoral would not suggest gastrointestinal absorption to a skilled artisan. (A3634-37, 3601-03).

Following further prosecution, which included an appeal to the Board of Patent Appeals, applicants submitted four additional declarations—from Drs. Czernichow and Miller, as well as, new declarants, Drs. Barth and Robinson. (A3692-3700). The '398 patent was subsequently allowed. As per the record before the district court, none of the declarants had any financial interest in Ferring or stood to gain financially or otherwise by the issuance of the patent; none received any remuneration for their declarations; and none were affiliated with Ferring at the time of their declaration. They were all highly credentialed experts in the narrow DDAVP/peptide chemistry subject of the patent. (Dissent at 6-8). Indeed, Dr. Vilhardt testified that he chose the declarants because they were "knowledgeable and connected to the field as to give a qualified opinion on the matter." (A5517).

Defendant-Appellee Barr Laboratories moved for and was granted summary judgment of inequitable conduct. The "omission" relied upon by the district court was the failure of inventor Dr. Vilhardt to disclose the pre-declaration associations of the other declarants with Ferring. The omission was found by the district court to be exacerbated by "the very cumbersome and indeed mysterious prosecution

- 5 -

history" of the '398 patent, involving "several iterations of renewed attempts follow[ing] several rejections". (Two Amendments and a successful appeal within the PTO). (A16).

The Majority (Circuit Judges Dyk and Mayer) affirmed on the basis of the omitted prior contacts of the declarants with Dr. Vilhardt or Ferring. The Dissent (Circuit Judge Newman) found the Majority's Decision a succession of improper speculations and unsupportable inferences. The Dissent also identified contested issues of material fact which were deemed improperly resolved on summary judgment. As stated in the dissent, the Majority, in "endorsing several novel and unsupportable presumptions of wrongdoing, do injury to the reasonable practice of patent solicitation, even as they defy the rules of summary judgment." (Dissent at 2).

"The inference that the [non-inventor declarants'] scientific opinions may be biased and were submitted with deceptive intent is a travesty". (Dissent at 7-8). The Dissent concludes: "It is improper to convict this inventor of fraudulent conduct based on inference, on summary judgment. That is not the law, and it is not just procedure." (Dissent at 21).

**B.    The Panel Opinion Ignores Precedents of this Court and Adopts A Per Se Rule of Materiality for Past Affiliations**

**1.    A Non-Inventor Is Not Synonymous with A Stranger To the Applicant**

On summary judgment, all reasonable inferences are to be drawn in favor of the non-moving party—here Ferring and Aventis. *Anderson,* 477 U.S. at 255; (Dissent at 12-20). On appeal, the Majority panel holds that the Examiner's request for "non-inventor" declarations was, in effect, a request for individuals with no affiliations (past or present) to Ferring or inventor Dr. Vilhardt. (Majority at 15). There is no evidence to support this finding — it is simply an inference drawn by the Court in the favor of the <u>movant</u>. This improper inference forms the entire basis of the panel's finding of materiality and intent.

As an initial matter, no evidence was proffered that Dr. Vilhardt had any understanding that the declarants were required to be strangers to the applicants or Ferring and, in fact, his testimony was to the contrary. (A5517). Indeed, all non-Vilhardt declarations filed during the full course of the prosecution were by "distinguished scientists who were not inventors". (Majority at 6; Dissent at 5). At the very least, what the examiner meant and requested by "non-inventor" is a disputed question of fact which is inimical to summary judgment. In this regard:

> "The panel majority improperly draws adverse inferences against the party opposing summary judgment, inferring (1) that when the examiner requested 'non-inventor' declarations, he expected experts who had no relationship with Ferring.

(Dissent at 19; *Id.* at 9). However, a reasonable inference from the examiner's suggestion for a non-inventor declaration is that inventor Dr. Vilhardt took the Examiner at his word and understood "non-inventor" to mean "non-inventor"! (Dissent at 19). This finding of fact, and this inference should have been drawn in favor of Ferring, on summary judgment. This is especially true since DDAVP (of which Ferring was the sole commercial source) falls within the narrow field of specialized peptide chemistry such that an examiner would reasonably understand that experts in this narrow field would by necessity have interacted to one extent or another with Ferring and other interested scientists. (Majority at 24; Dissent at 19). We urge that all this matters and supports the inference that "non-inventor" was all that was asked and all that was understood.

The only other "fact" forming a predicate to the Majority's inference of an impermissible "omission" was the absence of a reference to the declarant Dr. Czernichow's contact with Ferring in his *curriculum vitae*. The inference drawn by the Majority – without any record evidence and not even an inquiry by Barr during two years of discovery – is that this was in furtherance of a plan to suppress disclosure of such contacts. This is not supported by any evidence. The most reasonable inference, to which Ferring is entitled on summary judgment, is that Dr. Czernichow's relationship with Ferring was so remote as to not be worthy of listing in his CV. (Dissent at 6).

- 8 -

### 2. The Majority Opinion Mischaracterizes the Relationship Between the Applicant and the Declarants In Order to Support Its Per Se Rule of Materiality

The Majority ruled that the "omission" of the declarants' prior contacts with Dr. Vilhardt/Ferring was material as a matter of law because of their "interest." These contacts became under the Majority decision "extremely significant affiliations" and materiality became "highly material" as a matter of law. (Majority at 14, 16). [1]

When and whether past contacts, employment or the like are material is a heavily fact dependent issue. The Panel placed much reliance on this Court's decision in *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996). *Refac* was an appeal after trial. The standard of review was abuse of discretion, not that of summary judgment. The importance of the trial court's evaluation of credibility was cited numerous times in this Court's affirmance—particularly noting the prosecutor's testimony that the inventors withheld the relationship with

---

[1] The majority panel decision conflicts with the recent decision of *Purdue Pharma. L.P. v. Endo Pharm. Inc.*, 2006 U.S. App. LEXIS 2887 (Feb. 1, 2006, Fed. Cir.). In *Purdue*, this Court found that a representation to the Examiner that it had been "surprisingly discovered" that oxycodone acceptably controlled pain over a four-fold dosage range, while withholding from the PTO the fact that the discovery was based on insight without scientific proof was of "relatively low" materiality. *Id.* at *30. In finding low materiality, this Court expressly distinguished *Purdue* from cases in which an affirmative misrepresentation was made. *Id.* at *26. On the basis of *Purdue*, the omission of past affiliations with an applicant, without more, cannot be held "highly" material.

-9-

the applicant even when expressly asked. *Id.* at 1579-82. Moreover, in *Refac*,

unlike the present case, the past omitted relationship with the patentee had

significance, in that it was "intertwined" with the merits of the declaration. *Id.* at

1581. Even then, in a case far more extreme than that at bar, this Court noted:

> "Holding that the omission of an aspect of one's employment history
> to be inequitable conduct might thus seem to be unduly severe, a
> heavy penalty for an <u>arguably minor omission</u>." (emphasis added).

*Id.* at 1584. The law is clear that while declarations in support of patentability are

material, not everything in those declarations is material. *Juicy Whip Inc. v.*

*Orange Bang, Inc.*, 292 F.3d 728, 744 (Fed. Cir. 2002). Bias may or may not be

material, yet the Majority inferred it was without factual predicate. (Dissent at 11).

A "negligent omission" is at most a bias inquiry, not a "new per se rule [that] is

contrary to precedent, contrary to the rules of evidence, and contrary to reason".

(*Id.* at 10).

### C.    The Panel Inferred Intent Based Solely On The Failure<br>To Disclose Past Affiliations Contrary to *Kingsdown*

#### 1.    "Should Have Known" Is Not The Law

Where an omission of material information is alleged, "there must be clear

and convincing evidence that the applicant made a deliberate decision to withhold

a known material reference." *Baxter Int'l v. McGaw, Inc.*, 149 F.3d 1321, 1329

(Fed. Cir. 1998). Here, no evidence was proffered that Dr. Vilhardt was aware that

the declarants' affiliations were material or that he omitted the affiliations with the

intention to deceive the Examiner. As stated by the Dissent:

> "Nonetheless, my colleagues, without inquiry or evidence, rule that
> deceptive intent must be inferred. The panel majority posits that the
> examiner was necessarily misled, and intentionally so, by the absence
> from their affidavits or curricula vitae of these relationships. The
> majority reaches this conclusion that clear and convincing evidence of
> materiality and intent are established, not upon considering and
> weighing the particular facts, but by adverse inference and
> presumption, on summary judgment. That is not the law of
> inequitable conduct, and it is not a reasonable application of any of
> the rules and protocols of evidence.

(Dissent at 8). The Majority's inference of intent from the finding that Dr.

Vilhardt "should have known" the withheld information would be material is not

permitted under *Kingsdown*. Further, even under the Majority's incorrect legal

standard, an inference of nefarious intent is unsupported. There is no evidence that

Vilhardt deliberately avoided learning of the materiality of the undisclosed

contacts and thus, no reasonable fact finder could find that he had knowledge

warranting an inference of deliberate intent to withhold the information. *See FMC*

*v. Hennessy Indus., Inc.,* 836 F.2d 521, 525 (Fed. Cir. 1987).

There is no record evidence demonstrating that Dr. Vilhardt had considered

one way or another whether to include the omitted affiliations. He stated that he

had selected the scientists because they were "knowledgeable and connected to the

field as to give a qualified opinion on the matter." (A5517). Further, he testified

that he was not even aware that the patent office had asked for declarations from

- 11 -

persons other than the inventors. (*Id.*). All of this is a matter of at least contested material fact which should have prevented summary judgment.

### 2.    **The Panel Decision Conflicts With *Kingsdown***

The era of uncontrolled, unremitting allegations of inequitable conduct has been characterized as an "absolute plague" raised in "almost every major patent case", and a much abused and too often "last resort allegation." *See Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 732 F.2d 903, 908 (Fed. Cir. 1984). This was remedied by this Court's decision in *Kingsdown*.  Under *Kingsdown*, negligence alone cannot support a finding of inequitable conduct—a deliberate decision to withhold information known to be material must be shown. *Kingsdown*, 863 F.2d at 876; *see Allen Eng'g Corp. v. Bartell Indus. Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002)("Materiality does not presume intent, which is a separate and essential component of inequitable conduct"); *Herbert Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996); *Upjohn Co. v. MOVA Pharm.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000) and others cited in the Dissent at 16-17.

The Majority relies upon *Critikon, Inc. v. Becton Dickenson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) for the proposition that intent can be inferred where an applicant knew or should have known of the materiality of the information and provided no credible explanation for the withholding.  This is not the law.  The *Critikon* decision relies upon *Driscoll*, 731 F.2d 878 (Fed. Cir. 1984),

- 12 -

which was <u>expressly</u> overruled by the *Kingsdown en banc* decision. *Kingsdown*, 863 F.2d at 876. Indeed, this Court has several times specifically rejected "should have known" materiality as sufficient. *See, e.g., Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988 (Fed. Cir. 1995); *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1443 (Fed. Cir. 1991); *American Hoist & Derrick Co. v. Sowa & Sons Inc.*, 725 F.2d 1356, 1361 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821 (1984). There is now conflicting precedent in this Court which must be resolved.

Also troubling is the Majority's further reliance on *Critikon,* for the proposition that "a patentee facing a high level of materiality . . . can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." (Majority at 17). This rationale contradicts *Kingsdown*, as a patentee facing a high level of materiality is not required to establish "subjective good faith" because it is the defendant—who bears a <u>clear and convincing</u> burden of proof which cannot be established by an inference of an intent to deceive. This rationale also conflicts with the recent decision in *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, Nos. 05-1224, 1228 (Feb. 27, 2006, Fed. Cir.), where this Court, in reversing summary judgment of inequitable conduct stated, "[w]hen the absence of a good faith explanation is the only evidence of intent . . . that evidence alone does not constitute clear and

- 13 -

convincing evidence warranting an inference of intent." Slip Op. at 12. Yet, this is precisely the predicament of Ferring in this case, as the Majority faults Ferring for not proffering sufficient evidence of Dr. Vilhardt's good faith. (Dissent at 18-20).

### D.    Inequitable Conduct Is Not Amenable To Summary Judgment Where Materiality or Intent Are Reasonably Disputed

To satisfy the intent to deceive element of inequitable conduct, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown,* 863 F.2d. at 876. It is key that an omission must be material and that the applicant must appreciate the materialness and have deceptive intent to conceal it. *FMC v. Manitowoc Co.,* 835 F.2d 1411, 1415-1417 (Fed. Cir. 1987). Each of these factors is reasonably disputed and accordingly are not amenable to summary judgment. *Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed. Cir. 1987); *Digital Control Inc. v. The Charles Machine Works*, 2006 U.S. App. LEXIS 2991 at *9 (Feb. 8, 2006, Fed. Cir.)

The Majority's decision conflicts with the well-settled law of *Anderson*, that all reasonable inferences must be drawn in favor of the non-moving party. 477 U.S. at 255. For this very reason, summary disposition was not appropriate here — as multiple inferences can be drawn from the underlying record. Yet, the Majority infers only the worst of the applicant, assuming bad faith and a concerted scheme by Dr. Vilhardt and the declarants to defraud the Patent Office.

- 14 -

Contravening of the summary judgment precedents of this Court, the Majority fails to afford the applicant the benefit of all justifiable inferences, assumes deceptive intent on the part of Dr. Vilhardt and improperly shifts the burden of proof to the applicant to explain away the omission of the affiliations from the PTO. As the dissent points out "the court not only creates a new rule of law, but faults the patentee for failing to provide, on the summary judgment record, evidence to respond to an unknown "should have known" per se rule that until now was absent from this law." (Dissent at 18).

IV.  **CONCLUSION**

Through inference and innuendo, without the benefit of a trial, the Court has destroyed an inventor's reputation, as well as that of an innovator drug company. Ferring respectfully urges reconsideration and withdrawal of the Panel Opinion; decision in Ferring's favor on the issue of infringement; and reversal and remand of this case for trial. In the alternative, Ferring respectfully petitions rehearing *en banc*.

Dated: March 1, 2006                    Respectfully Submitted,

Dennis J. Mondolino
Lisa M. Ferri
McDermott Will & Emery
340 Madison Avenue
New York, NY 10017
(212) 547-5400

- 15 -

<u>Of Counsel</u>
Steven B. Judlowe
Timothy P. Heaton
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
Attorneys For Plaintiff-Appellant
Ferring B.V.