UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
    ---------------------------------x
MEIJER, INC., MEIJER DISTRIBUTION,
INC., ROCHESTER DRUG CO-OPERATIVE,
INC., LOUISIANA WHOLESALE DRUG
COMPANY, INC., et al.,
                            Plaintiffs,

             v.                          05 CV. 2237 (CLB)

FERRING, B.V., FERRING
PHARMACEUTICALS, INC.,
AVENTIS PHARMACEUTICALS, INC.,
                        Defendants.
    ---------------------------------x
                        U.S. Courthouse
                        White Plains, N.Y.
                        July 21, 2006
                        10:00 a.m.


        Before:      HON. CHARLES L. BRIEANT,
                        United States District Judge


        APPEARANCES

        HANZMAN CRIDEN & LOVE, P.A.
        BY:  KEVIN B. LOVE, Esq.
        7301 Southwest 57th Court, Suite 515
        South Miami, FL 33143
        Attorneys for Plaintiffs

        BERGER & MONTAGUE, P.C.
        BY:  DAVID F. SORENSEN, Esq.
             DANIEL C. SIMONS, Esq.
             ADAM STEINFELD, Esq.
        1622 Locust Street
        Philadelphia, PA  19103-6305
        Attorneys for Plaintiffs


        Sue Ghorayeb, R.P.R., C.S.R.
        Official Court Reporter

2

COHEN MILSTEIN HAUSFELD & TOLL, PLLC
BY:  KANCHANA WANGKEO, Esq.
     LINDA P. NUSSBAUM, Esq.
150 East 52nd Street
New York, N.Y.  10022
Attorneys for Plaintiffs

ZWERLING SCHACHTER & ZWERLING, LLP
BY:  JOSEPH LIPOFSKY, Esq.
41 Madison Avenue
New York, N.Y.  10010
Attorneys for Plaintiffs

ARNOLD & PORTER, LLP
BY:  JON J. NATHAN, Esq.
     CATHY HOFFMAN, Esq.
     BARBARA WOOTTON, Esq.
     555 Twelfth Street, N.W.
     Washington, DC 20004-1206
Attorneys for Ferring, B.V.
Ferring Pharmaceuticals, Inc.

JONES DAY
BY:  JULIA E. MCEVOY, Esq.
     JOHN BRADLEY, Esq.
51 Louisiana Avenue, N.W.
Washington, DC  20001

3

1           THE CLERK:  Meijer v. Ferring B.V..

2           THE COURT:  Is there an agreement as to which

3     movant will be heard, sir?

4           MS. WOOTTON:  Good morning, Your Honor.  Barbara

5     Wootton from Arnold & Porter on behalf of Defendant Ferring

6     B.V. and Ferring Pharmaceuticals, Inc..

7           We are here this morning to argue motions to

8     dismiss.  I will be arguing the Ferring and Aventis joint

9     motion to dismiss on behalf of both of the defendants.

10          THE COURT:  Very well.

11          MS. WOOTTON:  Okay.

12          THE COURT:  Go right ahead.

13          MS. WOOTTON:  As a little bit of background, if

14    Your Honor recalls, about a year and a half ago, you had

15    before you a patent case involving the defendants in this

16    case, Ferring and Aventis, who had sued Barr Labs for

17    infringement of a patent.  Barr is a generic manufacturer and

18    had sued for infringement of the patent involving

19    desmopressin acetate or DDAVP.

20          Your Honor, in February of 2005, issued a summary

21    judgment opinion in that case, finding the patent is

22    unenforceable for inequitable conduct.  The cases here before

23    Your Honor are antitrust class actions.

24          THE COURT:  That case went to the Federal Circuit,

25    didn't it?

                Sue Ghorayeb,  Official Court Reporter
                                                              4

1          MS. WOOTTON:  That case did go to the Federal

2     Circuit, yes.

3          THE COURT:  And if I remember, they affirmed, but

4     there was a dissent --

5          MS. WOOTTON:  That's correct, Your Honor, there

6     was.

7          THE COURT:  -- by Judge Newman.

8          MS. WOOTTON:  By Judge Newman, that's correct.

9          Would you like a little more on the procedural

10    history of that or --

11         THE COURT:  Well, to the extent you think it's

12    relevant to your present motion, but --

13         MS. WOOTTON:  Probably not.

14         THE COURT:  I would have to say that I was terribly

15    disappointed to note that Judge Newman, who I hold in very

16    great esteem, had dissented, and I think the fact that she

17    did shows that the whole thing wasn't totally free from

18    doubt.  But you can go ahead.

19         MS. WOOTTON:  Yes, Your Honor.  Thank you.

20         So, the cases before you here, Your Honor, are

21    antitrust class actions filed by direct purchasers and

22    indirect purchasers of the drug at issue.  The generic drug

23    companies are not involved in this suit.  They began to be

24    filed two weeks after Your Honor's summary judgment opinion

25    in the patent case.

Sue Ghorayeb,  Official Court Reporter

5

1          Defendants jointly seek to dismiss the plaintiffs'

2     claims, both the direct and indirect purchasers' claims, on

3     legal grounds.  The overarching legal policy question that

4     our motion raises is the extent to which non-infringers or

5     would be infringers, that is those who are not threatened

6     with the enforcement of the patent, can challenge the

7     patent's validity through antitrust claims.

8          This is an issue that Judge Trager in the Eastern

9     District of New York has recently reflected on in the In Re

10    Ciprofloxacin Hydrochloride Antitrust Litigation, which I

11    will try to refer to as Cipro for shorthand, which I think

12    discusses --

13          THE COURT:  It's a matter of interest, but you know

14    that case has no precedential value.  What did he do?

15          I am always interested in what Judge Trager thinks

16    but it's not a precedent.

17          MS. WOOTTON:  Not yet, Your Honor.  Not yet, Your

18    Honor.

19          THE COURT:  Not unless the Circuit Court --

20          MS. WOOTTON:  Right.  That is, as I think we

21    discussed with Your Honor the last time we were in front of

22    you, that is a case that is currently on appeal in front of

23    the Federal Circuit.

24          THE COURT:  Yes.  I gather he said they could.

25          MS. WOOTTON:  Judge Trager held that indirect

          Sue Ghorayeb,  Official Court Reporter

1   purchaser plaintiffs could not proceed with their antitrust

2   class action --

3          THE COURT:  I see.

4          MS. WOOTTON:  -- state claims based on --

5          THE COURT:  So, that's your position here.

6          MS. WOOTTON:  That is our claim here.  We basically

7   have three main contentions.

8          First, that these purchaser plaintiffs lack

9   standing to bring antitrust claims challenging enforcement of

10  the patent allegedly procured by fraud on the Patent &

11  Trademark Office.

12         Second, indirect purchasers plaintiffs bring state

13  law claims for damages essentially on the same conduct.  They

14  bring these claims under the State antitrust and consumer

15  protection laws.  Defendants assert that those claims are

16  preempted by federal patent law, and even if those claims

17  were not preempted, they are -- for a myriad of reasons, the

18  indirect purchaser State law claims should be dismissed as

19  well.

20         And the third point has been outlined in detail in

21  our briefs and I just want to focus on the first two points.

22         With regard to the Walker Process standing issue,

23  the Supreme Court has made clear that parties are immune from

24    antitrust suit for conduct in obtaining and enforcing patents

25    except in very extraordinary circumstances.

         Sue Ghorayeb,  Official Court Reporter

                                                              7

1         The Supreme Court has set forth the requirements

2    for when parties can pierce this antitrust immunity based on

3    allegedly fraudulent -- based on alleged enforcement of a

4    fraudulently procured patent in the Walker Process case.

5         THE COURT:  Your clients would or would not be

6    precluded on the issue of whether it was in fact obtained by

7    fraud in the trial of this case?

8         Would there be issue preclusion on whether the

9    patent was obtained by fraud?

10        MS. WOOTTON:  There would not be issue preclusion

11   in the prior case.  Your Honor's holding on summary judgment

12   was that the patent was unenforceable for inequitable conduct

13   before the Patent & Trademark Office.  Walker Process --

14        THE COURT:  It wasn't for fraud on the Patent

15   Office, it was just for inequitable conduct.

16        MS. WOOTTON:  That is correct.

17        THE COURT:  Because they didn't tell -- they had an

18   undisclosed fact they didn't disclose, not because they have

19   made a false statement.

20        MS. WOOTTON:  Well, Your Honor found, yes, that it

21   was inequitable conduct; that it was not --

22          THE COURT:  It's not fraud.

23          MS. WOOTTON:  Right, that was not the issue that

24  Your Honor decided.

25          And in order to state the Walker Process claim --


          Sue Ghorayeb,  Official Court Reporter
                                                        8
—

 1  in order to prove a Walker Process claim, as Walker Process

 2  as well as various other cases that have followed have made

 3  very clear, the antitrust plaintiffs, it is not enough for

 4  them to show inequitable conduct in front of the Patent

 5  Office; they must actually show fraud or patent invalidity.

 6          THE COURT:  And that you knew it.

 7          MS. WOOTTON:  That they knew -- yes, a knowing

 8  fraud.

 9          THE COURT:  Of course, if there was fraud, you

10  would know it.

11          I am going to ask you to allow me to interrupt this

12  hearing briefly, because I have representatives of the Legal

13  Aid and the Attorney General of New York, and some of them

14  want to get back to Albany.  And it will only take a few

15  minutes to take care of a document for them and I will come

16  back and join all of you as soon as I can.

17          (Recess)

18          THE COURT:  Please be seated.

19          Miss Wootton, you can resume now.

20          MS. WOOTTON:  Yes, Your Honor.

21         THE COURT:  I'm sorry for the interruption, but it

22    was necessary to get them on their way.

23         MS. WOOTTON:  Yes, Your Honor.

24         And I did -- before I resume the argument, I did

25    want to give you just for the record a quick status update on

              Sue Ghorayeb,  Official Court Reporter

                                              9

1     the Barr litigation, just to let you know that Ferring and

2     Aventis are petitioning final petition for cert. with the

3     Supreme Court and that briefing is due on September 11th.

4          THE COURT:  Of that I was not aware.  Now, that,

5     they were granted cert.?

6          MS. WOOTTON:  No.  They are filing a petition for

7     cert.

8          THE COURT:  And they don't have to file it until

9     September?

10         MS. WOOTTON:  September 11th the petition -- the

11    briefing is due.

12         THE COURT:  Okay.  Would you send us a copy for our

13    edification.

14         MS. WOOTTON:  We certainly would.

15         THE COURT:  I know it's a public document, but if

16    it comes in the mail, I don't have to look for it.

17         MS. WOOTTON:  Yes, Your Honor.

18         To resume, as we were discussing, plaintiffs are

19    asserting antitrust claims based on alleged fraudulent

20    procurement of a patent under a Walker Process theory.

21          Purchaser plaintiffs assert that they are proper

22    plaintiffs to bring Walker Process claims, but they are not.

23          The only parties against whom an allegedly

24    fraudulently procured patent has been asserted or who have

25    been threatened with --

              Sue Ghorayeb,  Official Court Reporter
                                                    10

1          THE COURT:  That's the issue that's in Judge

2    Traeger's case.

3          MS. WOOTTON:  It's actually not in Judge Traeger's

4    case.

5          THE COURT:  Oh.

6          MS. WOOTTON:  He sympathizes with this position,

7    but he doesn't actually have to decide this issue.

8          THE COURT:  Okay.

9          MS. WOOTTON:  He decided a separate issue, which we

10    are going to get to in a minute.

11          THE COURT:  But your first point is that they don't

12    have standing --

13          MS. WOOTTON:  They don't have standing.

14          THE COURT:  -- to assert that it was obtained by

15    fraud?

16          MS. WOOTTON:  Correct.

17          THE COURT:  This is not a Noerr-Pennington

18    situation from your point of view?

19            Because I have got a right to go tell the New York

20    legislature a fantastic story and get some anti-competitive

21    legislation that helps me and that's not actionable.

22            MS. WOOTTON:  Well --

23            THE COURT:  Can you go tell the Patent Office the

24    same?

25            MS. WOOTTON:  No, this is not -- the conduct here

                    Sue Ghorayeb,  Official Court Reporter
                                                            11

1    is protected against Noerr.  Because in this case, you know,

2    the only way that the plaintiffs have around Noerr is to

3    establish the elements of the Walker Process fraud; that is,

4    that the patent at issue here was procured by fraud and then

5    knowingly enforced.

6            THE COURT:  Not just by inequitable conduct?

7            MS. WOOTTON:  Not just by inequitable conduct.

8            THE COURT:  Okay.  What is your next point?

9            MS. WOOTTON:  Well, the second point -- can I

10    elucidate a little bit more as to why?

11            THE COURT:  Well, yes, but I would like to go on to

12    the next point.

13            MS. WOOTTON:  Okay.  The second point is that the

14    indirect purchasers' state law claims here, and this is the

15    part that was decided by Judge Trager --

16          THE COURT:  Oh.

17          MS. WOOTTON:  -- that their state law claims are

18  preempted by federal patent law; that this is a --

19          THE COURT:  That would not end the lawsuit, because

20  this is both indirect claims and direct claims.

21          MS. WOOTTON:  Yes.  But if direct and indirect

22  purchasers don't have standing to assert the federal

23  antitrust claims under Walker Process, and the indirect

24  purchaser plaintiffs don't have standing to assert their

25  additional state law damages claims, then that gets rid of

             Sue Ghorayeb,  Official Court Reporter
                                                              12

1  the lawsuit.

2          Purchaser plaintiffs here lacks -- the indirect

3  purchasers plaintiffs here lack standing to assert Walker

4  Process claims, because the underlying conduct on which they

5  based their claims arises under patent law, and to permit the

6  plaintiffs to -- through their state law claims, essentially

7  seeking validity of the patent, would conflict with federal

8  patent law, and it would constitute a conflict and an

9  obstacle to the accomplishment of the federal purposes of

10  patent law.

11          THE COURT:  I think I understand the argument.

12          The question really is:  Should we await whether

13  the certiorari is granted?  Because if certiorari is granted,

14  that would tell us that the Supreme Court agrees with Judge

15   Newman, and this motion would not -- I think the whole thing

16   would be moot because the patent would be then valid and

17   enforceable, right?

18          MS. WOOTTON:   I'm sure plaintiffs may contend

19   otherwise, but --

20          THE COURT:   I am not -- if they were -- if the

21   patent is valid, I don't know if you can collaterally attack

22   it?

23          MS. WOOTTON:   Well, I think that is our point here,

24   in essence that --

25          THE COURT:   As it stands today, the patent is not

                Sue Ghorayeb,   Official Court Reporter

                                                        13

1    valid?

2           MS. WOOTTON:   No, that's not correct.   The patent

3    is unenforceable for inequitable conduct.

4           THE COURT:   All right.

5           MS. WOOTTON:   But it has not been shown to be

6    either fraudulently obtained or to be invalid, and that is

7    our point here, both with respect to why the plaintiffs, the

8    direct purchasers and the direct -- and the indirect

9    purchasers do not have antitrust standing.   Because it's in

10   essence sort of an indirect way to collaterally attack the

11   validity of the patent at issue.

12          Indirect purchasers, consumers of drug products,

13    who may be charged super-competitive monopoly prices, do not

14    under the patent laws have the ability to attack, to attack

15    the validity of a patent.

16            THE COURT:  But if the patent is enforceable, you

17    can't attack it in an antitrust case.

18            MS. WOOTTON:  If the patent is --

19            THE COURT:  If there had not been the inequitable

20    conduct, there will be no question that you couldn't attack

21    it.

22            MS. WOOTTON:  That is correct.  And we also contend

23    that they also cannot attack it unless they show that the

24    patent is invalid and fraudulently obtained, which are higher

25    showings than inequitable conduct, which was previously

                Sue Ghorayeb,  Official Court Reporter
                                                            14

1    found.

2            THE COURT:  So, what you are really telling us is

3    that it's purely fortuitous that we had this prior case.

4            MS. WOOTTON:  I'm sorry.

5            THE COURT:  You are telling us that the prior case

6    is purely fortuitous that we have it.  It has nothing to do

7    with this litigation.

8            MS. WOOTTON:  The Cipro case or the -- oh, you are

9    talking, yes, well, the patent case.

10            THE COURT:  Yes, the patent case of Barr.

11            MS. WOOTTON:  Well, in some sense, in some sense it

12   is.  In some sense it is.

13           THE COURT:  I'm sorry.

14           MS. WOOTTON:  Yes, the Barr case.  Yes.

15           THE COURT:  The Barr case.

16           MS. WOOTTON:  Yes, yes.  Yes, it's not

17   determinative certainly of the outcome here.

18           THE COURT:  All right.  Why don't I hear your

19   adversary?

20           MR. LOVE:  Good morning, Your Honor.

21           THE COURT:  Yes.  You are Mr.?

22           MR. LOVE:  I'm Kevin Love.

23           THE COURT:  Yes.

24           MR. LOVE:  I represent the indirects.

25           With me is David Sorensen from Berger & Montague.


             Sue Ghorayeb,   Official Court Reporter
                                                        15

1    He represents the direct purchasers.

2            THE COURT:  Okay.

3            MR. LOVE:  The motion was directed -- some, some

4    arguments overlap with both of our Complaints and that's why

5    it was a combined motion.

6            THE COURT:  Yes.

7            MR. LOVE:  If I may, I would like to address

8    briefly the standing argument and the preemption, which only

9    applies to my class.

10      THE COURT:  Now, if the patent -- if the Supreme

11  Court grants certiorari and reverses the Federal Circuit in

12  the Barr case, you have nothing left, is that right?

13      MR. LOVE:  I don't think -- I think -- I don't -- I

14  am not sure I agree with that, Your Honor.

15      THE COURT:  Well, maybe you should explain to me,

16  because the next question I am going to ask somebody is --

17  and I really don't see much purpose in deciding the motion

18  until the Supreme Court acts.

19      MR. LOVE:  Well, Your Honor, these cases, these

20  underlying patent infringement cases are generally appealed

21  through the -- through the courts.

22      THE COURT:  But, you see, this is a case where the

23  patent has been adjudged unenforceable.

24      MR. LOVE:  Yes, Your Honor.

25      THE COURT:  And you are alleging one additional

            Sue Ghorayeb,  Official Court Reporter
                                                          16

1  step, that it is not only unenforceable but void for fraud.

2      MR. LOVE:  Not necessarily.  Our claims are both

3  Walker Process and PRE sham litigations under the Supreme

4  Court PRE case.  And under the TriCor and the D.C. case, I

5  don't know how to pronounce it, I think it's Nobelpharma,

6  those two claims are distinct and we do not need fraud on the

7  PTO for a sham litigation claim.

8      I just wanted to add, Your Honor, that this claim

9   went up to the Federal Circuit, it was to -- with Judge

10  Newman dissenting.  Then there was a motion for rehearing en

11  banc, which did not go anywhere and it was denied.  So, there

12  is a majority of the court that believes in your opinion, not

13  only the panel but the entire Circuit.

14          THE COURT:  Not necessarily.  Have you ever tried

15  to get en banc for a hearing in the Second Circuit?

16          MR. LOVE:  I am aware.  Having clerked for an

17  appellate court, I know what it takes.  But -- and the

18  chances of them granting cert. here too are very small.  But

19  in any event --

20          THE COURT:  For whom did you clerk?

21          MR. LOVE:  Judge Emmett Cox in the 11th Circuit.

22          THE COURT:  Okay.  You don't think -- you think

23  that this -- you don't think that reversal would moot this

24  litigation?

25          MR. LOVE:  No, Your Honor.  I think that we would

            Sue Ghorayeb,  Official Court Reporter
                                                        17

1   still --

2           THE COURT:  You are not claiming that the

3   infringement claims were sham.  You are just claiming -- this

4   is a typical case where there is a valid patent, but it just

5   doesn't read on what the infringer is doing.

6           MR. LOVE:  We do allege sham litigation.

7          THE COURT:  I don't know where you find that

8    factually.

9          MR. LOVE:  Well, at this point, with our

10   allegations and having not reviewed all discovery and

11   everything, I agree with Your Honor that the sham litigation,

12   obviously, the objectiveness of the claim would go back to

13   the patent itself.

14          It wouldn't be like in a patent infringement case

15   where we are arguing that the infringement itself was not,

16   you know, objective.  But the case would not go away anyway.

17          THE COURT:  Now, did you want to comment on this

18   theory that an antitrust plaintiff cannot collaterally attack

19   the validity of a patent.

20          MR. LOVE:  The Walker Process standing argument, I

21   would, Your Honor.

22          THE COURT:  Yes.

23          MR. LOVE:  Our claim --

24          THE COURT:  I gather the Supreme Court hasn't

25   really spoken on that.


          Sue Ghorayeb,  Official Court Reporter

                                                      18


1          MR. LOVE:  I think they have, Your Honor.

2          THE COURT:  They have?

3          MR. LOVE:  Yes, and the defense counsel and I

4    disagree on that, but.

5          You know, our allegations are a monopoly claim.  I

6     mean straightforward, garden variety monopoly antitrust

7     claim.  To get around, as you point out, the Noerr immunity

8     that you need, in Walker Process, the Supreme Court said that

9     you need to prove fraud on the PTO to have that type of

10    claim, and defendants' argument is that as a matter of

11    standing purchaser plaintiffs can never ever have this

12    standing.

13          But if you look at the -- at Associated General,

14    the Supreme Court laid out for everybody what the standards

15    were for standing, to bring a Section 2 Sherman Act claim

16    under Section 4 of the Clayton Act, and there is no mention

17    of these factors, there is no mention of all of the policies

18    that go into Associated General for standing.

19          What the defendants' argument is solely based --

20    the Walker Process, the standing argument is solely based on

21    one case, and that's Remeron; that's the New Jersey case,

22    Judge Hochsberg.  And I will get in a second, the whole

23    preemption argument is based on Cipro, which you have already

24    spoken about.  And of course those two judges -- I think

25    Cipro cites Remeron, so they are, you know, intertwined.

          Sue Ghorayeb,  Official Court Reporter

1          What Judge Hochsberg did was that you have this,

2     this whole jurisprudence under Associated General going back

3     to 1983 of what standing you need to bring a Section 2 claim.

4    You also have jurisprudence of what it takes to be able to

5    invalidate a patent, either by declaratory judgment or by

6    counterclaim.

7           THE COURT:  You also have a constitutionally-rooted

8    policy that patents are permitted -- patents can be enforced

9    without violating the Sherman Act.

10          MR. LOVE:  Absolutely.  We have to prove to you the

11   elements of our claim and we have to get over Noerr immunity.

12   But what's important here, Your Honor, is to see these two

13   tracks of standing.

14          It's very clear if you read the cases, because

15   Judge Hochsberg in Remeron relies on Carrot Components, which

16   is another earlier New Jersey case, and that case only deals

17   with the standing that somebody needs to have to invalidate a

18   patent, and that is --

19          THE COURT:  You see, what you are talking about is

20   this:  You have a claim of monopoly.  A monopoly claim is met

21   by the answer, "I am immune, I am doing it under a patent."

22   And then the plaintiff responds and says, "yeah, but your

23   patent is fraudulent and you knew it."  And the question is

24   whether you can collaterally attack the patent in that

25   fashion.

              Sue Ghorayeb,  Official Court Reporter
                                                          20

1           MR. LOVE:  Exactly, Your Honor.  What you have to

2    decide, where I think the issue is, is:  Is an antitrust

3  claim, a Section 2 claim, that has the element -- there is no

4  disagreement about this, we admit that it has the element of

5  the fraudulent conduct on the PTO, in order to strip the

6  immunity, Noerr immunity away, is that more like an antitrust

7  claim or is it more like an action for someone to invalidate

8  a patent where they are being sued as an infringer?

9        And that -- and Judge Kennedy, in the D.C. Court,

10  said in Molecular, "Remeron got it wrong.  Walker Process is

11  an antitrust claim."

12        You asked me whether the Supreme Court had said

13  anything about this.

14        Walker Process in the Seventh Circuit, I'm taking a

15  step back, in the Seventh Circuit -- I'm sorry, in the

16  Seventh Circuit, that court said that "Walker Process, this

17  type of claim you can't bring, because it's a patent claim,

18  it's not an antitrust claim.  We are not going to hold it."

19        The Supreme Court reversed in their opinion

20  finding, "No.  The gist of the Walker Process claim is not

21  the fact that you are also alleging fraud on the PTO to strip

22  immunity, it is at its heart an antitrust claim."

23        If it is an antitrust claim, as Judge Kennedy found

24  in Molecular, then you have to apply the normal Associated

25  General standing to whether you can bring that claim.  And

Sue Ghorayeb,  Official Court Reporter