UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
FERRING B.V. and AVENTIS
PHARMACEUTICALS, INC.,

       Plaintiffs,

    v.        02 CV. 9851(CLB)

BARR LABORATORIES, INC.,

       Defendant.
----------------------------------x
      U.S. Courthouse
      White Plains, N.Y.
      March 1, 2007
      2:00 p.m.

Before:   HON. CHARLES L. BRIEANT,
       United States District Judge


APPEARANCES

FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
BY: JAMES B. MONROE, Esq.
   LAWRENCE L. ILAG, Esq.
901 New York Avenue, N.W.
Washington, D.C. 20001
Attorneys for Ferring B.V.

KAYE SCHOLER, LLP
BY: AARON STIEFEL, Esq.
425 Park Avenue
New York N.Y. 10022
Attorneys for Aventis Pharmaceuticals, Inc.

KIRKLAND & ELLIS
BY: EDWARD C. DONOVAN, Esq.
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Attorneys for Barr Laboratories, Inc.

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter --

2

1          THE CLERK:  Ferring v. Barr Laboratories.

2          THE COURT:  All right.  Who wishes to be heard at

3   this time?

4          MR. DONOVAN:  Good afternoon, Your Honor.  Ed

5   Donovan on behalf of Barr Laboratories, which is the movant

6   on this motion here.

7          THE COURT:  All right.  Please take the lectern.

8          MR. DONOVAN:  May it please the Court, good

9   afternoon.  Ed Donovan from Kirkland & Ellis on behalf of the

10   defendant in this action, Barr Laboratories.

11          We are here today on Barr's motion for attorney

12   fees for prevailing in this patent action, and, more

13   specifically, this Court found in February of 2005 that the

14   patent-in-suit that had been asserted against Barr by

15   plaintiffs had been obtained by inequitable conduct and that

16   Barr never infringed that patent in the first place.

17          That inequitable conduct decision was subsequently

18   affirmed by the Federal Circuit.  That court never decided

19   the issue of non-infringement, it only went as far as

20   inequitable conduct.  The decision was subsequently -- there

21   was a petition for certiorari to the Supreme Court.  That

22   court denied certiorari in, I believe, October or November of

23   last year, and that's what brings us here today, plaintiffs'

24   avenue for appeals having been exhausted.

25          The issue at, at the heart of Barr's motion is

Sue Ghorayeb,  Official Court Reporter

3

1  attorney fees under Section 285.  Patent --

2      THE COURT:  This was a Hatch-Waxman Act lawsuit,

3  wasn't it?

4      MR. DONOVAN:  That's correct, Your Honor.

5      THE COURT:  And there is lots of those.

6      MR. DONOVAN:  That's correct.

7      THE COURT:  And I'm puzzled -- it's been some time

8  since we had this matter here.  Who was it who did the

9  inequitable conduct?

10      Certainly, it wasn't Aventis, was it?

11      MR. DONOVAN:  It was not Aventis, Your Honor.  It

12  was Dr. Vilhardt, who --

13      THE COURT:  Who was the patentee?

14      MR. DONOVAN:  Who was the patentee with the other

15  plaintiff Ferring.  There is two plaintiffs in this case,

16  Ferring, and Aventis is the exclusive licensee in the United

17  States.

18      THE COURT:  Yes.

19      MR. DONOVAN:  Vilhardt is associated with Ferring,

20  and Vilhardt is the one who committed the inequitable conduct

21  during the prosecution.

22      THE COURT:  And you say it's attributable to

23  Ferring?

24      MR. DONOVAN:  I do say it's attributable to

25  Ferring.

        Sue Ghorayeb,  Official Court Reporter

4

1      THE COURT:  But Aventis is just an innocent

2  licensee?

3      MR. DONOVAN:  I wouldn't, I wouldn't call Aventis

4  an innocent licensee.

5      I would say under the standard for 285 exceptional

6  case, Aventis and Ferring were jointly represented by the

7  attorneys.  Well, the attorneys who prosecuted this case

8  jointly represented both Ferring and Aventis.

9      THE COURT:  This case or the patent?

10      MR. DONOVAN:  This case.

11      THE COURT:  The patent was prosecuted by different

12  lawyers?

13      MR. DONOVAN:  The patent was prosecuted by lawyers

14  from a law firm who subsequently became, in large part, the

15  lawyers who litigated this case on behalf of Ferring and

16  Aventis.  I am not saying Aventis had anything to do with the

17  prosecution of the patent-in-suit.

18      THE COURT:  But that's where the inequitable

19  conduct took place.

20      MR. DONOVAN:  That is where the inequitable conduct

21  took place, but that doesn't mean Ferring is off the hook for

22  attorney fees for prosecuting this action.

23      As far as Barr is concerned, it doesn't care who

24  pays its attorney fees, which can either be Ferring or

25  Aventis, and certainty Aventis has availed itself of the same

Sue Ghorayeb,  Official Court Reporter

1  attorneys in this case, as did, as did Ferring.

2        And the important point here is, Your Honor, that

3  for exceptional case purposes, for purposes of Section 285,

4  you don't need any litigation conduct.  What's important

5  there, and what's said in the A.B. Chance case, what's said

6  in the Calgene case, the Federal Circuit, is that the

7  inequitable conduct by itself, separate and apart from

8  whatever happened during the lawsuit, is grounds for an

9  exceptional case and fees.

10        So whether Aventis knew it or not, they can't be

11  off the hook for attorney fees if that patent that was sued,

12  and they joined that suit, was based on inequitable conduct.

13  But I do want to be clear, I am not saying that Aventis was

14  involved --

15        THE COURT:  It has to be an exceptional suit.  It

16  isn't enough to say that every case that has inequitable

17  conduct is an exceptional lawsuit.

18        MR. DONOVAN:  Absolutely not, Your Honor.  In fact,

19  you addressed this somewhat in your opinion, in February of

20  2005, recognizing that it's almost an exceptional case just

21  to have inequitable conduct.

22        Now, how does the Federal Circuit define

23  inequitable conduct -- exceptional case?

24        They do so more with reference to examples of the

25  type of conduct than with anything specific.  And the one

Sue Ghorayeb,  Official Court Reporter

1    they always point to on the defendant's side is inequitable

2    conduct. Because inequitable conduct by definition means

3    that by clear and convincing evidence it was shown that the

4    applicants for the patent withheld material information -- by

5    definition, information important to the patentability of the

6    patent -- and did so intentionally, and that by itself, by

7    itself, is ground for an exceptional case.

8         And that is exceptional conduct because it's not

9    every patent case, not all these Hatch-Waxman cases, not all

10   of these patent infringement cases, where you find those

11   extraordinary circumstances of inequitable conduct, and they

12   are extraordinary, and they are extraordinary in this case

13   for the additional reason that they are not in dispute. It

14   was decided on summary judgment. There was never any

15   dispute.

16        Every court that has looked at this record -- and

17   the Federal Circuit was not referring to Your Honor's

18   findings. They were looking at a summary judgment record and

19   they ordered the whole thing up. And that court and this

20   Court both found that the information that was withheld from

21   the examiner was material; not just material, "highly

22   material." Those are the words of Your Honor. Those are the

23   words of the Federal Circuit. And both courts looked at the

24   record and found that it was done intentionally.

25        And like the Brasseler case in the Federal Circuit,


                 Sue Ghorayeb,  Official Court Reporter

1  there was never any attempt made to explain away that

2  behavior; rather, it was always -- the communications were

3  always hidden behind the privilege.

4      In the Brasseler case, I would refer the Court to

5  that case in the Federal Circuit; the same sort of thing

6  where they just didn't want to talk about it and claimed

7  privilege.

8      THE COURT:  Refresh my recollection, Judge Newman

9  dissented?

10     MR. DONOVAN:  Judge Newman did dissent, Your Honor.

11  There is two --

12     THE COURT:  And did she say that it was not willful

13  or did she say it was not material?

14     I have forgotten what her dissent --

15     MR. DONOVAN:  Judge Newman's dissent I think found

16  that there was no inequitable conduct, both because it wasn't

17  in her view material and it wasn't intentional.

18     And if you look at what Judge Newman's dissent is,

19  it's very instructive here, because Judge Newman said that

20  she didn't believe, based on the record, that the people who

21  submitted the declarations were ever consultants and in fact

22  that was argued.

23     Ferring argued in its brief that Dr. Barth was not

24  a consultant to the Federal Circuit.  But before this Court,

25  where I spent two and a half years litigating this case, Dr.

        Sue Ghorayeb,  Official Court Reporter

8

1  Barth, Dr. Czernichow, Dr. Robinson, all consultants, on

2  privilege log after privilege log, sworn privilege log

3  subject to --

4      THE COURT: You mean someone who submitted an

5  affidavit to the examiner was not a consultant?

6      Is that what you just said?

7      MR. DONOVAN: No. I am saying that they were

8  consultants. They were undisclosed consultants to Ferring.

9      The reason that the Federal Circuit and Your Honor

10  found that there was withholding of material information was

11  because these declarants were not objective; these declarants

12  were all consultants of the patentee Ferring, and in fact

13  that was the position that was always taken throughout the

14  District Court to protect the privilege, that these people

15  were all consultants.

16      Well, if they are consultants, you have to disclose

17  that information to the Patent Office. You must do that.

18  It's in the MPEP, which guides the examiners. It's in the

19  Federal Circuit case law, and the Federal Circuit --

20      THE COURT: You are suggesting that persons who

21  were not consultants could have filed these affidavits?

22      MR. DONOVAN: I am suggesting that you could have

23  gotten an objective declaration from an expert

24  unassociated -- not a consultant, not a former employee, not

25  an existing consultant -- you could have done that, or as the

        Sue Ghorayeb, Official Court Reporter

1  Federal Circuit said, you could have just done the right

2  thing and disclosed the interest, and maybe the Patent Office

3  would take that into account and find that important, and

4  maybe it wouldn't, but it's not something you can argue about

5  afterwards.

6      It's crystal clear that these, that these interests

7  should have been disclosed and they were withheld, and they

8  were withheld intentionally in order to get the patent to

9  issue. And that's a summary judgment record for which

10  inequitable conduct was found both by this Court and two

11  judges in the Federal Circuit over, as Your Honor says, Judge

12  Newman's dissent.

13      And Judge Newman pointed to them being consultants,

14  but when I spent two and a half years litigating and they

15  insisted they weren't consultants. That's a contrary

16  position on appeal as to the positions taken below. That's

17  evidence that supports an award of attorney fees in this

18  case. I can't be in this case for two and a half years,

19  unable to pierce the privilege, and them claiming they were

20  consultants all along, represented both during the

21  declaration -- represented during the litigation, yet, when I

22  get on appeal, they were never consultants.

23      And Judge Newman cited that they weren't

24  consultants and the majority got the full record and they

25  said, "look at the privilege log, they are consultants. Look

Sue Ghorayeb,  Official Court Reporter

10

1  at the evidence, they were consultants." So, the majority

2  pointed to all of those things, all the things that Your

3  Honor pointed to in Your Honor's decision, and found that

4  these were significant interests that should have been

5  disclosed, that were not disclosed, and for that reason, the

6  patent was held unenforceable. They lost all their patent

7  rights because of that, and every court that has looked at

8  that has agreed.

9      THE COURT: All right. Thank you, sir.

10     Who wants to be heard on the other side?

11     MR. STIEFEL: Aaron Stiefel for Aventis.

12     THE COURT: All right. You are speaking only for

13 Aventis?

14     MR. STIEFEL: I'm speaking only for Aventis and --

15     THE COURT: I think your adversary considers that

16 your client came on the scene after all of the wrongdoing has

17 passed.

18     MR. STIEFEL: I agree. And although I don't accept

19 that there was any wrongdoing, but --

20     THE COURT: Well, the Circuit and I don't -- the

21 Circuit two-to-one and this Court believes there was

22 wrongdoing.

23     MR. STIEFEL: Right. We are not -- we are

24 certainly not rearguing that point, Your Honor. Most of my

25 points will, I think, go equally for Ferring, and although

Sue Ghorayeb, Official Court Reporter

1  Mr. Monroe can speak for himself.

2      But, basically, what -- essentially, what Barr is

3  saying is that because this was an inequitable conduct case,

4  because the Court decided on summary judgment that there was

5  inequitable conduct, that there was no infringement, that it

6  follows that an award of attorneys' fees is appropriate, and

7  I think Your Honor recognized that that just is not the law.

8      Their reply brief -- and I'm quoting.  It says,

9  "The relevant inquiry on Barr's motion is whether there was

10  inequitable conduct under the patent laws."  We are not

11  disputing that.  The Court agreed.

12      The Court decided that there was inequitable

13  conduct, but the issue is, is there more?  They have to show

14  mo re to get attorneys' fees under Section 285, and they

15  haven't made that showing.  They haven't even tried to make

16  that showing.  They don't purport to make that showing.  They

17  don't acknowledge that there is a need to make that showing.

18      There is a two-step inquiry under Section 285.

19  First, you have to show that the case is exceptional, and

20  then you have to also show that an award is appropriate,

21  because it's discretionary.  Even if it's an exceptional case

22  in the Court's view, the Court can in its discretion refuse

23  to award fees.  So that --

24      THE COURT:  Yes.  But to do anything in your

25  discretion in these days, with an appellate ascendancy, you

Sue Ghorayeb,  Official Court Reporter

12

1  have to have good reason.  The old times are gone.  The

2  Circuit now -- not so much the Federal Circuit, but the

3  Second Circuit doesn't realize judicial discretion anymore.

4      MR. STIEFEL:  Well, the, the fact is that we don't

5  think this is an exceptional case.

6      There is no showing of, of any higher level of

7  culpability here beyond the inequitable conduct found by the

8  Court, which in and of itself doesn't necessarily support an

9  award of attorneys' fees.

10      The -- this Court, Your Honor, said in the Corren

11  case that what's required is extraordinary misconduct,

12  misconduct is required --

13      THE COURT:  What's the name of the case you are

14  talking about?

15      MR. STIEFEL:  Corren, C-o-r-r-e-n, v. Casio.

16      THE COURT:  I said that?

17      MR. STIEFEL:  You said, "extraordinary misconduct

18  is required to justify the imposition of attorneys' fees

19  under Section 285."

20      And you also said that it is --

21      THE COURT:  Could we see a copy of that?

22      I am having difficulty recalling it.

23      MR. DONOVAN:  Can I see it, Mr. Stiefel?

24      I'm sorry.

25      THE COURT:  1998, all right.  I couldn't remember

Sue Ghorayeb,  Official Court Reporter

1  it for some reason.

2      MR. STIEFEL: Maybe because it was 1998. Probably

3  because it was 1998.

4      THE COURT: Go right ahead, please.

5      MR. STIEFEL: So, in that case, Your Honor said

6  that an award of fees is appropriate where it's grossly

7  unjust that the winner be left to bear the burden of his own

8  counsel and that there be extraordinary misconduct. So, they

9  have to show -- Barr has to show here that it would be

10  grossly unjust for fees to be denied.

11      And in the Ortho Diagnostic case, which we cited,

12  another Southern District Judge quoted Judge Nies in the

13  Argus case, which is a Federal Circuit case from 1987, who

14  said, "Our cases" -- this is the Federal Circuit in a

15  concurrence. "Our cases reflect three standards for judging

16  the misconduct by a patentee dependent upon the extent of

17  relief which the opposing litigant seeks: (1) misconduct

18  which makes a patent unenforceable, which we have termed

19  "inequitable conduct;" (2) misconduct which is sufficient to

20  make a case "exceptional" under 35 U.S.C. Section 285 so as

21  to warrant, in the discretion of the trial judge, an award of

22  attorney fees, and (3) misconduct which rises to the level of

23  common law fraud and which will support an antitrust claim.

24  As a litigant moves from a purely defensive position, to a

25  recoupment request, to an affirmative claim for damages, it

Sue Ghorayeb,  Official Court Reporter

1  is reasonable to impose more stringent requirements."

2      So, Judge Nies is saying that there is a more

3  stringent showing required of an applicant for attorneys'

4  fees than somebody claiming inequitable conduct.

5      And this case, although the Court did hold

6  inequitable conduct, this is not a case of an elevated level

7  of culpability.  The culpability here, to the extent there

8  was any, was at the lower end of the spectrum.

9      This -- Your Honor had before, before the Court an

10  antitrust case brought by indirect purchasers, who brought an

11  antitrust claim in the wake of the Court's inequitable

12  conduct decision.  And in dismissing that case, Your Honor

13  said -- and this is at Page 7 of the decision.  "The '398

14  patent now stands as unenforceable for inequitable conduct,

15  but that misconduct has not been shown to rise to the level

16  of fraud so as to lead to invalidity."

17      And the Court went on to say, "the Court's findings

18  in the prior litigation of inequitable conduct and

19  unenforceability do not arise to the Walker Process

20  requirements of fraud and invalidity.  At the very least, an

21  additional component of scienter must be shown to render

22  actions fraudulent that might otherwise be found merely

23  inequitable.

24      "The Court did not determine that fraud was

25  perpetrated on the PTO, nor that but for the omissions found,

Sue Ghorayeb,  Official Court Reporter

1  the patent would not have issued.  Nor could it have done so

2  on the complete record" presented in Ferring I, which is this

3  case, the patent infringement case.

4        And, in fact, in support of the idea that this was

5  a lesser level of culpability in terms of the spectrum of

6  potential culpability, there were no affirmative

7  misrepresentations.  We're not -- the, the inventor is not

8  alleged to have affirmatively misstated anything.  He's

9  alleged to have --

10       THE COURT:  You argue that because your clients

11  represented they really believed it.  That's arguable.

12       MR. STIEFEL:  Well, he is alleged to have submitted

13  declarations and not disclosed that there were some limited

14  connections between some of the declarants, not all of the

15  declarants, and Ferring.

16       Now, that nondisclosure did not bear on

17  patentability.  It didn't relate to whether Dr. Vilhardt had

18  an invention or not.  In most of the cases, in the cases that

19  Barr relies on, there are misrepresentations, nondisclosures

20  as to things that bear directly on patentability.  They were

21  withholding prior art, withholding sales of a product that

22  would have invalidated the patent.

23       And here the nondisclosures are, are at a pretty

24  low level, where all you are talking about is a nondisclosure

25  of some prior connection between Ferring and the declarant.

Sue Ghorayeb,  Official Court Reporter

16

1    And this Court in its decision in granting summary

2  judgment of inequitable conduct, the Court recognized that

3  the declarants may have been "perfectly capable of

4  objectivity" and may have -- again quoting -- "provided

5  declarations accordingly." So, the Court was aware that

6  there was every possibility that notwithstanding those

7  undisclosed connections, these scientists had submitted

8  honest opinions to the Patent Office and that in fact Dr.

9  Vilhardt deserved the patent.

10    And indeed Dr. Vilhardt supported his, his

11  application to the Patent Office with declarations, with a

12  declaration in two instances, from an expert who had no

13  connection with Ferring. So, there was an expert who had no

14  connection who was saying, "yes, this is an invention."

15    Now, Ferring and Aventis got slapped, lost their

16  patent or lost the ability to enforce the patent, because

17  they didn't tell the Patent Office that some of the other

18  declarants had connections to Ferring. But in terms of

19  whether there was an invention or not, there was a totally

20  untainted, unconnected, neutral declarant who supported the

21  patent at every stage. And there was here, again, no direct

22  evidence of wrongful intent. There were inferences.

23    This Court said, "It should have been, and the

24  Court concludes on all the evidence presented, that it must

25  have been clear to Dr. Vilhardt at the preliminary meeting

Sue Ghorayeb,  Official Court Reporter

1  with the examiner that a non-inventor affidavit was sought."

2     And the Court goes on to say, "it should have been

3  all the more clear that objective opinion evidence of the

4  unobvious nature of this invention was required."

5     But the Court goes on to say that "The inference of

6  an intent to mislead arises not simply from the materiality

7  of the affidavits, but from the affirmative acts of

8  submitting them, their misleading character, and the

9  inability of the examiner to investigate the facts."

10     So, this Court relied on inferences of intent and

11  Judge Newman had a big problem with that. She said,

12  depending -- she said as -- with respect not to Your Honor's

13  opinion, but with respect to the majority in the Federal

14  Circuit, which also relied on inferences, she said that, "The

15  panel majority infers material misrepresentation, infers

16  malevolent intent, presumes inequitable conduct, and wipes

17  out a valuable property right, all on summary judgment, on

18  the theory that the inventor should have known that something

19  might be deemed material."

20     So, Judge Newman thought that there was a low

21  showing of intent here, and the Federal Circuit applied a

22  negligence standard. The Court -- the Federal Circuit said

23  that "the applicant knew or should have known of the

24  materiality."

25     So, regardless of what Your Honor -- it's not --

Sue Ghorayeb,  Official Court Reporter

1  well, even accepting that Your Honor found direct evidence of

2  intent of some kind, the Federal Circuit applied a negligence

3  standard in finding intent.

4       Now, I want to address for a moment -- well, one

5  point. The -- in determining whether an award is

6  appropriate, the courts often look at whether it is a close

7  case or not. Now, first of all, they -- Barr says, "well,

8  this can't be a close case, because it's a summary judgment

9  case." But regardless of whether it's a close case as a

10  matter of fact, it is a close case as a matter of law. And

11  the fact that Judge Newman wrote such a strong dissent --

12  and, in fact, this Court, in dismissing the antitrust case,

13  the Court said that Judge Newman's decision shows that this

14  case wasn't totally free from doubt.

15       There were three Federal Circuit Judges, two in

16  addition to Judge Newman, who voted to rehear the Federal

17  Circuit's decision en banc. There were amicus briefs from

18  the Washington Legal Foundation, from BIO and PhRMA, and

19  there was widespread reaction in the patent field to the

20  decision here. So it was a close case as a matter of law.

21       And another point I wanted to address is that, as

22  Your Honor recognized, Aventis -- putting aside Ferring,

23  Aventis has its own reason why it should not be held liable

24  for attorneys' fees, because it's -- it was not involved in

25  the prosecution of the patent. I am not clear. Mr. Donovan

Sue Ghorayeb,  Official Court Reporter

1  says, "well, that doesn't matter," but the case law is

2  otherwise.

3      This Court said, in dismissing the antitrust cases,

4  the Court said that the plaintiffs there, who were relying on

5  the record here, had found no facts indicating "that Aventis

6  knew or subsequently learned of Ferring's inequitable conduct

7  to obtain the '398 Patent."

8      And the Court went on to say, "Clearly Aventis had

9  the right to bring suit, since it was not privy to the

10  inequitable conduct. The bringing of the suit by Ferring and

11  Aventis was not in subjective bad faith, but rather a

12  standard response to Hatch-Waxman," and that's not an

13  exceptional case which warrants attorneys' fees.

14      The McKesson case, which we cited, is a case which

15  is very much like this one, in that the party that had

16  nothing to do with the inequitable conduct was held not

17  liable for attorneys' fees because of that. It had bought

18  the patent long after the patent was prosecuted.

19      One more point. Mr. Donovan repeatedly discussed

20  the -- this issue of a changed position with respect to the

21  declarants and whether they were consultants or not, and I'm

22  not completely clear what that's about, but as I understand

23  it -- because we were not involved in the case at the -- when

24  it was before Your Honor earlier.

25      But as I understand it, the declarants were put

Sue Ghorayeb,  Official Court Reporter

1  on -- or communications between counsel and the declarants

2  were put on the privilege log, because at the time that the

3  patent was being prosecuted they were being consulted by

4  counsel, and so they were identified as consultants in

5  connection with their work on the patent application.

6      THE COURT: I don't understand how anybody who

7  enters from academia or from the field of science into the

8  patent application at the request of the applicant could be

9  anything else but a consultant.

10      Nobody is going to walk in off the street and say,

11  "I'm really interested in this application, and I have twenty

12  years experience in treating diabetes and I think my opinion

13  is such and such as to the patentability." I don't think

14  anyone is going to do that. The minute they sign those

15  affidavits, they were consultants.

16      MR. STIEFEL: Right. Well, that's what -- they

17  were consultants. The only thing --

18      THE COURT: Probably, the privilege should have

19  been overruled, because it was injected into the litigation,

20  but that's history.

21      MR. STIEFEL: Agreed, Your Honor. In short --

22      THE COURT: You were not in the case at that time.

23      MR. STIEFEL: Mm-hmm.

24      THE COURT: You were not in the case.

25      MR. STIEFEL: We were not in the case at that time.

Sue Ghorayeb,  Official Court Reporter

1     But the bottom line is that there was a finding of

2  inequitable conduct, but that inequitable conduct was at the

3  bottom end of the spectrum.

4     They have not made the showing of gross injustice

5  or extraordinary misconduct that would rise to the level of

6  exceptionality and support an award of fees.

7     Wait. I think --

8     THE COURT: I think we have another party who wants

9  to be heard.

10     MR. MONROE: Your Honor, James Monroe on behalf of

11  Ferring.

12     THE COURT: Yes, sir.

13     MR. MONROE: And I will be brief.

14     Ferring agrees with most of the comments that Mr.

15  Stiefel made on behalf of Aventis with respect to the

16  inequitable conduct being at a lower level of culpability

17  than required for an exceptional case.

18     And, in fact, to step back for a moment and look at

19  the purpose of 285 and the policy behind it, it provides and

20  carves out a specific exception to the American Rule with

21  respect to allocation of fees in litigation. And the

22  legislative history is very clear on that and so is the

23  Federal Circuit case law, that it provides for an exception

24  in a case in which it will be grossly unjust, and the cases

25  that Aventis has cited and Ferring have cited support that

Sue Ghorayeb,  Official Court Reporter

22

1   proposition.

2       The Gardco, J.P. Stevens, Argus and Frank's

3   crossing -- Frank's Casing cases all stand for the

4   proposition that you have to have a grossly unjust scenario,

5   what would be grossly unjust, to have the defendant paid for

6   fees for defending itself in an action.

7       And the point that Mr. Stiefel made with respect to

8   the Federal Circuit appeal and in fact Your Honor pointed to

9   with respect to Judge Newman's dissent highlights why this is

10  not a case where there is a situation where it would be

11  grossly unjust to require the defendant to bear its own

12  costs.

13      The Federal Circuit opinion, which was a split

14  panel, shows that reasonable minds could differ on the

15  ultimate conclusion with respect to whether or not the

16  activity at the Patent Office constituted inequitable

17  conduct.  We concede that the decision, that the decision in

18  the case, the holding is that there was inequitable conduct;

19  however, the split panel evidences that reasonable minds

20  could disagree.

21      It's that fact, that reasonable minds could

22  disagree, that fact that Judge Newman went through an

23  exhaustive analysis as to why there was not intent in her

24  opinion and was not materiality in her opinion evidences that

25  it was not vexatious, egregious or frivolous for Ferring and

Sue Ghorayeb,  Official Court Reporter

1  Aventis to assert the patent at issue in this case, and to

2  believe throughout the proceedings that it was enforceable

3  and that the arguments made by Barr were baseless.

4       Ultimately, Ferring and Aventis lost on that issue

5  and appealed it, again believing that they had a solid basis

6  for pursuing their patent infringement claims; appealed that

7  to the Federal Circuit, at which we have a split opinion.

8       And as Mr. Stiefel also pointed out, we had amicus

9  support when we went through the certiorari step.  Barr

10  argues essentially that the amicus parties were somehow in

11  the back pockets of the parties, Ferring and Aventis, and

12  that could not be further from the truth.

13       Washington Legal Foundation is not associated with

14  either.  Neither of the companies are associated with

15  Washington Legal Foundation.

16       And with respect to BIO and PhRMA, both of those

17  organizations have very formal processes for asking for

18  participation and for them to also go through their own

19  internal voting process, and anyone who has a connection must

20  step back from that process and recuse themselves, and

21  Ferring is not a member of BIO.  I mean, so, there was a

22  little bit of overreaching in that argument in Barr's brief.

23       So, just stepping back and looking at that policy,

24  we fully support Aventis's arguments that inequitable conduct

25  does not equate to an exceptional case.  Summary judgment

Sue Ghorayeb,  Official Court Reporter

24

1  does not equate to an exceptional case, and a summary

2  judgment for non-infringement does not equate to exceptional

3  case.

4      Now, as I mentioned, the Gardco, Frank's Casing,

5  J.P. Stevens and Argus cases support the positions that

6  Aventis and Ferring are putting forth with respect to the

7  inequitable conduct issue. And the FieldTurf case supports

8  our position with respect to a summary judgment on

9  non-infringement not being sufficient for a holding of an

10 exceptional case and allocation of attorneys' fees.

11     One additional point that I would like to make is,

12 again, focussing on the policy issue, we need to keep in

13 mind -- there have been discussion about whether it's Aventis

14 or Ferring or both that are liable for any fee allocation.

15 If we look at the policy behind 285, it is enacted in order

16 to essentially sanction conduct with respect to the

17 enforcement of a patent, not with respect to the procurement

18 of a patent, and that is the policy that is at issue.

19     THE COURT: Nobody procures a patent and then

20 doesn't enforce it, do they?

21     MR. MONROE: Actually --

22     THE COURT: It's hard to believe that anyone having

23 snowed the Patent Office would then not enforce the patent.

24     MR. MONROE: Most patents are not actually

25 enforced, Your Honor. They are obtained and not enforced or

        Sue Ghorayeb,  Official Court Reporter

25

1   asserted against another party.

2        THE COURT:  Because they are not commercially

3   viable, that's why.  Anybody who has a patent -- I just don't

4   see that argument.

5        MR. MONROE:  Well, I think the point is that

6   ultimately you -- the conduct that is being focussed on for

7   the purposes of 285 exceptional case analysis is the

8   enforcement of the patent.  And as both parties -- other

9   parties have noted that during the course of the underlying

10  litigation, both parties were represented by the same

11  counsel, who enforced that patent in the litigation.

12       One last comment is, I don't believe we will ever

13  get -- I am hoping we will never get to the issue with

14  respect to the amount of fees to be --

15       THE COURT:  Well, you know, that's probably not

16  relevant, but it's horrible for me to think that somebody has

17  a case in the federal system today, and they were able to

18  resolve the case at the summary judgment level -- they didn't

19  have any trial, they didn't deal with the delays of going to

20  trial, they didn't have all of the midnight preparation that

21  goes with a trial -- and summary judgment followed by an

22  appeal, it's going to cost $4 million.  I don't know how that

23  can happen.

24       MR. MONROE:  One, I am not sure if Your Honor's

25  point I was going to, I am not sure that it actually cost

Sue Ghorayeb,  Official Court Reporter

1  $4 million.  I mean that was the point I was going to raise

2  with respect to the fee records, if we ever got to that stage

3  of the case, which I don't believe we should.  But if we do,

4  in their opening brief, Barr essentially asked for a blank

5  check of four-plus million dollars and provides a summary of

6  time records, but does not --

7        THE COURT:  They don't say they collected it from

8  Barr?

9        MR. MONROE:  They don't say what it is they did to

10  amass that amount of money.  Simply being in the litigation

11  does not -- to give an example, Your Honor, in response --

12        THE COURT:  You ought to be able to get summary

13  judgment and maintain it on appeal for less than $4 million,

14  I would think of.

15        MR. MONROE:  Well, I would agree with that, Your

16  Honor.  And in fact --

17        THE COURT:  I don't think that's relevant to this

18  particular issue --

19        MR. MONROE:  Well, I think ultimately --

20        THE COURT:  -- or argument.

21        MR. MONROE:  If there is ultimately an assessment,

22  we would argue that Barr has to come forward with more detail

23  with respect to its allegations as to where those fees come

24  from.

25        THE COURT:  They are going to tell you that Barr

Sue Ghorayeb,  Official Court Reporter

1  paid it at arm's length.

2      MR. MONROE:  What they did, Your Honor, was they

3  provided us with -- in response to our comment that they had

4  not provided sufficient information, in their reply brief,

5  accompanying their reply brief, they provided us with a

6  five-inch stack of electronic -- printout of electronic time

7  records, and that was the first time we saw them, was with

8  their reply brief.

9      They even say, in their brief, "this is all of the

10  time entries for our case, not just the ones we are seeking

11  fees for," but they don't point out to us what it is they are

12  seeking fees for.  And if you look at the time records --

13      THE COURT:  So, you are telling me, if I am going

14  to award fees, I have to have an inquest on the value of the

15  work?

16      MR. MONROE:  Correct, and actually make them go

17  through it.  Because there are a lot of entries in what they

18  have provided us that don't appear to have any bearing on

19  actually litigating this action, and we would require or

20  request that they be required to actually articulate what it

21  is they are seeking, just as you have to in a cost scenario.

22      But, again, I don't think we have to get to that,

23  but I wanted to raise that as an issue that we did not have

24  an opportunity to, to investigate that further given that

25  they have provided it with their reply brief.

Sue Ghorayeb,  Official Court Reporter

28

1       THE COURT:  All right.  Thank you, sir.

2       You want to make a brief reply?

3       MR. DONOVAN:  I will make a brief reply.  Thank

4   you, Your Honor.

5       THE COURT:  Is this the fee that was actually paid

6   by the defendant to the attorneys of record?

7       Where does this $4 million come from?

8       MR. DONOVAN:  $4 million is fees that were incurred

9   by Barr on behalf of the representation, so Barr paid the

10  fees to their attorneys.  Section 285 allows Barr then to

11  seek the cost of defending this action.

12      THE COURT:  The reasonable costs of defending it.

13      MR. DONOVAN:  Reasonable costs of defending this

14  action.  And Your Honor is right, it shouldn't cost that much

15  money, but if you look at what the record was in this case,

16  with 30 depositions, having to travel overseas to take

17  depositions of the inventor Vilhardt and others, making

18  numerous --

19      THE COURT:  But, you know, hindsight is a hundred

20  percent, and sometimes litigation is wasteful, and sometimes

21  people take depositions just because they have a right to.  I

22  urge them not to, but they don't listen.  And if you really

23  felt aggrieved, you could have come to the Court and maybe

24  had those vacated.

25      MR. DONOVAN:  Well, Your Honor, I didn't bring the

Sue Ghorayeb,  Official Court Reporter

1   action.  Barr didn't bring the action in the first place.  We

2   got sued.  We were forced to incur those fees because we got

3   sued in this case.

4       THE COURT:  You invited yourself to be sued, didn't

5   you, under Hatch-Waxman?

6       MR. DONOVAN:  We don't invite ourselves to be sued

7   on a patent that never should have been brought in the first

8   place.

9       THE COURT:  Well, all right.  You can take your

10  chair.

11      MR. DONOVAN:  May I make a couple of more brief

12  remarks, Your Honor?

13      THE COURT:  Briefly, if you will.

14      MR. DONOVAN:  I will.  Thank you.

15      In terms of Aventis's argument that I don't have to

16  show more or I have to show more than inequitable conduct,

17  that's simply wrong as a matter of law under Second Circuit

18  case law.  Inequitable conduct is conduct sufficient for

19  fees.  On top of that, we had the litigation conduct

20  associated with it.

21      You will see in the Federal Circuit's decision,

22  they pointed to the fact that when we initially took Mr.

23  Vilhardt's deposition, he denied having any involvement with

24  these declarations.  It was only when I confronted him with

25  the privilege logs that he suddenly changed his tune and

        Sue Ghorayeb,  Official Court Reporter

1   explained that, yes, he did have involvement in the

2   procurement of this --

3          THE COURT:  You know, if we had a dollar for every

4   deposition witness who lies, we would be able to build an

5   annex to the courthouse.

6          MR. DONOVAN:  But you would also get your fees

7   under 285 under the Federal Circuit's case law.

8          Your Honor's case in Corren v. Casio, that was

9   inequitable conduct in that case.

10         The antitrust case has nothing to with this case by

11   definition.  As Your Honor explained in his opinion, the

12   standard for antitrust is different.  You would never ever

13   have any fees in a patent case if that was the standard,

14   because nobody proves those proofs.  The standard for

15   antitrust fraud is different than inequitable conduct.  Your

16   Honor said so correctly in the opinion.  It's a total red

17   herring.

18         No evidence of wrongful intent, there was never any

19   direct evidence of wrongful intent.  Both this Court and the

20   Federal Circuit found circumstantial evidence that was clear

21   and convincing of intent, and that's an extraordinary case in

22   itself.

23         Relying on a dissent as your basis for why it was

24   not an extraordinary case, again, it's simply wrong.  This

25   Court found inequitable conduct, as did the Federal Circuit

          Sue Ghorayeb,  Official Court Reporter

1  and every court that reviewed it, and that does not change

2  this Court's underlying decision.

3       They didn't decide on a negligence standard.

4  Again, that's simply wrong. That's legal error. The idea

5  that the Federal Circuit disregarded its precedents and

6  applied a negligence standard is just wrong; they didn't say

7  that and to argue that is wrong as well.

8       It's not a close case. It can't be a close case if

9  you are finding intentional conduct to deceive on summary

10  judgment. It doesn't make any sense. This wasn't a close

11  case. It's in the MPEP, you have to disclose these things.

12  The man didn't disclose these things. He interviewed with

13  the examiner. He did all of the things during prosecution

14  and then he never disclosed it.

15       It's not a close case with inequitable conduct when

16  it's found on summary judgment.

17       As to whether they are consultants or not --

18       THE COURT: They are consultants. Take your chair.

19       MR. DONOVAN: Thank you, Your Honor.

20       THE COURT: The Court appreciates the whole

21  discussion that we have been having here, but eventually we

22  have to come to a point of resolving the matter.

23       We have before this Court, in a patent infringement

24  case, defendant's motion for a bill of taxable costs and

25  attorneys' fees, which is Document Number 200, incurred in

Sue Ghorayeb,  Official Court Reporter

32

1  the defense of this litigation, which resulted in a grant of

2  summary judgment in favor of the Defendant Barr Laboratories,

3  and that decision was affirmed by the Court of Appeals for

4  the Federal Circuit on a two-to-one split decision.

5      That court on appeal reached solely the issue that

6  the patent was held unenforceable by this Court for

7  inequitable conduct on the part of the patentee or his

8  attorney before the Patent and Trademark Office where the

9  patent was being prosecuted in the beginning.  The Court of

10  Appeals did not address this Court's finding of

11  non-infringement.  And the Court assumes familiarity of the

12  reader with all prior proceedings in this case.

13      Defendant Barr Laboratories seeks taxable costs in

14  the amount of $24,799.88, and seeks attorneys' fees in the

15  amount of $4,789,464.  The Court assumes that they paid that,

16  although the record is not absolutely clear that it was

17  actually paid, in an arm's length transaction between the

18  client and the lawyer, without knowledge of whether this

19  motion would fly or not, but I don't think I need to reach

20  that.

21      The Defendant argues that this is the precise type

22  of case that Section 285 of the Act was designed to address,

23  and this Court's finding that there was no genuine issue of

24  material fact as to inequitable conduct, combined with

25  contentions asserted as to the actual trial preparation

                Sue Ghorayeb,  Official Court Reporter

33

1  itself, make this case exceptional and render it appropriate

2  for an award of attorneys' fees and expenses.

3       On the issue of costs, the Court finds no issue.

4  The prevailing party in this Court is ordinarily entitled to

5  taxable costs.  Our practice is for the successful party to

6  present a bill of costs on notice to the Clerk of the Court.

7       The Clerk of the Court will tax the costs in

8  accordance with the case law and the rules.  And in those

9  rare occasions where a party is not satisfied with the

10  taxation of costs by the Clerk, he or she can appeal to the

11  District Court.

12      But these costs were not taxed by the Clerk, there

13  is no appeal here, and the Court is not reaching the issue of

14  costs except to say that the prevailing party is entitled to

15  its statutory costs, and it's entitled to tax them on notice

16  with the Clerk of the Court, and that's what the Court orders

17  in this particular case.  That has to be done promptly or you

18  lose it under the relevant provisions of the Federal Rules.

19      The section which the legal fee claim is being

20  based on is found in Title 35, Section 285, and that award is

21  asserted to be discretionary in character and appropriate

22  only in rare cases, and that's quite clear.

23      And the Court is now quoting from Cybor Corporation

24  against FAS Techs, 138 F.3d 1448, at Page 1460, a Federal

25  Circuit case in 1998.  "The determination of whether a case

Sue Ghorayeb,  Official Court Reporter

1    is exceptional and, thus, eligible for an award of attorney's

2    fees under Section 285 is a two-step process." And I'll omit

3    citations.

4        "First, the district court must determine whether a

5    case is exceptional, a factual determination reviewed for

6    clear error." And I'll again omit citations.

7        "After determining that a case is exceptional, the

8    district court must determine whether attorney's fees are

9    appropriate, a determination that we review for an abuse of

10   discretion." That ends the quotation.

11       The contention being made here by the Defendant is

12   that the Plaintiffs or their assignors fraudulently obtained

13   a patent, that it knowingly filed the infringement suit

14   against Barr, then delayed resolution of the case, which

15   increased costs. This Court never found conduct rising to

16   the level of fraud.

17       The Court of Appeals in the Federal Circuit has

18   held that in order to establish fraud, "a misrepresentation

19   or omission must evidence a clear intent to deceive the

20   examiner and thereby cause the PTO to grant an invalid

21   patent. In contrast, a conclusion of inequitable conduct may

22   be based on evidence of a lesser misrepresentation or an

23   omission, such as omission of a reference that would merely

24   have been considered important to the patentability of a

25   claim by a reasonable examiner." That's the end of the

Sue Ghorayeb,  Official Court Reporter

1  quote, which comes from Nobelpharma AB against Implant

2  Innovations, 141 F.3d 1059, at Page 1070 and 1071, decided in

3  1998 by the Federal Circuit.  The Court has omitted interior

4  string cites from the quotation.

5        Although a finding of inequitable conduct may bring

6  a case under the heading of "exceptional," such a finding

7  does not necessarily put this case into the narrow class of

8  "exceptional" patent cases.  This Court relies on Indiana

9  General Corporation against Krystinel Corporation, 421 F.2d

10  1023, at Page 1033, which is a Second Circuit case in 1970.

11        And it seems to me that what we are faced with is

12  that Barr relies on this Court's finding that the entire

13  record presents clear and convincing evidence of an intent to

14  mislead the examiners, which supported a finding of

15  inequitable conduct by the patentee and its agents, and the

16  deceit was practiced over a long period of time by more than

17  one person.  It appears to have been outcome determinative,

18  and that's in this Court's prior decision.

19        And mention has already been made here this

20  afternoon of the fact that the Court held in a related case,

21  in 2006, in the Direct Purchaser Antitrust Litigation, that

22  this Court did not determine that fraud was perpetrated on

23  the Patent and Trademark Office, nor that but for the

24  omissions found, the patent would not have issued," and nor

25  could it have done so on that record, and this Court adheres

          Sue Ghorayeb,  Official Court Reporter

1   to its finding in this related case.

2        The Plaintiffs point to this Court's statement in a

3   conference held in a related subsequently filed case, after

4   the affirmance of what we have come to call Ferring I, which

5   Judge Newman's dissent in this case shows that the whole

6   thing wasn't totally free from doubt, and I think that's

7   true, and I think when reasonable minds differ, even if it's

8   a dissenting opinion, it does lead to the conclusion that the

9   outcome of this case was not free from doubt.

10        That informal statement during conference shouldn't

11   be relied on as law of the case or as having any comparable

12   weight, but instead as respectfully acknowledging Judge

13   Newman's dissent in Ferring I, in which she noted, among

14   other things, that "on its face, the involved conduct, viewed

15   in light of all the evidence," does not in her opinion

16   "indicate sufficient culpability to require a finding of

17   intent to deceive." That's at Page 1205, at 437 F.3d 1181,

18   the Federal Circuit's opinion.

19        This Court concludes as a matter of law that

20   inequitable conduct alone doesn't compel a finding that a

21   case is exceptional. That's the rule of Consolidated

22   Aluminum Corporation against Foseco International, Limited,

23   at 910 F.2d 804, at Page 814, a Federal Circuit case in 1990.

24        The lack of candor before the PTO as to the

25   relationships among the patentee and its declarants was found

37

1  to be inequitable and that alone, in my opinion, does not

2  make the case an exceptional case.

3       The lack of candor involved the nondisclosure of

4  potentially biased relationships between the declarants and

5  the patentee, rather than, for example, the intentional

6  nondisclosure of prior art directly bearing on the

7  patentability of the product.  And the lack of candor

8  constituting inequitable conduct in this case does not, in

9  the opinion of this Court, render the case exceptional, nor

10  does the Court perceive the litigation conduct of Ferring and

11  Aventis to have been particularly vexatious or dilatory so as

12  to render an exceptional case, to render the case exceptional

13  or particularly remarkable in any way.

14       The Court attempts to the best of its ability to

15  get cases processed promptly, and to prevent or set aside

16  efforts which are being conducted to make it vexatious or

17  unduly burdensome.  Sometimes the litigants choose, for

18  reasons of strategy, not to bring that to the attention of

19  the Court, and the Court can't reach out and micromanage a

20  case to tell you how many depositions you can have.

21       Patent cases are typically complex and they involve

22  what is often labeled confidential or proprietary information

23  and privileged matters, and this does make discovery

24  routinely cumbersome.

25       This Court has reviewed and considered the hearing

Sue Ghorayeb,  Official Court Reporter

1   transcript excerpts submitted by Barr from the discovery

2   hearings before Magistrate Judge Fox.  It's evident that

3   there were conflicts of opinion as to privileged documents

4   and perhaps some unjustified delays in production, but this

5   Court cannot and does not conclude that these rise to the

6   level of either vexatious conduct in litigation or conduct

7   which would make an otherwise ordinary case into an

8   exceptional case.  And there is some other issues, but I

9   don't think they change the general conclusion as to that

10  matter.

11       This Court determined to hear arguments on claim

12  construction during the trial as opposed to having a separate

13  Markman hearing, and Barr's efforts in opposition to an

14  infringement motion undoubtedly coincided with its efforts to

15  defend the case, as well as its efforts in moving for summary

16  judgment of non-infringement.  And the withdrawal of a prior

17  motion by Barr does not in my judgment support a finding that

18  the case was either vexational or exceptional for the purpose

19  of taking it out of the ordinarily applicable American Rule

20  of counsel paying their own fees.

21       And the argument about the fact that patent

22  attorneys were drafting new patent applications for

23  desmopressin tablets and have recently started threatening

24  Barr with additional litigation over the same tablets that

25  Barr just prevailed on in this case seems to be interesting,

Sue Ghorayeb,  Official Court Reporter

39

1   and perhaps unfounded and an unsupported accusation, but it's

2   outside the boundaries of this Court's scope of consideration

3   for purposes of determining whether this case here was an

4   exceptional case or for determining whether attorneys' fees

5   should be awarded in this particular case.

6           There is no merit at all to the argument that the

7   Plaintiffs -- I'm sorry, that the Plaintiffs needlessly

8   multiplied the proceedings by appealing to the Federal

9   Circuit and the Supreme Court.  Because of the unfortunate

10  unpredictability of the appellate courts in the federal

11  system in America, those who can appeal do whenever the

12  importance of the issue justifies the cost.  And any

13  reasonable person situated as were these Plaintiffs should

14  have and would have appealed to the Second Circuit, and

15  should have and would have petitioned the Supreme Court for

16  certiorari, and also should have sought reargument in the

17  Appellate Court, and I think that's just the way things are

18  in litigation of this sort today.  And while it may be

19  unfortunate, I don't think you can fault the Plaintiffs for

20  going with the flow and doing this extra litigation simply

21  because they lost it.  And I think it's also immaterial to

22  the issue whether the Circuit failed to address the

23  non-infringement issue.

24          In conclusion, it really ought to be noted that

25  Defendant is an active successful competitor in the business

        Sue Ghorayeb,  Official Court Reporter

1   of producing generic brands of patented drugs, and as such

2   ought not to be heard to suggest that the Court's finding of

3   non-infringement renders this case exceptional.

4        Indeed, with respect to the alleged infringement by

5   Barr's ANDA of the '398 patent, the case couldn't have been

6   much more routine, particularly since the defining

7   characteristic of the generic was that it was produced in

8   acetate form when the acetate was not expressly claimed in

9   the patent.  That is not an issue which should affect this

10  outcome one way or another.

11       In the Revlon case, the Federal Circuit in 1986

12  held that "attorney's fees are not to be routinely assessed

13  against a losing party in litigation in order to avoid

14  penalizing a party for merely defending or prosecuting a

15  lawsuit."  That cite is Fleischmann Distilling Corporation

16  against Maier Brewing Company, a Supreme Court case in 1967.

17       This Court concludes there is no gross injustice to

18  be undone in this case by awarding attorneys' fees in the

19  defense of this relatively routine patent infringement

20  litigation.

21       I have already ruled on the issue of the costs, and

22  I think that they are routinely awarded to the prevailing

23  party.

24       So, the motion for attorneys' fees is denied.  The

25  Court finds it's not an exceptional case.  Taxable costs are

        Sue Ghorayeb,  Official Court Reporter

41

1  to be awarded to prevailing parties in the absence of any

2  reason to the contrary and they will be taxed on the merits

3  by the clerk on notice. So, that's to be done at your

4  earliest convenience. And in all other respects, the motion

5  is denied.

6        And the Court understands that there may be missing

7  considerations in its decision, and at this time I would like

8  anyone who wishes to supplement the record by having the

9  Court make further references or further findings, and the

10  Court will begin with counsel for Ferring.

11        MR. MONROE: Nothing further, Your Honor.

12        THE COURT: All right. Mr. Stiefel.

13        MR. STIEFEL: Nothing further, Your Honor.

14        THE COURT: All right.

15        MR. DONOVAN: Your Honor, nothing further other

16  than -- I hate to bring it up, the motion for costs. We did

17  file a motion for costs and that's the reason --

18        THE COURT: Well, as I say, I think you are

19  entitled to your costs because you are a prevailing party,

20  but you don't get them from me. You tax them on notice under

21  the rules before the clerk. The clerk will adjudicate --

22  don't bother the clerk with depositions that weren't used at

23  trial or in the deposition additions to the motion, because

24  they won't be allowed to you. And I think you should just

25  either agree on it, if you can, and if you can't agree, go on

Sue Ghorayeb,  Official Court Reporter

1  down and tax them on notice.

2     MR. DONOVAN: Thank you, Your Honor. I wanted

3  clarification.

4     THE COURT: You are entitled to your costs because

5  you won the case.

6     All right. Thank you all for your attendance here.

7     MR. STIEFEL: Thank you, Your Honor.

8     MR. MONROE: Thank you, Your Honor.

9     (Case adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sue Ghorayeb, Official Court Reporter